**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

GRACIE BAKED LLC and WECARE RG, INC., on behalf of themselves and all others similarly situated,

          Plaintiffs,

   v.

GIFTROCKET, INC.,

          Defendant.

**CLASS ACTION COMPLAINT**

DEMAND FOR JURY TRIAL

Case No. 22-cv-4019

Plaintiff Gracie Baked LLC ("Gracie Baked") and Plaintiff WeCare RG, Inc., d/b/a Café Ole In The Valley ("Café Olé"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendant GiftRocket, Inc. ("GiftRocket") and allege the following based upon personal information as to allegations regarding themselves and the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1.    This is an action brought on behalf of nationwide, New York, and Pennsylvania classes of small businesses to seek redress for Defendant's systematic violations of federal and state unfair competition laws.

2.    Defendant GiftRocket, Inc. operates a website that ostensibly sells gift cards to *any* business in the United States. GiftRocket lists many tens of thousands of businesses on GiftRocket.com without notifying these businesses or obtaining their consent.

3.    GiftRocket uses the names and goodwill of these businesses to sell what is an expensive money transfer service dressed up as a way to send "gift cards." The gift recipient does not receive an actual gift card that can be used at the business it is intended for.

4.    Instead, the recipient gets an electronic greeting card, called a "GiftRocket Prepaid Gift," that "suggests" that she use the gifted amount at a particular business but then instructs her to choose to (a) have the funds deposited in a bank account, or (b) select an actual gift card to use at a *different* business.

5.    Consumers, however, believe that they can use GiftRocket Prepaid Gifts at real businesses. As a result, confused consumers regularly show up at businesses, only to discover that businesses do not accept GiftRocket's product.

6.    To illustrate, GiftRocket's website offers consumers the option to purchase a GiftRocket Prepaid Gift for Plaintiff Gracie Baked (a Brooklyn-based bakery). But this Prepaid Gift cannot be used at Plaintiffs' businesses. Plaintiffs have no affiliation with GiftRocket and never agreed to be listed on GiftRocket's website or allowed GiftRocket to sell gift cards in their names.

7.    The GiftRocket Prepaid Gift "suggests" that the recipient visit Gracie Baked, and then instructs the recipient on how to receive the funds in a bank account or to get a real gift card to use, but at a different business—Amazon, Target, or American Eagle.

8.    In other words, instead of an actual gift card that can be used at the business it was intended for, the gift recipient merely receives money. And the gift

giver pays GiftRocket for the convenience. Moreover, GiftRocket charges expensive processing fees for this service, such as $7 for a $100 gift. These fees are far more expensive than simply using PayPal or other money transfer services.

9.     Countless consumers are misled and confused about exactly what to do with these "GiftRocket Prepaid Gifts." They repeatedly try to use the gift cards at the businesses the cards were intended for. And businesses, which have no idea they have been drafted into GiftRocket's scheme, are left with negative experiences and harm to their reputations when customers blame the businesses for not accepting unauthorized GiftRocket "gift cards."

10.     Consumers who purchase GiftRocket Prepaid Gifts are upset to discover that they did not actually purchase a "gift card," but instead paid GiftRocket significant sums just to transfer money. Gift recipients then become upset when they show up at businesses that do not accept the GiftRocket Prepaid Gift.

11.     As one consumer related:

> This site is a scam. I was looking for a gift card for a specific restaurant for my son's birthday. This site popped up as one who would provide that gift. It allowed me to print a card that indicated it was a gift for the restaurant I had chosen. However, when it came to redeeming the card that restaurant was not available and my son's only option was to have to money transferred into his bank account or pick another gift card. I could have easily given him the $50 cash but I wanted the gift for that restaurant.
>
> Your site should specify what gift cards are available instead of acting like they can provide what you want only to dissapoint in the end.

12.     Businesses are upset to discover that GiftRocket is not only profiting from their names and goodwill but is also leaving them with the responsibility of explaining to customers why they do not accept GiftRocket cards for payment.

13.     As one business related:

> I own a restaurant and never sell our giftcard or certificate on any website. Giftrocket didn't contact or sign any endorsement With us but still charge customers. This is unacceptable! Not only left customers with confusion and awkwardness And make the merchant really hard to explain.

14.     Because GiftRocket profits from the unauthorized use of Plaintiffs' and the putative class members' trade names and good will, Plaintiffs bring suit under section 43 of the Lanham Act for false affiliation and false advertising, sections 349 and 350 of New York General Business Law ("GBL"), the common law of unfair competition, and .

15.     Plaintiffs seek damages and equitable relief on behalf of themselves and all others similarly situated.

## **THE PARTIES**

16.     Plaintiff Gracie Baked LLC is a New York limited liability corporation located in Brooklyn, New York. Gracie Baked is a bakeshop that sells specialty desserts. It has been featured in the Gothamist, City Guide NY, Eater, and other publications. The founder of Gracie Baked previously worked at Momofuku Milk Bar and started a late-night treats delivery called S'more to Door. The founder also led baking therapy classes at an eating disorder treatment center and at The Door, a

non-profit that assists at-risk youth and the homeless. Gracie Baked hires paid interns from The Door to help empower young people to reach their full potential.

17.     Plaintiff WeCare RG, Inc., d/b/a Café Ole In The Valley ("Café Olé") is a Pennsylvania corporation located in Huntingdon Valley, Pennsylvania.  Café Olé is a family-oriented, neighborhood coffee shop that serves snacks and Mediterranean fare. It is also renowned for its Shakshuka dish, which is a staple of middle eastern cuisine and is based on a secret family recipe hailing from Tunisia.

18.     Defendant GiftRocket, Inc. ("GiftRocket") is incorporated in Arizona and maintains its principal place of business at 1592 Union Street, Suite 502, San Francisco, California. GiftRocket is a Silicon Valley-based technology company whose principal business is the selling of GiftRocket Prepaid Gifts.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

20.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332(a)(1).

21.     This Court has personal jurisdiction over Defendant GiftRocket, Inc. because Defendant committed the tortious acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

22.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendant transacts substantial business in this District.

23.    This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

### A.    GiftRocket Profits from Businesses and Tricks Customers with its Deceptive "Gift Card" Sales

24.    GiftRocket was founded in 2010 by Nicolas Baum, Jonathan Pines, and Kapil Kale in San Francisco, where it is headquartered. The company's website (GiftRocket.com) sells "gift cards" of up to $1,000.

25.    On its website, GiftRocket offers a directory of merchants that spans cities and categories of business, such as Restaurant, Night Life, and Spa (the "GiftRocket Business Directory"). GiftRocket creates landing pages for every business that has at least one review on Yelp.com.

26.    GiftRocket misleadingly states that consumers can choose from tens of thousands of businesses to use GiftRocket Prepaid Gifts for.

27.    GiftRocket also offers the consumers the ability to browse tens of thousands of businesses by location and category, such as restaurants or bars or food

28.    A customer can search and select a specific business, and the customer is sent to a page that displays the merchant's name, address, and Yelp rating.

29.    For instance, Plaintiffs appear on Defendant's website as follows:





30.    Then, the customer can choose an accompanying card design, dollar amount, delivery date, and personalization options like recipient name, sender name, and custom message. Once the customer enters these details and their payment information, the GiftRocket Prepaid Gift is sent.

31.    This entire process misleads consumers into believing that businesses like Plaintiffs are affiliated with GiftRocket and will accept GiftRocket Prepaid Gifts.

32.    GiftRocket Prepaid Gifts are not actual gift cards that can be used at the business the card purchaser selected. The gift recipient must instead follow GiftRocket's instructions for transferring the funds to a bank account or to get an actual different card to use, but at a different business.

33.    In truth, GiftRocket Prepaid Gifts are merely an expensive way to transfer funds or to purchase actual gift cards for other retailers.

34.    For instance, if the gift purchaser chooses email, then the recipient receives an email that includes the amount of money being transferred and a personalized message.

35.    Then, after the recipient selects "Open Gift," they are shown where the gift-purchaser suggested the recipient patronize.



36.    Next, the GiftRocket recipient must choose how to redeem their GiftRocket Prepaid Gift. If the recipient decides to receive the funds as a credit to a bank account, she must wait at least two business days for the money to transfer.



37.     If the recipient chooses the gift card option, the recipient can select between an Amazon, Target, and American Eagle gift card, even though the gift was intended for another business.



38.     GiftRocket profits from this deceptive practice in large part by charging purchasing fees from each GiftRocket Prepaid Gift sale.  Every sale incurs a flat $2 fee, as well as an additional fee of 5% of the gift amount.

39.     These fees are exorbitantly higher than normal cash transfer fees. Services such as PayPal or Venmo charge little or nothing for personal domestic transactions, which are similar to GiftRocket's Prepaid Gift.

40.     In short, GiftRocket does not sell gift cards. Instead, it conceals the truth of the transaction—that it is a very expensive way to transfer money from one individual to the other.

41.     In addition, GiftRocket profits from what is called "breakage." Gift cards and other merchant credits are often lost or otherwise unused. Whereas in certain states, businesses that actually authorize gift cards get to retain, as revenue, the

unused gift card balances, here, GiftRocket captures the unused revenue from its Prepaid Gifts for itself.[1]

**B.    GiftRocket Knows It Confuses Consumers and Harms Businesses**

42.    Despite some language on GiftRocket.com informing customers that GiftRocket is only selling "suggestions" and not actual gift cards, countless individuals are misled into believing they have purchased or received an actual gift card, but then discover that businesses do not accept these cards.

43.    Businesses are upset that GiftRocket's deception of consumers comes at their expense. Customers have shown up at businesses demanding they honor GiftRocket's cards. Businesses have to deal with upset customers and even lose money, giving out services to avoid harm to their reputations.

44.    Many GiftRocket customers have expressed their frustration in finding out that their GiftRocket Prepaid Gifts do not actually function as gift cards at businesses they were intended for, as illustrated by the following complaints from TrustPilot.com, a site which Defendant monitors:

---

[1] https://www.giftrocket.com/business-owners/faq



45.    Further, as a result of GiftRocket's misleading practices, consumers cannot use the gifted amount at the business that the gift giver intended it be used. Because many gift recipients do not want to share their bank information with an unknown third party, they select GiftRocket's option for a prepaid gift card to Amazon, Target, and American Eagle. As one customer shared, the gift recipient "had to pick from a limited number of options in how she would like her gift card" rather than the restaurant the recipient wanted:



46.    Other GiftRocket customers report not being able to give the GiftRocket

Prepaid Gift on time:



47.    Because GiftRocket tricks consumers into purchasing GiftRocket Prepaid Gifts which are essentially just expensive transfers of money, and unaware of this days-long process, GiftRocket customers attempt to use GiftRocket Prepaid Gifts at businesses directly. Consequently, businesses unknowingly carry the responsibility of informing customers of how GiftRocket, a company they likely haven't heard of, actually works.  If they fail to do so, they risk losing money or status:







 Nov 21, 2021

**CEASE AND DESIST**

Remove "Kamki Cleaning Services" from your website GiftRocket and remove all advertisements related to "Kamki Cleaning Services. We do NOT give permission to GiftRocket to use our data, name, domain, or likeness of any kind to your company. We will NOT recognize or accept any gift cards from GiftRocket. We do NOT accept gift cards. Remove immediately.

Owner

 Dec 18, 2021

**Remove Laelanie Art Gallery and…**

Remove Laelanie Art Gallery and Laelanie Larach from your website! We don't accept gift certificates or gift cards. Giftrocket is using the business Laelanie Art Gallery to sell fake gift cards! How dare you are using my business to sell fake gift cards or certificates! Laelanie Art Gallery does not accept gift cards,coupons or certificates.

 01/19/2022

They used my company name and a yelp review of our company to sell gift cards in our company name! We are not affiliated with nor do we accept their scam gift cards or gift certificates! I never authorized them to use my name or information.

 01/26/2022

Total scam. I am a business owner and they put up a profile for my business without my knowledge, collecting money for gift cards that I had no idea existed!

 02/20/2022

this is a scam. my business is listed here and we do not accept gift cards. they are collecting money and i have no part of it. this is a scam

48.     Businesses have also complained that GiftRocket does not remove their names. In fact, GiftRocket does not offer an easily accessible method of removing or

customizing a listing. GiftRocket.com doesn't mention removal as an explicit option, simply offering a support email if "you're having trouble" or you "have more questions."[2] Merchants are then forced to post publicly, sometimes repeatedly, in the hopes of attracting enough attention to pressure GiftRocket into taking down their listings, as illustrated by the following online complaint:[3]



49.    Worse, Defendant knows that it misleads consumers and upsets businesses, yet its FAQ for merchants shrugs away the potential harm, stating that customers "[p]robably" will spend money at the businesses:



C.    **GiftRocket Injures Plaintiffs**

50.    Plaintiffs did not agree to be listed on GiftRocket's website. GiftRocket never even informed Plaintiffs that they were listed.

51.    Plaintiffs fear that, like at other harmed businesses, customers will attempt to use GiftRocket "gift cards" to make purchases, forcing them to accept

---

[2] https://www.giftrocket.com/business-owners/faq

[3] https://www.trustpilot.com/review/GiftRocket.com?page=2

invalid payments or run the risk of upsetting customers and harming their reputations.

52.     In addition, as small businesses, Plaintiffs do not want to be associated with GiftRocket's reputation of misleading customers and not communicating with merchants.

53.     Further, Plaintiffs have worked hard to develop their brands and good names. They did not agree that GiftRocket could profit from their hard-earned reputations. Even worse, GiftRocket did not even tell Plaintiffs that they were listed on GiftRocket.com, risking harm to Plaintiffs' reputations without their knowledge.

54.     Plaintiffs have the right to control their reputation and brand, and to choose which businesses they want to partner or affiliate with. In addition, Plaintiffs have the right to control which services or promotions they offer to customers, including whether they will issue or accept gift cards.

55.     Plaintiffs also fear that they have lost consumer business because of GiftRocket's scheme. If someone wants to gift money for use at Plaintiffs' businesses, GiftRocket instead prompts the gift recipient to simply transfer the funds into its bank account, or worse, to redeem the gifted funds for a gift card to Amazon, Target, or American Eagle. Plaintiffs did not agree to the use of their name and information to sell gift cards for other businesses.

56.     Defendant's unauthorized use of Plaintiffs' names and information have also caused Plaintiffs irreparable harm inherent in the loss of control over their reputations.

57.     Defendant has acted in bad faith and has been unjustly enriched by the misappropriation and exploitation of the goodwill and business reputation of Plaintiffs and the class members.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in the United States that, without their agreement, were listed on Defendant GiftRocket, Inc.'s website, and/or such subclasses as the Court may deem appropriate.

59.     Plaintiff Gracie Baked also brings this action on behalf of itself and on behalf of the following proposed New York Subclass, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in New York who, without their agreement, were listed on Defendant GiftRocket, Inc.'s website, and/or such subclasses as the Court may deem appropriate.

60.     Plaintiff Café Olé also brings this action on behalf of itself and on behalf of the following proposed Pennsylvania Subclass, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in Pennsylvania who, without their agreement, were listed on Defendant GiftRocket, Inc.'s website, and/or such subclasses as the Court may deem appropriate.

61.     Excluded from the proposed Classes is Defendant, its parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendant has a controlling interest.

62. Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

63. The claims of all class members derive directly from a single course of conduct by the Defendant. Defendant has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendant does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

64. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

65. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

66. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

67. **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by

appropriate discovery, and it is believed each Class includes many tens of thousands of members.  The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendant's records.

68.    **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members.    The common legal and factual questions include, without limitation:

(a) whether Defendant obtained class members' permission before listing them on Defendant's website;

(b) whether Defendant otherwise engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices;

(c) whether Defendant profited as a result of its deceptive acts;

(d) whether Defendant violated the applicable statutes identified herein;

(e) whether reasonable consumers are likely to be misled by Defendant's conduct;

(f) whether Defendant had knowledge that its behavior was likely to deceive a reasonable consumer;

(g) whether Defendant violated the statutes alleged herein;

(h) whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(i) whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(j)  whether Plaintiffs and the Classes are entitled to civil penalties; and

(k)  whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

69.    **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)).  The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Defendant's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members.  Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

70.    **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)).  Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and they have retained counsel competent and experienced in complex class action, business competition, and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

71.    **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)).  A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members.  There is no special interest in class members individually controlling the prosecution of separate actions.  The damages suffered by individual class members, while significant, are small given the burden and

expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

72. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)    the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

(b)    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members

not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

   (c) Defendant have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

### Unfair Competition and False Affiliation in Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (On Behalf of Plaintiffs and All Classes)

73. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

74. Defendant's conduct as set forth herein significantly impacts interstate commerce and commerce within this district.

75. Section 43 of the Lanham Act provides liability as to

> Any person . . . who uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. . . .

76.     As described more fully herein, Defendant has engaged in conduct with regards to the promotion of its GiftRocket Business Directory that falsely affiliates Plaintiffs and class members with Defendant, causing potential customers to purchase GiftRocket Prepaid Gifts which cannot be used with Plaintiffs and class members.

77.     This conduct has caused, and is likely to cause, mistake and deception as to the affiliation, connection, or association of Plaintiffs and the other class members.

78.     Through this conduct, GiftRocket also misrepresents the nature and characteristics of its GiftRocket Business Directory.

79.     This course of conduct includes, but is not limited to, the following:

(a) confusing, or likely confusing, potential customers about the existence of any business affiliation between Plaintiffs and class members with GiftRocket, and the ability to directly purchase Plaintiffs' goods and services with GiftRocket Prepaid Gifts;

(b) misrepresenting that Plaintiffs and the class members have a consensual business partnership with GiftRocket and are part of its Business Directory;

(c) misrepresenting that customers may use GiftRocket Prepaid Gifts to directly purchase Plaintiffs and class member's goods and services;

(d) misrepresenting the scale of GiftRocket's Business Network to entice individuals to purchase GiftRocket Prepaid Gifts;

(e) failing to inform GiftRocket customers that Plaintiffs and the class members do not belong to the GiftRocket Business Directory;

(f) failing to inform GiftRocket customers that GiftRocket Prepaid Gifts cannot be used in place of other payment methods to pay for goods and services provided by Plaintiffs' and the class members' businesses;

(g) harming the reputations of Plaintiffs and the class members by falsely affiliating them with GiftRocket;

(h) harming the reputations of Plaintiffs and the class members by refusing to remove merchants from the GiftRocket Business Directory who have requested disaffiliation; and

(i) stealing potential customers from Plaintiffs and the class members by diverting them to purchase misleading GiftRocket Prepaid Gifts, rather than directly transact with Plaintiffs and the class members.

80. The false and misleading statements and omissions described herein are material because they are intended to have an impact on whether consumers become GiftRocket customers and on whether businesses choose to join the GiftRocket Business Directory.

81. The false and misleading statements and omissions described herein actually deceive or have the tendency to deceive potential customers of Plaintiffs and class members.

82.    Defendant's conduct, as described herein, constitutes a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

83.    As a direct and proximate result of Defendant's violations and false and misleading statements and omissions described herein, pursuant to 15 U.S.C. § 1117, Plaintiffs and the class members have been, or are likely to be, damaged.  Plaintiffs and the Classes are likewise entitled to recover from Defendant all profits, gains and advantages obtained stemming from this improper conduct.

84.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendant's conduct was knowing, characterized by malicious intent, and was explicitly designed to deceive the general public in order to reap profits unjustly at the expense of Plaintiffs and the Classes, entitling Plaintiffs to a statutory multiplier of actual damages, additional damages and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**False Advertising in Violation of Section 43 of the Lanham Act,**
**15 U.S.C. § 1125(a)**
**(On Behalf of Plaintiffs and All Classes)**

85.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

86.    Defendant's conduct as set forth herein significantly impacts interstate commerce and commerce within this District.

87.    As described more fully herein, Defendant has engaged in a course of conduct with respect to the advertising of its GiftRocket Business Directory that contains false and/or misleading statements of fact, or omissions of essential facts,

including those about Plaintiffs and class members, which did not consent to partner with GiftRocket.

88.    These false and/or misleading statements, or omissions of material facts, include, but are not limited to, the following:

(a)    confusing, or likely confusing, potential customers of Plaintiffs and the class members as to Plaintiffs and the class members' affiliation with GiftRocket and the ability to use GiftRocket Prepaid Gifts in place of traditional payment methods;

(b)    misrepresenting that Plaintiffs and the class members have partnered with GiftRocket and are part of GiftRocket's Business Network;

(c)    misrepresenting that the goods and services offered by Plaintiffs and the class members may be paid for directly with GiftRocket Prepaid Gifts;

(d)    misrepresenting the scale of the GiftRocket Business Directory to entice individuals to purchase various GiftRocket Prepaid Gifts;

(e)    failing to inform GiftRocket customers that Plaintiffs and the class members are in no way affiliated with the GiftRocket Business Directory;

(f)    failing to inform GiftRocket customers that GiftRocket Prepaid Gifts cannot be used to pay for services rendered at Plaintiffs' and the class members' businesses;

(g)    misrepresenting the scale of the GiftRocket Partner Network to convince businesses or entities to partner with GiftRocket;

(h)    harming the reputations of Plaintiffs and the class members by falsely affiliating them with GiftRocket;

(i)    harming the reputations of Plaintiffs and the class members by refusing to remove merchants from the GiftRocket Business Network who have requested disaffiliation; and

(j)    stealing potential customers from Plaintiffs and the class members by diverting them to purchase misleading GiftRocket Prepaid Gifts or receive actual gift cards to other companies, rather than directly transact with Plaintiffs and the class members.

89.    The false and misleading statements and omissions described herein are material, are intended to have an impact on whether consumers purchase GiftRocket Prepaid Gifts.

90.    The false and misleading statements and omissions described herein actually deceive or have the tendency to deceive customers of Plaintiffs and the class members.

91.    Defendant's conduct as described herein constitutes a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

92.    As a direct and proximate result of Defendant's violation and false and misleading statements and omissions described herein, pursuant to 15 U.S.C. § 1117, Plaintiffs and the Classes have or are likely to be damaged.  Plaintiffs and the Classes are likewise entitled to recover from Defendant all profits, gains and advantages obtained during execution of this improper conduct.

93.     Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendant's conduct was knowing, characterized by malicious intent, and was explicitly designed to deceive the general public in order to unjustly reap profits at the expense of Plaintiffs and the Classes, entitling Plaintiffs to a statutory multiplier of actual damages, additional damages and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

### Violations of the New York Deceptive and Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349 (On Behalf of Plaintiff Gracie Baked and the New York Subclass)

94.     Plaintiff Gracie Baked incorporates by reference all allegations in this Complaint and restate them as if fully set forth herein.

95.     Plaintiff Gracie Baked was founded and is headquartered in New York, New York.

96.     At all relevant times, Gracie Baked and the New York Subclass maintained principal places of business within New York, have been engaged in trade or commerce from within the State of New York, or are businesses organized under the laws of New York.

97.     NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

98.     NY GBL § 349 applies to Gracie Baked and the New York Subclass because the State of New York has an interest in regulating business conduct among merchants and customers in the region.

99.     Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Defendant willfully or knowingly violated this section.  The court may award reasonable attorneys' fees to a prevailing plaintiff.

100.    The practices employed by Defendant, by which it advertises and promotes the GiftRocket Business Network, were directed at the expense of Gracie Baked and the class members located in New York, violating GBL § 349.

101.    Gracie Baked and the New York Subclass have been injured by Defendant's deceptive acts or practices.

102.    Gracie Baked and the New York Subclass have no adequate remedy at law.

103.    Defendant's conduct has caused and is causing immediate and irreparable injury to Gracie Baked and the New York Subclass and will continue to damage both Gracie Baked and the New York Subclass and deceive the public unless enjoined by this Court.

## <u>FOURTH CAUSE OF ACTION</u>

**False Advertising in Violation of N.Y. Gen. Bus. Law § 350**
**(On Behalf of Plaintiff Gracie Baked and the New York Subclass)**

104.    Plaintiff Gracie Baked incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

105.    Gracie Baked was founded and is headquartered in New York, New York.

106.    At all relevant times, Gracie Baked and members of the New York Subclass maintained principal places of business within New York and have been engaged in trade or commerce from within the State of New York, or are businesses organized under the laws of New York.

107.    By reason of the acts set forth above, Defendant has been and is engaged in consumer-oriented advertising and marketing against Gracie Baked and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

108.    Defendant caused to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications, statements that were untrue or misleading, and which it knew to be untrue or misleading.

109.    Defendant's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large.  Consumers were and continue to be exposed to Defendant's material misrepresentations.

110.   Gracie Baked and the New York Subclass have been injured by Defendant's deceptive acts or practices.

111.   Gracie Baked and the class members have no adequate remedy at law.

112.   Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiff and the New York Subclass and will continue to damage both Plaintiff and the New York Subclass and deceive the public unless enjoined by this Court.

113.   Pursuant to NY GBL § 350-e, Gracie Baked and the New York Subclass seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### FIFTH CAUSE OF ACTION

**Common Law Unfair Competition**
**(On Behalf of Plaintiffs and All Classes)**

114.   Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

115.   As described herein, Defendant has engaged in a course of conduct with respect to the advertising of its GiftRocket Business Network that unfairly and falsely affiliates Plaintiffs and class members with Defendant, diverting potential customers into purchasing GiftRocket Prepaid Gifts instead of directly purchasing services from Plaintiffs and the class members.

116.    By misappropriating and exploiting the goodwill and business reputation of Plaintiffs and the class members, Defendant has acted in bad faith and has been unjustly enriched, and will continue to do so, unless enjoined by this Court.

117.    Defendant's wrongful conduct constitutes unfair competition under common law.  Plaintiffs and the Classes have no adequate remedy at law.

118.    Defendant's conduct has caused and is causing immediate and irreparable injury to Plaintiffs and the Classes and will continue to damage them and deceive the public unless enjoined by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, prays for relief and judgment against Defendant as follows:

A.    certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.    awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.    awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.    awarding Plaintiffs and the Classes punitive damages;

E.    awarding Plaintiffs and the Classes civil penalties;

F.    granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.     enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

H.     awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.     awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.     awarding pre-judgment and post-judgment interest; and

K.     granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 8, 2022

By:   */s/ Raphael Janove*
Raphael Janove
Adam Pollock
Alison Borochoff-Porte
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, New York 10006
(212) 337-5361
Rafi@PollockCohen.com
Adam@PollockCohen.com
Alison@PollockCohen.com

*Attorneys for Plaintiffs and the Proposed Classes*