**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, and BENJAMIN KUBIC,<br><br>Defendants. | **FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL<br><br>Case No. 22-CV-4019 (RPK) (VMS) |

Plaintiffs Gracie Baked LLC ("Gracie Baked"), WeCare RG, Inc., d/b/a Café Ole In The Valley ("Café Olé"), and Millercobb LLC d/b/a Dimensions Massage Therapy ("Dimensions Massage"), on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Defendants GiftRocket, Inc. and Tremendous, Inc. (collectively, "GiftRocket"); its founders Nicholas Baum, Kapil Kale, and Jonathan Pines; and corporate officer and Vice President for Business Operations, Benjamin Kubic (the "Individual Defendants," and together with GiftRocket, "Defendants"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

# TABLE OF CONTENTS

NATURE OF THE ACTION ............................................................................... 1

THE PARTIES .................................................................................................. 7

JURISDICTION AND VENUE ......................................................................... 14

FACTUAL ALLEGATIONS .............................................................................. 15

    A.    GiftRocket profits from businesses and tricks customers with its deceptive "gift card" sales .......................................................... 15

        1.    Bait and switch tactics in search results ......................... 16

        2.    Browsing businesses on GiftRocket's website ................ 18

        3.    Searching for businesses at the point of purchase ......... 20

        4.    Representations made to the recipient ............................ 21

    B.    GiftRocket knows it confuses consumers and harms businesses ................................................................................................. 25

        1.    Online consumer complaints ........................................... 28

        2.    Online business complaints ............................................. 33

        3.    Gift card scams affect and injure the public writ large .. 37

    C.    GiftRocket injures Plaintiffs and small businesses ................... 46

        1.    The unauthorized misappropriation of Plaintiffs' reputation and goodwill has caused irreparable harm ... 46

        2.    GiftRocket's scheme has injured and is likely to injure Plaintiffs .......................................................................... 48

CLASS ACTION ALLEGATIONS .................................................................... 52

FIRST CAUSE OF ACTION ............................................................................ 57

SECOND CAUSE OF ACTION ....................................................................... 61

THIRD CAUSE OF ACTION ........................................................................... 64

FOURTH CAUSE OF ACTION ....................................................................... 65

FIFTH CAUSE OF ACTION ............................................................................ 67

PRAYER FOR RELIEF .................................................................................... 68

## NATURE OF THE ACTION

1.      This is an action brought on behalf of nationwide, New York, Pennsylvania, and Texas classes of small businesses to seek redress for Defendants' systematic violations of federal and state unfair competition and deceptive practices laws.

2.      Small businesses like Plaintiffs and putative class members do not exist to line the pockets of tech aggregators. Small businesses work hard to develop their own name, reputation, brand, and goodwill. They have created value, and tech companies are not free to prey on small businesses and profit from their labors..

3.      Yet, that is exactly what Defendants have done—willfully and intentionally in bad faith selling fake gift cards in the names of businesses who have not consented to do business or be affiliated with Defendants. They misappropriate others' reputations and goodwill for their own profit.

4.      Defendants operate their GiftRocket scheme in an industry already rife with consumer exploitation—so much so that the United States Federal Trade Commission provides established guidance to consumers regarding gift card scams.[1]

5.      Specifically, Defendants operate a website, GiftRocket.com, that ostensibly sells gift cards to *any* business listed on Yelp in the United States.

---

[1] *See Gift Card Scams*, Fed. Trade Comm'n, https://consumer.ftc.gov/articles/gift-card-scams (last accessed Mar. 10, 2023); *see also What Shoppers Need to Know About Gift Cards*, Fed. Trade Comm'n, https://www.ftc.gov/news-events/topics/truth-advertising/gift-cards (last accessed Mar. 10, 2023).

6.     GiftRocket lists millions of businesses on its website, GiftRocket.com, without notifying these businesses or obtaining their consent—and misleadingly markets itself as selling gift cards to those businesses.

7.     This false affiliation, in combination with misleading statements that suggest GiftRocket is in fact selling gift cards to those businesses, results in immense consumer confusion and the unauthorized misappropriation and use of the businesses' names, reputations, and goodwill.

8.     In reality, consumers of GiftRocket's products are *not* purchasing gift cards to those listed businesses. Rather, they are in most instances purchasing an expensive way to transfer money to someone's bank account. But with insufficient disclaimers, consumers often do not realize what product they are actually purchasing.

9.     Online complaints about GiftRocket abound and demonstrate the breadth of consumer confusion caused by GiftRocket—confusion which continues to this day. For instance, on January 29, 2023, a local police department issued a public warning about GiftRocket because "none of the [area] businesses listed on the website ***are associated*** with GiftRocket.com and will not accept a gift card purchased through them:"[2]

---

[2] *See* Newport Dispatch, *Woodstock police warn citizens about fraudulent gift card scam*, https://newportdispatch.com/2023/01/29/woodstock-police-warn-citizens-about-fraudulent-gift-card-scam/ (emphasis added) (last accessed Mar. 2, 2023).



WOODSTOCK — Police are warning citizens about a fraudulent gift card scam that has been reported in Woodstock.

The scam is associated with a website called GiftRocket.com.

The website purports to sell gift cards for Woodstock area businesses, however, none of the Woodstock businesses listed on the website are associated with GiftRocket.com and will not accept a gift card purchased through them.

10.    And until recently, GiftRocket had a "D-" rating from the Better Business Bureau:



11.    Only after the filing of this action did GiftRocket start publicly responding to negative public consumer reviews and complaints. The Better Business Bureau still has an active alert for GiftRocket, to notify consumers to a "pattern of complaints:"

⚠ **CURRENT ALERTS FOR THIS BUSINESS**

**Pattern of Complaint:**
GiftRocket came to BBB's attention in July 2011. A review of complaints was completed in October 2022. Based on BBB files this company has a pattern of complaints. Complaints on file state that consumers receive no response from the company when reaching out to resolve issues and are unable to redeem their giftcards.
BBB has reached out to GiftRocket to address the above issues.
to date the business has not responded to BBB's request.

12.     In essence, GiftRocket capitalizes on the established existence, goodwill, and customer bases of these businesses to sell what is an expensive money transfer service dressed up to send "gift cards." By falsely affiliating these businesses with GiftRocket, strategically using the term "gift card," and encouraging customers to "suggest" money be used at a particular business, GiftRocket misleadingly creates the impression that it is selling gift cards to a specific business.

13.     However, the gift recipient does not receive an actual gift card that can be used at the business it is intended for. Instead, the recipient gets an electronic greeting card, called a "GiftRocket Prepaid Gift," that "suggests" they use the gifted amount at a particular business but then instructs them to choose to (a) have the funds deposited in a bank account, or (b) select an actual gift card to use at a *different* business.

14.     Consumers, however, believe that they can use GiftRocket "gift cards" at real businesses. As a result, confused consumers regularly show up at businesses, only to discover that businesses do not accept GiftRocket's product.

15.     To illustrate, GiftRocket's website offers consumers the option to purchase a "GiftRocket" for Plaintiff Dimensions Massage, while numerous places in Google search results and on the GiftRocket website use the term "gift card."

16.     While disclaimers exist, they are deeply insufficient and confusing. In one place on the website it states that the sender of a GiftRocket can "suggest" where the recipient send the money, but "suggest" is an ambiguous term, the meaning of which is not obvious.

17.     Plaintiffs have no affiliation with GiftRocket and never agreed to be listed on GiftRocket's website or allowed GiftRocket to sell gift cards in their names.

18.     Instead, upon receipt, the GiftRocket "suggests" that the recipient visit, for example Dimensions Massage, and then instructs the recipient on how to receive the funds in a bank account or to get a real gift card to use, but at a different business—Amazon, Target, or American Eagle.

19.     In other words, instead of an actual gift card that can be used at the business it was intended for, the gift recipient merely receives money. Moreover, GiftRocket charges expensive processing fees for this service, such as $7 for a $100 gift. These fees are far more expensive than simply using PayPal or other money transfer services.

20.     Countless consumers are misled and confused about exactly what to do with these "GiftRocket Prepaid Gifts." They often try to use the gift cards at the businesses the cards were intended for. And businesses, which have no idea they have been drafted into GiftRocket's scheme, are left with infringement and appropriation of their name and brand, negative experiences, and harm to their reputations when customers falsely affiliate the businesses with GiftRocket or blame the businesses for not accepting unauthorized GiftRocket "gift cards."

21.     Consumers who purchase GiftRocket Prepaid Gifts are upset to discover that they did not actually purchase a "gift card," but instead paid GiftRocket significant sums just to transfer money. Gift recipients then become upset when they show up at businesses that do not accept the GiftRocket "gift card:"

22.     As one consumer related:

> This site is a scam. I was looking for a gift card for a specific restaurant for my son's birthday. This site popped up as one who would provide that gift. It allowed me to print a card that indicated it was a gift for the restaurant I had chosen. However, when it came to redeeming the card that restaurant was not available and my son's only option was to have to money transferred into his bank account or pick another gift card. I could have easily given him the $50 cash but I wanted the gift for that restaurant.
>
> Your site should specify what gift cards are available instead of acting like they can provide what you want only to dissapoint in the end.

23.     Businesses are upset to discover that GiftRocket is not only profiting from their names and goodwill but is also leaving them with the responsibility of explaining to customers why they do not accept GiftRocket cards for payment.

24.     As one business related:

> I own a restaurant and never sell our giftcard or certificate on any website. Giftrocket didn't contact or sign any endorsement With us but still charge customers. This is unacceptable! Not only left customers with confusion and awkwardness And make the merchant really hard to explain.

25.     Indeed, despite the filing of the initial lawsuit, GiftRocket has continued to mislead consumers with fake gift cards, as illustrated by a recent complaint:



Julie R

⭐☆☆☆☆                                                    02/23/2023

I would give this site a zero if I could!! I gave a gift card to ****** restaurant in Door Count, WI as a gift and my friend went to use it yesterday and was told it was a fraud, a scam!!! WTH!!! I now have a dispute going with my bank.

26.     Because GiftRocket profits from the unauthorized use of Plaintiffs' and the putative class members' trade names and good will, Plaintiffs bring suit under section 43 of the Lanham Act for false affiliation and false advertising, sections 349 and 350 of New York General Business Law ("GBL"), and the common law of unfair competition.

27.     Plaintiffs seek damages and equitable relief, including disgorgement of Defendants' profits, on behalf of themselves and all others similarly situated.

### THE PARTIES

28.     Plaintiff Gracie Baked LLC is a New York limited liability corporation located in Brooklyn, New York. Gracie Baked is a Brooklyn-based bakeshop that sells unique, specialty baked goods such as custom cakes. It has been covered in the Gothamist, City Guide NY, Eater, and other publications. Gracie Baked prominently features its name and brand online, including on its website, Yelp, and its social media accounts, including on Instagram.[3]

29.     The founder of Gracie Baked previously worked at Momofuku Milk Bar and started a late-night treats delivery service called S'more to Door. The founder

---

[3] *See* https://www.instagram.com/graciebaked/?hl=en (last accessed Mar. 10, 2023).

also led baking therapy classes at an eating disorder treatment center and at The Door, a non-profit that assists at-risk youth and the homeless. Gracie Baked hires paid interns from The Door to help empower young people to reach their full potential. Gracie Baked has participated in community fundraising initiatives by offering its products as the prize in raffles for local schools. As of the filing of this lawsuit, Gracie Baked was listed on Defendant GiftRocket's website without consent.

30.     Plaintiff WeCare RG, Inc., d/b/a Café Ole In The Valley ("Café Ole") is a Pennsylvania corporation located in Huntingdon Valley, Pennsylvania. Café Ole is a family-oriented, neighborhood coffee shop that serves snacks and Mediterranean fare. It is also renowned for its shakshuka dish, which is a staple of middle eastern cuisine and is based on a secret family recipe hailing from Tunisia. Café Ole has been family-run for three generations and featured on the local news. Café Ole prominently features its name and brand online, including on its website, Yelp, and its social media account on Facebook.[4] As of the filing of this lawsuit, Café Ole was listed on Defendant GiftRocket's website without consent.

31.     Plaintiff Millercobb LLC d/b/a Dimensions Massage Therapy ("Dimensions Massage") is a Texas corporation located in Austin, Texas. Dimensions Massage is a high-end massage spa that provides customers with a wide range of massage and therapeutic offerings, either as one-off experiences or as part of package deals, which can cost up to $750. Dimensions Massage specializes in services such as prenatal, deep tissue, and sports massage. Dimensions Massage boasts a 5-star

---

[4] *See* https://www.facebook.com/cafeolehv/ (last accessed Mar. 10, 2023).

rating on both Google and Yelp. Dimensions Massage prominently features its name and brand online, including on its website, Yelp, and its social media accounts on Instagram and Facebook.[5]

32.      As of the filing of this First Amended Complaint, Dimensions Massage is still listed on GiftRocket's website, and someone searching online for a gift card will find search results created by Defendants that falsely state "Buy a Dimensions Massage Therapy Gift Card" and with a banner headline prominently stating "Dimensions Massage Therapy Gift Cards and Gift Certificates," which does not take a user to Dimensions Massage's website, but instead to Giftrocket.com.

33.      Multiple customers have attempted to book services at Dimensions Massage with "gift cards" purchased from GiftRocket, including one customer in December 2022 who attempted to book a 60-minute massage with a GiftRocket "gift card." A 60-minute massage costs $100 at Dimensions Massage.

34.      All Plaintiffs work extremely hard to uphold and maintain their reputations for quality service and products, and take their relationships with customers very seriously.

35.      Defendant GiftRocket, Inc. ("GiftRocket") is incorporated in Arizona and maintains its principal place of business at 1592 Union Street, Suite 502, San Francisco, California. GiftRocket is a Silicon Valley-based technology company whose principal business is the selling of GiftRocket Prepaid Gifts.

---

[5] *See* https://www.instagram.com/dimensionsmt/?hl=en (last accessed Mar. 10, 2023); https://www.facebook.com/DIMENSIONSMT/ (last accessed Mar. 10, 2023).

36.     On November 18, 2014, GiftRocket registered to do business in California as a foreign corporation. Defendant Kapil Kale designated himself as the agent for service of process for GiftRocket, and signed the California registration statement with the title of "President" of the company.

37.     On July 7, 2021, GiftRocket surrendered its rights and authority to transact intrastate business in the State of California.

38.     On or about October 2022, GiftRocket began submitting corporate filings under the name of Tremendous, Inc.

39.     Defendant Tremendous, Inc. is incorporated in Arizona and publicly represents itself as headquartered in New York, New York on its LinkedIn page.

40.     Defendant Nicholas Baum helped found GiftRocket in 2010 and is its President and Chief Executive Officer, Secretary, Treasurer, and Director of the Company. He is a resident of New York, New York and transacts substantial business in New York. At all relevant times, Defendant Baum was the moving, active, conscious force behind the unlawful actions of GiftRocket, as alleged herein, and as an officer of the company approved of the infringing act and directly participated in the infringing activity. According to GiftRocket's initial disclosures in this case, "Mr. Baum is likely to have information regarding the facts and circumstances relevant to this action, including but not limited to the claims asserted by Plaintiffs in this action, as well as (a) the sales of GiftRocket, (b) the design of the GiftRocket website and (c) the functioning of its service." According to Defendants' Tremendous.com website, Defendant Baum "is responsible for the overall direction of the company."

41.     Defendant Kapil Kale helped found GiftRocket in 2010 and is a Director of the company and its Chief Operating Officer. He is a resident of Brooklyn, New York, and transacts substantial business in New York. At all relevant times, Defendant Kale was the moving, active, conscious force behind the unlawful actions of GiftRocket, as alleged herein, and as an officer of the company approved of the infringing act and directly participated in the infringing activity. According to Defendants' Tremendous.com website, Defendant Kale "runs our product and engineering team."

42.     Defendant Jonathan Pines joined GiftRocket as a co-founder in 2011 and is a current Director of GiftRocket. Defendant Pines transacts substantial business in New York and was the moving, active, conscious force behind the unlawful actions of GiftRocket, as alleged herein, and as an officer of the company and board member approved of the infringing act and directly participated in the infringing activity. When GiftRocket domesticated as an Arizona corporation in December 2019, Jonathan Pines signed the articles of incorporation as an additional incorporator of GiftRocket.

43.     As co-founders, Defendants Baum, Kale, and Pines were responsible for, and directly participated in designing the basic function of GiftRocket, which as described below, falsely affiliates businesses and confuses consumers into believing the money spent on GiftRocket.com is an actual gift card for use at a business. Images

of them during the era of GiftRocket's creation are shown on the Tremendous'
company history page.[6]





44.    In short, Defendants Baum, Kale, and Pines—GiftRocket's only three
directors—together were direct participants in, and responsible for, creating a
business model based on misappropriating the labors of the entrepreneurs behind
small businesses across the country, while deceiving customers online.

---

[6] *See Tremendous company history*, Tremendous,
https://www.tremendous.com/company-history (last accessed Mar. 10, 2023).

45.    The scheme they put into motion continues to mislead consumers and harm businesses to this day.

46.    Defendant Benjamin Kubic is a corporate officer and Vice President for Business Operations at GiftRocket, where he has worked since June 2021. At all relevant times since joining GiftRocket, Defendant Kubic has transacted substantial business in New York and was the moving, active, conscious force behind the unlawful actions of GiftRocket, as alleged herein, and as an officer of the company, approved of the infringing act and directly participated in the infringing activity. Defendant Benjamin Kubic signed GiftRocket's certificate of surrender submitted to the California secretary of state, in the capacity as a "corporate officer [of GiftRocket] and [who is] authorized to sign on behalf of the foreign corporation." According to his LinkedIn Page, Kubic "lead[s] [GiftRocket's] operations and finance teams."

47.    GiftRocket is not a large company with many employees and many different lines of operations. According to LinkedIn, GiftRocket, Inc. has no more than 10 employees and Tremendous, Inc., has some 87 employees. And up until 2018, Defendants' only activity was selling misleading "gift cards" in the names of unaffiliated businesses, and as Defendants describe, "GiftRocket keeps running, still in auto-pilot mode" to this day. Starting in 2018, under the name Tremendous, Defendants also began selling real gift cards directly to businesses ("In 2018 we launched Tremendous, the B2B sibling of GiftRocket.").

48.    It is implausible that the key founders, directors, and employees of such a small company would not have knowledge, control, or direct participation of what

was the core function of GiftRocket until 2018—and one of only two business lines of the company after that year—deliberately and in bad-faith falsely affiliating Plaintiffs and the class members with the company.

## JURISDICTION AND VENUE

49.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Defendant.

50.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1332(a)(1).

51.     This Court has personal jurisdiction over Defendants GiftRocket, Inc. and Tremendous, Inc. because they committed the tortious acts alleged herein in New York, regularly conduct business in this District, and have extensive contacts with this forum. In addition, Tremendous, Inc. holds itself out online as being headquartered in New York City, and two of its three directors are New York residents.

52.     This Court has personal jurisdiction over Defendants Baum and Kale because they are residents of New York. In addition, Defendant Kubic founded and was the CEO of a business in the Greater New York City area for over 5 and half years, up until June 2020.

53.     The Court also has personal jurisdiction over all the Individual Defendants because they have regularly conducted business in this Judicial District

during a relevant time period, have or have had extensive contacts with this forum, and committed the tortious acts alleged herein in New York.

54. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Defendants transacts substantial business in this District.

55. This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

### A. GiftRocket profits from businesses and tricks customers with its deceptive "gift card" sales

56. GiftRocket was founded in San Francisco—where it is headquartered—in 2010 by Nicolas Baum and Kapil Kale, with Jonathan Pines joining as a founder in 2011. The company's website (GiftRocket.com) sells "gift cards" of up to $1,000.

57. GiftRocket falsely affiliates itself with millions of businesses across the country, almost none of whom have consented to be listed or featured on GiftRocket's website. GiftRocket effectively trades on the goodwill and information of these businesses, including Plaintiffs and the proposed class members. Their deceptive business model relies on their ability to encourage consumers to "suggest" that a GiftRocket purchase can be used at a particular business.

58. On its website, GiftRocket offers a directory of merchants that spans cities and categories of business, such as Restaurant, Night Life, and Spa (the "GiftRocket Business Directory"). GiftRocket creates landing pages for every business that has at least one review on Yelp.com.

59.     More concretely, GiftRocket's business works as follows: GiftRocket operates a digital platform that ostensibly sells gift cards to any business with a Yelp profile and review in the United States. GiftRocket trades on Plaintiffs' and the class members' goodwill and reputations in at least four distinct ways. First, GiftRocket uses online search results so that people who are searching for real gift cards are misdirected to its website. Second, GiftRocket lists businesses as part of its browsing feature. Third, it prompts customers to seek out specific businesses at the point of purchase. And fourth, it prompts recipients to "open" their gift to a specific business.

### 1.     Bait and switch tactics in search results

60.     Defendants' current Google advertising and search result strategy still explicitly uses the term "gift card." This bait and switch tactic misdirects consumers who are searching for real gift cards to a particular business to the GiftRocket website.

61.     One only need Google the name of a business that does not offer gift cards, along with term "gift card." An offer to purchase a "gift card" from that business will show up in Google's search results.

62.     For example, when counsel for Plaintiffs searched for a "gift card" to Dimensions Massage, one of the first search results that populates is a link indicating that one can be purchase from GiftRocket: "Buy a Dimensions Massage Therapy Gift Card – GiftRocket:"



63.    The search result repeatedly states that GiftRocket is offering gift cards

for sale to actual businesses. Defendants know this is false. It is impossible to "[b]uy

a gift card" to any business on GiftRocket.com, let alone for the business someone is

searching for.

64.    And when one clicks on the link, they arrive at the following page:



65.    Once  directed  to  GiftRocket's  actual  website,  the  truth  about

GiftRocket's  product—that  it  is  not  an  actual  gift  card  to  any  business—is

intentionally obscured, as described next.

### 2. Browsing businesses on GiftRocket's website

66.    Before deciding whether to make a purchase, consumers who visit the GiftRocket home page are given the option to "Browse" businesses by category or location:



67.    Selecting a location and/or a business type leads consumers to a menu of listed businesses. For instance, searching for restaurants in San Francisco would yield approximately 50 pages of results, with each page displaying up to 20 businesses that the consumer did not specifically seek out:



68.     On these pages, the website again indicates that a consumer would be purchasing a gift "for" a particular business, e.g., a restaurant:



### 3.      Searching for businesses at the point of purchase

69.    Once customers decide to make a purchase, they input the amount of money they would like to send a recipient at the purchasing webpage. Here, they have the opportunity to "suggest" a "specific business" where the money can be used:



70.    When a customer clicks to "suggest," they are prompted to search for a business:






71.     Upon searching, the display populates with a business's name, address, Yelp rating, and photo. These displays are scraped from Yelp, and are seemingly limitless. Once a customer clicks on that particular business and proceeds to the checkout page, all appearances suggest that the customer is purchasing a product *for* that particular location by indicating "where" the order is for:



### 4.     Representations made to the recipient

72.     After a GiftRocket recipient selects "Open Gift," they are guided to use the GiftRocket at the selected business, and are prompted with an image featuring the profile, name, and address of that business:



73.     The recipient in most cases will receive what is termed a "GiftRocket Prepaid Gift," which "suggests" that they use the gifted amount at a particular business but then instructs them to choose to (a) merely receive money and have the funds deposited in a bank account, or (b) select an actual gift card to use at a *different* business, e.g., Amazon, Target, or American Eagle.




* * *







74.    Defendant GiftRocket thus operates a website that gives the appearance

of selling gift cards to nearly any business in the United States. The entire process

deliberately misleads consumers into believing that businesses like Plaintiffs are affiliated with GiftRocket and will accept GiftRocket "Prepaid Gifts." This misrepresents the nature of GiftRocket's relationship with the businesses it relies upon for its own business. As described further below, this model leads to acute consumer confusion and, in turn, collateral harm to businesses.

75.     GiftRocket profits from its bad-faith deceptive practice in large part by charging purchasing fees from each GiftRocket Prepaid Gift sale. Every sale incurs a flat $2 fee, as well as an additional fee of 5% of the gift amount. Thus, to send $100 to someone, a consumer would be charged $7.

76.     These fees are exorbitantly higher than normal cash transfer fees. Services such as PayPal or Venmo charge little or nothing for personal domestic transactions, which are similar to GiftRocket's Prepaid Gift.

77.     In contrast, a simple domestic money transfer via PayPal for someone who does not have a linked bank account would involve a flat 30 cents fee, plus 2.9 percent.[7] There is no fee for someone to send money who has a linked bank account or a PayPal balance, as is there no fee to send money through Venmo from a linked bank account, debit card, or Venmo balance.[8]

---

[7] *See Fixed fee for personal transactions (based on currency received)*, PayPal, https://www.paypal.com/us/webapps/mpp/paypal-fees#personal-fixed-fee (last visited Jan. 19, 2023); *PayPal Consumer Fees*, PayPal, https://www.paypal.com/us/webapps/mpp/paypal-fees (last visited Jan. 19, 2023).

[8] *See* Ben Gran, *Venmo Vs. PayPal: Which To Use And When*, Forbes Advisor (last updated Oct. 20, 2022), https://www.forbes.com/advisor/money-transfer/venmo-vs-paypal/.

78.     In short, GiftRocket does not sell gift cards. Instead, it conceals the truth of the transaction—that what people buy cannot be used in any form at an actual business and all that was purchased was just a very expensive way to transfer money from one individual to the other.

79.     In addition, GiftRocket profits from what is called "breakage." Gift cards and other merchant credits are often lost or otherwise unused. Whereas in certain states, businesses that actually authorize gift cards get to retain, as revenue, the unused gift card balances, here, when a recipient does not agree to provide its bank account details or elect a mainstream gift card—or when a recipient does not otherwise use or understand how to use the product—GiftRocket captures the unaccessed revenue from its Prepaid Gifts for itself.[9]

80.     Listing businesses and appearing to provide gift cards to them without the consent of the businesses uses the goodwill and reputations of businesses for GiftRocket's own gain.

**B.      GiftRocket knows it confuses consumers and harms businesses**

81.     Despite some language on GiftRocket.com informing customers that GiftRocket is only selling "suggestions" and not actual gift cards, consumers and recipients are repeatedly misled by Defendants' practices, believing they can use GiftRocket "Prepaid Gifts" at real businesses as gift cards.

---

[9] *Business Owners: FAQ*, GiftRocket, https://www.giftrocket.com/business-owners/faq (last accessed Mar. 10, 2023).

82.     This deception translates to recipients showing up to businesses with GiftRocket's "gift cards," only to discover that businesses do not accept these cards and often do not even know what GiftRocket is. Businesses, which rarely have any idea they have been drafted into GiftRocket's scheme, often do not find out until it is too late—they are left with negative experiences and harm to their reputations when customers blame the businesses for not accepting unauthorized GiftRocket "gift cards."

83.     Plaintiff Dimensions Massage Therapy, for example, has had multiple individuals attempt to use a GiftRocket "gift card" at its business, leaving the owner in the unfortunate position of having to inform them that his business is not affiliated with GiftRocket, and has not granted GiftRocket permission to resell or use Dimensions Massage's name.

84.     Fundamentally, GiftRocket's conduct harms these businesses by causing them loss of control over—and the uncompensated use of—their hard-earned reputations and goodwill.

85.     Businesses are upset that GiftRocket's deception of consumers comes at their expense. Customers have shown up at businesses demanding they honor GiftRocket's cards. Businesses have to deal with upset customers and even lose money, giving out services to avoid harm to their reputations.

86.     In turn, consumers who purchase GiftRocket "Prepaid Gifts" are often upset to discover that they did not actually purchase a "gift card," but instead paid GiftRocket significant sums just to transfer money. Businesses are upset to discover

that another business is trading on their names and reputations without permission. They are left to deal with the misled consumers on their own.

87.     Online complaints abound, indicating the scope of the problem, as well as Defendants' knowledge of the same. The sheer number of times the word "scam" is used in online reviews is unambiguous and revealing. Given this reality, it is perhaps unsurprising that GiftRocket until recently had a "D-" rating from the Better Business Bureau:[10]



88.     Only after the filing of this action did GiftRocket begin addressing consumer complaints so as to increase its rating. Complaints went years without being addressed.

89.     As of the date of filing this First Amended Complaint, the Better Business Bureau still has an active alert for GiftRocket, to notify consumers to a "pattern of complaints" against GiftRocket, highlighting that complaints from consumers are left unaddressed, including those where the consumer was unable to redeem their purchase, and noting that GiftRocket has failed to respond to the Better Business Bureau's request:

---

[10] *See Business Profile GiftRocket*, Better Bus. Bureau, https://www.bbb.org/us/ca/san-francisco/profile/gift-cards/ giftrocket-1116-378612 (last visited Mar. 7, 2023).

> **⚠ CURRENT ALERTS FOR THIS BUSINESS**
>
> **Pattern of Complaint:**
> GiftRocket came to BBB's attention in July 2011. A review of complaints was completed in October 2022. Based on BBB files this company has a pattern of complaints. Complaints on file state that consumers receive no response from the company when reaching out to resolve issues and are unable to redeem their giftcards.
> BBB has reached out to GiftRocket to address the above issues.
> to date the business has not responded to BBB's request.

90.     This pattern of complaints against GiftRocket has also given rise to a warning about a "fraudulent gift card scam" from law enforcement in Vermont, cautioning citizens "to do their due diligence when purchasing anything online from this company."[11]

91.     A litany of online complaints from both consumers and businesses demonstrates the breadth of confusion and distress caused by GiftRocket's conduct.

### 1.     Online consumer complaints

92.     Online complaints from consumers (both gift-givers and recipients) take numerous forms, using descriptors such as "scam," "misleading," and "deceiving." Below is a selection from websites that host reviews, such as the Better Business Bureau and Trustpilot.

93.     Many of the reviews criticize the false and misleading "gift card" advertising engaged in by GiftRocket, such as the following Trustpilot reviews, including one from March 3, 2023, just a week before the filing of this Amended Complaint:[12]

---

[11] *See* Newport Dispatch, *Woodstock police warn citizens about fraudulent gift card scam*, https://newportdispatch.com/2023/01/29/woodstock-police-warn-citizens-about-fraudulent-gift-card-scam/ (last accessed Mar. 2, 2023).

[12] *See GiftRocket*, Trustpilot, https://www.trustpilot.com/review/www.giftrocket.com?sort=recency (last accessed Mar. 10, 2023).

 5 days ago

**Gift Rocket is a SCAM**

Gift Rocket is a SCAM! We bought a gift card to a specific restaurant and the gift card can not be used at that restaurant. The email states we need to go online and that it can not be used for a store credit. Once online the restaurant we purchased to use it at is not even a business listed. Then the site asks for personal banking information to get your money back.

**Date of experience:** March 03, 2023

 May 8, 2022

**Very deceiving**

Very deceiving. They make you think you can select a gift card at a particular place and then you find out that it is not the case....and they charge you a horrendous fee for this.

**Date of experience:** May 08, 2022

 May 26, 2020

**This site is misleading and is a SCAM**

This site is misleading and is a SCAM. I was led to believe I was getting a gift certificate from a specific restaurant. Instead they pull a bait-and-switch and offer gift certificates to their preferred company list and force people to provide their bank information in order to get the cash value of the certificate. BEWARE OF THIS COMPANY.

**Date of experience:** May 26, 2020

 Jun 2, 2019

**This site is a scam**

This site is a scam. I was looking for a gift card for a specific restaurant for my son's birthday. This site popped up as one who would provide that gift. It allowed me to print a card that indicated it was a gift for the restaurant I had chosen. However, when it came to redeeming the card that restaurant was not available and my son's only option was to have to money transferred into his bank account or pick another gift card. I could have easily given him the $50 cash but I wanted the gift for that restaurant.
Your site should specify what gift cards are available instead of acting like they can provide what you want only to dissapoint in the end.

👍 Useful      ⤴ Share                                    ⚑

94.    And the following sample of Better Business Bureau reviews and complaints, including a recent one from February 23, 2023:[13]



Julie R

⭐☆☆☆☆                                                    02/23/2023

I would give this site a zero if I could!! I gave a gift card to ****** restaurant in Door Count, WI as a gift and my friend went to use it yesterday and was told it was a fraud, a scam!!! WTH!!! I now have a dispute going with my bank.



Alana C

⭐☆☆☆☆                                                    09/23/2022

GiftRocket is a deeply deceptive company that diverts your money from your intended business to its corporate partners, receiving a kickback along the way. In particular:1) Exploiting your search query, GiftRocket's intake form falsely implies that it has partnered with the business for which you are attempting to buy a gift certificate. For instance, in my case, I wanted to purchase a gift certificate for my mother to use at a small business near her. As it turned out, the small business had never even heard of GiftRocket, yet GiftRocket's user interface implied that they were partners. 2) GiftRocket then sends your recipient a confusing gift certificate whose easiest option is to spend the money you sent at one of its corporate partners (Amazon, Target, etc.). This is especially confusing for elderly, busy, or English-language learners who do not have time to dissect GiftRocket's confusing interface.3) As a result, your well-intended money gets diverted from a beloved business to some corporate behemoth, from which GiftRocket profits. When confronted, GiftRocket's customer support says there is nothing they can do as the recipient spent the gift "as they wish." Totally deceptive. Totally fraudulent. Totally unethical. I loathe this business.



---

[13] *See Business Profile GiftRocket*, Better Bus. Bureau, https://www.bbb.org/us/ca/san-francisco/profile/gift-cards/giftrocket-1116-378612 (last visited Mar. 7, 2023); *Complaints GiftRocket*, Better Bus. Bureau, https://www.bbb.org/us/ca/san-francisco/profile/gift-cards/giftrocket-1116-378612/complaints (last visited Mar. 7, 2023); *Customer Reviews GiftRocket*, Better Bus. Bureau, https://www.bbb.org/us/ca/san-francisco/profile/gift-cards/giftrocket-1116-378612/customer-reviews (last visited Mar. 7, 2023).



**Initial Complaint**
09/17/2022

**Complaint Type:** Problems with Product/Service
**Status:** Unanswered

I purchased a $200 gift card from Gift Rocket hoping my son-in-law will enjoy it at his favorite local restaurant. Gift Rocket falsely advertises that this gift card is redeemable at this restaurant. When my son-in-law went to redeem the gift card, it was unavailable for use at this restaurant and according to Gift Rocket he would only be able to use it at the national retailers that they are affiliated with. Amazon was one of them so when he went to redeem it on Amazon, he received a message stating that he would receive the confirmation in an email. That email never came through. This business is a complete SCAM and they use false advertising to try to take your money. I attached screen shots of their webpage falsely advertising that they offer a gift card redeemable at this restaurant, **************. I would like to cancel the order or a refund to my *****************

---



**Margaret O**
 ★☆☆☆☆

07/29/2022

Bought a gift card tor ******************* in ******** + when we tried to use it - was told that they do not sell gift cards online. What a scam!

---



**Initial Complaint**
09/19/2022

**Complaint Type:** Problems with Product/Service
**Status:** Unanswered

I received a gift from my son for a gift card at GiftRocket.com. I went to the site this morning (9/19/22) and selected a $50 gift card for Amazon. The site stated that I would receive an email shortly with the gift card. I did not receive the email with the gift card. I emailed the company and received a response that they were "offsite" and may not respond soon. I googled the company and found that many individuals never received their gift card and that businesses for whom you could supposedly get a gift card for don't give out gift cards or do not have an agreement with GiftRocket. All complainants also stated that giftrocket stalls and never really responds or fixes the problem. They are obviously a scam. For this reason i am not waiting to not hear from them, otherwise i would at least have attempted to work with them, but they will apparently never send me the gift card. I am hoping if you contact them they may be encouraged to either provide my son a refund or send me the gift card. Code to Redeem Gift Card from GiftRocket 2IYZWSZMFTJH

95.     Consumers further exhibit significant confusion about the need to transfer funds to a bank account, and file online complaints suggesting that the process is not as easy as GiftRocket purports. For example:



96.     What's more, many gift recipients do not want to share their bank information with an unknown third party, and so they select GiftRocket's option for a gift card to Amazon, Target, and American Eagle. As one customer shared, the gift recipient "had to pick from a limited number of options in how she would like her gift card" rather than the restaurant the recipient wanted:



97.     Other GiftRocket customers report not being able to give the GiftRocket

"gift card" on time:



### 2.      Online business complaints

98.     Because GiftRocket tricks consumers into purchasing GiftRocket

Prepaid Gifts which are essentially just expensive transfers of money, and unaware

of this days-long process, GiftRocket customers attempt to use GiftRocket Prepaid

Gifts at businesses directly. Consequently, businesses unknowingly carry the

responsibility of informing customers of how GiftRocket, a company they likely have

not heard of, actually works.  If they fail to do so, they risk losing money or status:







99.     Aggrieved businesses turn to some of the same sites as upset consumers,

like Trustpilot:







100.    Similar complaints have populated GiftRocket's Better Business Bureau

page:









Dawn W

⭐☆☆☆☆                                   06/08/2022

This is a scam. I have no idea who Giftrocket is and I did not authorize
any gift card selling or purchases in reference to my business. Please do
not purchase.

Penny J

⭐☆☆☆☆                                   12/03/2021

While googling my own company I was shocked to find us on a site that
offered Gift Cards. I reached out to them with a cease and desist via
email and they stated it would be done. They however did not remove
our business. We are now going to further pursue this.

101.    Businesses have also complained that GiftRocket does not remove their
names. In fact, GiftRocket does not offer an easily accessible method of removing or
customizing a listing. GiftRocket.com does not mention removal as an explicit option,
simply offering a support email if "you're having trouble" or you "have more
questions."[14]

102.    Merchants are then forced to post publicly, sometimes repeatedly, in the
hopes of attracting enough attention to pressure GiftRocket into taking down their
listings, as illustrated by the following online complaint:



⭐☆☆☆☆                                   12/09/2021

We just discovered our business listed on GiftRocket site. We did NOT authorize this sale of
gift certificates and it is very clear from the language on the page that we do not get any
funds from these sold gift certificates. From reading the other reviews, I see that Im about to
waste a bunch of time unsuccessfully trying to get this page removed. This is a total scam
and I only hope my clients dont find this page and get taken in.

---

[14] *Business Owners: FAQ*, GiftRocket, https://www.giftrocket.com/business-
owners/faq (last accessed Mar. 10, 2023).



**Shane**

⭐ ☆ ☆ ☆ ☆                                                01/20/2022

NOT a gift card! Don't Fall for it. You purchase what you "think" is a gift card to a certain restaurant/store/whatever, they then send it via email to whomever you provide them the info... And BOOM, your recipient then calls you wanting to know why you sent them a "gift card" that is randomly wanting all of their banking information before they can use it. Sound like a "gift card" to any of yall?Thought so. Also, when you email their support for assistance in canceling your transaction... they never respond. So... You do just as I did today... By going to your local bank, stopping payment, and reported them as fraudulent.

103.   Worse, Defendants know that they mislead consumers and upset businesses, yet their FAQ for merchants shrugs away the potential harm, stating that customers "[p]robably" will spend money at the businesses:



**3.     Gift card scams affect and injure the public writ large**

104.   The harm or risk of harm to consumers and the public from this misleading marketing is substantial. GiftRocket's products are sold and marketed nationwide, and *millions* of businesses can be searched on GiftRocket's website— meaning that there is an incredible reach of potential harm at issue. This behavior goes far beyond the scope of an ordinary trade infringement action— which might involve one particular product or name, e.g., a Chanel bag that is counterfeit—in terms of the public harm it causes. Rather, it implicates both consumers and businesses across the country in the purchase of a mass marketed and sought out item.

105.    As noted, gift cards are part of an industry already rife with consumer exploitation—so much so that the United States Federal Trade Commission provides established guidance to consumers regarding gift card scams.[15] The FTC has created a webpage for reporting gift cards used in scams,[16] created a "Stop Gift Card Scams Toolkit,"[17] and posted an instructional video about gift card scams.[18]

106.    The FTC has further brought gift-card related suits against certain entities, including for deceptive practices in the advertising and sales of gift cards.[19]

---

[15] *See Gift Card Scams*, Fed. Trade Comm'n, https://consumer.ftc.gov/articles/gift-card-scams (last visited Jan. 19, 2022); *see also What Shoppers Need to Know About Gift Cards*, Fed. Trade Comm'n, https://www.ftc.gov/news-events/topics/truth-advertising/gift-cards (last visited Jan. 19, 2022).

[16] *See Report Gift Cards Used in a Scam*, Fed Trade Comm'n, https://www.ftc.gov/media/70967 (last accessed Mar. 10, 2023).

[17] *See Stop Gift Card Scams*, Fed. Trade Comm'n, https://consumer.ftc.gov/articles/stop-gift-card-scams#toolkit (last accessed Mar. 10, 2023); *see also What To Do if You Were Scammed*, Fed. Trade Comm'n, https://consumer.ftc.gov/articles/what-do-if-you-were-scammed (last accessed Mar. 10, 2023).

[18] *See Report Gift Cards Used in a Scam*, Fed. Trade Comm'n, FTCvideos, https://www.youtube.com/watch?v=HfHI6ToZff4 (last accessed Mar. 10, 2023).

[19] *See FTC slaps Kmart for gift card gaffe*, Herald-Tribune (Mar. 28, 2007), https://www.heraldtribune.com/story/news/2007/03/28/ftc-slaps-kmart-for-gift-card-gaffe/28537682007/; *National Restaurant Company Settles FTC Charges for Deceptive Gift Card Sales*, Fed. Trade Comm'n, https://www.ftc.gov/news-events/news/press-releases/2007/04/national-restaurant-company-settles-ftc-charges-deceptive-gift-card-sales (last accessed Mar. 10, 2023); *Kmart Settles With FTC Over Gift Card Sales Practices*, Fed. Trade Comm'n, https://www.ftc.gov/news-events/news/press-releases/2007/03/kmart-settles-ftc-over-gift-card-sales-practices (last accessed Mar. 10, 2023).

Likewise, the Consumer Financial Protection Bureau has issued guidance regarding prepaid cards to consumers as well.[20]

107.    In additions to direct fee scams, GiftRocket's model would likely carry the risk of increasing "breakage" rates, or revenue earned from prepaid but unredeemed, unclaimed, or unused services.[21] This happens when customers or recipients do not utilize the gift cards they have, meaning that the money stays with the entity it was purchased from. Gift cards (and other merchant credits such as frequent flyer miles or hotel loyalty points) often go unused due to expiration dates, activity requirements, or other restrictions on use.[22]

108.    Analysis of the United States Securities and Exchange Commission filings has produced an industry-wide breakage estimate of 2–4 percent for gift cards, meaning that on average 2–4 percent of the value of gift cards sold accrue to retailers as revenue.[23]

---

[20] *See* Dan Rutherford, *Giving or receiving gift cards? Know the terms and avoid surprises*, Consumer Fin. Protection Bur. (Dec. 21, 2012) https://www.consumerfinance.gov/about-us/blog/giving-or-receiving-gift-cards-know-the-terms-and-avoid-surprises/; *Prepaid cards and other prepaid accounts*, Consumer Fin. Protection Bur., https://www.consumerfinance.gov/consumer-tools/prepaid-cards/ (last accessed Mar. 10, 2023); Lauren Saunders, *New CFPB Rule Provides Enforceable Protections for Prepaid Cards*, Nat'l Consumer Law Ctr. (Apr. 16, 2019), https://library.nclc.org/article/new-cfpb-rule-provides-enforceable-protections-prepaid-cards#content-1.

[21] *See* Aaron Hurd & Dia Adams, *What Is Breakage And Why Does It Matter*, Forbes Advisor (last updated Dec. 2, 2022), https://www.forbes.com/advisor/credit-cards/what-is-breakage-and-why-does-it-matter/.

[22] *Id.*

[23] *See* Derryck Coleman & Olga Usvyatky, *Gift Card Breakage*, Audit Analytics (July 12, 2017), https://blog.auditanalytics.com/gift-card-breakage-asc-606/.

109.   While GiftRocket frames its service as a solution to breakage,[24] These breakage rates can lead to Securities and Exchange Commission complaints,[25] and otherwise represent a huge national loss to consumers.[26] Customers and recipients of GiftRocket have expressed surprise and discomfort in public reviews that they in fact need to give GiftRocket their bank information to receive funds. This leads to an increased risk that consumers are forgoing use of a GiftRocket product one learning it is not a gift card and that they would have to provide private information in order to access the product. For example:

---

[24] *See Blog: Restaurant Gift Card Market Bigger Than NASA Space Exploration Budget*, GiftRocket (July 7, 2011), https://www.giftrocket.com/blog/restaurant-gift-card-market-bigger-than-nasa-space-exploration-budget; *see also* Wade Roush, *GiftRocket Seeks to Take the Pain (and Loss) Out of Gift Cards*, Xconomy (Apr. 7, 2011), https://xconomy.com/san-francisco/2011/04/07/giftrocket-seeks-to-take-the-pain-and-loss-out-of-gift-cards/ ("GiftRocket's founders argue that their system has at least two big advantages over gift cards: It's a friendly, low-friction way to encourage someone to check out a restaurant, retailer, or other location you think they'd like. Also, recipients get the whole cash amount when they check in at the suggested location, so none of the value disappears as breakage, as with gift cards.").

[25] *See, e.g.*, Aneurin Canham-Clyne, *Labor federation asks SEC to examine Starbucks' gift card breakage rate*, Restaurant Dive (Nov. 18, 2022), https://www.restaurantdive.com/news/strategic-organizing-center-asks-sec-to-look-at-starbucks-gift-cards/636853/.

[26] *See, e.g.*, Shawn Baldwin, *Consumers lose $3 billion a year in unspent gift cards*, CNBC (May 24, 2020), https://www.cnbc.com/2020/05/24/how-amazon-and-walmart-make-money-from-unused-gift-cards.html.



**lm c**
⭐☆☆☆☆                                                    01/19/2023

Very deceiving practice for this "gift card" company.I received a $50 gift card via online purchase from gift giver for Christmas. When she googled options for a particular business in our area that we frequent, she was able to print out her purchase PDF for this business with a code to use to redeem.So the print out I have does say in small print, "$50 suggested for use at xyz company" (business name omitted from this complain as they did nothing wrong). However after attempting to use this gift, this company doesn't participate in their 'gift card' program. The other option, which is what probably allows them to stay in business, was to have the $50 transferred to a bank account for use at my chosen business. Well with that level of sketchy going on at the "gift card" front, there was no way I was about to involve any of my bank accounts. Terrible business practice.



**kelly l.**
⭐☆☆☆☆                                                    12/29/2022

BEWARE MISLEADING GIFT CERTIFICATES. Recently, we purchased 6, $50 gift certificates to a local restaurant for family members. When they attempted to redeem them, they were asked to provide their bank account information, which, of course, they did not feel comfortable doing. In short, it was embarrassing for us and not useful for them.



**Susan S**
⭐☆☆☆☆                                                    10/18/2022

When I chose to use Gift Rocket for giving some door prize gift cards to local restaurants in my area, I thought it was a great service. One of my recipients brought his gift card in and said he couldn't choose the restaurant. It looks like the only way to be able to use this to your choice of places is to give them your checking account information for them to deposit it into your bank account. That can't be safe!!! Scam Scam Scam! Do not use folks!

110.    The public is substantially harmed where misleading statements serve to deceive them into purchasing a product. This is exactly that scenario, and agencies could intervene to address these specific issues on behalf of consumers, for example, the FTC using its Section 5 authority to protect against unfair or deceptive consumer-oriented conduct.[27]

---

[27] *A Brief Overview of the Federal Trade Commission's Investigative, Law Enforcement, and Rulemaking Authority*, Fed. Trade Comm'n, https://www.ftc.gov/about-ftc/mission/enforcement-authority (last accessed Mar. 10, 2023).

\* \* \*

111.   It makes sense that customers are confused. What does it really mean to "suggest" a "gift" for use? The website repeatedly likens its product to (and often calls it) a gift card (e.g., "like choosing the business for a gift card")?

112.   And "disclosures" provided upon checkout and other attempts at clarification on the website at best seem to exhibit a lack of thoughtfulness as to how consumers might be confused and misled, and at worst seem disingenuous, using legalese like "third-party merchant," and only appearing after numerous misleading "gift card" statements have appeared elsewhere during the search and purchase process:

> Gift Disclosure
>
> The GiftRocket Prepaid Gift is redeemed for money through the GiftRocket website. The GiftRocket Prepaid Gift is not accepted as payment by any third-party merchant. The GiftRocket Prepaid Gift (and the underlying value associated therewith) expires five (5) years from the date of purchase.

113.   The numerous consumer complaints serve to underscore the insufficiency of any disclaimer made by GiftRocket, and show that consumers often make these purchases assuming that they function like gift cards.

114.   Defendant GiftRocket historically has, and still actively does, promote and use the phrase "gift card" when it is convenient for them from a business perspective. Indeed, the current web address for purchasing a GiftRocket is: https://www.giftrocket.com/send-a-**gift-card** (emphasis added) (last visited Mar. 7,

2023). And as of January 2023, a consumer navigating to a specific business on Defendants' current website would also see the following site navigation tool, making reference to "Gift Cards" and "[Location] Gift Cards:"





115.    And the URL appears again with the phrase "gift card."

116.    And an option menu on the GiftRocket webpage refers to the produce as a "Universal Gift Card:"



117.   What's more, if that same consumer left their browser and wanted to return to the GiftRocket page, they would see the page labeled as "[Business] Gift Cards and Gift Certificates" or "Send a Gift Card Online:"



118.   As recently as March 2019, their website included an explicit claim to be "The Online Gift Card," and told purchasers they could "Buy and send gift cards online with GiftRocket" at the point of purchase:



119.   Earlier versions of their website exhorted customers to, "[s]end an online gift card" to specific businesses.

120.   Defendants' current Google advertising and search result strategy still explicitly uses the term "gift card." A Google search for "GiftRocket gift cards" returns a search result profile for Defendants' website, which explicitly reads: "GiftRocket: Online Gift Cards and Printable E-gift Cards. With online gift cards and e-gift certificates to **every** business." (emphasis added).

121.   A google search for a business name along with term "gift card" will display a search result for GiftRocket offering gift cards for sale to that specific business. For example, when counsel for Plaintiffs searched for a "gift card" to Dimensions Massage, the search result indicated that one can be purchased from GiftRocket:



## C.    GiftRocket injures Plaintiffs and small businesses

### 1.    The unauthorized misappropriation of Plaintiffs' reputation and goodwill has caused irreparable harm

122.    Plaintiffs did not agree to be listed on GiftRocket's website. GiftRocket never even informed Plaintiffs that they were listed.

123.    Plaintiffs and small businesses have created value—their reputations and goodwill.

124.    Defendants have no right to profit from what they did not create and what they did not ask for permission to use.

125.    Plaintiffs have worked hard to develop their brands and good names. They did not agree that GiftRocket could profit from their hard-earned reputations. Fortunately, our laws offer protection. As the Second Circuit has pointedly observed:

> In enacting the Lanham Act, Congress observed that . . . . "'where the owner of a trade-mark[28] has spent energy, time, and money in presenting to the public the product, he is protected in his investment from its *misappropriation by pirates and cheats*.'"

126.    *Monsanto Chem. Co. v. Perfect Fit Prod. Mfg. Co.*, 349 F.2d 389, 395 (2d Cir. 1965) (emphasis added) (quoting S. Rep. No. 1333, 79th Cong., 2d Sess. 1-2 (1946)).

---

[28] Nothing in Plaintiffs' claims turn on whether they or the class have a valid, registerable trademark. The Lanham Act causes of action and related remedies do not distinguish between trademarks or false affiliation more broadly. In addition, trademarks are defined broadly and include "'any word, name, symbol, or device, or any combination thereof.'" *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) (quoting 15 U.S.C. § 1127).

127.   Indeed, "the essence of an unfair competition claim under New York law [] is that the defendant has misappropriated the labors and expenditures of another." *Zip Int'l Grp. LLC v. Zenith Foods LLC*, 2021 WL 5399452, at *6 (E.D.N.Y. Nov. 18, 2021). Here, Defendants have misappropriated the labors and expenditures of Plaintiffs and small businesses and nationwide by misappropriating and pirating names, brands, goodwill, and reputation.

128.   Furthermore, amendments to the Lanham Act have provided increasingly broad and robust protection for the time and effort businesses take to develop their reputations. In its first overall revision of the Lanham Act, Congress clarified that "injunctive relief, profits, damages and costs, as well as destruction orders, do not require ownership of a registration." S. Rep No. 100-515, at 40 (1988).

129.   A motivation behind expansions of the Act was Congress's recognition that protection for trademarks protect "the public by making consumers confident that they can identify brands they prefer and can purchase those brands without being confused or misled" and businesses that have "spent considerable time and money bringing a product to the marketplace." *Id*. at 4.

130.   The Trademark Act of 2020 powerfully continued a trend of protecting by acting to "rectify" a circuit split and confirm "that the historical practice of applying a rebuttable presumption of irreparable harm is the appropriate course for claims under the Lanham Act." H.R. Rep No. 116-645, at 19 (2020).

131.   Once again, Congress acted with a clear understanding of the importance of trademark protection as "the foundation of a successful commercial

marketplace" and "an important consumer protection" tool by safeguarding against deception. *Id*. at 8–9.

132.   In short, businesses are injured any time an entity profits—or attempts to profit—by misleadingly trading on name, goodwill, and reputation without consent.

133.   Businesses have created something valuable—their reputation and goodwill. Defendants have no right to misappropriate that for profit in a manner that confuses consumers, while putting businesses at risks to injuries to their reputations or creating tension or issues with those businesses' customers.

134.   Just like the Lanham Act protects the reputations of celebrities by ensuring they can choose whom consumers believe they are associated with, so too does the Lanham Act protect the reputations and goodwill of Plaintiffs and small businesses from misappropriation by Defendants' intentional scheme to falsely associate them with GiftRocket.

### 2.   GiftRocket's scheme has injured and is likely to injure Plaintiffs

135.   Not only are businesses inherently harmed by the unauthorized use of their goodwill and reputations for GiftRocket's benefit, they are harmed by the loss of control of their reputation.

136.   As a concrete example of this loss of control, Plaintiffs fear that, like other harmed businesses, customers will attempt to use GiftRocket "gift cards" to make purchases, forcing them to accept invalid payments or run the risk of upsetting customers and harming their reputations.

137. In fact, this fear has been realized by Plaintiff Dimensions Massage Therapy, which has received phone calls attempting to set up appointments with "gift cards" purchased through GiftRocket. Dimensions Massage Therapy, in turn, must inform these potential customers that its name has been used to sell a product that is not usable directly at Dimensions Massage Therapy.

138. Dimensions Massage should not be forced to spend its employees' time and resources trying to explain to customers that they were duped by GiftRocket. Defendants did not ask Dimensions Massage to use its name to line their own pockets—and they certainly never asked Dimensions Massage to be responsible for explaining to customers why a GiftRocket "prepaid gift" cannot be accepted for payment for a massage service.

139. All Plaintiffs have spent significant time and resources to develop their customer bases and maintain their well-earned reputations.

140. Reputations are crucial to business success. For small businesses especially, the ability to control, maintain, and improve the same is vital to the functioning and longevity of those businesses. This is why the loss of control over one's brand and likeness can be devastating for businesses. Reputational damage can happen with extraordinary speed in the era of online reviews, which makes the

importance of a business's control over its own image all the more crucial in the modern age. Online reviews and overall star ratings impact consumer decisions.[29]

141.   In addition, as small businesses particularly reliant on good word-of-mouth endorsements, Plaintiffs do not want to be associated with GiftRocket's reputation of misleading customers and not communicating with merchants.

142.   Further, Plaintiffs have worked hard to develop their brands and good names. They did not agree that GiftRocket could profit from their hard-earned reputations. Even worse, GiftRocket did not even tell Plaintiffs that they were listed on GiftRocket.com, risking harm to Plaintiffs' reputations without their knowledge. Plaintiffs have the right to control their reputation and brand, and to choose which businesses they want to partner or affiliate with.

143.   Plaintiffs have the right to control which services or promotions they offer to customers, including whether they will issue or accept gift cards. This loss of control through false affiliation has led to the appearance that Plaintiffs are affiliating with a company with a police scam warning, and a Better Business Bureau alert.

---

[29] *See, e.g.,* RJ Licata, *Why Online Reviews are Important for Customers & Businesses*, Terakeet (Mar. 3, 2022), https://terakeet.com/blog/online-reviews/ ("Up to 84% of consumers noted that reviews were important in their purchasing decisions. Additionally, 68% develop an opinion of a product or service after viewing between one to six reviews."); *Why Online Reviews Matter for Small Businesses*, websites360 (Dec. 23, 2020), https://www.websites360.com/blog/why-online-reviews-matter-for-small-businesses ("these days, 91% of consumers between the ages of 18 and 34 trust online reviews just as much as personal recommendations" (citation omitted)); *Why Positive Reviews are So Valuable to Small Businesses*, Small Bus. Trends (Apr. 11, 2017), https://smallbiztrends.com/2017/04/importance-of-online-reviews.html ("the truth is that the content of online reviews on sites like Yelp, Glassdoor, Trip Advisor, and even Facebook can mean the difference between success and failure — particularly if you are in the restaurant or hotel business").

144.    Thus, businesses should not continue to be potential victims of GiftRocket's scheme. Any moment, a customer might search online for a gift card to a business, and be misdirected by GiftRocket's search result pretending to sell actual gift cards to that business. Businesses need not be forced to explain to a confused customer that the "gift card" is not what the customer thinks it is, just so Defendants' can line their pockets off of those businesses' reputations and goodwill.

145.    And a business should not have to risk being forced to honor a fake gift card to avoid upsetting a customer who believed it had purchased a real gift card.

146.    Indeed, that is why the Lanham Act provides standing to anyone it also ignores that the Lanham Act provides a cause of action for anyone "who believes that he or she is *or is likely to be* damaged by such act." 15 U.S.C. § 1125(a) (emphasis added).

147.    Plaintiffs are further at risk of lost consumer business because of GiftRocket's scheme. If someone wants to gift money for use at Plaintiffs' businesses, GiftRocket instead prompts the gift recipient to simply transfer the funds into its bank account, or worse, to redeem the gifted funds for a gift card to Amazon, Target, or American Eagle. Plaintiffs did not agree to the use of their name and information to sell gift cards for other businesses.

148.    Defendants have acted in bad faith and have been unjustly enriched by the misappropriation and exploitation of the goodwill and business reputation of Plaintiffs and the class members.

## CLASS ACTION ALLEGATIONS

149.   Plaintiffs bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in the United States that, without their agreement, Defendants list or have listed on GiftRocket.com, and/or such subclasses as the Court may deem appropriate.

150.   Plaintiff Gracie Baked also brings this action on behalf of itself and on behalf of the following proposed New York Subclass, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in New York who, without their agreement, Defendants list or have listed on GiftRocket.com, and/or such subclasses as the Court may deem appropriate.

151.   Plaintiff Café Olé also brings this action on behalf of itself and on behalf of the following proposed Pennsylvania Subclass, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in Pennsylvania who, without their agreement, Defendants list or have listed on GiftRocket.com, and/or such subclasses as the Court may deem appropriate.

152.   Plaintiff Dimensions Massage Therapy also brings this action on behalf of itself and on behalf of the following proposed Texas Subclass, initially defined as follows:

> All businesses or entities, and/or any individuals with any ownership interest in such entities, in Texas who, without their agreement, Defendants list or have listed on GiftRocket.com, and/or such subclasses as the Court may deem appropriate.

153. Excluded from the proposed Classes are Defendants, Defendant GiftRocket's parents, subsidiaries, affiliates, officers, and directors, any entity in which Defendants have a controlling interest.

154. Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

155. The claims of all class members derive directly from a single course of conduct by the Defendants. Defendants have engaged and continues to engage in uniform and standardized conduct toward the putative class members. Defendants do not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

156. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of Plaintiffs' claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

157. Accordingly, Plaintiffs bring this lawsuit as a class action on Plaintiffs' own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

158. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

159.   **Numerosity** (Fed. R. Civ. P. 23(a)(1)).  The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed each Class includes many tens of thousands of members.  The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Defendants' records.

160.   **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Defendants in the usual course of business and within their control or Plaintiffs and the Classes themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

161.   **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members.   The common legal and factual questions include, without limitation:

(a) whether Defendants obtained class members' permission before listing them on Defendant GiftRocket's website;

(b) whether Defendants otherwise engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices;

(c) whether Defendants profited as a result of their deceptive acts;

(d) whether Defendants violated the applicable statutes identified herein;

(e) whether reasonable consumers are likely to be misled by Defendants'
conduct;

(f) whether Defendants have knowledge that their behavior was likely to
deceive a reasonable consumer;

(g) whether Defendants violated the statutes alleged herein;

(h) whether Plaintiffs and the Classes are entitled to actual, compensatory,
nominal, statutory, enhanced, and/or punitive damages;

(i) whether Plaintiffs and the Classes are entitled to injunctive, declaratory
relief, or other equitable relief;

(j) whether Plaintiffs and the Classes are entitled to civil penalties;

(k) whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees
and costs.

162.    **Typicality of Claims** (Fed. R. Civ. P. 23(a)(3)).  The claims of Plaintiffs
and the putative class members are based on the same legal theories and arise from
the same unlawful and willful conduct of Defendants, resulting in the same injury to
Plaintiffs and the putative class members. Plaintiffs and all class members are
similarly affected by Defendants; wrongful conduct, were damaged in the same way,
and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic
to, those of the other class members.  Plaintiffs have been damaged by the same
wrongdoing set forth in this Complaint.

163.    **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)).  Plaintiffs are
adequate representatives of the Classes because their interests do not conflict with

the interests of the class members, and they have retained counsel competent and experienced in complex class action, business competition, and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

164. **Superiority of a Class Action** (Fed. R. Civ. P. 23(b)(3)). A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members themselves could afford such individual litigation; the court system could not, given the thousands or even millions of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

165. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief** (Fed. R. Civ. P.

23(b)(1) and (2)).  In the alternative, this action may properly be maintained as a class action, because:

      (a)    the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Defendant; or

      (b)    the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

      (c)    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

**Unfair Competition and False Affiliation in Violation
of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)
(On Behalf of Plaintiffs and All Classes Against All Defendants)**

166.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

167.    Defendants' conduct as set forth herein significantly impacts interstate commerce and commerce within this district.

168.    Section 43 of the Lanham Act provides liability as to

> Any person . . . who uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities. . . .

169.   As described more fully herein, Defendants have engaged in conduct with regards to the promotion of its GiftRocket Business Directory that falsely affiliates Plaintiffs and class members with Defendant, causing potential customers to purchase GiftRocket Prepaid Gifts which cannot be used with Plaintiffs and class members.

170.   This conduct has caused, and is likely to cause, mistake and deception as to the affiliation, connection, or association of Plaintiffs and the other class members.

171.   Through this conduct, GiftRocket also misrepresents the nature and characteristics of its GiftRocket Business Directory.

172.   This course of conduct includes, but is not limited to, the following:

(a) confusing, or likely confusing, potential customers about the existence of any business affiliation between Plaintiffs and class

members with GiftRocket, and the ability to directly purchase Plaintiffs' goods and services with GiftRocket Prepaid Gifts;

(b) misrepresenting that Plaintiffs and the class members have a consensual business partnership with GiftRocket and are part of its Business Directory;

(c) misrepresenting that customers may use GiftRocket Prepaid Gifts to directly purchase Plaintiffs and class member's goods and services;

(d) misrepresenting the number of businesses offered through the GiftRocket website to entice individuals to purchase GiftRocket Prepaid Gifts;

(e) failing to inform GiftRocket customers that Plaintiffs and the class members do not belong to the GiftRocket Business Directory;

(f) failing to inform GiftRocket customers that GiftRocket Prepaid Gifts cannot be used in place of other payment methods to pay for goods and services provided by Plaintiffs' and the class members' businesses;

(g) harming the reputations of Plaintiffs and the class members by falsely affiliating them with GiftRocket;

(h) harming the reputations of Plaintiffs and the class members by refusing to remove merchants from the GiftRocket Business Directory who have requested disaffiliation; and

(i) stealing potential customers from Plaintiffs and the class members by diverting them to purchase misleading GiftRocket Prepaid Gifts, rather than directly transact with Plaintiffs and the class members.

173.   The false and misleading statements and omissions described herein are material because they are intended to have an impact on whether consumers become GiftRocket customers and on whether businesses choose to join the GiftRocket Business Directory.

174.   The false and misleading statements and omissions described herein actually deceive or have the tendency to deceive potential customers of Plaintiffs and class members.

175.   Defendants' conduct, as described herein, constitutes a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

176.   As a direct and proximate result of Defendants' violations and false and misleading statements and omissions described herein, pursuant to 15 U.S.C. § 1117, Plaintiffs and the class members have been, or are likely to be, damaged.  Plaintiffs and the Classes are likewise entitled to recover from Defendants all profits, gains and advantages obtained stemming from this improper conduct.

177.   Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendants' conduct was knowing, characterized by malicious intent, and was explicitly designed to deceive the general public in order to reap profits unjustly at the expense of Plaintiffs and the Classes, entitling Plaintiffs to a

statutory multiplier of actual damages, additional damages and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**False Advertising in Violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a) (On Behalf of Plaintiffs and All Classes Against All Defendants)**

178.    Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

179.    Defendants' conduct as set forth herein significantly impacts interstate commerce and commerce within this District.

180.    As described more fully herein, Defendants have engaged in a course of conduct with respect to the advertising of its GiftRocket Business Directory that contains false and/or misleading statements of fact, or omissions of essential facts, including those about Plaintiffs and class members, which did not consent to partner with GiftRocket.

181.    These false and/or misleading statements, or omissions of material facts, include, but are not limited to, the following:

(a)    confusing, or likely confusing, potential customers of Plaintiffs and the class members as to Plaintiffs and the class members' affiliation with GiftRocket and the ability to use GiftRocket Prepaid Gifts in place of traditional payment methods;

(b)    misrepresenting that Plaintiffs and the class members have partnered with GiftRocket and are accessible through GiftRocket's website;

(c)     misrepresenting that the goods and services offered by Plaintiffs and the class members may be paid for directly with GiftRocket Prepaid Gifts;

(d)     misrepresenting the scale of the GiftRocket Business Directory to entice individuals to purchase various GiftRocket Prepaid Gifts;

(e)     failing to inform GiftRocket customers that Plaintiffs and the class members are in no way affiliated with the GiftRocket Business Directory;

(f)     failing to inform GiftRocket customers that GiftRocket Prepaid Gifts cannot be used to pay for services rendered at Plaintiffs' and the class members' businesses;

(g)     misrepresenting the number of businesses accessible through the GiftRocket website to convince businesses or entities to partner with GiftRocket;

(h)     harming the reputations of Plaintiffs and the class members by falsely affiliating them with GiftRocket;

(i)     harming the reputations of Plaintiffs and the class members by refusing to remove merchants from the GiftRocket Business Network who have requested disaffiliation; and

(j)     stealing potential customers from Plaintiffs and the class members by diverting them to purchase misleading GiftRocket Prepaid Gifts or receive actual gift cards to other companies, rather than directly transact with Plaintiffs and the class members.

182.    The false and misleading statements and omissions described herein are material, are intended to have an impact on whether consumers purchase GiftRocket Prepaid Gifts.

183.    The false and misleading statements and omissions described herein actually deceive or have the tendency to deceive customers of Plaintiffs and the class members.

184.    Defendants' conduct as described herein constitutes a violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

185.    As a direct and proximate result of Defendants' violation and false and misleading statements and omissions described herein, pursuant to 15 U.S.C. § 1117, Plaintiffs and the Classes have or are likely to be damaged.  Plaintiffs and the Classes are likewise entitled to recover from Defendants all profits, gains and advantages obtained during execution of this improper conduct.

186.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are further entitled to recover the costs of this action. Defendants' conduct was knowing, characterized by malicious intent, and was explicitly designed to deceive the general public in order to unjustly reap profits at the expense of Plaintiffs and the Classes, entitling Plaintiffs to a statutory multiplier of actual damages, additional damages and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

**Violations of the New York Deceptive and
Unfair Trade Practices Act, N.Y. Gen. Bus. Law § 349
(On Behalf of Plaintiff Gracie Baked and the New York Subclass Against
All Defendants)**

187.   Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

188.   Plaintiff Gracie Baked was founded and is headquartered in New York, New York.

189.   At all relevant times, Gracie Baked and the New York Subclass maintained principal places of business within New York, have been engaged in trade or commerce from within the State of New York, or are businesses organized under the laws of New York.

190.   NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

191.   NY GBL § 349 applies to Gracie Baked and the New York Subclass because the State of New York has an interest in regulating business conduct among merchants and customers in the region.

192.   Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions.  The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to

one thousand dollars per violation, if the court finds that the Defendants willfully or knowingly violated this section. The court may award reasonable attorneys' fees to a prevailing plaintiff.

193. The practices employed by Defendants, by which they advertise and promotes the GiftRocket Business Network, were directed at the expense of Gracie Baked and the class members located in New York, violating GBL § 349.

194. Gracie Baked and the New York Subclass have been injured by Defendants' deceptive acts or practices.

195. Gracie Baked and the New York Subclass have no adequate remedy at law.

196. Defendants' conduct has caused and is causing immediate and irreparable injury to Gracie Baked and the New York Subclass and will continue to damage both Gracie Baked and the New York Subclass and deceive the public unless enjoined by this Court.

## FOURTH CAUSE OF ACTION

### False Advertising in Violation of N.Y. Gen. Bus. Law § 350
### (On Behalf of Plaintiff Gracie Baked and the New York Subclass Against All Defendants)

197. Plaintiff Gracie Baked incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

198. Gracie Baked was founded and is headquartered in New York, New York.

199. At all relevant times, Gracie Baked and members of the New York Subclass maintained principal places of business within New York and have been

engaged in trade or commerce from within the State of New York, or are businesses organized under the laws of New York.

200.   By reason of the acts set forth above, Defendants have been and are engaged in consumer-oriented advertising and marketing against Gracie Baked and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

201.   Defendants caused to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications, statements that were untrue or misleading, and which they knew to be untrue or misleading.

202.   Defendants' misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large.  Consumers were and continue to be exposed to Defendants' material misrepresentations.

203.   Gracie Baked and the New York Subclass have been injured by Defendants' deceptive acts or practices.

204.   Gracie Baked and the class members have no adequate remedy at law.

205.   Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiff and the New York Subclass and will continue to damage both Plaintiff and the New York Subclass and deceive the public unless enjoined by this Court.

206.   Pursuant to NY GBL § 350-e, Gracie Baked and the New York Subclass seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350-a(1)), injunctive relief, restitution, and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**

**Common Law Unfair Competition**
**(On Behalf of Plaintiffs and All Classes Against All Defendants)**

207.   Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

208.   As described herein, Defendants have engaged in a course of conduct with respect to the advertising of GiftRocket that unfairly and falsely affiliates Plaintiffs and class members with Defendant, diverting potential customers into purchasing GiftRocket Prepaid Gifts instead of directly purchasing services from Plaintiffs and the class members.

209.   By misappropriating and exploiting the goodwill and business reputation of Plaintiffs and the class members, Defendants have acted in bad faith and have been unjustly enriched, and will continue to do so, unless enjoined by this Court.

210.   Defendants' wrongful conduct constitutes unfair competition under common law.  Plaintiffs and the Classes have no adequate remedy at law.

211.   Defendants' conduct has caused and is causing immediate and irreparable injury to Plaintiffs and the Classes and will continue to damage them and deceive the public unless enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, prays for relief and judgment against Defendants as follows:

A.   certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B.   awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C.   awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D.   awarding Plaintiffs and the Classes punitive damages;

E.   awarding Plaintiffs and the Classes civil penalties;

F.   granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G.   enjoining Defendants from continuing to engage in the wrongful acts and practices alleged herein;

H.   awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I.      awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J.      awarding pre-judgment and post-judgment interest; and

K.     granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 10, 2023

By: */s/ Raphael Janove*
Raphael Janove
Adam Pollock
Alison Borochoff-Porte
**POLLOCK COHEN LLP**
111 Broadway, Suite 1804
New York, New York 10006
(212) 337-5361
Rafi@PollockCohen.com
Adam@PollockCohen.com
Alison@PollockCohen.com

*Attorneys for Plaintiffs and the
Proposed Classes*