**POLLOCK | COHEN LLP**
111 BROADWAY, SUITE 1804
NEW YORK, NY 10006

*CONTACT:*
Raphael Janove
Rafi@PollockCohen.com
(215) 667-8607

June 30, 2023

**VIA ECF**
The Honorable Vera M. Scanlon
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *Gracie Baked LLC, et al. v. GiftRocket, Inc.*, No. 1:22-CV-04019 (RPK) (VMS)

Dear Judge Scanlon:

  Pursuant to Your Individual Rule III(b) and LR 37.3, Plaintiffs respectfully move to compel the production of relevant documents dated prior to 2015. With only a few exceptions, Defendants have refused to produce earlier discovery, even though such discovery is highly probative. *See, e.g.*, *Grayson v. Equifax Credit Info. Servs.*, No. 18-CV-6977, ECF No. 132 at 2 (E.D.N.Y. Nov. 3, 2022) ("'The statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery.'"). The Parties have reached an impasse despite months of meetings and letter exchanges. *See, e.g.*, ECF No. 67-3 at 4; ECF No. 67-4 at 1.

  Plaintiffs bring claims on behalf of small businesses for unfair competition, deceptive acts and practices, and violations of the Lanham Act. They allege that Defendants have falsely affiliated with and used Plaintiffs' goodwill, reputations, and names in a deceptive manner through Defendants' website, which confuses consumers into thinking they are purchasing a "gift card" to certain businesses when in fact they are not. Defendants' common practice of misappropriating the names and information of businesses to deceive customers dates back to GiftRocket, Inc.'s inception in 2010. GiftRocket has remained relatively unchanged since 2012. Evidence shows that the deception started misleading consumers early; there is a long history of relevant complaints, with the company having been flagged to the Better Business Bureau as early as 2011. FAC ¶ 87. But Defendants' arbitrary dates prevent Plaintiffs from understanding how and why Defendants chose to operate, and continue to operate, a company that has been flagged to state AGs and labeled a "scam" by customers, businesses, and even a police department. *See* ECF No. 65-1 at 2.

  Plaintiffs are firmly within the bounds of Rule 26 relevance and proportionality and do not ask much of Defendants: for much of its existence, only one employee operated GiftRocket. *See* Ex. A, PLTFS000165; Ex. B, YC000004–5 ("[a]n employee manages Giftrocket"). Including the founders, Plaintiffs are mainly asking Defendants to look through the files of only four individuals.

  Accordingly, Plaintiffs respectfully move the Court to order search and production of relevant documents from 2010 through the present for the following categories and specific RFP numbers:[1]

---

[1] For simplicity, Plaintiffs refer to the RFPs served on GiftRocket, Inc. The same RFPs were also served on the Individual Defendants. The full text of each RFP listed in the Table on the next page, along with Defendants' proposed dates for search cutoffs, can be found in the attached Appendix. *See* Appendix. GiftRocket's Responses and Objections

Hon. Vera M. Scanlon
June 30, 2023

| Category of documents | RFP with time limitation |
|---|---|
| How GiftRocket and its website functions | 23–27, 37–38, 41–43, 45, 49–50, 54 |
| Customer confusion and business complaints | 5, 6–8, 28–29, 31–32, 35–36, 39–40, 44, 46–47, 51, 56 |
| Financial and sales data; individual compensation | 10, 11, 13 |

**I.     Earlier documents are highly relevant and probative.**

It is essential to Plaintiffs' case to receive discovery from prior years. In Defendants' own words, they have not changed since their early years of operation. Specifically, GiftRocket has been largely in "[a]utopilot" and in "self-driving mode" since 2012. *See, e.g.*, *Tremendous company history*, Tremendous, https://tinyurl.com/2xstf7pm (last visited June 28, 2023); FAC ¶ 47, ECF No. 29. Therefore, in order to gain a comprehensive understanding of GiftRocket's operations and marketing strategy, i.e., how it is likely to cause confusion among customers, Plaintiffs need early discovery.

Without earlier discovery, Plaintiffs will lack documents regarding (a) the basics of how GiftRocket functions, and (b) the full extent of consumer and business complaints about GiftRocket's product. *See* Pls. MTD Opp'n at 11, ECF No. 57. Without such discovery, Plaintiffs will be unable to fully develop their claims for disgorgement, punitive damages, and attorney fees. *See* Pls. MTC at 2–3, ECF No. 67-1 (noting how GiftRocket's continuation of business practices in the face of complaints goes to elements of willfulness and bad faith). Lack of earlier discovery also prevents Plaintiffs from testing factual assertions Defendants have made in filings. *See, e.g.*, ECF No. 68 (noting that "Giftrocket.com existed in materially the same format and layout for years").

Relevance and proportionality—not the limitations period—are the guideposts of discovery. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery . . . that is relevant to any party's claim or defense and proportional to the needs of the case."); *see also* Wright & Miller, 8 Fed. Prac. & Proc. Civ. § 2008.5 (3d ed.) ("older information may often be relevant to the issues presented in a case"); *New York v. Pennsylvania Higher Educ. Assistance Agency*, 2022 WL 951048, at *5 (S.D.N.Y. Mar. 30, 2022) (overruling discovery objections to producing documents from outside of the limitations period); *Thompson v. Glob. Contact Servs., LLC*, 2021 WL 1103029, at *3 (E.D.N.Y. Feb. 16, 2021) ("The statute of limitations [do not] dictate the outlines of class discovery."). Whether the limitations period provides the outerbounds of discovery is made on a case-by-case basis, in light of the facts. *See, e.g.*, *Chow v. SentosaCare, LLC*, 2020 WL 5623976, at *3 (E.D.N.Y. July 21, 2020).

Accordingly, Plaintiffs request a search from 2010 to the present for three separate categories of documents that are indispensable to their claims and responding to GiftRocket's defenses.

**A.     Category 1: Documents regarding how the GiftRocket website functions.**

To date, Defendants have failed to provide Plaintiffs with information sufficient to understand how GiftRocket even operates. For example, GiftRocket—at least until recently—uses Yelp to create populate GiftRocket.com with business listings. *See* ECF No. 67-4 at 6; FAC ¶¶ 59, 71. Defendants have arbitrarily provided a 2015 cutoff in response to Plaintiffs' Yelp-related requests, *see, e.g.*, Ex. D, RFP No. 37, despite being on "autopilot" status from 2012 on. But Defendants have not produced

---

to Plaintiffs' first through fourth sets of RFPs are attached hereto as Exhibits C–F. GiftRocket's Supplemental and Amended Responses and Objections to Plaintiffs' First Set of RFPs is attached as Exhibit G.

Hon. Vera M. Scanlon
June 30, 2023

sufficient—really any—documents to explain how GiftRocket.com is set up and how it accesses Yelp data. *See* ECF No. 67-4 at 6.

Not only does Defendants' failure to look for documents in the key time period that would explain how GiftRocket.com functions prejudice Plaintiffs' affirmative case, it also prevents Plaintiffs from responding to a central GiftRocket defense: that because businesses have accessed their Yelp profiles, GiftRocket can do what they like with those businesses' information. For instance, GiftRocket's R&Os to Plaintiffs' First RFPs mention "Yelp" ten times and repeatedly state "Plaintiffs and other class members authorized entities like Defendant to access their content through Yelp's API." *See* Ex C.

Defendants also refuse to search the custodial files of former employee David Gertmenian-Wong. *See* ECF No. 72-9 at 4 ("Mr. Gertmenian-Wong has not been employed at GiftRocket since 2014. Thus, any documents in his custodial files would be irrelevant because they would pre-date 2016."). But in Mr. Gertmenian-Wong's own words, he was GiftRocket's "[f]irst employee," who both created the databases that formed GiftRocket.com's business listings, and created the SEO strategy that made GiftRocket "rank[] within the top five of Google search results for 'online gift cards.'" Ex. A.

## B. Category 2: Evidence of customer confusion and upset businesses.

Customer confusion is the essence of Plaintiffs' Lanham Act and unfair competition claims. *See, e.g.*, 15 U.S.C. § 1125(a). Consumers are misled into spending money on GiftRocket.com, falsely believing they have purchased gift cards to a local business. Businesses, in turn, are not happy. GiftRocket itself recognizes that one of GiftRocket's "[m]ost common issues" is when a "[b]usiness reaches out, claims it doesn't sell giftcards and is angry." ECF No. 67-8.

But Defendants want to only provide Plaintiffs a limited snapshot of the extent of customer confusion. For example, Plaintiffs' RFP No. 5 to GiftRocket requests "[a]ll documents concerning complaints by Businesses that GiftRocket listed a Business on the GiftRocket website without that Business's express permission or authorization." Ex. G. Defendants responded that they "will produce documents . . . from July 2015 to present sufficient to show the number of businesses that have requested removal from the GiftRocket website." *Id.*

Business complaints prove that GiftRocket customers and recipients are confused about the product they purchased and received. A comprehensive history of business complaints will reveal the *full* scope of the problem, as well as Defendants' willfulness and bad faith in ignoring a public that is angered by GiftRocket's deceptive business operations. This proves both liability and Plaintiffs' requested relief, including disgorgement and punitive damages. *See, e.g.*, *RVC Floor Decor, Ltd. v. Floor and Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 331 (E.D.N.Y. 2021).

In consideration of any burden to Defendants, Plaintiffs initially proposed a compromise of searching only a few custodians regarding these issues if Defendants' produced summaries and logs of complaints. *See* ECF No. 72-6 at 3–6. However, while Defendants have agreed to provide complaint logs without time limitations, Defendants want only to only review a subset of complaints, and only from March 29, *2017* to the present, which is even less generous that Defendants' normal 2015 or 2016 cutoffs. *See, e.g.*, ECF No. 67-7 at 4. That Defendants may have numerous communications from upset customers and businesses is a problem of their own making. And Defendants' pattern of

Hon. Vera M. Scanlon
June 30, 2023

deception to the detriment of customers and small businesses started long before March 2017. Accordingly, all such documents must be produced without a time limitation.

### C. Category 3: Financial and sales data, and compensation to Individual Defendants.

Plaintiffs' RFP No. 10 asks for "[d]ocuments sufficient to show by month, quarter, and year GiftRocket's sales, total revenues, net income, net profits (including income measures such as EBIT and EBITDA), profit margins, profit levels, projected profits, and costs." Ex. G. Defendants' supplemented response states that "Defendant will produce annual profit and loss statements for Tremendous, Inc. from 2016 to present." *Id*. Plaintiffs have also requested financial information from the Individual Defendants, e.g., Ex. C, RFP Nos. 11, 13. Defendants will only produce compensation from July 1, 2015, to the present for Individual Defendants Baum and Kale. ECF No. 72-7 at 5.

Early documents will show when Defendants began to turn a profit for their company, going directly to Plaintiffs' requests for disgorgement for profiting in bad faith. *See* ECF No. 67-3 at 6–7. While Defendants have disclosed some early investor presentations that make some reference of GiftRocket's revenues and costs, the record is incomplete. Individual Defendant Kapil Kale implied as much when he questioned the veracity of such representations in draft versions of these presentations. *See* Ex. H at 19 ("Numbers / content… worth sharing? **Complete BS, really**") (emphasis added).

## II. Any burden cannot outweigh the relevance of these most basic documents.

Plaintiffs have issued narrowly tailored discovery requests that go to the very essence of their claims and defenses (e.g., consumer confusion), the very functioning of the website at issue (e.g., how the website uses Yelp), and the potential for disgorgement (e.g., profits and financial information). Defendants have asserted boilerplate objections to "burden" in their responses, which does not suffice. *See Walls v. City of New York*, 502 F. Supp. 3d 686, 691 (E.D.N.Y. 2020) (Scanlon, J.) ("[A] party seeking to avoid discovery on grounds of burden at least has the obligation to address those proportionality factors pertinent to that case and provide specific evidence and argument about them to the extent possible; it is not enough merely to invoke the word 'burden' as a talisman.").

There is no undue burden here. As mentioned, for most of GiftRocket's history, it had only one employee and three directors. Plaintiffs are largely asking Defendants to look through the files of a handful of individuals regarding a business that has mostly been operating on "autopilot" since 2012.

In sum, Plaintiffs respectfully move the Court to order a comprehensive search and production for the three categories of documents. To the extent Defendants raise specific burden concerns, Plaintiffs are willing to compromise on limiting searches to specific custodians or noncustodial searches, such as they have repeatedly offered to Defendants with respect to business and consumer complaints.

Hon. Vera M. Scanlon
June 30, 2023

Respectfully submitted,

/s/ *Raphael Janove*

Raphael Janove

CC: All Counsel of Record via ECF and email

Enclosures