<pre>
1                     UNITED STATES DISTRICT COURT
                      EASTERN DISTRICT OF NEW YORK
2
                                      )
3      GRACIE BAKED LLC,              )    1:22-CV-04019-RPK-VMS
                                      )
4                   Plaintiff,        )    Brooklyn, NY
                                      )    August 28, 2024
5                   vs.               )    2:39 PM
                                      )
6      GIFTROCKET, INC.,              )
                                      )
7                   Defendants.       )

8
                       TRANSCRIPT OF STATUS CONFERENCE
9               BEFORE THE HONORABLE VERA SCANLON
                    UNITED STATES MAGISTRATE JUDGE
10
       APPEARANCES (All present by video or telephone):
11
       For the Plaintiff:         LIANA R. VITALE, ESQ.
12                                RAPHAEL JANOVE, ESQ.
                                  JANOVE PLLC
13                                979 Osos Street
                                  Ste. A5
14                                San Luis Obispo, CA 93401

15     For the Defendant,         GINA TONN
       Sunrise Bank, N.A.:        222 South Ninth Street
16                                Suite 2200
                                  Minneapolis, MN 55402
17
       For the Defendant,         MEGAN O'NEILL, ESQ.
18     GiftRocket, Inc.:          DTO LAW
                                  915 Wilshire Blvd.
19                                Suite 1950
                                  Los Angeles, CA 90017
20
                                  KATHERINE BURGHARDT-KRAMER, ESQ.
21                                KEVIN WESTERMAN, ESQ.
                                  DTO LAW
22                                307 Fifth Avenue
                                  12th Floor
23                                New York, NY 10016

24     ECR OPERATOR:              NO NAME PROVIDED

25
</pre>



1                          Jeannine McFee, CDLT-147
                                    eScribers
2                           7227 North 16th Street
                                Phoenix, AZ 85020
3                               www.escribers.net

4        Proceedings recorded by electronic sound recording; transcript
         produced by transcription service.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy

1          THE COURT:  All right.  So this case is Gracie Baked

2    LLC v. GiftRocket, 22-CV-4019.  So let's start with the

3    appearances.  So for the plaintiffs.

4          MR. RAPHAEL JANOVE:  Good afternoon, Your Honor.

5    Raphael Janove for plaintiffs.

6          THE COURT:  Anybody else for plaintiffs?

7          MS. LIANA VITALE:  Liana Vitale, also for plaintiffs.

8    But Mr. Janove will be speaking.

9          THE COURT:  Okay.  So I saw that you just filed your

10   notice of appearance.  Know that your -- what I imagine is your

11   old firm -- is still listed, so you should update your contact

12   with the court.  You can reach out to the clerk's office or to

13   the ECF help desk is the easiest way to do that.  All right.

14   How about for the GiftRocket defendants?

15         MS. MEGAN O'NEILL:  Good afternoon, Your Honor.  Megan

16   O'Neill for the GiftRocket defendants.

17         MS. KATHERINE BURGHARDT-KRAMER: Good afternoon, Your

18   Honor.  Yeah, this is Katherine Burghardt-Kramer, also of DTO

19   law for the GiftRocket defendants.

20         MR. KEVIN WESTERMAN:  Good afternoon, Your Honor.

21   Kevin Westerman of DTO law for the GiftRocket defendants.

22         MS. O'NEILL:  And that's everyone for the GiftRockets

23   defendants, Your Honor.

24         THE COURT:  Okay.  All right.  How about anyone else?

25   Sunrise.



Colloquy

1          MS. GINA TONN:  Your Honor, this is Gina Tonn from

2    Greene Espel on behalf of defendant Sunrise Banks.

3          THE COURT:  Wait.  What's your name?  Say it again.

4          MS. TONN:  Gina Tonn, T-O-N-N, and I'm from the Greene

5    Espel Law Firm.

6          THE COURT:  Okay.  So just so you know, the reason it

7    was a little confusing is just your listing doesn't have your

8    firm's name.  It does in that you have the email address, but

9    not underneath your name.  So I don't know.  You also might

10   want to update that contact information.

11         MS. TONN:  Thank you, Your Honor.  We'll look into

12   that.

13         THE COURT:  All right.  Anybody else on the line?

14   Okay.  Just to go back to the defendants.  On a couple of the

15   defendants you have -- I'm just going to use your last names --

16   O'Neill, Burghardt-Kramer, and Westerman.  But on the

17   Tremendous, you also have Attorney Schmidt and Delgado listed.

18   Are they still on the case?

19         MS. O'NEILL:  Yes.  They are.

20         THE COURT:  Okay.  Okay.  All right.  Just so the

21   record is clear I'm going to just note what we've read in

22   connection with having this conference.  So we have the August

23   23rd letter from Defendants.  Other than the bank at 183, we

24   have 185 from the plaintiff's law firm.

25              And some of these include attachments.  I'm just



Colloquy

1    giving you the main docket number, 186, which is from the DTO

2    Firm.  We have 187, also from DTO.  We have 188, also DTO.  189

3    from the plaintiffs here.  I actually printed these out.

4    Moving through the paper, 190 from the plaintiff.

5            We have -- I think That is it.  Is that it?  Yeah.

6    Okay.  So we put this on because of the issue about it wasn't

7    clear that your mediation is going to go forward.  And then we

8    got all these filings.  So I want to touch on a couple of

9    points.  I've read all this stuff.  My law clerk has read it.

10           When we get to it, if you want to say a bit more -- I

11   don't want to hear everything that's already in these letters,

12   because we've done that work -- and then talk about some future

13   timeline.  Somebody on the call has a good amount of background

14   noise, so if you're not the person who's speaking, if you don't

15   mind, if you can mute yourself.

16           All right.  So there's already been an issue about

17   talking about particulars or maybe not talking about

18   particulars in relation to mediation.  But despite all of the

19   tension over mediation, is that going to move forward?

20           THE COURT:  And there is deafening silence.

21           MS. O'NEILL:  I'll go.  There's deafening silence,

22   Your Honor.  This is Megan O'Neill on behalf of the GiftRocket

23   defendants.  That's a tough question to answer, given that we

24   had a mediation scheduled that was canceled in the way that I

25   can recite the sequence of events, but I'm taking what Your

Colloquy

1    Honor said as not trying to not repeat what's in the filing.

2    So because it was canceled by plaintiffs, I don't think we're

3    the best person -- I'm the best person to answer that.

4            THE COURT:  All right.  Plaintiff's side.

5            MR. JANOVE:  Yes, Your Honor.  Raphael Janove.  So

6    presently, (indiscernible) has not closed the mediation.  The

7    mediator's administrator emailed us yesterday asking if we

8    wanted a new date.  However, given how far apart we are and the

9    recent events and the history of getting to this point I think

10   it's unlikely that mediation is going forward at this time.

11           THE COURT:  All right.  I think you should keep open

12   the channels of communication.  There's a lot more work to be

13   done.  A lot of money to be spent and a very uncertain outcome

14   on some of the legal issues, which some are brief, others will

15   be briefed under the new point.

16           But you're going to spend a lot of time on this case

17   so if you can have a meaningful discussion, I think you should.

18   I'm sorry.  I'm going to say what I said already.  There's

19   some -- I don't know if it's feedback or background noise.  But

20   if you don't mind muting yourself, if you're not speaking, that

21   would help.

22           All right.  So in terms of the issues of which there

23   is a wide variety, is there anything that wasn't included here

24   that you think is necessary for me to consider in relation to

25   any of these issues?  So start with defendants because you

Colloquy

1   kicked this off, and then we could also hear from the Bank if

2   you have anything different from your co-defendants and then

3   plaintiffs.

4        MS. O'NEILL:  Thank you, Your Honor.  We'll go first

5   at your invitation.  Again, this is, for the record, Megan

6   O'Neill.  So I don't think there's anything that's not in the

7   papers, so I'll keep it fairly short because I do recognize how

8   busy your calendar is.

9        But we did ask for a special master, which is an

10  extraordinary request and not one that I've ever made in any

11  other case in twenty years.  So it's not something I take

12  lightly.  But we have raised this for the second time because

13  we have had an -- to use the word again -- extraordinary amount

14  of difficulty in this case.

15       And what was stated in our papers, maybe implicitly,

16  but I'll state explicitly, is that the main issue that we --

17  the reason we're looking for a special master is one, just

18  because we have so many discovery disputes.  We've already had

19  fifteen discovery motions in this case.

20       We have fifteen not counting the Sunrise issues.

21  There are fifteen issues listed between the parties.  But not

22  just because of the volume, but because of the fact that

23  compromises seem largely useless.  We have agreements, and then

24  we have to retread the same ground over again.

25       And so we're finding ourselves stuck in the mud.  We

Colloquy

1    can't seem to move the case forward.  We'd like to move the

2    case forward, and if we have to come back to Your Honor fifteen

3    more times, I just don't think that this case is ever going to

4    move forward.

5            And now that mediation is not on the table, I think

6    it's more important than ever that we move the case forward.

7    And so that's really why we're here today, not to go through

8    the discovery disputes that we've listed, but because we would

9    like some finality at some point on those issues.

10           And we don't want that finality to be every single

11   time a motion before Your Honor, which will just further delay

12   the case, because obviously you have a lot of cases on your

13   docket.  So that's why we're making the request that we're

14   making.

15           THE COURT:  All right.  The Bank.

16           MS. TONN:  Thank you, Your Honor.  This is Gina Tonn

17   for Sunrise Banks.  Just as a point of context and background,

18   as you would have seen in the filing, Sunrise Banks was just

19   joined as a defendant in this case back in April of this year.

20   We are in the process of working through some discovery

21   disputes, including document production and negotiation of

22   search terms.

23           We don't currently have any discovery disputes with

24   plaintiffs that need to be presented to Your Honor, and we are

25   optimistic that we'll be able to work through some of the

Colloquy

1    negotiations with plaintiffs without bringing those to the

2    Court.  And because we don't have anything that needs to come

3    to the Court on a discovery dispute right now, we are not

4    joining the request for a special master.

5         We understand that there have been a high volume of

6    discovery disputes in this case from before we were joined as a

7    defendant and continuing up to the present, but we don't

8    currently join that request.  We don't oppose the request

9    either.  We understand that there's been a lot of disputes, but

10   at this time, we don't have any live disputes to present to the

11   Court.

12        THE COURT:  All right.  And plaintiff.

13        MR. JANOVE:  Thank you, Your Honor.  And just first to

14   start to add with Sunrise Banks, Gina and I exchanged emails

15   and also met and conferred just before this conference as we've

16   been exchanging information about search terms and timelines.

17   And I can represent -- and, Gina, please correct me if I'm

18   misrepresenting this -- but we're exchanging search terms and

19   hit counts.

20        I've spoken to Sunrise Banks.  We agree to their

21   proposal for a November 1st substantial completion of document

22   production deadline and a December 13th fact discovery deadline

23   to accommodate scheduling the remaining depositions.  So as for

24   Sunrise, I don't think we have -- and there are no present

25   disputes, and both Sunrise and plaintiffs are optimistic that

Colloquy

1   they will be able to resolve these without any court

2   intervention.

3           As to the GiftRocket defendants, I do agree with Mrs.

4   O'Neill that we want to move this case forward and avoid

5   unnecessary discovery disputes.  One issue that would make this

6   case move forward quickly is whether Defendants will respond

7   and hopefully agree to our comprehensive discovery compromise,

8   which we met with the GiftRocket defendants on July 24th.

9           I included this exhibit in the filings.  It's a

10  comprehensive proposal, which would move at least two-thirds of

11  the proposed potential future disputes that defense counsel has

12  put on as potential issues arising.  So I think, honestly, if

13  we can get a response on that compromise, so many of these

14  issues will be muted and we'll move forward.

15          I do acknowledge, of course, that there have been a

16  lot of discovery disputes in this case.  But I do think

17  given -- I don't think Plaintiff's positions have been

18  unreasonable, particularly given the track record and how the

19  discovery disputes have been resolved.

20          To the extent the GiftRocket defendants are unable to

21  come to an agreement with us -- for example, the July 24th

22  proposal may not be in line with what they want -- I don't see

23  any issue with us not briefing and filing motions to compel

24  that would be so extensive or unreasonable or unfounded that

25  this Court cannot quickly resolve them.

Colloquy

1          But again, the process for meeting and conferring has

2    completely stalled and really, what we need right now is the

3    GiftRocket defendant's agreement to meet, to discuss with us,

4    to respond to our July 24th discovery compromise, and for all

5    the parties to work together on scheduling the remaining

6    depositions.

7          MS. O'NEILL:  Your Honor, may I briefly respond?  This

8    is Megan O'Neill.

9          THE COURT:  All right.

10          MS. O'NEILL:  The first point I just wanted to raise

11    was that while I am always delighted to hear parties getting

12    along and not having discovery disputes, it was in fact

13    Sunrise's production -- and I am not in any way agreeing with

14    Plaintiff's position, which again, was why we brought this to

15    the Court.

16          Sunrise's production had absolutely nothing to do with

17    anything related to the mediation agreement and came out of

18    left field when Plaintiff raised that.  But it was in fact

19    plaintiff's complaint about Sunrise that led him to cancel the

20    mediation.

21          So while again, it's nice to hear that they worked out

22    a compromise today or yesterday after we asked for this

23    conference, it doesn't change the fact that it was, in fact,

24    what led him to cancel the mediation.  So these disputes do get

25    in the way of all sorts of things, including resolution of the

Colloquy

1    case ultimately.

2           And the second thing is just that Plaintiff's counsel

3    has stated -- by the way, for the record, it's Ms. O'Neill --

4    but Plaintiff's counsel has stated that there is a compromise

5    that's been sitting on the table to which we have not

6    responded.

7           But in fact, that is not the case and really

8    mischaracterizes what has happened, which is that the parties

9    jointly chose to focus on mediation and tabled all of those

10   discussions, and only when the mediation was canceled on August

11   19th due to Plaintiff's complaint about Sunrise's production,

12   did all of these things go back on the table, and one of the

13   main reasons that we came to the Court to ask for a special

14   master was what seemed like an egregious abuse of the discovery

15   process, which was --

16          THE COURT:  I think you need to stop.  I told you I

17   don't want to hear everything that's here.  Okay.  Stepping

18   back from this, two things.  Everybody needs to bring the

19   temperature down.  I mean, these letters are heated in an

20   absolutely unnecessary way.

21          And I think that you have to understand that while

22   this is not a huge case, it's a moderately big case because of

23   a couple of facts.  Number one, you're trying to have a class

24   and there may be a lot of information about that.  Number two,

25   it covers an extensive period of time of the defendant's

13

Colloquy

1   operations.

2          Third, you just brought in this bank and all of the

3   work that goes along with that, and forth, there are absolutely

4   unsettled questions of law in this case that are being -- some

5   have been teed up, others will be teed up.  So you are moving

6   through an uncertain field.

7          And how it will all work out to whom, or whichever

8   parties are happy with it, and who's upset, whatever, it will

9   happen, but it's going to be challenging and there is a good

10  amount of work and this discussion that there's a lot of

11  disputes, it doesn't seem to be an accurate description.

12         I would say there's not a lot of dispute.  There's a

13  lot of work.  And that means you have to work through what is

14  practical, what is doable, without a huge amount of, or an

15  extraordinary amount of expense that is proportionate to the

16  issues that I just identified as characteristics of this case.

17         And so nothing is egregious.  Nothing is terrible.  It

18  just is not what is going on here.  But these letters are

19  coming in with an unnecessary level of heated dialog, and it

20  needs to be brought down several degrees because I don't think

21  it's moving anyone forward.

22         That's the big picture because there are challenges

23  and I'm sure you can work through them, but you need to focus

24  on getting that done and being patient about the fact that

25  there is uncertainty.  So in terms of the relief that you do

Colloquy

1    request, because I hear there's a lot about your interactions

2    here, in the end, you're really not asking for all that much.

3         I did not need to hear about the mediation.  I get it.

4    It was a wrinkle.  It's a disappointment in some parts, but

5    mediation is absolutely voluntary.  You may be incentivized

6    differently along the way, depending on what happens with some

7    of the Court's decisions, either in discovery or in substance

8    on the motion practice.

9         If they're not ready -- plaintiff, if you're not ready

10   to do this, you're not ready.  And you can keep putting it on

11   the table.  I'll keep asking you about it.  But the fact that

12   it didn't go ahead there, then maybe some lost investment in

13   terms of any fees you paid or whatever, however all that works

14   out, thinking these things through, moving yourselves towards a

15   resolution is not going to be wasted because the kind of focus

16   that you need for being ready for mediation is going to be

17   similar to what you need in terms of highlighting, focusing,

18   getting the discovery done.

19        So I didn't need to hear all the information about the

20   mediation, but it's also not going to lead to any particular

21   result here other than the extent you want information not on

22   the public record about the characteristics of some of your

23   discussions, that's fine.

24        So the sealing can happen and the redacted copies can

25   happen.  So that's the mediation issue.  It's touched on in a

Colloquy

1    couple of the earliest letters.  I'm going to just flag things

2    that are mentioned with regard to discovery and then come back.

3    They have issues about deposition, the July 24th proposal, and

4    the overall timeline.

5        These are summarized at I think 185-1.  So we will

6    come back in a second to that.  We're not having a special

7    master.  This has gotten nowhere near the level of the volume

8    of discovery disputes that justify a special master.  You are

9    working through most of your disputes, and we can work on, if

10   necessary -- and I don't see you being at this point -- a

11   streamlined process for presenting disputes so that they don't

12   slow things down.

13       It really definitely doesn't seem like you're having

14   that kind of a problem, so there's no special master here.  In

15   terms of the discovery timeline, I think you do need some more

16   time.  You have all these issues that you're saying that you're

17   letting me know that they exist, but that you aren't asking us

18   to resolve or asking me to resolve it, which suggests to me

19   that you can resolve it yourself, and certainly should put your

20   focus on that.

21       The reason I think you reasonably need more time is

22   not because you have these disputes, but I do think Sunrise has

23   really come into this very, very recently compared to something

24   that has a 22-docket number.  So to be fair to Sunrise, and

25   also to you all dealing with Sunrise -- I guess it would be an

Colloquy

1    eight-month period, but really, the earlier discovery that was

2    a possible focus from some of the parties was the

3    jurisdictional issue, which you all worked out, but that was

4    built into that schedule.

5          So in terms of really the active time that Sunrise has

6    been involved in this, I think, is relatively short and

7    justifies having more time and taking Plaintiff's proposed

8    theory of this case as you've offered it.  While defendants are

9    separate entities, some of their activities, at least from

10   Defendant's position, are integrated.

11         And so even if you could say, well, there's different

12   tranches of discovery, there's the one for the defendants who

13   have already been in this for a while and the other for the

14   Bank.  I think it's important to see it together, to see

15   whether the theory is a viable theory and whether it should

16   persist against the Bank or not, but talking about the facts,

17   not about the legal theory, but anyway.

18         So we'll reset an outside date for resolving this.  I

19   mean, I should have said something more about the no special

20   master and the mediation issue.  I'm not striking anything, you

21   can (indiscernible) it and I'm not awarding any sanctions, and

22   you can continue to work through your disputes.

23         Okay.  So to go to the 188, just by way of example, is

24   your letter where you're giving us the, in quotes, a

25   non-exhaustive list of disputes that you really don't need to

Colloquy

1    have resolved, so I'm not doing anything with that.  But if you

2    can't work it out, you can let me know.

3         We have, I think in October, a first date for you to

4    give an update, and I think it might be a good idea to put a

5    conference date on it, and we'll do that in a little bit so

6    that we can discuss any of the issues that you raised.  Okay.

7    So going back to what I think are your outstanding issues.

8         Let me just make sure I've got everything.  All right.

9    So depositions.  Well, let's do it in a different order.  But

10   they're summarized.  185-1 is deposition, discovery compromise,

11   and the discovery schedule, which I've obviously

12   suggested/confirmed you're going to get some more time on that.

13        What's the defendant's position with regard to

14   responding to this July 24th proposal, which is plaintiffs say

15   they're waiting for you to respond?  What's your take on that?

16   Not the content, just the process of getting to a process.  You

17   might be on mute maybe.

18        MS. BURGHARDT-KRAMER:  Hi, Your Honor.  This is

19   Katherine Kramer for the GiftRocket defendants.  We've been in

20   touch with Plaintiff's counsel about these issues to let him

21   know that we were going to get back to him later this week,

22   which we're happy to do as Ms. O'Neill said.  All of these

23   issues were tabled for a long time because we thought we were

24   going to mediation.

25        THE COURT:  Okay.  All right.  Do you want to commit



Colloquy

1    to responding by the 30th?  Do you want some more time built

2    in, given this is the Labor Day weekend, or what?

3              MS. BURGHARDT-KRAMER:  Yeah, I think having some more

4    time -- so this is just for the issue of responding to the July

5    24th letter?

6              THE COURT:  The July 24th, yep.

7              MS. BURGHARDT-KRAMER:  I think if we could have until

8    September 6th.

9              THE COURT:  Yeah.  That's fine.  Okay.  So for that.

10   And then that's just your response.  If you all need to talk

11   more, you can talk more.  If it leads to identifying things

12   that you can't come to an agreement, that's fine.  So this is

13   just to try, as everybody's been suggesting, to move things

14   forward.

15             All right.  So the GiftRocket defense is going to

16   respond to the July 24th proposal from plaintiffs by September

17   6th.  All right.  And then thoughts about deposition scheduling

18   and let me make a couple observations having read all this.

19   There's a lot of talk about things needing to move in tandem.

20             I don't think that really makes any sense here.  These

21   depositions, at least as they're briefly described, the

22   players, they're not really related.  So you could have a track

23   of plaintiffs going forward, and you could have a track of

24   GiftRocket-related people going forward.

25             And once you get the documents from Sunrise, the

Colloquy

1    Sunrise-related folks going ahead.  My asterisk next to that

2    is, I think, to the best you can, you should only be doing the

3    depositions once, and if Sunrise is not caught up, depositions

4    should be scheduled in a way that they can usefully take their

5    examination of the witness.

6           So I think building that time in, in connection with

7    the exchange of information either to or from Sunrise, is

8    something useful for you all to consider.  But I think there

9    are cases where the order of the depositions is important

10   because there could be real concerns about someone tailoring

11   their testimony to the circumstance or getting an insight into

12   a situation, more common in a discussion or conversation, or

13   whatever, deposition or testimony about a single event.

14          You can imagine that.  I don't see that here at all.

15   So this is -- what are people's working schedules?  What are

16   your respective schedules in terms of being able to prep your

17   witness, prepare for the deposition, get it done?  I'm assuming

18   you're doing this by Zoom or some other similar platform so

19   that the travel shouldn't be anything significant, and again,

20   it's a heavy lift at the beginning, especially as you're

21   preparing for this, but really, you should be able to work out

22   this schedule.

23          So I really have two questions from this.  I'm not

24   ordering any particular priority, but what I want to know is

25   how close are you to having a fairly certain list of who you

Colloquy

1    want to depose and then moving towards the schedule.  And are

2    you looking at, at least for this first round of depositions,

3    by what, mid-October maybe, having at least the principals

4    done, and I understand, because of the mediation, you had a

5    different timeline, and you may still be refreshing your

6    calendars and exchanging information.

7            So my question is the general, again, process question

8    of how close are you to knowing what you're going to be working

9    on in say the next six weeks I guess we're looking at.  And I

10   mean, this is not the beginning of the deposition process,

11   but -- anyway, sorry.  Let's go Plaintiff, since it was in the

12   185-1 one where you say that you've put the question to the

13   floor, so what's your thinking about it, and then we'll hear

14   from defendants.

15           MR. JANOVE:  Thank you, Your Honor.  Yes, we're, I

16   would say, 90 percent of the way on terms of the opponents we

17   want to take.  We've noticed them.  We've sent over our

18   30(b)(6) topics, which the defendants can split among

19   individual defendants if they want.

20           So we're most of the way there.  I do want to say a

21   caveat that we aren't 100 percent certain on depositions as to

22   Sunrise Banks, given the status of the document production.

23   But generally speaking, I think the parties have a sense of the

24   potential opponents, and we can get those moving.

25           I only want to highlight that the first few weeks of

Colloquy

1   October are a little bit tough for deposition scheduling, both

2   for members of these law firms, but also for some of the

3   clients and the deponents, given the Jewish high holidays.  But

4   that's a long way of me saying we're pretty set in stone.  We

5   have a good sense and certainly, depositions can start getting

6   scheduled and move forward.

7           THE COURT:  Okay.  So let me ask you, do you want to

8   target something to push because the holidays are later this

9   year so that September is super productive, or are you

10  suggesting that we kind of need to -- you kind of need to get

11  to maybe like the first week of November by having gotten a lot

12  done that can kind of go either way.  What do you think?

13          MR. JANOVE:  I think we'd like to not push everything

14  to November.  We do have more documents.  Also, depending on

15  the timing of what the GiftRocket defendants say in response to

16  the July 24th compromise, what additional documents we might

17  get as a result of that compromise, or if we are unable to

18  compromise additional potential motion practice, there is

19  potential that it would help us to have a little bit more time

20  to get additional documents so that we are deposing the

21  witnesses with the full record we need and don't have to later,

22  we finally got a document in discovery, we really need to ask

23  about this, and have to reopen that.  But I think there are

24  certain witnesses that no longer are employed by either party

25  that we won't be expecting any new additional documents for.

Colloquy

1   So at least those we could try to prioritize in terms of

2   scheduling.

3          THE COURT:  Okay.  So kind of two things there, right?

4   If you're not doing it during the holidays, then we're really

5   looking at the first three weeks of October being maybe not so

6   available.  So I think you are looking at November.  And then

7   in terms of nonparty depositions, are these folks appearing

8   voluntarily or are you subpoenaing them, and is that process

9   started?

10         MR. JANOVE:  The defense counsel for GiftRocket and

11  Sunrise Bank had accepted service, and they are representing.

12  These are just former employees of the defendants.

13         THE COURT:  Okay.  All right.  So basically, if I

14  summarize, you're working on it.  You think if the compromise

15  is a successful compromise that may dictate some of the

16  direction of the depositions.  If it's not, you'll have things

17  to work out, and then that will affect the deposition schedule.

18         You hope to do some in September.  And even though you

19  suggested you want to avoid being in November, my calendar

20  would say that based on the timing considerations, you are

21  looking at November.  Okay.  On the defendant's side, any

22  thoughts about deposition?

23         MS. BURGHARDT-KRAMER:  Sure.  Thank you, Your Honor.

24  This is Katherine Kramer again for the GiftRocket defendants.

25  I think one of the concerns that we have is that before the

Colloquy

1    depositions got taken off calendar, we had a date for mid-

2    August for the last of the plaintiffs.  And so far, despite all

3    of the communications from plaintiffs and their statements

4    about being cooperative in this process and all of that,

5    they've refused to give us --

6            THE COURT:  Enough with the commentary.  Let's focus

7    on what needs to be happening.  This does not --

8            MS. BURGHARDT-KRAMER:  I think --

9            THE COURT:  -- help.  All right.  So you want to --

10    you want the last --

11           MS. BURGHARDT-KRAMER:  (Indiscernible) to get that

12    back on calendar is to get the -- the last plaintiff back on

13    calendar.  I think if we can nail down a date for that, it'll

14    significantly facilitate being able to get other things

15    scheduled.

16           THE COURT:  So who is it that you're looking for?

17           MS. BURGHARDT-KRAMER:  This is plaintiff WeCare, and

18    it's a 30(b)(6) and then also individual of the principal but

19    all on the same day.

20           THE COURT:  Okay.  Okay.  So you want the plaintiff.

21    And what about your general sense -- because it's your

22    witnesses, right, who at least is a big group of the potential

23    deponents.  Do you agree?  September is available.  It might be

24    affected by the documents.  The first two or three weeks of

25    October are difficult.  And then later in October, I'm the one

Colloquy

1   who's suggesting this means a little bit of November it would

2   be available.  Is that right?

3            MS. BURGHARDT-KRAMER:  Yeah.  Well, before the

4   depositions got taken off calendar, we had three defendant

5   witness depos scheduled and one Sunrise to occur before

6   mediation.  So I think as long as we can get a date for WeCare

7   that is going to happen sooner rather than later, those should

8   be relatively easy to schedule because everybody was in the

9   process of getting prepared for those.

10           We just took them off calendar because we were

11  planning to go to mediation.  So I think those should be

12  relatively easy to get back on calendar.  There are some

13  difficulties with the 36(b)(6) issues.  We need to work through

14  those.

15           We only got the topics from Plaintiff's counsel

16  relatively recently.  We're still working on responses to

17  those.  And then in conjunction with that, then figuring out

18  who the witnesses are going to be for the different 30(b)(6)

19  topics, because we do want to avoid having people depose more

20  than once.

21           So I think we'll be able to work through those issues,

22  hopefully, as long as we're getting reasonable positions and

23  responses from Plaintiff's counsel, whose ever to work through

24  all of those things and get the deposition scheduled.  We had

25  in mind, aiming for a close effect discovery for mid-December,

Colloquy

```
 1    which I think would give us enough breathing room.  My

 2    understanding is that Plaintiff's counsel had been in agreement

 3    with that as a target as well.

 4            THE COURT:  I think December 13th was mentioned

 5    earlier, right?

 6            MS. BURGHARDT-KRAMER:  Correct.

 7            THE COURT:  All right.  And then Sunrise, do you have

 8    any deposition issues right now?

 9            MS. TONN:  Thank you, Your Honor.  First, Sunrise

10    Banks, I think that as Mr. Janov mentioned, we've currently

11    stated that we'll aim for a substantial completion of documents

12    by November 1st, with the thought that most of our witnesses

13    would be deposed after our documents have been produced and

14    that window between early November and mid-December.  But we

15    are open to working with the other parties to put together a

16    schedule, whether things are on separate tracks, just to make

17    sure that people only need to be deposed once, as Your Honor

18    mentioned earlier in this conference.

19            THE COURT:  So are you able to participate in the

20    depositions that the plaintiff's and defendant's counsel are

21    deposing, meaning, are you going to -- have you had enough time

22    to catch up and be able to participate meaningfully?

23            MS. TONN:  Your Honor, I do anticipate that we will be

24    able to participate meaningfully if things are scheduled later

25    in September or October.  We did already participate in the two
```

Colloquy

1    plaintiff's depositions that were held earlier this summer.

2                THE COURT:  Okay.  All right.  Let's go back to

3    Plaintiff then.  What about this last plaintiff whose

4    deposition was deferred?  Can you get that entity and the

5    witness or witnesses back on track for the next couple of

6    weeks?

7                MR. JANOVE:  Your Honor, I've reached out to the

8    client, who told me the last week of summer before Labor Day.

9    And he's mentioned that, in principle, that he was going to ask

10   if the defense counsel can provide a few alternate dates given

11   his schedule.

12               The one issue with scheduling that deposition is that

13   we have objections to the 30(b)(6) topics and Defendants have

14   not yet met and conferred with us over our objections to the

15   WeCare topics.  So we at least need to meet and confer and get

16   to resolution on those topics before that deposition goes

17   forward.

18               So that's to say, I think, as Your Honor said earlier,

19   we should work on a schedule if not necessarily a potential

20   sequence, but at least we should meet, confer, make sure that

21   the parties are in agreement over the scope of the 30(b)(6)

22   testimony that they're requesting for the last plaintiff.  And

23   then if we resolve, we go forward.  If not, we might have to

24   bring that issue to the Court's attention.

25               THE COURT:  Sorry, I'm a little confused, though.  I

Colloquy

1    thought from Defendant's counsel's description that Plaintiff's

2    deposition was already on calendar.  So how did the content of

3    the deposition become uncertain at the moment, as you're

4    describing it?

5         MR. JANOVE:  Your Honor, if I may refrain, I don't

6    want to delve into more commentary, but basically, July 30th,

7    we served responses and objections to the 30(b)(6) topics

8    proposed for the third plaintiff.  And then we agreed to

9    mediate the GiftRocket defendant's offer to take off the

10   deposition in exchange for mediation.

11        Things kind of got into somewhat of a holding pattern,

12   so we still haven't met and conferred on those actual topics.

13   When we served that, our assumption was we're going to meet and

14   confer shortly, and hopefully, we come to a resolution on those

15   topics, and my deposition would go forward, if not, and we

16   didn't resolve those issues, we would do what would have to be

17   necessary if there was a disagreement on the topic in the scope

18   of questioning.

19        THE COURT:  All right.  I'm just looking at the

20   calendar.  All right.  I think you should be aiming to do the

21   postponed depositions by early October because it seems like

22   you had the momentum, you had the focus.  The witnesses knew

23   they were going to have to be available, and that puts you,

24   say, if we are talking about October 2nd, that's before the

25   holidays they're starting.

Colloquy

1      So I think get that far unless there's some very

2  difficult roadblock, then, whatever, we're going to adjust it,

3  but that's, I think, what you should be aiming for.  I'm just

4  looking at the other issues.  Okay.  So the other dates, right

5  now, what we have is by September 6th, the defendants are

6  responding to the July 24th proposal.

7      By October 2nd, you would, hopefully, conduct that

8  plaintiff's deposition that was rescheduled, as well as the

9  other depositions that were postponed.  Then also, October 1st,

10 you would give me an update.  And then you're working on

11 finishing the paper discovery, including the Sunrise material

12 by November 1st, and then December 13th, you are talking about

13 wrapping this up.

14     That's a fact discovery.  The other issues that you

15 had identified the schedule for, I think we're not going to set

16 those until we know more about how you're moving ahead and

17 where the motion practice may be.  Okay.  So are there other

18 immediate dates or issues?

19     MS. O'NEILL:  Your Honor, this is Megan O'Neill for

20 GiftRocket defendants.  Two issues.  One -- or I should say

21 proposal.  The first one would be we've agreed -- the parties

22 have agreed on this December 13th date.  But could we put a

23 date in of, say, December 18th for us to jointly submit a

24 proposal for the remaining dates?  That way it doesn't linger

25 for months afterwards and then the Court has to issue an order

Colloquy

1   for us to come back.

2           THE COURT:  That's for the class cert and the experts?

3           MS. O'NEILL:  Correct.

4           THE COURT:  Yeah.  That's fine.  I think that would be

5   a good time to do it.

6           MS. O'NEILL:  Great.  And then the second was just a

7   request for clarification.  You had talked about there were

8   filings where we'd asked for some of the settlement discussions

9   to be withdrawn altogether so that the Court did not see those,

10  and perhaps Your Honor has already seen them.

11          But we would like to avoid any other trial judge from

12  those things just being in the record period.  So if Plaintiff

13  would be agreeable, at this point, I don't know that there's

14  any need for it anymore, given we've had the discussion today.

15  So if  -- and that's ECF-185.  And if those substantive --

16  anything related to settlement discussions or offers could be

17  removed and then refiled.  I wasn't sure if Your Honor was

18  saying that should be done or was saying that it shouldn't be

19  done, but we wanted to clarify and then also make that request.

20          THE COURT:  All right.  So on the current record,

21  which I don't think has the plaintiffs agreeing, I don't think

22  this should be withdrawn.  I don't think it's a real concern

23  that we know about your particular process and -- whatever.

24  People take different positions all along and the Court may

25  know about it or might not know about it.

Colloquy

1          And we don't have enough information to put any of it

2     in a context to form any opinion about whether any particular

3     proposal is reasonable or unreasonable.  So I don't think it

4     has any effect on any decisions.  The ceiling was more for your

5     external considerations, which is if you're -- I have no idea,

6     your business competitors, anyone who might be interested in

7     the benefit or vulnerabilities that are generated by settlement

8     discussions, that that should be confidential.

9          As well as the sort of meta point that as far as

10    possible settlement discussions should be conducted with

11    relative freedom, certainly, what's in here can't be used as an

12    evidentiary point along the way of any kind of assessment.  But

13    it was filed with the Court.  We know about it.  I'm not taking

14    it out of the record.

15         But to go back to what I believe I said, which is that

16    you can feel -- I think you've already made this proposal --

17    but feel the parts of these letters that have to do with the

18    settlement process and/or the settlement discussion, the

19    particulars.

20         I know there's the back and forth about well, we

21    didn't really talk about the particulars until this got farther

22    along.  The whole thing about the back and forth, about

23    canceling the mediation, why, all of that, I don't think it's

24    relevant to anything that's really being decided.

25         I don't think it needs to be in the public record,

Colloquy

1    because it's an ancillary issue related to settlement and

2    settlement process.  So the short answer is no, I'm not taking

3    it out of the record, but it can be -- and when I say field, it

4    would mean the parties and parties counsel and the Court can

5    see the document, but the public can't.

6               All right.  Are there any other issues that need

7    resolution here?  Okay.  Let me go back to one point I made,

8    which is I have the October 1st date.  We set that because you

9    were going to have an upcoming conclusion to your fact

10   discovery.

11              I think it would be good to check in, and that is

12   after you hopefully will have done -- I'm hopeful that you'll

13   have done the depositions that we just talked about.  But I'll

14   look to you for some input as to whether that is a useful

15   juncture or do you want to push it out to say, November 1st,

16   which would be when Sunrise is coming in with all of their

17   materials and you're moving on to this next portion of your

18   process.  It's up to you.  I just want to make sure it's moving

19   along.

20              MS. BURGHARDT-KRAMER:  I think for the GiftRocket

21   defendants, we think it would be helpful to have another check-

22   in with the judge, with the Court, since we have the October

23   1st date on calendar.  Is that set for -- I'm sorry, I don't

24   have (indiscernible).  Is that for a filing?

25              THE COURT:  The order was for a filing, and before I'd



Colloquy

1    calendared the holidays, what I thought was we would then, if

2    we needed a conference, be able to have a phone conference,

3    say, a week later.  But I don't know what everyone's

4    availability is.

5            And then I think what I had said earlier today was

6    maybe we should tentatively put something on the calendar just

7    in case there does need to be follow-up, and if there isn't,

8    then we can take it off.  But you tell me your availability.

9            MS. BURGHARDT-KRAMER:  I think we're certainly open to

10   it.  Given the disputes that have come up so far, it may be

11   helpful to have something on the calendar to check back in and

12   provide the Court with an update.  I don't have a strong

13   feeling whether it's early October or early November.  I don't

14   know what Plaintiff's counsel thinks about that.

15           THE COURT:  All right.  What's your availability?  I

16   mean, I think if we're going to stick with the first filing, we

17   should put something on.  And I'll just throw out a date, which

18   would be, say, noon, East Coast time on Tuesday the 8th.  But

19   I'm being mindful of your holiday, school, et cetera, schedule.

20           MS. BURGHARDT-KRAMER:  It's fine for me, Your Honor.

21           THE COURT:  Okay.  How about somebody from Plaintiff's

22   side and someone for Sunrise?

23           MR. JANOVE:  Sorry, I was just looking at the high

24   holiday calendar.  Yes, that time works for plaintiffs.

25           THE COURT:  Rosh Hashanah is the first week of

Colloquy

1    October.  Yom Kippur is the 11th.  And then the third holiday,

2    I don't have it in front of me, but we're looking at the week

3    in between those two.

4            MR. JANOVE:  Yeah.

5            MS. TONN:  And October 8th works for Sunrise Banks as

6    well, Your Honor.

7            THE COURT:  All right.  All right.  So we're going to

8    say joint letter October 1st at noon, East Coast time, on the

9    8th.  And if it turns out you're all moving along swimmingly,

10   we'll take it off the calendar, but -- all right.  I have

11   confidence that you can do this.  Move it along smartly and

12   efficiently.  All right.  Thanks, everybody.  Have a good day.

13           MS. TONN:  Thank you, Your Honor.

14           MS. VITALE:  Thank you.

15           MS. O'NEILL:  Thank you, Your Honor.

16       (Proceedings concluded at 3:34 o'clock, p.m.)

17                        *  *  *  *  *

18

19

20

21

22

23

24

25

1                           C E R T I F I C A T I O N

2

3              I, Jeannine McFee, court-approved transcriber, do

4    hereby certify the foregoing is a true and correct transcript

5    from the official electronic sound recording of the proceedings

6    in the above-entitled matter.

7

8

9                                                  December 7, 2024

10   _____  _____

11   Jeannine McFee, CDLT-147                    DATE

12

13   eScribers, LLC
     7227 North 16th Street
14   Phoenix, AZ 85020
     www.escribers.net

15

16

17

18

19

20

21

22

23

24

25

(973) 406-2250 | operations@escribers.net | www.escribers.net