# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC., <br><br> Defendants. | Case No.: 1:22-cv-04019-RPK-VMS |

**DEFENDANT BENJAMIN KUBIC'S REPLY**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO**
**PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

1005141

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ...................................................................................................1

II.   ARGUMENT ........................................................................................................2

    A.    Plaintiffs Do Not Raise Disputed Issues of Fact so Their Attempt to Avoid Summary Judgment Fails .....................................................................3

        1.    That Mr. Kubic's involvement with the GiftRocket business was limited in nature remains undisputed.....................................................3

        2.    Plaintiffs point to no evidence demonstrating Mr. Kubic made key decisions about the GiftRocket product.......................................4

        3.    None of the facts Mr. Kubic disputes in Plaintiffs' Rule 56.1 Counterstatement are material to Mr. Kubic's motion. ............................5

    B.    Because the Law Is Clear that Mr. Kubic's Undisputed, Minimal Involvement with GiftRocket at the Direction of His Supervisor Could Never Establish Individual Liability, the Motion Should be Granted ....................6

        1.    Plaintiffs cite no cases finding liability under similar facts to those present here. ..........................................................................7

        2.    Although Plaintiffs' failure to articulate a theory of primary liability dooms their cross-motion, it does not affect the Court's ability to grant Mr. Kubic's motion. ...........................................9

    C.    The Court Should Reject Plaintiffs' New and Unsubstantiated Arguments about Trademark Infringement, Vicarious Liability, Joint Liability, and Contributory Liability ...........................................................................11

        1.    Mr. Kubic cannot be held liable for infringement given none is alleged, and Plaintiffs are judicially estopped from pursuing an infringement theory in any event. ...........................................11

        2.    There is no evidence Mr. Kubic can be held vicariously liable on Plaintiffs' Lanham Act claims, nor did Plaintiffs plead that theory of liability..............................................................................12

        3.    There is no evidence Mr. Kubic can be held jointly liable on Plaintiffs' Lanham Act claims, nor did Plaintiffs plead that theory of liability..............................................................................14

        4.    There is no evidence Mr. Kubic can be held contributorily liable under the Lanham Act, nor did Plaintiffs plead that theory of liability. ............................................................................14

    D.    Plaintiffs Cannot Prevail on their Premature and Procedurally Improper Cross-Motion Because There Has Not Been a Finding of Primary Liability Against GiftRocket ............................................................................15

i

E.      Mr. Kubic Is Entitled to Attorneys' Fees for Defending Against Plaintiffs'
        Baseless Claims ................................................................................................17

III.    CONCLUSION.............................................................................................................17

1005141

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbott Labs. v. Adelphia Supply USA*,
    2019 WL 5696148 (E.D.N.Y. Sept. 30, 2019) ............................................................. *passim*

*Aero AG Holdings, LLC v. Huggoes Fashion LLC*,
    2022 WL 6244439 (S.D.N.Y. July 5, 2022) ..........................................................................13

*Cartier v. Aaron Faber, Inc.*,
    512 F. Supp. 2d 165 (S.D.N.Y. 2007)..............................................................................6, 8

*Chanel, Inc. v. Veronique Idea Corp.*,
    795 F. Supp. 2d 262 (S.D.N.Y. 2011)..............................................................................7, 8

*Daimler AG v. A-Z Wheels LLC*,
    334 F. Supp. 3d 1087 (S.D. Cal. 2018)................................................................................8

*Enzo Biochem, Inc. v. Perkinelmer, Inc.*,
    2013 WL 5943987 (S.D.N.Y. Oct. 28, 2013) ......................................................................12

*GAKM Resources, LLC v. Jaylyn Sales, Inc.*,
    2009 WL 2150891 ................................................................................................................8

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
    176 F. Supp. 3d 137 (E.D.N.Y. 2016) ..................................................................................9

*Intellivision v. Microsoft Corp.*,
    484 F. App'x 616 (2d Cir. 2012) ........................................................................................12

*KatiRoll Co. v. Kati, Inc.*,
    33 F. Supp. 3d 359 (S.D.N.Y. 2014)....................................................................................8

*Kelly-Brown v. Winfrey*,
    717 F.3d 295 (2d Cir. 2013)........................................................................................12, 15

*May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*,
    2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022) ................................................................8, 15

*Mayfield v. Asta Funding, Inc.*,
    95 F. Supp. 3d 685 (S.D.N.Y. 2015)....................................................................................9

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
    537 F. Supp. 3d 414 (E.D.N.Y. 2021) ..................................................................................8

1005141

*Piccoli A/S v. Calvin Klein Jeanswear Co.*,
    19 F. Supp. 2d 157 (S.D.N.Y 1998)..........................................................................14

*Sandoval v. Credit Corp. Sols. Inc.*,
    2021 WL 3931352 (E.D.N.Y. Sept. 2, 2021) ..........................................................13

*Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*,
    2006 WL 7077215 (E.D.N.Y. Nov. 13, 2006)..........................................................14

*Soto v. City of New York*,
    132 F. Supp. 3d 424 (E.D.N.Y. 2015) .......................................................................5

*U.S. SEC v. Meltzer*,
    440 F. Supp. 2d 179 (E.D.N.Y. 2006) ......................................................................10

1005141

## I.    INTRODUCTION

Plaintiffs respond to Benjamin Kubic's summary judgment motion (the "Motion") by filing a cross-motion—despite failing to explain *for what* Mr. Kubic is supposedly individually liable (Plaintiffs leave the Court with a cliffhanger, stating it must wait for a future motion to find that out).  Given one cannot move for summary judgment without establishing the basis for liability, the Court should outright deny Plaintiffs' incomplete motion.  Any such motion would likewise fail on the merits because, not only did Mr. Kubic engage in no behavior that violated the Lanham Act or the New York General Business Law ("GBL"), neither did his employer.  GiftRocket.com is a website Mr. Kubic's employer (a tech company) launched 15 years ago to allow people to send monetary gifts to one another while suggesting businesses where the recipients could spend those gifts.  This case is thus far afield from the cases on which Plaintiffs rely where the defendants were, for example, counterfeiting Chanel bags or using the Mercedes-Benz three-point star design to sell blatantly infringing auto parts.

Importantly, Plaintiffs are unable to dispute the facts on which Mr. Kubic bases his motion for summary judgment.  Instead, they *characterize* Mr. Kubic's list of undisputed facts—which demonstrate his involvement with the GiftRocket product was sporadic and far from significant—as disputed, but this is because Plaintiffs contend those same facts (and a few similar ones) are sufficient to establish individual liability under the Lanham Act.  They are wrong.

According to Plaintiffs, an employee should be individually liable for the types of claims alleged here if they took *any* actions on behalf of their employer, even if (a) the actions were not tied to the alleged infringement (although Plaintiffs are not pursuing infringement here in any event); (b) the employee's involvement with the relevant product was insignificant; (c) the

1

employee did not create, design, or supply an infringing product; and (d) the employee had no ultimate authority to make decisions regarding the product or actions alleged to have violated the Lanham Act. But that is not the law. If it were, every employee at a company accused of violating the Lanham Act—from those on the assembly line to the customer service department—would face ruinous individual liability.

In response to Mr. Kubic's motion, Plaintiffs plainly scoured the record and pointed the Court to anything he ever did that related even tangentially to the GiftRocket product, including his questions to co-workers about how GiftRocket worked. But to prevail, Plaintiffs needed to point to *specific conduct by Mr. Kubic* that would *give rise to Lanham Act liability*. They didn't. Despite attaching 79 exhibits, Plaintiffs point to no evidence on which a reasonable juror could rely to find Mr. Kubic personally liable for any claims here. The undisputed evidence confirms there has never been a basis for Mr. Kubic to be named personally in this lawsuit. This Court should therefore grant summary judgment in Mr. Kubic's favor and award him fees.

## II.    ARGUMENT

Even taking into account everything Plaintiffs identified regarding Mr. Kubic's involvement with GiftRocket, no reasonable juror could find him to be an active, moving, conscious force behind GiftRocket's purported violations of the Lanham Act. Nor is there evidence Mr. Kubic personally participated in conduct that violates the New York GBL. Due to the lack of evidence supporting any individual liability, the Court should grant Mr. Kubic's motion. The Court need not first determine Plaintiffs' exact theory of primary liability against GiftRocket, which Plaintiffs have not yet set forth, because no matter what that is, Mr. Kubic bears no liability here.

Plaintiffs also make arguments about trademark infringement, vicarious liability, joint liability, and contributory liability, but those are unsubstantiated by the record and were never

2

pled in the operative complaint. The Court should thus ignore them in granting Mr. Kubic's motion.

### A.     Plaintiffs Do Not Raise Disputed Issues of Fact so Their Attempt to Avoid Summary Judgment Fails

Simply saying something is disputed does not make it so. Mr. Kubic is entitled to summary judgment here because none of the evidence Plaintiffs submitted successfully contests the undisputed facts regarding Mr. Kubic's lack of significant involvement in the GiftRocket business.

#### 1.     That Mr. Kubic's involvement with the GiftRocket business was limited in nature remains undisputed.

None of the evidence Plaintiffs include in their Opposition and Cross-Motion creates a genuine dispute of material fact concerning Mr. Kubic's minimal involvement with the GiftRocket business. In his Rule 56.1 statement, Mr. Kubic submitted:

> [He] had only minimal, infrequent involvement with the GiftRocket business, such as performing the following types of tasks: in May and June 2023, at Mr. Baum's direction, looking into alternatives to the Yelp API for the Giftrocket.com website and providing feedback to Mr. Baum about potential options; working with Sunrise Banks and SouthState Bank to facilitate a transfer of all of Tremendous's funds held by Sunrise (a portion of which would have included funds associated with giftrocket.com) to SouthState; and receiving e-mails sent to the GiftRocket customer support inbox that were forwarded to him by individuals in the customer support function.

SUF ¶ 15. None of the evidence Plaintiffs submitted is to the contrary.

Specifically, Plaintiffs provide documents showing the following, all of which were *already* identified in the Motion as examples of Mr. Kubic's lack of significant involvement with GiftRocket (or, to the extent they were not in the Motion, further highlight his lack of involvement):

- GiftRocket's CEO asked Mr. Kubic to identify possible replacements for the Yelp API platform for the GiftRocket website (which Mr. Kubic then did) and which occurred in or around May 2023—ten months after this lawsuit was filed, two

1005141

months after Mr. Kubic was named as a defendant, and over a decade after the company was founded;

- Mr. Kubic had informal discussions with other co-workers about how the GiftRocket business worked and their musings as to whether their bosses should manage the business differently;

- Mr. Kubic interacted with the Tremendous and GiftRocket's customer support functions, including occasionally receiving customer complaints and business removal requests and discussing the Better Business Bureau ratings for giftrocket.com and tremendous.com; and

- Mr. Kubic communicated with Sunrise Banks and South State Banks about the Tremendous and GiftRocket products.

*See* Opp. 17–19.

Again, Mr. Kubic's own motion acknowledges he had *some* involvement in the GiftRocket business, so Plaintiffs' response does not change anything or raise a "dispute." Rather, their evidence further demonstrates Mr. Kubic had only a minimal role in the conduct at issue in this lawsuit and did not have control or authority over any of the relevant decisions. *See* SUF ¶ 15. For example, Plaintiffs point to the fact that Mr. Kubic asked his co-worker how the GiftRocket website worked. *See* Plfs' Ex. 30 (Mr. Kubic asking Jane Chang, "do we have any sort of page on GR letting business owners know where they can ask to have their businesses removed?"). Needless to say, asking a question does not establish individual liability for a Lanham Act claim. If anything, Mr. Kubic's lack of familiarity with GiftRocket reinforces that he was never an active, moving, conscious force. Nor do Plaintiffs attempt to explain how (or cite authority holding that) managing an employee in customer service gives rise to liability.

### 2. Plaintiffs point to no evidence demonstrating Mr. Kubic made key decisions about the GiftRocket product.

Significantly, Plaintiffs do not dispute Mr. Kubic was **not** involved in the initial GiftRocket product design and did **not** create the feature that enables customers to suggest businesses where gift recipients could spend the funds gifted to them. Pls.' Resp. SUF ¶ 9. Nor

do Plaintiffs dispute that the term "gift card" was initially adopted and used on the GiftRocket website **long before** Mr. Kubic joined the company, *see id.* ¶ 11, and that GiftRocket's founders determined its advertising strategy well before Mr. Kubic joined, *see id.* ¶ 12.  Plaintiffs instead point to facts regarding tasks assigned to Mr. Kubic, *see, e.g.*, Plfs. Resp. SUF ¶ 10 (relying on Mr. Kubic's role in researching the switch from Yelp API to Google Places API, notwithstanding that it was done at Mr. Baum's direction, and on Mr. Kubic's instruction to Jane Chang to remove businesses from the website, pursuant to company policy).  But none of this (or any other evidence) shows Mr. Kubic had decision-making authority or made any key *decisions*, which is what is relevant here.

### 3.    None of the facts Mr. Kubic disputes in Plaintiffs' Rule 56.1 Counterstatement are material to Mr. Kubic's motion.

Plaintiffs set forth numerous extraneous facts about the GiftRocket and Tremendous businesses in their Rule 56.1 Counterstatement to manufacture factual disputes they argue are germane to this motion.  However, none of these disputes are material to whether Mr. Kubic can be held individually liable under the governing legal standards,[1] so the Court should disregard them.  *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material . . . Factual disputes that are irrelevant or unnecessary will not be counted."); *Soto v. City of New York*, 132 F. Supp. 3d 424, 434 n.16 (E.D.N.Y. 2015) ("Because these facts are immaterial, the Court does not consider them in resolving the parties' motions for summary judgment.").  These irrelevant assertions include, for example, inaccurate statements concerning the redemption options available on the GiftRocket

---

[1] As set forth in Mr. Kubic's responses to Plaintiffs' 56.1 Counterstatement, the only facts in dispute are those that do not bear on his motion for summary judgment.  The facts he disputes relate solely to Plaintiffs' (unidentified) theory of primary liability against the entity defendants on the Lanham Act claims, not to Mr. Kubic's actions.

website.  *See, e.g.*, Plfs' Counterstatement ¶ 32 ("The only way a recipient of a GiftRocket gift could use funds gifted for use at a 'suggested' business would be to provide their bank account information, have the money transferred to their account, and then go spend the money at the business.").  After reading these allegations regarding GiftRocket, the Court is likely to ask: Why does this matter to a motion regarding Ben Kubic?  It does not.  Whether or not Plaintiffs' purported fact regarding redemption methods is accurate (and it is not, *see* Def's Resp. Plfs' Counterstatement ¶ 32), it has no bearing on whether Mr. Kubic is liable to Plaintiffs.  The same is true of many other facts Plaintiffs proffer here.  *See, e.g.*, Plfs.' Counterstatement ¶ 33 ("There's no evidence that any GiftRocket recipient actually . . . used those funds at the 'suggested' business."); *id.* ¶ 34 (stating recipients could redeem their gift "for a merchant-branded gift card at a business other than the one that was suggested").

### B.     Because the Law Is Clear that Mr. Kubic's Undisputed, Minimal Involvement with GiftRocket at the Direction of His Supervisor Could Never Establish Individual Liability, the Motion Should be Granted

Plaintiffs do not disagree that, unless Mr. Kubic could be found to be a "moving, active, conscious force" behind any actions that purportedly violated the Lanham Act and/or constituted unfair competition, summary judgment must be granted in Mr. Kubic's favor.  *See* Mot. 6 (citing *Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007)); Mot. 14–16; Opp. 15 & n.4.  The parties thus disagree only as to whether Mr. Kubic's actions rise to the level of a "moving, active, conscious force."  In an attempt to make their case, Plaintiffs point the Court to every single thing Mr. Kubic ever did or said related to GiftRocket (none of which is at odds with his Rule 56.1 Statement).  But even taking these facts at face value, Mr. Kubic's level of

involvement is nowhere near what the law requires to impose direct liability under the Lanham Act.[2]  *See* Mot. 5–13.

While Plaintiffs mischaracterize the Motion as arguing that, "because he did not devote a substantial amount of time to GiftRocket.com, he cannot be held liable," Opp. 16, Mr. Kubic does not base his Motion on the (small) amount of time he spent on GiftRocket.  Instead, he seeks summary judgment because the substance of what he did, and his mere following of directions in taking those actions, does not meet the standard for liability under any of the tests courts have employed.  *See* Mot. 6–9 (discussing four factual scenarios in which courts have found corporate officers to be "moving, active, conscious" forces, none of which are met here).

1.    **Plaintiffs cite no cases finding liability under similar facts to those present here.**

Unsurprisingly, Plaintiffs were unable to identify even one case holding that an employee who joined a business a decade after it was created could be individually liable under the Lanham Act.  And, while Plaintiffs contend Mr. Kubic is somehow liable because he did not force his employers—the owners of the GiftRocket business—to shut their company down, *see* Opp. 19, the authorities on which Plaintiffs rely say no such thing.

Not only do the cases Plaintiffs cite fail to establish Mr. Kubic's liability, they also reinforce the arguments in the Motion by showing that courts imposing individual liability only do so under very different circumstances than those present here.  *See Abbott Labs. v. Adelphia Supply USA*, 2019 WL 5696148, at *17 (E.D.N.Y. Sept. 30, 2019) (finding *co-founder*, president, and owner individually liable); *Chanel, Inc. v. Veronique Idea Corp.*, 795 F. Supp. 2d

---

[2] Plaintiffs argue Mr. Kubic's Motion "mistakenly suggests that a director *must* be a 'sole shareholder or employee' to impose individual liability."  Opp. 20.  Not so.  The Motion makes clear the "sole shareholder, owner, or employee" theory is one of four situations in which courts have held corporate officers directly liable under the moving, active, conscious force standard.  Mot. 7.

262, 267 n.3, 269 (S.D.N.Y. 2011) (finding individual defendant in counterfeiting case who "admitted that he had concerns about purchasing inauthentic Chanel-branded merchandise" but "[n]onetheless . . . continued to purchase and sell . . . products bearing the Chanel Mark" liable); *GAKM Resources, LLC v. Jaylyn Sales, Inc.*, 2009 WL 2150891, at *4 n.3, *5 n.4 (S.D.N.Y. July 20, 2009) (entering *default* judgment in counterfeiting case with little discussion of specific actions taken by individual found liable other than his purchase and sale of counterfeit products); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1106 (S.D. Cal. 2018) (concluding individual defendant may be found personally liable for trademark infringement where the individual testified he operated the company's username on Amazon, set the prices for the products, and directed employees as to which products to remove and list on the company's own website); *Cartier*, 512 F. Supp. 2d at 170 (holding individual defendant was "moving, active conscious force" behind corporate defendant's infringement of trademarks because evidence showed he had "personally arranged for the watches to be purchased, modified, and offered for sale"); *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, 2022 WL 4539577, at *4 (E.D.N.Y. Sept. 28, 2022) (finding allegations that individual defendants "imported large quantities of infringing products into this district and distributed them to stores here" sufficient to plead trademark infringement and unfair competition); *Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F. Supp. 3d 414, 428 (E.D.N.Y. 2021) (finding allegations individual defendants "personally directed and authorized the creation, distribution, and use of the infringing materials, including the Pure Wave Mark in the Mighty Bliss User Manual" sufficient to plead individual liability for trademark infringement (cleaned up)); *KatiRoll Co. v. Kati , Inc.*, 33 F. Supp. 3d 359, 370 (S.D.N.Y. 2014) (denying employee defendants' motion to dismiss and finding allegations individual defendants "direct[ed] the activities of [the company]" and "received training on trade

secret and proprietary . . . information [about the plaintiff company]" sufficient to plead trade dress infringement claims); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 170–73 (E.D.N.Y. 2016) (finding individual defendants liable where one was sole owner of company and signed packing slips accompanying counterfeit products; one met every week with co-defendant to discuss operation and placed orders for blank bottles in which counterfeit product was packaged; and one placed orders for counterfeit labels and signed purchase orders).

Because no reasonable juror could find Mr. Kubic was a moving, active, conscious force based on the undisputed record, Mr. Kubic is entitled to summary judgment on Plaintiffs' Lanham Act and common law unfair competition claims.

The Court should also enter summary judgment in Mr. Kubic's favor on Plaintiffs' GBL claims. Mot. 13–14. A corporate officer can only be individually liable under the GBL if there is evidence that he personally participated in the alleged misconduct that purportedly violates the GBL. *Id.* (citing *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015)). Here, Plaintiffs point to no evidence Mr. Kubic personally participated in the allegedly false advertising regarding "gift cards" or otherwise violated the GBL. Nor do they cite a single case holding an individual liable under the New York GBL.

> ## 2. Although Plaintiffs' failure to articulate a theory of primary liability dooms their cross-motion, it does not affect the Court's ability to grant Mr. Kubic's motion.

As addressed above, Plaintiffs have filed an improper and premature cross-motion for summary judgment. The Court can—and should—grant Mr. Kubic's Motion, notwithstanding that Plaintiffs have not articulated a primary theory of liability against the entity defendants on their Lanham Act claims. *See* Opp. 2–3 n.2. To prevail on his Motion as to the Lanham Act claims, Mr. Kubic need only show no reasonable juror could find Mr. Kubic to be a moving,

active, conscious force behind the activities alleged to give rise to Plaintiffs' claims.  Because the

undisputed evidence shows Mr. Kubic was not the moving, active, conscious force behind

anything relevant to Plaintiffs' claims, the Court need not parse the nuances of Plaintiffs' legal

theories.  Indeed, as set forth above, the factual record shows Mr. Kubic's involvement with

GiftRocket, while not non-existent, was quite minimal, and that he ***had no authority or control

over the GiftRocket product***.  As a result, Mr. Kubic could not be found individually liable,

regardless of what specific claims or legal theories Plaintiffs have asserted or attempt to later

assert.

However, the inverse is not true:  the Court cannot find Mr. Kubic to be the moving,

active, conscious force behind GiftRocket's alleged Lanham Act violations without first

determining whether GiftRocket is primarily liable for those violations (which is not an issue

currently before the Court).  *See Abbott Labs.*, 2019 WL 5696148, at *16 (noting "there must be

a finding of a direct or primary liability" where a business is alleged to have engaged in

infringement for "[i]ndividual defendants [to] be held personally, contributorily, or vicariously

liable").  For Plaintiffs to prevail on their cross-motion, they must show they are entitled to

judgment as a matter of law on *all* elements of their claims, which they cannot do on the

undeveloped basis presented.  *See U.S. SEC v. Meltzer*, 440 F. Supp. 2d 179, 187 (E.D.N.Y.

2006) ("Where the non-moving party would bear the ultimate burden of proof on an issue at trial,

the burden on the moving party is satisfied if he can point to an absence of evidence to support

an essential element of the non-movant's claim.  By contrast, [a] plaintiff moving for summary

judgment bears a much greater initial burden; it must show that the evidence supporting its

claims is so compelling that no reasonable jury could return a verdict for the defendant."

(citations omitted)).

10

1005141

**C.    The Court Should Reject Plaintiffs' New and Unsubstantiated Arguments about Trademark Infringement, Vicarious Liability, Joint Liability, and Contributory Liability**

Plaintiffs endeavor to distract the Court from the simple issue presented—that Mr. Kubic cannot possibly have individual liability related to GiftRocket—by asserting multiple legal theories they either expressly disclaimed during the litigation or have never pleaded (and are not supported by the record in any event).  Accordingly, these belated, ill-fitting legal theories do not change the outcome here

**1.    Mr. Kubic cannot be held liable for infringement given none is alleged, and Plaintiffs are judicially estopped from pursuing an infringement theory in any event.**

In their Opposition and Cross-Motion, Plaintiffs repeatedly claim Mr. Kubic approved and authorized "infringing conduct."  *See, e.g.*, Opp. 19 (referring to GiftRocket's "infringing conduct" and "infringing activities."); *id.* at 16 (asserting Kubic "must have approved of the infringing act and was also a direct participant in the infringing activity.").  As an initial matter, Plaintiffs have not pointed to any infringement by Mr. Kubic, nor could they.  Plaintiffs would also be judicially estopped from pursuing such theories given they previously asserted they were *not* bringing an infringement claim.  *See, e.g.*, ECF No. 74 at 2 (Plaintiffs arguing, in opposition to the GiftRocket Defendants' motion to compel discovery on the protectability of marks, "This is not a trademark infringement case like the authority Defendants rely on."); March 27, 2024 Order (Scanlon, J.) (denying GiftRocket Defendants' motion to compel discovery on protectability); ECF No. 151 at 14 (Plaintiffs asserting, in opposition to GiftRocket Defendants' objection to Judge Scanlon's Order, the GiftRocket Defendants' "discovery requests seek evidence concerning claims that Plaintiffs do not assert: claims for infringement of a trademark, trade name, or service mark. That is not pled here."); November 12, 2024 Order (Kovner, J.) (overruling GiftRocket Defendants' objection to Judge Scanlon's March 27, 2024 Order

11

regarding protectability of marks); *Intellivision v. Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (affirming district court's application of judicial estoppel doctrine, which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another place" (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))); *Enzo Biochem, Inc. v. Perkinelmer, Inc.*, 2013 WL 5943987, at *4–5 (S.D.N.Y. Oct. 28, 2013) (holding that "because [the] four newly asserted contract claims at issue here were not alleged in the [c]omplaint, they are not properly before the Court" on summary judgment).

### 2.    There is no evidence Mr. Kubic can be held vicariously liable on Plaintiffs' Lanham Act claims, nor did Plaintiffs plead that theory of liability.

The Court should likewise reject Plaintiffs' attempt to argue Mr. Kubic could be liable here under a vicarious liability theory.

*First*, an individual can only be vicariously liable under the Lanham Act if the individual "and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties[,] or exercise joint ownership or control over the infringing product." *Abbott Labs.*, 2019 WL 5696148, at *16 (quoting *Kelly-Brown v. Winfrey*, 717 F.3d 295, 314 (2d Cir. 2013)). Plaintiffs cite to no such evidence here. Indeed, the sole summary judgment case on which Plaintiffs rely is distinguishable on that basis. *See id.* at *19 (finding individual vicariously liable where he was a general partner and withdrew money from the business accounts for himself during the relevant time period).

Plaintiffs argue the standard is satisfied here, claiming Mr. Kubic had the authority to bind GiftRocket in transactions with third parties. *See* Opp. 16, 21. But Plaintiffs miss the point, and misstate the law—the inquiry is *not* whether Mr. Kubic can bind GiftRocket to third parties but whether Mr. Kubic and GiftRocket *can bind one another*. Plaintiffs do not—and cannot—

point to any evidence **GiftRocket** could bind **Mr. Kubic** to transactions with third parties. Neither signing GiftRocket, Inc.'s certificate of surrender with the California Secretary of State[3] nor agreements as a corporate officer on behalf of Tremendous, Inc., Tremendous, LLC, or GiftRocket, Inc. show that any of the GiftRocket entities could reciprocally bind Mr. Kubic. *See* Opp. 21. There is also no evidence of a partnership between Mr. Kubic and the entity defendants or joint ownership and control over the GiftRocket product.

*Second*, Plaintiffs cannot defeat Mr. Kubic's motion or prevail on their own cross-motion by relying on a theory of liability not pleaded in their complaint. *See, e.g.*, *Sandoval v. Credit Corp. Sols. Inc.*, 2021 WL 3931352, at *4 (E.D.N.Y. Sept. 2, 2021) ("Courts have repeatedly held that it is improper to consider claims not asserted in the complaint and raised for the first time at the summary judgment stage.") (collecting cases). Plaintiffs' operative complaint alleges only that Mr. Kubic is liable because he "was a moving, active, conscious force behind the unlawful action of GiftRocket." ECF No. 137 ¶ 46. But whether a corporate officer is a "moving, active, conscious" force relates **only** to personal or direct liability, not to secondary liability. *See, e.g.*, *Abbott Labs.*, 2019 WL 5696148, at *16 (discussing different standards for personal liability, vicarious liability, and contributory liability). Plaintiffs thus have not pled vicarious liability and cannot rely on that theory now.[4]

---

[3] *See, e.g.*, *Aero AG Holdings, LLC v. Huggoes Fashion LLC*, 2022 WL 6244439, at *19 (S.D.N.Y. July 5, 2022) ("[E]xecution of [a state] [c]ertificate does not evidence an apparent or actual partnership, involve a transactions [sic] with a third party, or connect him to the distribution of the allegedly infringing products").

[4] Plaintiffs chose not to amend their claims to include theories of secondary liability even after June 2023, when Mr. Kubic raised that Plaintiffs had not pleaded their alternative theories of liability in his motion to dismiss. *See* ECF No. 88-1 at 16.

13

**3.    There is no evidence Mr. Kubic can be held jointly liable on Plaintiffs' Lanham Act claims, nor did Plaintiffs plead that theory of liability.**

Likewise, Mr. Kubic cannot be held jointly liable on Plaintiffs' Lanham Act claims because there is no evidence to support such a theory, and Plaintiffs did not plead it.  In their brief, Plaintiffs assert joint liability "may be imposed on [a]ll those who, in pursuance of a common plan to commit an act which is tortious, actively take part in it, or further it by cooperation or request, or lend aid or encouragement, or ratify and adopt the acts done, for they are as equally liable as the person who performs the tortious act itself."  Opp. 14 (cleaned up); *see also* Opp. 22.  However, the authorities on which Plaintiffs rely (all of which involve joint tortfeasor liability) illustrate that the same legal standard governing vicarious liability applies to joint liability.  *See, e.g.*, *Santana Prods., Inc. v. Sylvester & Assocs., Ltd.*, 2006 WL 7077215, at *10 (E.D.N.Y. Nov. 13, 2006) ("Finding individuals or companies liable as joint tortfeasors requires showing that 'the defendant and the direct infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product.'" (citation omitted)); *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 173–74 (S.D.N.Y 1998) (articulating same standard); 4 McCarthy Trademarks § 25:23 (5th ed.) (same).  Accordingly, as discussed, because there is no evidence GiftRocket can bind Mr. Kubic in transactions (nor is there any evidence of a joint venture or partnership), Mr. Kubic cannot be held jointly liable.  In addition, because Plaintiffs never pleaded this theory, Plaintiffs cannot now rely on it to avoid summary judgment.

**4.    There is no evidence Mr. Kubic can be held contributorily liable under the Lanham Act, nor did Plaintiffs plead that theory of liability.**

Further, Plaintiffs point to no evidence or case law suggesting Mr. Kubic can be held contributorily liable under the Lanham Act, nor did they plead that theory.  *See* Opp. 22.  A defendant can only be held contributorily liable under the Lanham Act if there is evidence he

14

"(1) intentionally induced the primary infringer to infringe, or (2) continued to supply an infringing product to an infringer with the knowledge that the infringer is mislabeling the particular product supplied." *May Flower*, 2022 WL 4539577, at *4 (quoting *Kelly-Brown*, 717 F.3d at 314). It is undisputed Mr. Kubic joined the company over a decade after the GiftRocket business was created, and Plaintiffs point to no evidence he "intentionally induced" GiftRocket to do anything (nor could they). There is also no evidence Mr. Kubic provided the means for GiftRocket to commit any Lanham Act violations. While Plaintiffs argue Mr. Kubic's research into the Google Places API constitutes supplying the means for a Lanham Act violation, they cite no authority likening a preliminary research project at the boss's request to supplying an infringing product to an infringer.[5]

Because Plaintiffs do not plead or have evidence of contributory liability under the Lanham Act, the Court should enter summary judgment for Mr. Kubic.

**D.      Plaintiffs Cannot Prevail on their Premature and Procedurally Improper Cross-Motion Because There Has Not Been a Finding of Primary Liability Against GiftRocket**

The Court should deny Plaintiffs' cross-motion for summary judgment. It is premature and procedurally improper,[6] and Plaintiffs fail to articulate a theory of primary liability against the entity defendants on their Lanham Act claims. *See* Opp. 2–3 n.2 ("Plaintiffs are not currently asking the Court to determine whether Plaintiffs have proven their substantive claims. They expect to move for summary judgment on liability after class certification in accordance with the

---

[5] Plaintiffs cite only one case to support their theory of contributory liability, *May Flower International*, but in that case, the court never reached the issue of contributory liability. *See* 2022 WL 4539577, at *4 (relying instead on "theory of direct liability").

[6] Plaintiffs ignored the Court's procedural rules for summary judgment motions. Plaintiffs' cross-motion is not authorized by the Court's scheduling order, *see* Feb. 10, 2025 Order, and should be stricken for failure to follow the Court's pre-motion letter requirement, *see* Individual Practice Rules of Hon. Rachel P. Kovner Section IV.A.

schedule set by the Court."). Plaintiffs, in essence, set forth only a portion of a summary judgment motion. They represent they will fill in the gaps later, yet ask the Court to make a ruling that Mr. Kubic is liable as a matter of law. Summary judgment does not work that way.

Because there has been no showing of primary liability against GiftRocket, Plaintiffs' motion against Mr. Kubic is improper. How can Mr. Kubic possibly be individually liable for *GiftRocket's* alleged violations of the Lanham Act when there has not been a finding *GiftRocket* violated the Lanham Act and is liable itself? This defies common sense and runs counter to the law. As one of Plaintiffs' own cases instructs, "Individual defendants may be held personally, contributorily, or vicariously liable for [violations of the Lanham Act where the business is alleged to have engaged in infringement]. But for a defendant to be so held, there must be a finding of direct or primary [liability]" against the business. *Abbott Labs.*, 2019 WL 5696148, at *16.

At bottom, Plaintiff cannot prevail on a summary judgment motion when they cannot even articulate the conduct for which they seek to hold Mr. Kubic individually liable. Plaintiffs' vague cross-motion fails to identify what acts GiftRocket allegedly undertook, and which Mr. Kubic allegedly directly engaged in or authorized in violation of the Lanham Act. *See* Opp. 18 ("Not only does the undisputed evidence show that Mr. Kubic was corporate officer [sic] that authorized and approved the acts at issue . . ."); *id.* at 19 ("After the restructuring in June 2023, which Mr. Kubic led, he continued to directly participate and authorize the unlawful conduct . . . Mr. Kubic was [also] directly involved in, authorized and approved of Tremendous LLC's decision and efforts to continue GiftRocket.com's misconduct.").

16

E.     **Mr. Kubic Is Entitled to Attorneys' Fees for Defending Against Plaintiffs' Baseless Claims**

Upon granting summary judgment in Mr. Kubic's favor, the Court should award Mr. Kubic attorneys' fees for having to defend Plaintiffs' baseless claims against him. Mot. 16–17. Plaintiffs misconstrue the basis of Mr. Kubic's request for fees. Opp. 25 ("It is unfathomable how Mr. Kubic could have incurred $250,000 in legal fees when his motion is barely 17 pages and contains hardly any record evidence."). Mr. Kubic does not seek fees solely for the motion for summary judgment itself, but rather for all fees incurred (as authorized by the Lanham Act) in defending himself in a completely frivolous litigation for two years—a litigation in which Plaintiffs continue to ignore the legal standards governing their claims, as further evidenced by their Opposition and Cross-Motion. *See* Mot. 16–17.

III.     **CONCLUSION**

For the reasons set forth above, Mr. Kubic respectfully requests the Court (1) enter summary judgment in his favor on all claims and dismiss him as an individual defendant from this action with prejudice; (2) award him costs and attorneys' fees; and (3) deny Plaintiffs' cross-motion for summary judgment and fees.

Respectfully submitted,

Dated: March 25, 2025             DTO LAW

_/s/ Megan O'Neill_
Megan O'Neill (Admitted *pro hac vice*)
DTO LAW
702 Marshall Street, Suite 640
Redwood City, California 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105
Email: moneill@dtolaw.com

1005141

Katherine Burghardt Kramer
Kevin P. Westerman
Grace E. Schmidt
DTO LAW
307 5th Avenue, 12th Floor
New York, New York 10016
Telephone: (213) 335-6999
Facsimile:  (213) 335-7802
Email: kkramer@dtolaw.com
Email: kwesterman@dtolaw.com
Email: gschmidt@dtolaw.com

Attorneys for Defendants GiftRocket,
Inc., Tremendous, Inc., Nicolas Baum,
Kapil Kale, Jonathan Pines, Benjamin
Kubic, GiftRocket LLC, Tremendous
LLC, and Tremendous Parent, Inc.

.

1005141

CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I hereby certify that this brief contains 5,424 words, including footnotes but excluding text specified in Rule 7.1(c).  The brief comports with the page limit set forth in the Individual Practices of Rachel P. Kovner.  *See* Indiv. Prac. Rules of Judge Rachel P. Kovner IV.C.2.

Dated: March 25, 2025

        */s/ Megan O'Neill*
        Megan O'Neill