

Megan O'Neill
moneill@dtolaw.com

August 22, 2025

**VIA ECF**

The Honorable Vera M. Scanlon
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Gracie Baked LLC, et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019-RPK-VMS

Dear Judge Scanlon:

**GIFTROCKET'S SECTION**

Defendant GiftRocket LLC ("GiftRocket") moves to compel Plaintiffs' compliance with Federal
Rule of Civil Procedure 26(b)(4)(E) by reimbursing GiftRocket for $13,500 in expert fees.

**A.    Rule 26(b)(4)(E)'s Plain Language Mandates Plaintiffs Pay GiftRocket's
Expert's Reasonable Fees for Attending and Preparing for His Deposition**

This motion presents a straightforward question. Does Rule 26(b)(4)(E), which requires a party
seeking discovery from an opposing party's expert to "pay the expert a reasonable fee for time
spent in responding to discovery" under Rule 26(b)(4)(A), allow a party to refuse to do so if they
intend to file a *Daubert* motion? Based on the plain language of the Rule and case law
interpreting the Rule, the answer is no. There is no "intend to file *Daubert* motion"-exception.
Fed. R. Civ. P. 26(b)(4)(E) ("Unless manifest injustice would result, the court must require that
the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to
discovery under Rule 26(b)(4)(A) or (D).").

Plaintiffs took the deposition of Dr. Keith Ugone, GiftRocket's expert, on July 11, 2025.
GiftRocket seeks reimbursement for 12.5 hours of Dr. Ugone's time: 7 hours of on-the-record
deposition time and 5.5 hours of preparation time. *See* Schmidt Decl., Ex. A. This reflects a
*significant* reduction of the time Dr. Ugone spent "responding to discovery" (e.g., the deposition
lasted for over 9 hours, and the 5.5 hours did not include the time Dr. Ugone spent responding to
Plaintiffs' document requests or preparing for the deposition on his own). *Id*.; *see also* Ugone
Decl. ¶ 2 (showing Dr. Ugone billed GiftRocket 29.5 hours for responding to Plaintiffs'
document subpoena and preparing and sitting for deposition). Despite the Rule's clear language,
Plaintiffs argued they did not need to reimburse GiftRocket given their *Daubert* motion seeking

1014034

The Honorable Vera M. Scanlon
August 22, 2025
Page 2

to exclude Dr. Ugone's opinions submitted in opposition to class certification.[1]

"Compensating an expert for his time spent in deposition is **mandatory** under Rule 26 to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *AP Links, LLC v. Russ*, 2015 WL 9050298, at *1 (E.D.N.Y. Dec. 15, 2015) (emphasis added) (cleaned up) (holding party who deposed expert must reimburse opposing party after expert deposition is concluded).  Further, it is well-settled in this Circuit that time an expert expends preparing for his deposition should also be compensated by the deposing party. *See, e.g.*, *id.* at *2 (concluding defendants' counsel may seek reimbursement for expert's fee for time expert "reasonably expended in preparing for and testifying at his deposition"); *Wile v. James River Ins. Co.*, 2020 WL 410071, at *3 (W.D.N.Y. Jan. 24, 2020) (holding opposing party must compensate expert "for the amount of time the expert witness is asked to reserve for the deposition as well as the amount of time spent preparing for a deposition") (citation omitted).

>    **B.      Rule 26 Requires Reimbursement of Expert Expenses Regardless of Whether the Party Intends to Challenge the Admissibility of that Expert's Opinions**

Plaintiffs' position that the reimbursement request should be deferred until *after* their *Daubert* motion is decided lacks merit and deviates from the Rule's plain language. Unsurprisingly then, the Seventh Circuit considered—and rejected—the **exact argument** Plaintiffs now raise. In *Crabtree v. Experian Information Solutions, Inc.*, 948 F.3d 872, 883-84 (7th Cir. 2020), the plaintiff argued the district court erred in ordering him to pay for defendant's expert deposition without first considering whether the testimony would be admissible under *Daubert* and Federal Rule of Evidence 702. *Id.* at 883. The Seventh Circuit disagreed:

>    [Plaintiff] . . . misse[d] the mark in contending that the district court had to rule on his *Daubert* motion to exclude [defendant's] expert testimony before considering [defendant's] application for costs under Rule 26(b)(4)(E).  ***Not so.*** The Rule applies to any 'expert whose opinions *may* be presented at trial.'  ***The clear import of Rule 26 is that the district court generally must order a party to pay for the cost of deposing its adversary's expert regardless of whether the expert's opinion ultimately is presented at trial.***  Had the claim gone to trial, [defendant's] expert may have testified and the award of fees was therefore appropriate.

*Id.* at 884 (quoting Fed. R. Civ. P. 26(b)(4)(E)) (emphases added). The only (rare) exception to the requirement to reimburse the opposing party for its expert's deposition time is manifest injustice. *See, e.g.*, *Crabtree*, 948 F.3d at 884 ("Manifest injustice is a high standard that is satisfied only in extraordinary circumstances."). As the Seventh Circuit found, likely because

---

[1] Plaintiffs served their *Daubert* motion on Defendants on August 1, 2025. ECF No. 269. GiftRocket will serve its opposition on September 9, and the entire motion will be filed pursuant to the bundling rule on September 30. *See* July 30, 2025 Order (Kovner, J.).

The Honorable Vera M. Scanlon
August 22, 2025
Page 3

filing a *Daubert* motion is hardly "extraordinary," requiring a party to reimburse the other side's expert prior to "perform[ing] its gatekeeping role of determining that the expert's proffered testimony would be admissible" would not result in "manifest injustice."  *Id.*

The Ninth Circuit reached the same conclusion in *Miller v. Sawant*, 114 F.4th 1071 (9th Cir. 2024). There, the plaintiffs argued the defendant could not recover deposition expenses because the expert's testimony would have been excluded under Rule 702 and *Daubert*. The Ninth Circuit rejected that argument, finding it "**at odds with the plain text of Rule 26**," *id.* at 1075 (emphasis added): "***the plaintiffs' objection to the admissibility of [the expert's] opinions [did] not obviate their obligation to pay [the expert] a reasonable fee under Rule 26***." *Id.* (emphasis added). Plaintiffs attempt to distinguish *Miller* by pointing to a footnote stating the court takes no position on whether a party can be awarded fees if reimbursement is sought **after** an expert has **already** been excluded under *Daubert*. *Id.* at *1075 n.2. But that did not happen here. Therefore, the only circuits to have decided this issue have rejected Plaintiffs' position.

This Court should reach the same conclusion. If payment were not due unless and until an expert's opinions were deemed admissible, Rule 26 would say that. Further, given the reasoning behind the Rule ("to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement," *AP Links*, 2015 WL 9050298, at *1), Plaintiffs' reading makes no sense. After all, regardless of the outcome of Plaintiffs' motion, Plaintiffs took Dr. Ugone's deposition and relied on his testimony in their motion. Dr. Ugone needs to be paid for his time—now, not months or years in the future.

Furthermore, courts in this Circuit have rejected similar arguments. For example, in *Grdinich v. Bradlees*, the court simultaneously precluded the plaintiff's expert from testifying *and* ordered the defendant to reimburse plaintiff for time plaintiff's expert spent preparing for his deposition. 187 F.R.D. 77, 83 (S.D.N.Y. 1999). And, in *Ferlito v. County of Suffolk*, 274 F.R.D. 435, 436 (E.D.N.Y. 2011), the court required the defendants to pay plaintiffs' expert for his deposition time, emphasizing that defendants' belief the plaintiff's expert's testimony was "unnecessary and improper" was "irrelevant to this inquiry." *Id.* ("Here, the Defendants sought and took the deposition of Plaintiffs' expert. That was their choice.").

Plaintiffs' authority, *Flynn v. Cable News Network, Inc.*, 2023 WL 5051909 (S.D.N.Y. July 13, 2023), is an outlier that reaches a result contrary not only to the Rule, but also the weight of the authority.  Also, unlike here, the dispute in *Flynn* was whether the witness should be considered an expert at all.[2] *See id.* (stating motion could be renewed "following a determination by the Court whether Dr. Moskalenko will serve as an expert or fact witness in this action"). Plaintiffs

---

[2] The *Flynn* court also relied exclusively on its own prior decision, *Trombetta v. Novocin*, 2023 WL 2575242 (S.D.N.Y. Mar. 20, 2023), which is inapposite for similar reasons.  *See id.* at *2 ("WorthPoint's request for a determination of the fees to which Mr. O'Leary may be entitled is DENIED WITHOUT PREJUDICE to renewal following a determination by the Court whether he will serve as an expert, or as a fact, witness in this action.").

The Honorable Vera M. Scanlon
August 22, 2025
Page 4

do not argue Dr. Ugone should be considered a fact witness and/or is *unqualified* to be an expert. Nor could they credibly do so; Dr. Ugone is a seasoned economist and widely recognized expert. *See, e.g.*, *Schechner v. Whirlpool Corp.*, 2018 WL 6843305, at *11 (E.D. Mich. Oct. 30, 2018) ("Dr. Ugone's education, experience, and critical analysis of Plaintiffs' expert's reports demonstrate that he has the requisite amount of specialized knowledge to assist the jurors . . . Ugone holds a Ph.D. in economics, with education and experience necessary to generally rebut the opinions of Plaintiffs' economist[.]"); *Schechner v. Whirlpool Corp.*, 2019 WL 978934, at *12 (E.D. Mich. Feb. 28, 2019) ("Dr. Ugone is qualified to testify about economics, so his economic critiques . . . are admissible."); *Equistar Chemicals, LP v. Westlake Chem. Corp.*, 2016 WL 4394999, at *4 (E.D. Tex. Feb. 26, 2016) ("Dr. Ugone is qualified to testify as an expert in this case . . . his testimony [is] sufficiently reliable as required by *Daubert* and [FRE] 702.").

Plaintiffs seek to muddy the waters by arguing the merits of their *Daubert* motion below. They also attack aspects of Dr. Ugone's report, such as its inclusion of factual information they argue was unnecessary. But GiftRocket does not seek fees for ***the report***, at which point the amount of detail might be relevant. Further, Plaintiffs' argument that Dr. Ugone's report is factual narrative and legal argument is baseless. His opinions here include: (1) Plaintiffs fail to show an ***economic nexus*** between the alleged misconduct and the claimed "specific" disgorgement; (2) Plaintiffs fail to provide ***a reliable methodology to calculate their claimed disgorgement*** on a class-wide basis; and (3) calculation of the claimed disgorgement requires individual inquiry.

Plaintiffs also baldly claim that, despite this being a class action, it was entirely unnecessary for any party to offer an expert at class certification to opine on damages or rebut Plaintiffs' arguments regarding damages. They are wrong. Nearly all class actions (if not all) involve experts at class certification—for good reason. As set forth above, Dr. Ugone applies economic principles here to undermine Plaintiffs' assertion that damages can be calculated on a classwide basis using the model Plaintiffs urged at class certification. This is proper expert testimony.

### C.    Dr. Ugone is a Well-Credentialed Expert Seeking Reasonable Fees

Finally, the $13,500 sought to reimburse GiftRocket for Dr. Ugone's time is reasonable. In determining reasonableness, courts consider: (1) the witness's area of expertise; (2) the education and training required to provide the expert insight sought; (3) the prevailing rates for other comparably respected available experts; (4) the nature, quality and complexity of the discovery responses provided; (5) the cost of living; (6) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26; (7) the fee being charged to the party who retained the expert; and (8) fees traditionally charged by the expert on related matters." *Wile*, 2020 WL 410071, at *4 (citation omitted).

Here, Dr. Ugone is a highly credentialed economist with over 39 years of experience in conducting economic and damages analyses and has served as an expert approximately 100 times in the last decade, often in class actions. *See* Schmidt Decl., Exs. B and C. Dr. Ugone provided lengthy, detailed testimony, and his deposition lasted over nine hours (seven on the record). Schmidt Decl. ¶ 6. GiftRocket seeks reimbursement from Plaintiffs for the same hourly

The Honorable Vera M. Scanlon
August 22, 2025
Page 5

rate it paid Dr. Ugone in this matter, *id.* ¶ 7, which is the same rate Dr. Ugone charges for all of his 2025 matters. *See* Ex. D at 357:25-358:12. Furthermore, many courts (in addition to those cited above) have found Dr. Ugone possesses the requisite qualifications and specialized knowledge to testify as an expert. *E.g., In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *49 (S.D.N.Y. Jan. 30, 2025) ("No one contests that Dr. Ugone is sufficiently qualified as an economic damages expert[.]"); *Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 2017 WL 3394139, at *2 (E.D. Tex. Aug. 7, 2017) ("Dr. Ugone meets each of the requirements to testify as an expert witness[.]").

Courts in districts with comparable costs of living deemed $800 hourly rates charged three to four years ago to be reasonable. *See, e.g., Peerless Network, Inc. v. AT&T Corp.*, 2024 WL 20840, at *6 (S.D.N.Y. Jan. 2, 2024) (finding (a) ***2021 rate*** of $800/hour for one expert reasonable (while rejecting expert's hourly increase in 2022 to $965/hour) and (b) $750 and $825 rates for 2021 and 2022 reasonable for another expert); *Gulino v. Bd. of Educ. of City Sch. Dist. of City of New York*, 2023 WL 3689601, at *5 (S.D.N.Y. May 25, 2023), *report and recommendation adopted*, 2023 WL 3687810 (S.D.N.Y. May 26, 2023) (finding 2022 hourly rate of $795 to be reasonable); *Banga v. Kanios*, 2021 WL 1117336, at *2 (N.D. Cal. Mar. 24, 2021) (economist expert's $800 hourly rate reasonable even though case "not complex"). Courts also have found rates ***higher than*** Dr. Ugone's reasonable. *See, e.g., Axelson v. Hartford Ins. Co. of the Midwest*, 2013 WL 1261757, at *2-3 (D. Nev. Mar. 26, 2013) (finding $1,500 hourly rate reasonable); *Burke v. State Farm Mut. Auto. Ins. Co.*, 2022 WL 16792173, at *2 (D. Colo. Nov. 8, 2022) (finding $1,500/hourly rate for non-video testimony reasonable). Plaintiffs' attempt to distinguish *Axelson* misses the mark given ***12 years ago*** both parties' experts charged several hundred dollars *more* than Dr. Ugone's rate: this supports a finding of reasonableness here.

While Plaintiffs claim the time sought here is "exorbitant," Dr. Ugone spent far more time responding to discovery than the limited 12.5 hours for which GiftRocket seeks reimbursement. *See* Ugone Decl. ¶ 2. When taking into account the 29.5 hours Dr. Ugone spent on those tasks, the $13,500 sought in fact boils down to an hourly rate of ***$457 per hour***.

The inapposite cases on which Plaintiffs rely provide no support to their reasonableness challenge. *See Addison v. Gordon*, 338 F.R.D. 577, 579 (S.D.N.Y. 2021) (finding expert's requested hourly rate reasonable but rejecting request that expert be paid flat half day rate); *Polidora v. D'Agostino & Assocs.*, 2022 WL 443791, at *3 (S.D.N.Y. Feb. 14, 2022) (rejecting request plaintiff's expert be paid flat fee and ordering plaintiff to provide opposing party with hourly rates sought). While Plaintiffs point to *Souvenir v. Jordan*, 2022 WL 12399329, at *3 (S.D.N.Y. Oct. 21, 2022), as holding $450/hour is reasonable, that case involved a treating physician testifying in an ***auto accident case***, not an economist in a class action. Lastly, that there are few decisions addressing the reasonableness of expert hourly rates sought pursuant to Rule 26(b)(4)(E) is unsurprising: the Rule is clear, making reimbursement challenges rare.

Accordingly, $13,500 for Dr. Ugone's time responding to discovery is reasonable here.

For the above reasons, GiftRocket asks the Court to order Plaintiffs to promptly reimburse GiftRocket $13,500 for Dr. Ugone's deposition expenses as required by Rule 26(b)(4)(E).

The Honorable Vera M. Scanlon
August 22, 2025
Page 6

**PLAINTIFFS' SECTION**

Plaintiffs oppose the GiftRocket Defendants' premature and meritless motion to compel payment of fees in connection with the deposition of Defendants' purported expert witness, Dr. Ugone. As detailed in Ex. E (Plaintiffs' *Daubert* motion), Dr. Ugone's so-called expert opinion consists of nothing more than repeating factual and legal arguments that Defendants have been making for years. For example, Dr. Ugone's report contains lengthy descriptions of "disclaimers" from the GiftRocket website and quotations from GiftRocket customer emails and online reviews, which Dr. Ugone then interprets in ways the GiftRocket Defendants favor. Plaintiffs were forced to waste time and money deposing Dr. Ugone to establish that he did not conduct any expert analysis in support of the factual and legal arguments made in his report. *See* Ex. E at 15-19.

Defendants then suggested that Plaintiffs should pay the exorbitant amount of $13,500 for Dr. Ugone's fees in connection with the deposition. Plaintiffs responded that the request was baseless and premature because they expect that Dr. Ugone's testimony will be excluded for the reasons stated in Plaintiffs' August 1, 2025 *Daubert* motion. Rather than await the Courts' ruling on that motion, Defendants insisted on filing this application now. This timing speaks volumes about how Defendants expect the Court to rule on the *Daubert* motion, as a ruling in their favor would have obviated several of Plaintiffs' arguments here. The Court should hold the motion in abeyance until the pending *Daubert* motion is resolved or deny it as premature. But if the Court wishes to rule on the motion now, it should deny Defendants' request as manifestly unjust and for failing to carry their burden to show that Dr. Ugone's fees are reasonable.

### A.    Rule 26(b)(4)(E) Does Not Support Defendants' Fee Request.

As explained in *Trombetta v. Novocin*, 2023 WL 2575242, at *1 (S.D.N.Y. Mar. 20, 2023):

> Federal Rule of Civil Procedure 26(b)(4)(A) provides that '[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial.' In addition, '[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) ....' Fed. R. Civ. P. 26(b)(4)(E)(i). A witness who serves 'solely as a fact witness[,]' however, is entitled only 'to the statutory witness fee under 28 U.S.C. § 1821.' (citations and alternations omitted).

*See also Flynn v. Cable News Network, Inc.*, 2023 WL 5051909, at *1 (S.D.N.Y. July 13, 2023) ("Although Dr. Moskalenko has been deposed, CNN has indicated that it intends to move to preclude her from testifying as an expert witness under *Daubert*. The amount of fees to which Dr. Moskalenko is entitled depends on the outcome of CNN's anticipated *Daubert* motion; that is, 'whether she is an expert witness entitled to reasonable fees under Rule 26(b)(4)(E)(i), or a fact witness entitled to the statutory fee under 28 U.S.C. § 1821.' Thus, CNN is correct that the Motion is premature.") (quoting *Trombetta*, 2023 WL 2575242).

This framework makes sense and applies here. As Plaintiffs' *Daubert* motion explained:

The Honorable Vera M. Scanlon
August 22, 2025
Page 7

> Dr. Ugone's Report is a "would-be legal brief masquerading as an expert opinion, which is squarely inappropriate for expert testimony." *Cmty. Care Companions, Inc. v. Interim Healthcare, Inc*., 2025 WL 929407, at *14 (E.D.N.Y. Mar. 27, 2025) (cleaned up). The Report begins with seventeen pages of background information, including nine pages presenting Defendants' view of "How a GiftRocket Worked" and a six-page "overview" of Plaintiffs' claims. (Rep. 10-27, Points V, VI and VII). Dr. Ugone then offers … legal conclusions, not expert opinions. And no reliable data or methodology supports them.
>
> As Dr. Ugone's testimony makes clear, he conducted no independent analysis in connection with his report. Instead, his "expert" analysis consists of quoting and interpreting email messages and online reviews, reading the results of a survey designed and conducted by others, and using basic math and Excel features. The Court should "exclude[] those portions of [Dr. Ugone's] report that 'construct a factual narrative based upon record evidence.'" *Lane v. Am. Airlines, Inc.*, No. 18-CV-6110 (MKB), 2024 WL 1200074, at *19 (E.D.N.Y. Mar. 20, 2024). The remainder of Dr. Ugone's report offers a series of legal arguments about what the evidence purportedly shows and what it means, legally, for Plaintiffs' claims. These should also be excluded. *See Mirkin v. XOOM Energy, LLC*, 2025 WL 16333, at *2 (E.D.N.Y. Jan. 2, 2025) ("Nor may the expert 'supplant the role of counsel in making argument at trial, and the role of the jury [in] interpreting the evidence.'") (citation omitted). As another Court held in excluding similarly unreliable testimony by Dr. Ugone, he "provides no helpful guidance for a factfinder" because he "did not conduct any independent analysis or investigation."

Ex. E at 1-2. In other words, Dr. Ugone's report just regurgitates factual information that Defendants believe supports their case. Dr. Ugone's addition of made-up labels like "economic nexus" to Defendants' arguments does not transform them into expert analysis. Not a single thing he has done in connection with this case required any type of economic expertise. It is therefore appropriate to treat his testimony as fact witness testimony following the logic of *Flynn* and *Trombetta*.

Defendants dismiss *Flynn* as "an outlier." Def. Section at 3. But none of the authorities Defendants rely on support their position, or address *Flynn's* logic. First, in *Miller v. Sawant*, 114 F.4th 1071 (9th Cir. 2024) the Ninth Circuit affirmed summary judgment and allowed fees without requiring a separate *Daubert* ruling, but expressly held: "We do not decide, however, whether a party may still recover fees under Rule 26(b)(4)(E) if his expert has already been precluded from testifying under *Daubert*." *Id*. at 1075 n.2.[3] And the Seventh Circuit's *Crabtree*

---

[3] In *Miller*, "[T]here was never any finding by the district court that Daugaard is not an expert. To the contrary, … the district court expressly found that, given 'Daugaard's qualifications *and the nature of her opinions*, ... she was employed in this action in the role of an expert and ... her time spent is recoverable.'" *Id.*, 114 F.4th at 1075 (emphasis added). There is no similar determination here, nor is one likely to be made given the strength of Plaintiffs' *Daubert* motion. The italicized language also refutes Defendants' theory that being a credentialed expert is sufficient without regard to the nature of the opinions given by Dr. Ugone.

The Honorable Vera M. Scanlon
August 22, 2025
Page 8

decision affirmed the dismissal of all claims and simply held that in these circumstances it was not an abuse of discretion of the District Court to award fees for expert testimony without first performing the now unnecessary work of resolving a pending *Daubert* motion. It did not hold that when a Court will soon rule on a strong *Daubert* motion it should go ahead and award costs under Rule 26(b)(4)(E) without first considering it. Regardless of the standard in the Seventh Circuit, Defendants also fail to explain how the Court can consider "the education and training required to provide the expert insight sought"—as in-circuit authority requires, *Wile*, 2020 WL 410071, at *4—without consideration of whether Dr. Ugone provides any expert insight at all.

As to Defendants' authorities from within the Second Circuit, this issue was not presented in *Grdinich v. Bradlees*, 187 F.R.D. 77, 82 (S.D.N.Y. 1999), where "Bradlees ha[d] already paid plaintiff's expert $325 for his time during the deposition," and the parties were only disputing whether defendant was also required to reimburse plaintiff for time spent preparing for the deposition. *Id*. And the Court there *did* find its *Daubert* analysis relevant, awarding only $300 in additional fees because the expert's "unrelated education and training, the questionable quality of the discovery responses and the lack of complexity of the issues involved warrant some reduction in [his] fees." *Id.* at 83. This finding supports Plaintiffs' position that the pending *Daubert* motion should be addressed before or with Defendants' fee request. *Ferlito v. Cnty. of Suffolk*, 274 F.R.D. 435, 436 (E.D.N.Y. 2011) is also inapposite. Among other things, no party argued for application of the *Flynn* framework, no *Daubert* motion was pending or anticipated in the near future, and Defendants themselves had "previously argued to this Court… that [the expert's] deposition was "required" to make [Defendants'] motion for partial summary judgment." *Id.*; *see also id*. at 436 (the arguments presented by Defendants do not provide a basis to stay their obligation to pay the fees charged by [the expert] *until the action is concluded* under Rule 26, *particularly since the deposition took place some time ago*) (emphasis added). So the most on point authorities from within the Second Circuit are *Trombetta* and *Flynn* and the Court should follow their approach.

The policy behind the rule also undermines Defendants' position. Here, Plaintiffs' damages theory is based on simple mathematical calculations that do not require any expertise to present or understand, and there was no reason—other than an apparent desire to exceed the page limits on memorandum of law—for Defendants to engage Dr. Ugone in the first place. His report and testimony add no value; rather, Defendants' belated decision to engage Dr. Ugone delayed briefing on class certification and has generated unnecessary work for Plaintiffs and the Court. It would be manifestly unjust to also require Plaintiffs to pay his fees in these circumstances.

B.    **The Amounts Requested Are Not Reasonable.**

"While a party may contract with any expert it chooses, the court will not automatically tax the opposing party with any unreasonable fees charged by the expert. The party seeking reimbursement of deposition fees bears the burden of proving reasonableness. *Addison v. Gordon*, 338 F.R.D. 577, 579 (S.D.N.Y. 2021) (cleaned up) ("an hourly rate for Dr. Auerbach of $500 is reasonable"). Defendants tacitly acknowledge that the fees here are excessive by requesting less than the full amount of time Dr. Ugone claims to have spent. However,

1014034

The Honorable Vera M. Scanlon
August 22, 2025
Page 9

Defendants then ask the Court to credit them for the additional hours by arguing that "the $13,500 sought in fact boils down to an hourly rate of $457 per hour," based on work for which they do not seek reimbursement. No authority supports the idea that the Court should consider this calculation in evaluating reasonableness. Defendants cannot position an obviously excessive rate as a more reasonable one by pointing to work they admit is not reimbursable.

Defendants have not shown that Dr. Ugone's excessively high fees and the prep time for which Defendants request compensation (5.5 hours) are reasonable. This much prep time is unreasonable given that Dr. Ugone did not conduct any independent study or analysis, and merely regurgitates Defendants' factual narrative. And, tellingly, although Defendants argue that Dr. Ugone has "over 39 years of experience in conducting economic and damages analyses and has served as an expert approximately 100 times in the last ten years" they have not cited a single instance in which any Court awarded his fees at the rate proposed by Defendants (or any other rate). Dr. Ugone's fees are more than double the fees approved by the Ninth Circuit in *Miller*, 114 F.4th at 1074 ("deposition preparation at $250.00 per hour" and "deposition testimony at $495.00 per hour" for one expert and "$300.00 per hour" for the other expert), and his total amount is also far above the amounts that Courts generally approve under Rule 26(b)(4)(E). *See, e.g., Addison*, 338 F.R.D. at 579.

Not only are Defendants unable to offer *any* authority approving payment of Dr. Ugone's fees, they apparently cannot find a single case from within the Second Circuit approving similar rates under 26(b)(4)(E). The Colorado case they cite confirms this, observing: "The Court is stunned by the experts' fees in this case. Courts in other parts of the country, where cost of living is higher, are setting limits far below the fees in this case." *Burke*, 2022 WL 16792173, at *2 (citing *Souvenir v. Jordan*, 2022 WL 12399329, at *3 (S.D.N.Y. Oct. 21, 2022) as "rejecting a request for an $8,000 deposition fee, and holding" that the expert's "fee would be capped at $450 per hour). This is hardly an endorsement of Defendants' position here. And the court in the Nevada case cited by Defendants was not "provided substantial information regarding the factors" courts use to analyze rates, so it looked to the fact that the other party's expert charged a similar rate to determine reasonableness. *Axelson*, 2013 WL 1261757, at *2.

When Plaintiffs pointed this out, Defendants added citations to *Gulino*, *Peerless* and *Banga*. Def. Section at 5. But those cases found rates substantially lower than Dr. Ugone's to be reasonable, and the Court in *Peerless* found *unreasonable* and reduced a rate that was already *lower* than Dr. Ugone's. *Peerless*, 2024 WL 20840, at *6 ("Turner billed at an hourly rate of $965. That rate is above the rate typically approved by courts in this District and AT&T has not pointed to another case where a court in this District awarded an expert an hourly rate of nearly $1,000. Accordingly, Turner's hourly rate for all hours billed in 2022 is reduced to $800.)[4]

---

[4] The same is true of *Banga*. The Court there found a $6,500 flat fee "or $928.57 per hour" unreasonable, and reduced it to $800 per hour, with the opposing party "responsible for $750 of

The Honorable Vera M. Scanlon
August 22, 2025
Page 10

Further, Defendants' authorities only serve to highlight why the Court should consider reasonableness in connection with Plaintiffs' *Daubert* motion. For example, in *Gulino*, the Court began its analysis of reasonableness by observing that "[s]ince individual damages trials began in October 2016, Plaintiffs' damages experts have provided essential contributions to the individual damages hearing process." *Gulino*, 2023 WL 3689601, at *3; *see also id.* ("Plaintiffs' experts' work on this case during the relevant timeframe was crucial to the individual damages trials and overall resolution of claims.") Dr. Ugone's work here provided no similar value because he has not performed any actual expert analysis. The fact that his work here requires no economic expertise is further evidence that the amounts sought are unreasonable *Wile*, 2020 WL 410071, at *4; *Grdinich v. Bradlees*, 187 F.R.D. at 83.

Finally, despite correctly identifying the factors courts look to in assessing reasonableness, Defendants offer no evidence concerning several important factors, including "(3) the prevailing rates for other comparably respected available experts; and (4) the nature, quality and complexity of the discovery responses provided; The fact that Defendants paid a certain rate does not establish that rate was reasonable. *Polidora v. D'Agostino & Assocs.*, 2022 WL 443791, at *2 n.3 (S.D.N.Y. Feb. 14, 2022).

\*       \*       \*

In sum, this case required no expert testimony, which is why the schedule did not originally contemplate expert discovery; Defendants nonetheless decided to engage an expert to serve as a mouthpiece for factual and legal arguments that Defendants were unable to include in their class certification briefing because of page limitations; Plaintiffs have already been forced to expend substantial resources in connection with his useless report and their motion to exclude it; and the rates and time spent by Dr. Ugone are exorbitant, unreasonable and vastly more than Courts typically allow under Rule 26(b)(4)(E). No authority supports awarding fees in these circumstances, and it would be manifestly unjust to allow them.

---

the $800 per hour, and [the party presenting the expert] shall pay the remaining $50 per hour." And the California court inverted the standard applied by New York courts and placed the burden on the opposing party to show the fees were unreasonable: "Defendants have failed to show that an $800 hourly rate is not a reasonable hourly rate under Rule 26(b)(4)(E)(i); the only record they present in support of their argument is the fact that Defendants' own economic damages expert charges $375 per hour. This sole fact does not establish that the $800 rate is per se unreasonable….Without more of a record to go on, the court cannot say that an $800 hourly rate for an economic damage expert … is unreasonable on its face." *Banga v. Kanios*, No. 16-CV-04270-RS (DMR), 2021 WL 1117336, at *2 (N.D. Cal. Mar. 24, 2021). Here, by contrast, Plaintiffs have presented multiple reasons why Dr. Ugone's rates are unreasonable, including the absence of any actual expert analysis in his work on this case, and the fact that Courts in this district typically find far lower rates reasonable even for actual expert work.

The Honorable Vera M. Scanlon
August 22, 2025
Page 11


Very truly yours,

Megan O'Neill
Attorneys for GiftRocket


/s/ Raphael Janove


Raphael Janove
Attorneys for Plaintiffs

1014034