

Raphael Janove
Shareholder

raphael@janove.law

www.janove.law
T 646-347-3940

500 7th Ave., 8th Fl.
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

September 22, 2025

**VIA ECF**

The Honorable Rachel P. Kovner
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

      Re: *Gracie Baked LLC, et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019-RPK-VMS

Dear Judge Kovner:

We write on behalf of Plaintiffs in opposition to the GiftRocket Defendants' request for a pre-motion conference on a duplicative and meritless motion for summary judgment. ECF No 272. Defendants' submission still provides no explanation for the timing of this motion—after briefing but before a decision on class certification. Nor does it explain why Defendants made no attempt to include this motion in the case schedule the parties proposed and the Court so-ordered. What Defendants' submission does make clear is that the intended motion will re-raise the same arguments they have already raised repeatedly in other filings. All of these have either already been rejected or remain pending. There is no reason for the Court to entertain yet another round on briefing on the same issues now. Rather, it would be more efficient to await the Court's rulings on pending matters, after which, to the extent Defendants have any viable remaining arguments, they can make them in a streamlined submission.

Moreover, contrary to Defendants' assertion that "[t]he Motion, if granted, would resolve the case and obviate the need to rule on class certification," the only thing granting summary judgment on these grounds would accomplish (and only if granted on every one of Defendants' arguments) is a motion to substitute new plaintiffs who are not subject to these arguments. *See In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests."). In any event, all of Defendants' anticipated summary judgment arguments fail for the same reasons Plaintiffs have already explained in multiple previous rounds on briefing on these same issues.

**A. Gracie Baked and WeCare Have Standing.**

As Plaintiffs explained in their response to Defendants' pending objections to Judge Scanlon's order denying their motion to dismiss, Defendants' interpretation of *TransUnion* disregards the Supreme Court's logic and longstanding Second Circuit authority. *See* ECF No. 152; *see also* Pltfs' Class Cert. Mot at 19; September 15, 2025 Order (Scanlon, J.) (denying Defendants' motion to compel and observing that "Plaintiffs have articulated the theory of their actual damages and that their actual reputational damages are not precisely quantifiable, *see* ECF No. [234]-2 at 7-8, and the issue of standing is a dispositive one presently before the District Court, *see generally* ECF No. [134]"). *TransUnion*'s standing analysis looked to the common log analog—here unfair

Case 1:22-cv-04019-RPK-VMS   Document 273   Filed 09/22/25   Page 2 of 4 PageID #: 7797



Raphael Janove  
Shareholder  
raphael@janove.law

www.janove.law  
T 646-347-3940

500 7th Ave., 8th Fl.  
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.  
Philadelphia, PA 19103

979 Osos St., Ste. A5  
San Luis Obispo, CA 93401

competition (and not the tort of defamation at issue in *TransUnion*). The law of unfair competition has always been that a plaintiff is injured such that there is a concrete injury, when, without its consent, another business takes its reputation or goodwill for their own pursuit of profits. Gracie Baked and Café Ole have a concrete injury under this standard. And evidence suggests that consumers may have clicked on search links using these businesses' information and ended up on GiftRocket.com. *See* Plaintiffs' 56.1 Counterstatement ¶¶ 7-9, 18-19.

### B. WeCare Retained Its Claims When It Sold Café Ole.

As demonstrated in Plaintiffs' briefing on class certification, although WeCare sold Café Ole, all parties to the transaction agree that WeCare's claims here were not included in the sale. *See* Class Cert. Reply at 17. There is no merit to Defendants' arguments that the Court should ignore the understanding of all parties to the asset purchase agreement, and instead find Defendants' preferred interpretation of that agreement controlling. Defendants also overlook language in the contract expressly limiting the scope of the sale only to *tangible* assets. *See* Plaintiffs' 56.1 Counterstatement ¶ 23. And there is no reason to allow repetitive submissions concerning Defendants' flawed understanding of a contract that does not involve them.

### C. Plaintiffs' Claims for Injunctive Relief Are Not Mooted.

As also demonstrated in Plaintiffs' briefing on class certification, *see* Class Cert. Mot. at 12-14; Reply at 19-20, Defendants have not carried their "heavy burden of persuading the court" that the challenged conduct is moot because "'factual changes made by a defendant after litigation has commenced cannot render a case moot unless it is **absolutely clear** the defendant cannot resume the allegedly offending conduct.'" *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 545 (E.D.N.Y. 2017) (quoting *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010)). Defendants have the will and means to restart GiftRocket.com at any time, a website their executives described as "free money." *See* Class Cert. Mot. at 13. Defendants claim that "the founders" (who do not include Defendant Kubic) have "no intention" to restart the website, but never actually promise not to restart GiftRocket.com. *See, e.g.*, Baum Decl. ¶ 51. Even if Defendants made an actual promise, that would "not mitigate this risk, particularly where Defendants continue to dispute" any Lanham Act violation. *See 3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 404 (E.D.N.Y. 2021). As the Second Circuit has repeatedly explained, "[a] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" because otherwise a defendant could "strategically paus[e] their wrongdoing, get[] a case dismissed as moot, and then begin[] it again after the suit ends." *Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018).

### D. Dimensions Asserts Valid Claims for False Affiliation and Unfair Competition.

With respect to their only arguments that apply to all Plaintiffs, Defendants simply repeat the same losing arguments they have already made on multiple occasions. First, Defendants argue that Plaintiffs must have a registered trademark to prevail on false affiliation and unfair competition claims. In support of their atextual and nonsensical proposition that the Lanham Act permits Defendants to use false marketing phrases such as "Buy a [business name] Gift Card" or "Buy a gift card to [business name]" alongside identifiers of specific businesses (absent proof of a



Raphael Janove
Shareholder

raphael@janove.law

www.janove.law
T 646-347-3940

500 7th Ave., 8th Fl.
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

protectable mark), the Opposition recycles case law that Plaintiffs have already rebutted in several prior motions—none of which have been decided in Defendants' favor. *See, e.g.*, ECF No. 135 at 6 (Scanlon, J.) (granting Plaintiffs' motion to amend the complaint and observing that Defendants' cited decisions regarding the protectability of the mark are inapplicable to the claim raised here because they "only address trademark infringement, trade dress infringement and trademark dilution claims"); ECF No. 106–9 at 25:25–26:02 (Scanlon, J.: "[T]hey're saying they're not pursuing that aspect of the Lanham Act."); Plaintiffs' Class Cert. Mot. at 17–18; Reply at 4-9; ECF Nos. 182, 151 at 10, 72 at n.1.

Second, in addition to the undisputed evidence showing that Cassie Riley purchased a GiftRocket when she intended to buy a Dimensions gift card, Plaintiffs have adduced a wealth of evidence showing that a large number of ordinarily prudent purchasers were consistently misled and confused about whether GiftRocket sold Plaintiffs' and the putative class members' gift cards. *See, e.g.* Class Cert. Mot. at 1-2. As Sunrise Banks put it, GiftRocket's marketing "feels like a bait and switch – I am going to tell you I am giving you a gift card, but really it is not." Sunrise also observed that "GiftRocket [is] still receiving a large number of complaints regarding customers thinking they were buying an actual gift card, not what they actually got… This is a big UDAAP concern."

Third, the Yelp terms do not allow Defendants to falsely claim to sell gift cards to the Plaintiffs' businesses or otherwise use their information in any way that misleads consumers into believing that GiftRocket is affiliated with Plaintiffs' businesses. The terms provide limited circumstances in which Yelp content can be used by a third party; the terms do not make Plaintiffs acquiesce to any use of their information by a third party. Moreover, Defendants violated Yelp's terms and misused the Yelp content in multiple ways, including by ""display[ing] . . . Yelp Content in a manner that could reasonably imply an endorsement, relationship or affiliation with or sponsorship between you or a third party and Yelp"; *see* Pltfs' R. 56.1 Counterstatement ¶ 41. Unsurprisingly, Yelp did not authorize Defendants to run a gift card scam. That is why it cut off GiftRocket's access to the Yelp API after receiving Plaintiff's subpoena, despite GiftRocket's efforts to persuade Yelp to continue to do business with them. *See* ECF No. 252 at 9-10 (detailing Kubic's response after Yelp cut off API access when it became aware of this litigation).

**E. Dimensions Asserts Valid Claims for False Advertising.**

Plaintiffs' § 43(a)(1)(B) false advertising theory is simple: Defendants made literally false and otherwise misleading statements about the sale of "gift cards" to the class members, including Dimensions Massage. The evidence shows that Ms. Riley purchased the GiftRocket because Defendants marketed it as a gift card to Dimensions Massage, and that she requested a refund upon being advised those representations were false. The refund did not cure the harm caused by this negative experience, and the gift card Ms. Riley purchased directly from Dimensions Massage was in a smaller amount than the amount she spent on the refunded GiftRocket. If anything, summary judgment should be granted in Plaintiff's favor given the evidence. As Plaintiffs have already explained, at most Defendants have an argument that the *calculation* of the disgorgement Dimensions Massage is entitled to is zero after they deduct the cost of the refund. But whether the Court would, under equitable factors, allow Defendants to deduct the refunded amount or equitably




Raphael Janove  
Shareholder  
raphael@janove.law  

www.janove.law  
T 646-347-3940  
500 7th Ave., 8th Fl.  
New York, NY 10018  

1617 John F. Kennedy Blvd., 20th Fl.  
Philadelphia, PA 19103  
979 Osos St., Ste. A5  
San Luis Obispo, CA 93401  

---

enhance a disgorgement award, goes only to the amount of disgorgement Millercobb might receive. It does not show that it was not injured or has no claim for relief in the first place. *See* Reply at 17-18.

Respectfully submitted,

*/s/ Raphael Janove*

Raphael Janove

Enclosures  
CC: All Counsel of Record via ECF