**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,<br><br>Defendants. | Case No. 22-CV-4019 (RPK) (VMS)<br><br>**PLAINTIFFS' COUNTER STATEMENT TO THE GIFTROCKET DEFENDANTS' RULE 56.1 STATEMENT OF MATERIAL FACTS** |

Pursuant to F.R.C.P. 56 and Local Rule 56.1 of the Local Civil Rules of the United States District Court for the Eastern District of New York, Plaintiffs Gracie Baked LLC, WeCare RG, Inc., and Millercobb LLC (collectively, "Plaintiffs"), by their undersigned attorneys, respectfully submit this Counter Statement to the GiftRocket Defendants' Statement of Material Facts ("Statement").

JANOVE PLLC
500 7th Avenue, 8th Floor
New York, NY 10018
(646) 347-3940

PODHURST ORSECK P.A.
2525 Ponce de Leon Blvd., Suite 500
Coral Gables, FL 33134
(305) 358-2800

*Attorneys for Plaintiffs and the Proposed Classes*

## PLAINTIFFS' RESPONSE TO DEFENDANTS' RULE 56 STATEMENT OF MATERIAL FACTS

**I.  PLAINTIFF GRACIE BAKED LLC**

1. Plaintiff Gracie Baked is a bakeshop and sole proprietorship in New York City, founded in 2018. (Ex. __, Bensimon Tr. 40:2–22, 42:24–43:11.)

Plaintiffs' Response: Undisputed.

2. Gracie Baked had never heard of GiftRocket before being approached by Plaintiffs' counsel. (Ex. __, Bensimon Tr. 30:22–31:5.)

Plaintiffs' Response: Disputed to the extent that the term "approached" does not accurately describe how Gracie Baked was informed by counsel about Defendants' misconduct.

3. No customer or potential customer ever spoke to Gracie Baked about giftrocket.com, and Gracie Baked was not aware of any customers or other individuals viewing it on giftrocket.com. (Ex. __, Bensimon Tr. 23:12–15; 112:5–14; 124:8–16.)

Plaintiffs' Response: Undisputed that no customer or potential customer spoke to Gracie Baked about giftrocket.com, and Gracie Baked was not aware of any specifically identifiable customers viewing it on giftrocket.com, otherwise disputed as customers may have seen Gracie Baked in Google search results and even may have visited GiftRocket.com after clicking on a Google search result using Gracie Baked's information.  GR_0038230–281.

4. Gracie Baked is not aware of any instance in which GiftRocket diverted customers from Gracie Baked. (Ex. __, Bensimon Tr. 119:15–24.)

Plaintiffs' Response: Disputed. Although Gracie Baked is not able to identify any specific customer that was diverted directly away from Gracie Baked to GiftRocket, Gracie Baked is aware

that GiftRocket's entire business model was designed to and did leverage the use of Yelp information from Gracie Baked and other business in the Plaintiff class to drive search traffic to its website and divert customers away from Gracie Baked and other Plaintiff class member businesses.

5. Gracie Baked does not sell gift cards, nor has it ever advertised gift cards for sale. (Ex. __, Bensimon Tr. 71:14–73:5.)

Plaintiffs' Response: Disputed. Although Gracie Baked has not sold or advertised gift cards for sale, Gracie Baked has donated gift cards and gift certificates for charity auctions. Bensimon Tr. 71:3-12.

6. Nobody purchased a GiftRocket for suggested use at Gracie Baked. (Baum Decl. ISO Opp. to Mot. for Class Cert. ("Baum Decl.") ¶ 53.)

Plaintiffs' Response: Undisputed.

7. Gracie Baked could not identify whether anyone saw the business on giftrocket.com. (Ex. __, Bensimon Tr. 28:5–15.)

Plaintiffs' Response: Disputed. Users were directed to GiftRocket.com after searching for "gracies gift card," or "gracie's gift certificate." GR_0038230–281.

8. No one launched a session on GiftRocket.com after searching Google for the term "Gracie Baked." (Baum Decl. ¶ 52.)

Plaintiffs' Response: Disputed. Users were directed to GiftRocket.com after searching for "gracies gift card," or "gracie's gift certificate." GR_0038230–281.

9. No one visited a Business Landing Page for Gracie Baked directly from a Google search. (Baum Decl. ¶ 52.)

Plaintiffs' Response: Disputed. Users were directed to GiftRocket.com after searching for

"gracies gift card," or "gracie's gift certificate." GR_0038230–281.

10.    No one attempted to redeem a GiftRocket product at Gracie Baked. (Ex. __, Bensimon Tr. 22:25–23:3.)

Plaintiffs' Response: Undisputed.

11.    Gracie Baked was not a direct competitor of GiftRocket. (Ex. __, Bensimon Tr. 111:16–112:4; compare, e.g., Ex. __, Bensimon Tr. 40:2–22, with Baum Decl. ¶¶ 8–9.)

Plaintiffs' Response: Disputed. It is unclear what is meant by "direct competitor" in this context, but GiftRocket's false and misleading website and SEO strategy was intended to divert customers for Gracie Baked to purchase Defendants' products instead.

12.    Gracie Baked was first listed on Yelp on or around May 30, 2019, when owner Gracie Bensimon "claimed" the Gracie Baked business page. (Ex. __, Bensimon Tr. 72:6–14, 79:14–80:7, 81:5–20; Ex. __ (PLTFS000006).)

Plaintiffs' Response: Disputed. Gracie Baked was listed and then Gracie Bensimon "claimed" the page.

13.    As part of claiming the business page on Yelp, Gracie Baked agreed to Yelp's terms of service. (Ex. __, Bensimon Tr. 82:8–14.)

Plaintiffs' Response: Disputed. This is a legal conclusion not properly included in a Rule 56.1 statement.

**II.    PLAINTIFF WECARE RG, INC.**

14.    Plaintiff WeCare operated a coffee shop in Pennsylvania called Café Ole in the Valley starting in 2019. (Ex. __, Kalikhman Tr. 20:18–19, 22:8–23:5, 32:9–11, 49:4–8.)

Plaintiffs' Response: Undisputed.

15.     WeCare had never heard of GiftRocket before meeting Plaintiffs' counsel. (Ex. __, Kalikhman Tr. 74:6–75:16.)

Plaintiffs' Response: Undisputed.

16.     No customer or potential customer ever spoke to WeCare about giftrocket.com or tried to redeem a GiftRocket product at Café Ole in the Valley. (Ex. __, Kalikhman Tr. 91:13–15, 167:2–10.)

Plaintiffs' Response: Undisputed.

17.     No one purchased a GiftRocket for suggested use at Café Ole in the Valley. (Baum Decl. ¶ 53.)

Plaintiffs' Response: Undisputed.

18.     No one launched a session on giftrocket.com after searching Google for the term "Café Ole in the Valley." (Baum Decl. ¶ 52.)

Plaintiffs' Response: Disputed. At least one user visited GiftRocket.com after searching for "where can i buy cafe ole gift certificate in Philadelphia," and at least one user visited GiftRocket.com after searching "café ole gift card." GR_0038230–281.

19.     No one visited a Business Landing Page for Café Ole in the Valley directly from a Google search. (Baum Decl. ¶ 52.)

Plaintiffs' Response: Disputed. At least one user visited GiftRocket.com after searching for "where can i buy cafe ole gift certificate in Philadelphia," and at least one user visited GiftRocket.com after searching "café ole gift card." GR_0038230–281. Users conducting these searches may have seen Plaintiff in the search results and clicked on the link to be misdirected to GiftRocket.com having seen search results containing the intentionally false statements of "Buy a gift card to Café Ole" or "Gift Cards to Café Ole" or similar phrases.

20.     GiftRocket was not a direct competitor of Café Ole in the Valley. (Ex. __, Kalikhman Tr. 173:8–10; compare, e.g., Ex. __, Kalikhman Tr. 49:1–50:6, with Baum Decl. ¶¶ 8–9.)

<u>Plaintiffs' Response:</u> Disputed. It is unclear what is meant by "direct competitor" in this context, but Café Ole in the Valley sold gift cards and GiftRocket's false and misleading website and SEO strategy was intended to divert customers of Café Ole to purchase Defendants' products instead.

21.     Since May 31, 2024, Café Ole in the Valley has been owned by MA Coffee Inc., not WeCare. (Ex. __, Kalikhman Tr. 18:21–25, 27:13–22, 32:1–3; Ex. __ (PLTFS000579).)

<u>Plaintiffs' Response:</u> Undisputed.

22.     The sale of WeCare to MA Coffee, Inc. was effectuated by an Asset Purchase Agreement effective May 31, 2024 (the "APA"). (Ex. __ (PLTFS000579); Ex. __, Kalikhman Tr. 23:9–24:9.)

<u>Plaintiffs' Response:</u> Undisputed.

23.     The APA includes an integration clause, which states: This Agreement, together with all exhibits and schedules hereto, constitute the entire agreement among the parties pertaining to the subject matter hereof and supersede all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties. No supplement, modification, or waiver of this Agreement shall be binding unless executed in writing by the party to be bound thereby. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether or not similar), nor shall such waiver constitute a continuing waiver unless expressly provided. (Ex. __ (PLTFS000579 at PLTFS000584) (emphases added).)

<u>Plaintiffs' Response:</u> Undisputed that the quoted language appears in the APA, otherwise

disputed including the characterization of this language as an integration clause and any related implications about the meaning of the quoted language. Also disputed as misleading because the APA also states that the "ASSETS INCLUDED IN THE TRANSACTION" are "All *tangible* assets currently owned by Seller and used in the business." PLTFS000579.

24. The APA transferred "[a]ll tangible assets currently owned by [WeCare] and used in the business," and "all of [WeCare's] tangible and intangible assets, including, but not limited to, goodwill, inventory and equipment," with no carve out for intellectual property or ongoing legal claims. (Ex. __ (PLTFS000579 at PLTFS000579, PLTFS000585).)

Plaintiffs' Response: Undisputed that the quoted language appears in the APA, otherwise disputed including the framing of this language with "the APA transferred" and any related implications about the meaning of the quoted language. Also disputed as misleading because the APA also states that the "ASSETS INCLUDED IN THE TRANSACTION" are "All *tangible* assets currently owned by Seller and used in the business." PLTFS000579.

25. There were no addenda or written modifications to the APA. (Ex. __, Kalikhman Tr. 24:6–9; see generally Ex. __ (PLTFS000579 at PLTFS000579–87).)

Plaintiffs' Response: Undisputed that there were no written modifications to the APA, unclear what is meant by addenda and disputed on that ground.

26. Café Ole in the Valley was first listed on Yelp on or around March 9, 2019, when Lawrence Kalikhman or one of his associates, Mary or Danny, "claimed" the café's business page. (Ex. __, Kalikhman Tr. 157:14–16, 163:4–164:7; Ex. __ (PLTFS000172).)

Plaintiffs' Response: Disputed. Cafe Ole was listed and then "claimed" the page.

27. As part of claiming the Café Ole in the Valley business page on Yelp, WeCare agreed to Yelp's terms of service. (Ex. __, Kalikhman Tr. 164:17–21.)

Plaintiffs' Response: Disputed. This is a legal conclusion not properly included in a Rule 56.1 statement.

### III. PLAINTIFF MILLERCOBB LLC

28. Plaintiff Millercobb is a limited liability company whose sole member is Trevor Miller-Cobb. (Ex. __, Miller-Cobb Tr. 16:17–18, 20:8–10, 21:17–22:21.)

Plaintiffs' Response: Undisputed.

29. Millercobb has operated Dimensions Massage Therapy ("Dimensions") in Austin, Texas since the spring of 2019. (Ex. __, Miller-Cobb Tr. 20:8–10, 21:17–22:21, 30:10–12.)

Plaintiffs' Response: Undisputed.

30. Only two GiftRockets were ever purchased for suggested use at Dimensions. (Ex. __ (GR_0005624); see also Baum Decl. ¶¶ 54–56.)

Plaintiffs' Response: Undisputed that two GiftRockets were purchased for suggested use at Dimensions.

31. The first GiftRocket suggesting Dimensions was purchased for $100 by Cassie Riley in October of 2022, and then subsequently refunded by GiftRocket in full, including all service fees. (Ex. __ (GR_0014048); Ex. ___ (GR_0005624); Baum Decl. ¶ 55.)

Plaintiffs' Response: Undisputed.

32. Ms. Riley purchased a gift card directly from Dimensions for $90 on November 25, 2022. (Ex. __ (PLTFS000377); Ex. __, Miller-Cobb Tr. 132:3–133:18.)

Plaintiffs' Response: Undisputed.

33. The second GiftRocket was purchased by Trevor Miller-Cobb in the amount of one dollar as a "test." (Ex. __, Miller-Cobb Tr. 48:23–49:11.)

Plaintiffs' Response: Undisputed.

- 8 -

34. At the time Ms. Riley made her purchase in 2022, there were two different versions of a business landing page on giftrocket.com: a mobile version, which said, "Buy a [Business Name] Gift Card," and a web version, which said, "Buy a [Business Name] Gift." (Ex. __ (GR_0050862) (mobile version); (GR_0050870) (web version).)

Plaintiffs' Response: Undisputed that the quoted language appeared on the business landing page, disputed to the extent the statement suggests this is the only language that was shown to GiftRocket purchasers.

35. Without knowing whether a giftrocket.com user accessed the site on a mobile device versus the web, it cannot be known which version of the business landing page a user in 2022 would have seen. (See Ex. __ (GR_0050862) (mobile version); (GR_0050870) (web version).).

Plaintiffs' Response: Undisputed, except to the extent that the statement suggests there was a meaningful difference between the mobile versus web displays, which Plaintiffs dispute.

36. Dimensions was not a direct competitor of GiftRocket. (Ex. __, Miller-Cobb Tr. 179:2–17; compare, e.g., Miller-Cobb Tr. 91:2–11, with Baum Decl. ¶¶ 8–9.)

Plaintiffs' Response: Disputed. It is unclear what is meant by direct competitor in this context, but Dimensions sold gift cards and GiftRocket's false and misleading website and SEO strategy was intended to divert customers, and actually diverted at least one customer, of Dimensions to purchase Defendants' products instead.

37. The only specific instance of purported harm to Dimensions by GiftRocket that Miller-Cobb identified was Ms. Riley's original purchase of a GiftRocket suggesting that the money be used at Dimensions (before she then purchased a gift card directly from Dimensions). (Ex. _, Miller-Cobb Tr. 63:3–11, 64:13–25, 145:20–146:4, 146:4–25; 158:18–159:5.)

Plaintiffs' Response: Disputed, Dimensions has identified multiple other instances of harm including the loss of control of its brand and reputation through unauthorized use by GiftRocket.

38. Dimensions was first listed on Yelp in or around May 27, 2019, when owner Trevor Miller-Cobb "claimed" the Dimensions business page. (Ex. __, Miller-Cobb Tr. 30:7– 31:5, 37:22–38:15; Ex. __ (PLTFS000373).)

Plaintiffs' Response: Disputed. Dimensions was listed and then Miller-Cobb "claimed" the page.

39. As part of claiming Dimensions' business page on Yelp, Millercobb agreed to Yelp's terms of service. (Ex. __, Miller-Cobb Tr. 39:19–22.)

Plaintiffs' Response: Disputed. This is a legal conclusion not properly included in a Rule 56.1 statement.

## IV. THE GIFTROCKET WEBSITE

40. GiftRocket powered its suggestion feature through the Yelp API and Google Places API. (Baum Decl. ¶¶ 17, 37.)

Plaintiffs' Response: Undisputed that GiftRocket powered its website with the use of other businesses information obtained through the Yelp API and Google Places API, otherwise disputed including the characterization as a "suggestion feature" of the feature of GiftRocket intentionally misleading the public by falsely representing the sale of gift cards to specific businesses.

41. As of November 2012, the Yelp Terms of Service stated the following: Our Right to Use Your Content. We may use Your Content in a number of different ways, including publicly displaying it, reformatting it, incorporating it into advertisements and other works, creating derivative works from it, promoting it, distributing it, and allowing others to do the same in connection with their own websites and media platforms ("Other Media"). As such, you hereby

irrevocably grant us world-wide, perpetual, non-exclusive, royalty-free, assignable, sublicensable, transferable rights to use Your Content for any purpose. Please note that you also irrevocably grant the users of the Site and any Other Media the right to access Your Content in connection with their use of the Site and any Other Media. Finally, you irrevocably waive, and cause to be waived, against Yelp and its users any claims and assertions of moral rights or attribution with respect to Your Content. By "use" we mean use, copy, publicly perform and display, reproduce, distribute, modify, translate, remove, analyze, commercialize, and prepare derivative works of Your Content. (Ex. __ (GR_0051446 at GR_0051447); Ex. __ (GR_0051437 at GR_0051438); Ex. __ (GR_0051429 at GR_0051430); Ex. __ (GR_0051420 at GR_0051421) (emphases added).)

Plaintiffs' Response: Undisputed that the quoted language appears in the Terms of Service, disputed to the extent it suggests that this was the only applicable terms of use. Yelp's API also had a separate terms of use that Defendants violated by misusing the Yelp content and Yelp API. Defendants have violated their agreement to Yelp's API's Terms of Use, available at, https://www.yelp.com/developers/api_terms. Defendants, by using the Yelp API, have agreed that, among other things, "[they] will not, and will not assist or enable others to": (a) "cache, record, pre-fetch, or otherwise store any portion of the Yelp Content for a period longer than twenty-four (24) hours from receipt of the Yelp Content, or attempt or provide a means to execute any scraping or 'bulk download' operations."; (b) "modify the Yelp Content, or use it to update or create [their] own database of business listing information"; (c) "display or use Yelp user review ratings (numerical, star or any other representation of the Yelp user review rating calculation) alongside or in conjunction with other user-generated content"; (d) "use Yelp Content for any commercial purpose without the express written consent of Yelp"; (h) "display Yelp Brand Features or Yelp Content in a manner that could reasonably imply an endorsement, relationship or affiliation with

or sponsorship between you or a third party and Yelp"; (n) "use the API or Yelp Content in any manner or for any purpose that may violate any law or regulation, or any right of any person including, but not limited to, intellectual property rights"; and (p) "use the API or Yelp Content in connection with or to promote any products, services or materials that constitute, promote or are used primarily for the purpose of dealing in . . . , actions intended to mislead search engines into ranking some pages higher than they would otherwise deserve ('web spam') . . . [and] direct marketing."

42. GiftRocket switched from the Yelp API to Google Places API in June 2023. (Baum Decl. ¶¶ 34–35.)

Plaintiffs' Response: Undisputed that GiftRocket began using Google Places API in June 2023 after Yelp refused to continue doing business with GiftRocket, disputed to the extent the statement suggests that GiftRocket voluntarily switched rather than was forced by Yelp to switch.

43. Gracie Baked, Café Ole in the Valley, and Dimensions could not have been suggested on giftrocket.com during the time period when GiftRocket was using the Google Places API (June 2023 to December 31, 2024) because they had been removed from the website by that point. (Ex. __ (GR_0005330); Ex. __, Miller-Cobb Tr. 66:2–4.)

Plaintiffs' Response: Disputed. Defendants' system of preventing businesses from being relisted was haphazard at best, with repeated examples of businesses being relisted by GiftRocket after they made a removal request. *See, e.g.*, GR_0033411.

44. During the time Gracie Baked, Café Ole in the Valley, and Dimensions were suggestable on giftrocket.com, GiftRocket had disclosures on its business landing pages on giftrocket.com, such as: "The GiftRocket Prepaid Gift is redeemed for money through the GiftRocket website. It is not a gift card that is accepted by a third party merchant and is not covered

by the CARD Act." (Ex. __ (GR_0050835 at GR_0050836); Ex. _ (GR_0050856 at GR_0050857); Ex. __ (GR_0050870 at GR_0050871).)

Plaintiffs' Response: Undisputed that the quoted language appeared somewhere on the GiftRocket website, disputed that it effectively disclosed this information to customers or that the information was presented in a way that was read or understood by them, or that Defendants effectively informed customers that were not purchasing actual giftcards.

45. Other than to support redemptions of previously purchased GiftRockets, the GiftRocket website was shut down as of January 1, 2025. (See Baum Decl. ¶¶ 49–50.)

Plaintiffs' Response: Undisputed.

46. The founders of GiftRocket do not intend to restart giftrocket.com. (Baum Decl. ¶ 51; Kale Decl. ISO Opp. to Mot. for Class Cert. ¶ 12; Pines Decl. ISO Opp. to Mot. for Class Cert. ¶ 4.)

Plaintiffs' Response: Undisputed that the founders have made this statement, disputed that the statement is accurate or meaningful.

Respectfully Submitted,

By: */s/ Raphael Janove*
Raphael Janove
**JANOVE PLLC**
500 7th Avenue, 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

Liana Vitale
**JANOVE PLLC**
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

Dated: September 22, 2025

Dayron Silverio (Admitted *pro hac vice)*
Matthew Weinshall (Admitted *pro hac vice*)
**PODHURST ORSECK P.A.**
2525 Ponce de Leon Blvd., Ste. 500
Coral Gables, FL 33134
(305) 358-2800
ds@podhurtst.com
mweinshall@podhurst.com

*Attorneys for Plaintiffs and the Proposed Classes*