# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,

Defendants.

Case No. 22-CV-4019 (RPK) (VMS)

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

—served on March 28, 2025—

Raphael Janove
**JANOVE PLLC**
500 7th Avenue, 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

Liana Vitale
**JANOVE PLLC**
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

Matthew Weinshall (Admitted *pro hac vice*)
Dayron Silverio (Admitted *pro hac vice*)
**PODHURST ORSECK, P.A.**
2525 Ponce de Leon Blvd., Ste. 500
Coral Gables, FL 33134
(305) 358-2800
mweinshall@podhurst.com
dsilverio@podhurtst.com

*Attorneys for Plaintiffs and the Proposed Classes*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................6

LEGAL STANDARD ............................................................................................................9

ARGUMENT ........................................................................................................................9

    I.     Plaintiffs Satisfy Each of Rule 23(a)'s requirements. ................................. 9

          A.    The classes are so numerous that joinder is impractical ................................ 9

          B.    Questions of law and fact are common to the classes................................ 10

          C.    Plaintiffs are typical. ................................................................................ 10

          D.    Plaintiffs and counsel will fairly and adequately protect the class ................ 11

          E.    The classes are ascertainable................................................................ 12

    II.    Plaintiffs Satisfy Rule 23(b)(2) ............................................................... 12

    III.    Plaintiffs Satisfy Rule 23(b)(3) ............................................................... 14

          A.    Legal and factual questions predominate over any individualized ones ....... 14

               1.    Plaintiffs' § 43(a)(1)(A) unfair competition and false affiliation claims ........................................................................................ 15

               2.    Even if a "mark" were required, predominance is satisfied............. 19

               3.    Plaintiffs' § 43(a)(1)(B) false advertising claims ............................... 20

           B.    Monetary relief is simple and easily calculated ............................................ 22

           C.    A class action is far superior to individual actions........................................ 25

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. CovCare, Inc.,*
537 F. Supp. 3d 385 (E.D.N.Y. 2021) ................................................................................19

*4 Pillar Dynasty LLC v. New York & Co., Inc.,*
933 F.3d 202 (2d Cir. 2019) ............................................................................................24

*Abbott Lab'ys v. Feinberg,*
477 F. Supp. 3d 57 (S.D.N.Y. 2020) ..................................................................................6

*Adidas Am., Inc. v. Thom Browne, Inc.,*
742 F. Supp. 3d 352 (S.D.N.Y. 2024) ..............................................................................17

*Allegra v. Luxottica Retail N. Am.,*
341 F.R.D. 373 (E.D.N.Y. 2022) ................................................................................10, 11

*American Footwear Corp. v. General Footwear Co.,*
609 F.2d 655 (2d Cir. 1979) ............................................................................................15

*Atik v. Welch Foods, Inc.,*
2016 WL 11480151 (E.D.N.Y. Aug. 5, 2016) ...................................................................6

*Azurity Pharms., Inc. v. Edge Pharma, LLC,*
45 F.4th 479 (1st Cir. 2022) ............................................................................................21

*Barrows v. Becerra,*
24 F.4th 116 (2d Cir. 2022) ............................................................................................13

*Belfiore v. Procter & Gamble Co.,*
311 F.R.D. 29 (E.D.N.Y. 2015) ..........................................................................................9

*Belmora LLC v. Bayer Consumer Care AG,*
819 F.3d 697 (4th Cir. 2016) ..........................................................................................18

*Bravo Pizza Enterprises, Inc. v. Azizo,*
2023 WL 5548372 (E.D.N.Y. Aug. 29, 2023) .................................................................14

*Brown v. Kelly,*
609 F.3d 467 (2d Cir. 2010) ..............................................................................................9

*Cartier, a Div. of Richemont N. Am., Inc. v. Symbolix, Inc.,*
454 F. Supp. 2d 175 (S.D.N.Y. 2006) ..............................................................................14

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH,*
843 F.3d 48 (2d Cir. 2016) ..............................................................................................21

*Cinar v. R&G Brenner Income Tax, LLC,*
2024 WL 4224046 (E.D.N.Y. Sept. 18, 2024) .....................................................6, 14, 22

*Conopco, Inc. v. Campbell Soup Co.,*
95 F.3d 187 (2d Cir. 1996) ................................................................................................6

*Corker v. Costco Wholesale Corp.,*
2023 WL 1965907 (W.D. Wash. Feb. 13, 2023) ...............................................4, 10, 15, 22

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
   539 U.S. 23, (2003) ........................................................................................... 4, 18

*DDMB, Inc. v. Visa, Inc.,*
   2021 WL 6221326 (E.D.N.Y. Sept. 27, 2021) .............................................. 13

*E.E.O.C. v. Mavis Disc. Tire, Inc.,*
   129 F. Supp. 3d 90 (S.D.N.Y. 2015) .............................................................. 25

*Electra v. 59 Murray Enterprises, Inc.,*
   987 F.3d 233 (2d Cir. 2021) ...................................................................... 17, 20

*Empresa Cubana del Tabaco v. Culbro Corp.,*
   399 F.3d 462 (2d Cir. 2005) ...................................................................... 4, 18

*Fiber-Shield Indus. Inc. v. Fabricshield Holdings, LLC,*
   2023 WL 2734731 (E.D.N.Y. Mar. 31, 2023) ............................................ 17

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.,*
   2015 WL 4776932 (C.D. Cal. May 27, 2015) ........................................ 5, 23

*Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.,*
   647 F. Supp. 3d 145 (S.D.N.Y. 2022) ............................................................ 20

*Fullsend, Inc. v. Cannafellas, Inc.,*
   2023 WL 2970458 (E.D.N.Y. Jan. 31, 2023) .............................................. 20

*Genesee Brewing Co. v. Stroh Brewing Co.,*
   124 F.3d 137 (2d Cir. 1997) ............................................................................ 16

*George Basch Co. v. Blue Coral, Inc.,*
   968 F.2d 1532 (2d Cir. 1992) .......................................................................... 24

*Gortat v. Capala Bros.,*
   257 F.R.D. 353 (E.D.N.Y. 2009) ...................................................................... 9

*Grp. One Ltd. v. GTE GmbH,*
   2022 WL 4010850 (E.D.N.Y. Sept. 2, 2022) ................................................ 3

*Hasemann v. Gerber Prod. Co.,*
   331 F.R.D. 239 (E.D.N.Y. 2019) .................................................................... 10

*Hines v. Equifax Info. Servs. LLC,*
   2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) ............................... 6, 14, 15, 22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
   330 F.R.D. 11 (E.D.N.Y. 2019) ...................................................................... 25

*In re Petrobras Sec.,*
   862 F.3d 250 (2d Cir. 2017) ............................................................................ 12

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.,*
   335 F.R.D. 1 (E.D.N.Y. 2020) ........................................................................ 10

*Int'l Code Council, Inc. v. UpCodes Inc.,*
   43 F.4th 46 (2d Cir. 2022) ................................................................. 4, 20, 21

*Johnson v. Nextel Commc'ns Inc.,*
   780 F.3d 128 (2d Cir. 2015) ..........................................................................10, 14, 25

*Juul Labs Inc. v. Gates Mini Mkt. Corp.,*
   2022 WL 987430 (E.D.N.Y. Feb. 9, 2022) ........................................................................19

*Kurtz v. Kimberly-Clark Corp.,*
   321 F.R.D. 482 (E.D.N.Y. 2017) ..........................................................................5, 13, 25

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
   572 U.S. 118 (2014) ..........................................................................................21, 22

*Lin v. Miracle Curtains, NY, Inc.,*
   2022 WL 4386834 (E.D.N.Y. Sept. 22, 2022) ....................................................................20

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.,*
   19 F.4th 58 (2d Cir. 2021) ............................................................................................19

*May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.,*
   2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022) ......................................................................3

*Merck Eprova AG v. Gnosis S.p.A.,*
   760 F.3d 247 (2d Cir. 2014) ..........................................................................................24

*Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.,*
   2018 WL 2012875 (E.D.N.Y. Apr. 30, 2018) ......................................................................17

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,*
   874 F.2d 95 (2d Cir. 1989) ..................................................................................4, 15, 16

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,*
   704 F. Supp. 2d 305 (S.D.N.Y. 2010) ..............................................................................16

*POM Wonderful LLC v. Coca-Cola Co.,*
   573 U.S. 102 (2014) ......................................................................................................18

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
   293 F.R.D. 287 (E.D.N.Y. 2013) ....................................................................................22

*Souza v. Exotic Island Enterprises, Inc.,*
   68 F.4th 99 (2d Cir. 2023) ......................................................................................17, 22

*Sykes v. Mel S. Harris & Assocs. LLC,*
   780 F.3d 70 (2d Cir. 2015) ............................................................................................12

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
   497 F.3d 144 (2d Cir. 2007) ..........................................................................................21

*Travel Leaders Grp., LLC v. Corley,*
   2019 WL 6647319 (S.D.N.Y. Dec. 5, 2019) ......................................................................22

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
   505 U.S. 763 (1992) ................................................................................................4, 18

*Walker v. Thompson,*
   404 F. Supp. 3d 819 (S.D.N.Y. 2019) ..............................................................................16

**Statutes**

15 U.S.C. § 1116 ................................................................................................................14

15 U.S.C. § 1117 ................................................................................................................23

15 U.S.C. § 1125 (Lanham Act § 43) ..................................................................*passim*

15 U.S.C. § 1127 ................................................................................................................19

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................*passim*

**Treatises**

McCarthy on Trademarks and Unfair Competition § 24:2 (5th ed.) .......................................19

# INTRODUCTION

This is a straightforward case about lying to the public and coopting class members' names and addresses in service of that lie. Defendants created a website, GiftRocket.com, to peddle a message they've repeatedly admitted was false (in response to an endless flood of angry consumer and business complaints): that the website sold "gift cards" for Plaintiffs and class members—businesses whose information Defendants placed on GiftRocket.com without first obtaining their permission.

The scheme was automated and uniform. Defendants robotically scraped class members' actual Yelp and Google Places pages to spawn stock, "template" landing pages within GiftRocket.com, each containing class members' actual names and addresses, each falsely advertising the sale of class members' "gift cards" by prominently using phrases such as "[Business Name] Gift Card," "Buy a [Business Name] Gift," "Buy Gift Card to [Business Name]," and "GiftRocket Gift Card to [Business Name]" in the page's headers and titles. Defendants also deployed a search engine optimization ("SEO") strategy that littered the internet with millions of search results that uniformly bore the false claim: "Buy a [business name] Gift Card" and "Buy a gift card to [business name]," even including the business's address to complete the false impression that GiftRocket.com was selling a gift card to a specific business at a specific location.

But Defendants did *not* sell gift cards to class members. Defendants themselves admitted the literal falsity of their claims of selling gift cards to specific businesses. When businesses reached out to demand removal, GiftRocket Customer Support sent a canned response admitting "I apologize for any confusion, **GiftRocket does not sell gift cards to businesses**." *See* Ex. 1 (emphasis in original).

Rather, GiftRocket.com was just an overpriced money transfer platform (think Venmo or Zelle, but with high transaction fees), as even GiftRocket's banking partner, Defendant Sunrise Banks, N.A., internally admitted. *See, e.g.*, Ex. 2 ("we have a problem with this program advertising the product as a gift card when in fact it is a money transmission service very light on the gift card piece."). This

truth was only adequately revealed after the "gift card" was sold, when instead of receiving a gift card for the class member-business, the recipient would be prompted to provide their bank account information to receive the gifted funds. Thus, the only way a GiftRocket recipient could use the gift at the business that the gift-giver had selected on GiftRocket.com was for the recipient to provide their bank account information to Defendants, receive funds in the account, and then go spend the money at the business. *See* Ex. 3. Of course, this was confusing. *See, e.g.*, Ex. 4 ("[I]f I got something via email or in the mail saying I got a gift and recommending a location – I would totally assume I could take it there and use it, like a Groupon."); Ex. 5 at 260.

Defendants have leveraged this customer confusion to make millions of dollars, attracting customers by using class members' names and addresses and by making uniformly false statements that class members' gift cards are offered for sale on GiftRocket.com. The misappropriation of class members' names and addresses to peddle false goods yielded a three-part financial play: revenue from the service fee associated with each transaction; revenue from "breakage"—unredeemed gifted funds that are fully pocketed by Defendants; and a referral percentage that Defendants kept whenever a recipient chose to redeem the gifted money with a third-party merchant (*i.e.*, redeeming the gifted funds by purchasing, from Amazon, an Amazon gift card, whereby Defendants would keep a percentage as a referral fee). That GiftRocket gave off the appearance of a scam to the gift recipients only made it more lucrative. Nearly a quarter of all the "gift cards" sold on GiftRocket for a specific class member went unredeemed, totaling nearly $8.9 million in value in pure profits for Defendants.

To address Defendants' misappropriation of class members' information and their false statements that GiftRocket.com sold class members' gift cards, Plaintiffs bring claims for (1) Lanham Act § 43(a)(1)(A) false affiliation and unfair competition; (2) Lanham Act § 43(a)(1)(B) false advertising; (3) New York General Business Law ("GBL") §§ 349 & 350; and (4) common law unfair competition. *See* ECF No. 137 ("SAC") Counts I–IV. The Lanham Act claims are premised on basic

principles of unfair competition and center on Defendants' false and misleading statements about the class members. The standards for Plaintiffs' state-law unfair competition claims "mirror" the Lanham Act claims. *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, 2022 WL 4539577, at *2 (E.D.N.Y. Sept. 28, 2022). Similarly, the New York GBL claims ask whether the practice was misleading, consumer-oriented, and injured the public at large. *See Grp. One Ltd. v. GTE GmbH*, 2022 WL 4010850, at *21 (E.D.N.Y. Sept. 2, 2022).

Class certification is the natural, sensible outcome of Defendants' standard practices, which are common to Plaintiffs and millions of class members alike. Just as with all class members, Defendants created stock webpages containing unauthorized and objectively false claims about the sale of "gift cards" for Plaintiffs. Like all class members, Plaintiffs' names and addresses were robotically misappropriated from the same source and automatically populated onto Defendants' landing pages containing identical, false language. In this way, this case is similar, if not *better* suited for class certification given its automated nature, to other lawsuits involving a simple pattern of deception or misuse of class members' information.

To illustrate, common evidence proves Plaintiffs' false affiliation claim under Lanham Act § 43(a)(1)(A) (Count I), which tracks the statute's plain language. Defendants are "persons" that "use[] in commerce **any** word, term, name, symbol, or device, or **any** combination thereof or **any** . . . false or misleading description of fact, or false or misleading representation of fact." 15 U.S.C. § 1125. The GiftRocket website generates cookie-cutter landing pages and search engine results that use the exact same information about Plaintiffs to falsely represent, in the same manner for each business, that GiftRocket sells gift cards to these businesses. *See* Ex. 6 ("GiftRocket, LLC Tr.") 156:10-158:04.

Common evidence also proves Plaintiffs' Lanham Act false advertising claim. Defendants' intentionally false statements, like "Buy a gift card [to business name]" or "[Business Name] gift card", are literally false on their face, which Defendants admit. Because of Defendants' "deliberate

deception," all class members are entitled to a "rebuttable presumption of consumer confusion" for their false advertising claim, even without any reliance on extrinsic evidence of actual confusion, of which there is plenty. *See Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 57 (2d Cir. 2022).

These claims do not require any individualized inquiries into class members' "trademarks" or similar concepts regarding a mark. Section 43(a) of the Lanham Act "does not mention trademarks" and courts are forbidden from "[e]ngrafting onto § 43(a) a requirement" without a "textual basis" to do so. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992). Thus, "Section 43(a) 'goes beyond trademark protection'" and "includes causes of action grounded in allegations of 'false or misleading description of fact,'" or "'false or misleading representation of fact.'" *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 478 (2d Cir. 2005) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003)); *see Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 102 (2d Cir. 1989) (observing unfair competition claim "not foreclosed" by "generic" mark "not entitled to trademark protection" because "[a] claim of trademark infringement is but a part of the broader claim of unfair competition"; holding defendant "intentionally represented his product as plaintiff's," and "[t]hat is unfair competition"). Consistent with these precedents, Judge Scanlon denied Defendants' motion to compel seeking discovery into trademarks and similar marks, and this Court overruled Defendants' objection to the discovery order. *See* ECF No. 151 & Nov. 12, 2024 Order. No inquiry into "marks" is required to demonstrate that Defendants' uniform false and misleading representations violated the Lanham Act.

In sum, this case is well suited to class treatment just like in other class actions. A class settlement in an almost identical case (*Giftly*) has already received final approval after the court found the Rule 23 factors satisfied. *See WeCare RG, Inc. et al, v. Giftly Inc*, No. 2:22-cv-02672, ECF No. 52 (E.D. Pa. Oct. 30, 2023); Ex. 7, *Giftly* Hearing Tr. ("Giftly Tr.") 18:4–5. It is also similar to *Corker v. Costco Wholesale Corp.*, 2023 WL 1965907 (W.D. Wash. Feb. 13, 2023), where the court certified a

Lanham Act case involving the false sale of "Kona" coffee after concluding that "[t]he question of whether the packaging and labeling of the various Kona products sold in MNS' stores is misleading is capable of classwide resolution and will drive the resolution of the litigation." *Id.* at *3. This case is also similar to another involving a defendant's unauthorized use of the class member's products where plaintiffs sought to disgorge defendants' profits. *See, e.g., Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932, at *14 (C.D. Cal. May 27, 2015). Here, just like in *Flo & Eddie*, Defendants' identification of potential individualized issues "does not predominate over the nearly identical legal issues and ***pattern of exploitation*** in this case." *Id.* at *12 (emphasis added). More broadly, this case is akin to a run-of-the-mill false advertising case, where the false statements themselves drive legal and common issues based on a defendant advertising a product but "[t]he product was not what it said it was." *See, e.g., Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 550 (E.D.N.Y. 2017).

Plaintiffs therefore move to certify the following three classes.

First, Plaintiffs Gracie Baked LLC ("Gracie Baked") and WeCare RG, Inc. ("WeCare RG") move to represent and certify the "Injunctive Class" under Rule 23(b)(2):

> All businesses or entities in the United States that were listed on GiftRocket.com from July 8, 2016 through January 1, 2025.

Second, Plaintiff Millercobb LLC ("Millercobb") moves to represent and certify the "Disgorgement and Punitive Damages Class" under Rule 23(b)(3):

> All businesses or entities in the United States that were identified in the suggested use feature for GiftRocket.com products sold from July 8, 2016 through January 1, 2025.

Third, Plaintiff Gracie Baked moves to represent and certify the "New York Class" under Rule 23(b)(3):

> All businesses or entities in New York that were listed on

GiftRocket.com from July 8, 2016 through January 1, 2025.[1]

Excluded from the classes are any businesses or entities that have provided written consent to be listed on GiftRocket.com.[2]

Given Defendants' uniform practices, which yielded automated and standardized instances of misappropriation and false statements for all class members, "those policies and procedures uniformly [applied] to all" class members establish that "[Plaintiffs]' injuries are sufficiently similar to those suffered by other members of the proposed class that their interests in litigating this case are aligned." *Hines v. Equifax Info. Servs. LLC*, 2024 WL 4132333, at *2 (E.D.N.Y. Sept. 10, 2024) (Kovner, J.). Therefore, even if there are "individualized questions that relate equally to both liability and damages," certification is still proper given that central questions predominate. *Cinar v. R&G Brenner Income Tax, LLC*, 2024 WL 4224046, at *7 (E.D.N.Y. Sept. 18, 2024) (Kovner, J.).

## BACKGROUND

Since its founding in 2010, the GiftRocket.com website has used the names and information of millions of other businesses without first obtaining their permission, falsely suggesting that it sold "gift cards" for use at those businesses. *See* GiftRocket, LLC Tr. 55:23–56:08, 159:23–160:09, 161:25–162:09; Exs. 8-12. GiftRocket[3] obtained this information in the exact same way with respect to every business, by pulling it first from Yelp and later from Google Places. *See* GiftRocket, LLC Tr. 132:05-132:12, 156:05-157:02. GiftRocket also used this information in the exact same way for every business:

---

[1] The New York six-year limitations period for Lanham Act and common law unfair competition claims applies classwide because the GiftRocket Defendants' companies are headquartered in New York and its two of its co-founders are New York residents. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996); *Abbott Lab'ys v. Feinberg*, 477 F. Supp. 3d 57, 64 (S.D.N.Y. 2020). The GBL claims have a three-year statute of limitations. *See Atik v. Welch Foods, Inc.*, 2016 WL 11480151, at *7 (E.D.N.Y. Aug. 5, 2016) (Scanlon, J.).

[2] Also excluded from the proposed Classes are Defendants and their parents, subsidiaries, affiliates, officers, and directors, and any entity in which Defendants have a controlling interest.

[3] Plaintiffs use the term "GiftRocket" to collectively refer to the corporate GiftRocket Defendants and the Individual Defendants in this action.

the business's name and address was programmatically plugged into a templated webpage that displayed the exact same false and misleading phrases in connection with each business—such as "[Business Name] Gift Card," "Buy a [Business Name] Gift," or "Buy Gift Card to [Business Name]" —in the page's headers and titles. These stock landing pages looked identical from business to business. And these webpages were designed to and did trick consumers into believing they could buy a gift card for direct use at the listed business. *See* GiftRocket, LLC Tr. 156:10-158:04; Ex. 13 ("Pines Tr.") 28:17-29:04, 29:15-30:10. Representative examples of the website templates are attached as Exhibits 9–12 and 14.

GiftRocket also used this scheme to increase its prominence in Google search results— creating millions of stock search results linking to these business-specific landing pages, all falsely claiming that users who clicked on the link could "buy a gift card to [business name]." *See* Ex. 8; Ex. 15 at 16-17.



These results were among the top options for a "<business name> gift card" search, helping GiftRocket.com attract more than 15 million website users and upwards of 100,000 visitors a month. *See* Exs. 15-16.

But contrary to what these search results and webpages stated, Defendants did not sell a gift card for the actual businesses advertised. GiftRocket repeatedly admitted as much to businesses that requested removal from the GiftRocket.com website, using canned customer service responses stating: "I apologize for any confusion, **GiftRocket does not sell gift cards to businesses**." Ex. 1

("Your listing online is specifically worded 'Buy a Paragary's Restaurant Group Gift Card,' which is clearly a false statement, based on your response email ("**GiftRocket does not sell gift cards to businesses.**")) (emphasis and parenthesis in original).

Instead of offering actual "gift cards" to the listed businesses, GiftRocket.com was instead an overpriced money transfer platform, the truth of which revealed itself to the intended recipient of the "gift card" when they went to redeem their gift. The only way a recipient could use their gift at the "suggested" or listed business would be to provide their bank account information, receive funds in the account, and then go spend the money—without a gift card—at the business. *See* Ex. 3.

The discrepancy between GiftRocket's marketing schemes and the reality of its product led to a flood of confused customers and angry businesses demanding removal from the GiftRocket.com website. *See* Exs. 5, 17–29; Ex. 5 at 132 ("Did not like how you scam people into thinking they are giving a gift card for a restaurant and then ask the recipient to give a bank account number."); 258 ("Considering you obtained my money through false advertising, because you never had a gift card available for Menz restaurant, but lead me to think that was exactly what I was buying, only to find out it was for amazon and other companies or my mother would need to give you all of her bank information. I dont know what kind of scam you are doing with your company."). A law enforcement agency even issued a "SCAM ALERT" about GiftRocket, warning the public that "[t]he website purports to sell gift cards" for businesses that were not "associated with GiftRocket.com." *See* Ex. 30. Due to the unending flood of customer complaints, GiftRocket customer service even developed a canned response beginning with "sorry for the confusion . . . GiftRocket is a little different from your standard gift card" that it sent hundreds of confused senders and recipients. *See, e.g.*, Ex. 5 at 268-72.

Instead of making it easy for businesses to request removal, GiftRocket tried to avoid publicly mentioning that businesses could request to be taken off the website because "there is a tacit admission of wrongdoing" and listing businesses without their consent was "how [GiftRocket] makes money."

Exs. 31-32. And even though GiftRocket removed at least 34,000 landing pages because businesses demanded removal, *see* Janove Decl. ("J. Decl.") ¶ 96, the process was not easy or straightforward. There are scores of examples where a business had to request removal from GiftRocket multiple times before their landing page was actually taken down, along with repeated examples of businesses being relisted by GiftRocket after they made a removal request. *See* Ex. 17 at 280, 282, 284, and 289. Exhibits 17, 19, 21, 23, and 27 are compilations of more than 300 removal requests from businesses, including cease and desist letters. In Defendants' own words, one of GiftRocket's "[m]ost **common** issues" is "angry" businesses that demand removal from GiftRocket.com. *See* Ex. 33. And, of course, Defendants did *not* obtain consent from *any* business prior to listing it and misusing its information.

## LEGAL STANDARD

"Rule 23 should be construed 'liberal[y] rather than restrictively'" and "[t]he 'general preference' of the Court of Appeals for the Second Circuit is 'granting rather than denying class certification.'" *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 60 (E.D.N.Y. 2015) (quoting *Gortat v. Capala Bros.*, 257 F.R.D. 353, 361–62 (E.D.N.Y. 2009)). To be certified, a "class must first meet all four prerequisites set forth in Rule 23(a)," as well as "one of the three subdivisions of Rule 23(b)." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

## ARGUMENT

**I.      Plaintiffs Satisfy Each of Rule 23(a)'s requirements.**

**A.      The classes are so numerous that joinder is impractical**

Numerosity is easy to show, and uncontested by Defendants. "As Gift[Rocket] automatically lists every business that has at least one review on Yelp, joinder is impractical and the numerosity requirement is met." *See* Giftly Tr. 14:13–15; GiftRocket, LLC Tr. 158:20-159:11, 159:23-160:09. Even after GiftRocket switched to the Google Places API, the website listed at least one million businesses. *See* GiftRocket, LLC Tr. 159:23-160:09; Ex. 34. The class is therefore sufficiently numerous. *See In re*

*Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 11 (E.D.N.Y. 2020).

## B.     Questions of law and fact are common to the classes

Plaintiffs have also shown that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single common question" will suffice. *Allegra v. Luxottica Retail N. Am.*, 341 F.R.D. 373, 398 (E.D.N.Y. 2022).

The elements of Plaintiffs' claims contain common questions and answers, including: (a) whether GiftRocket's stock website landing pages and Google search result links contained a false or misleading statement regarding the sale of a class member gift card, and (b) whether GiftRocket's uniformly executed scam—which listed the same information for each class member, and the same false representation—was likely to confuse consumers into thinking that GiftRocket sold actual gift cards to businesses. *See Corker*, 2023 WL 1965907, at *3 (common questions "relate[] to [defendants'] alleged sale of deceptively labeled goods in violation of the Lanham Act").

Plaintiffs will show through common proof that these elements are met because "the same conduct or practice by the same defendant[s] gives rise to the same kind of claims from all class members." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137–38 (2d Cir. 2015) (cleaned up). Here, as in *Giftly*, "class members' claims stem from a common course of conduct. [They] were listed on Gift[Rocket]'s website without their consent in accordance with Gift[Rocket]'s common policies and practices." *See* Giftly Tr. 14:16–19; GiftRocket, LLC Tr. 55:23-56:08.

## C.     Plaintiffs are typical.

"The typicality requirement is satisfied, as the three named plaintiffs alleged they were injured by the same course of conduct (being listed without their consent on Gift[Rocket]'s website) as the other members of the class." Giftly Tr. 14:23–15:1; *Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 269 (E.D.N.Y. 2019) (typicality satisfied where "[p]laintiffs claims arise out of the same course of conduct by the defendant and are based on the same legal theories upon which the putative class members will

base their claims" (cleaned up)); *Allegra*, 341 F.R.D. at 399 ("Because Plaintiffs allege a common pattern of wrongdoing . . . and 'will present the same evidence' based on the same legal theories to support the claims of [p]laintiffs and all class members, this is sufficient to establish typicality." (cleaned up)). And "[s]ince the claims only need to share the same essential characteristics, and need not be identical, the typicality requirement is not highly demanding." *Allegra*, 341 F.R.D. at 399.

Plaintiffs' claims here mirror those of the classes they seek to represent: none of the named Plaintiffs consented to being listed on the GiftRocket website; Plaintiffs Gracie Baked and WeCare had their businesses' name and information listed on the GiftRocket website in the same misleading fashion as the rest of the class; and Plaintiff MillerCobb was harmed in the same manner as other businesses who had unauthorized "gift cards" sold in their names by Defendants.

### D. Plaintiffs and counsel will fairly and adequately protect the class

Plaintiffs are adequate because they do not have *any*, let alone a "fundamental," conflict of interest with the class members. *Allegra*, 341 F.R.D. 373 at 399–400. All three Plaintiffs have actively participated in this lawsuit, consistently communicating with counsel, responding to numerous discovery requests, producing over 1,000 pages of responsive documents, and producing six witnesses for depositions. *See* J. Decl. ¶¶ 18-25; Ex. 35 ("Gracie Tr.") 156:19-160:10, 186:20-188:17; Ex. 36 ("WeCare Tr.") 125:06-09, 128:24-131:18; and Ex. 37 ("Millercobb Tr.") 204:09-207:12, 215:03-216:08. Each Plaintiff's testimony confirms they have no conflicts of interest with counsel and demonstrates their understanding of the facts and key parties, and their responsibilities as class representatives— more than meet the standards for case knowledge and participation. *See* Gracie Tr. 112:16-124:05; 138:20-149:13;.188:18-189:04; WeCare Tr. 74:24-76:03; 83:24-92:07; 121:02-09; Millercobb Tr. 196:10-202:07; 217:02-17.

Plaintiffs' counsel are also adequate, comprised of attorneys with extensive class and collection action experience. J. Decl. ¶¶ 4-17; Weinshall Decl. ¶¶ 4-16. A cursory review of the docket in this

case demonstrates that counsel have worked tirelessly on behalf of the class, with extensive dispositive and discovery briefing—the majority of which has been resolved in Plaintiffs' favor. J. Decl. ¶¶ 26-27.

### E.     The classes are ascertainable

Here, as with *Giftly*, "the class is ascertainable as the class comprises businesses listed on Gift[Rocket]'s website and can be identified through reviewing Gift[Rocket]'s records," Giftly Tr. 18:1–3, or through Yelp's files or Google. *See In re Petrobras Sec.*, 862 F.3d 250, 265 (2d Cir. 2017) ("The ascertainability doctrine that governs in this Circuit requires only that a class be defined using objective criteria that establish a membership with definite boundaries.").

GiftRocket maintained a database of businesses for which a landing page was created or could have been created (either through Google crawling or a user's search); it created a backup of the Yelp version of this database when it switched to the Google Places API; and it maintained a smaller version while it used the Google Places API until January 1, 2025. *See* GiftRocket, LLC Tr. 159:23-160:09, 161:14-24; Pines Tr. 92:20-24; Ex. 38 ("Kale Tr.") 46:08-47:09; and Ex. 39.

The 23(b)(3) disgorgement class is also easily identified based on Defendants' sales data, which have been stored in easily searchable spreadsheets. *See, e.g.*, J. Decl. ¶¶ 96-97. These spreadsheets contain columns with the name and "yelp-slug" identifying the specific business that a gift was suggested for use. And the few businesses that have provided written consent to being listed on GiftRocket.com, which excludes them from the classes, are easily identified in Defendants' records.

## II.     Plaintiffs Satisfy Rule 23(b)(2)

A Rule 23(b)(2) injunctive relief class may be maintained "where 'a single injunction . . . would provide relief to each member of the class.'" *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 80 (2d Cir. 2015) (citation omitted). Rule 23(b)(2) is easily satisfied. Just like in *Giftly*, Plaintiffs and the class were "subject to the same course of conduct by Gift[Rocket] (listing their business on its website without consent and ways allegedly likely to cause consumer confusion)." Giftly Tr. 16:5–12. Plainly,

"the party opposing the class has acted or refused to act on grounds that apply generally to the class."
Fed. R. Civ. P. 23(b)(2).

Here, Plaintiffs seek an injunction preventing Defendants from relaunching business landing pages for GiftRocket.com, which they voluntarily ceased to operate on January 1, 2025, or to otherwise recreate any similar website that lists businesses without their written consent. *See Kurtz*, 321 F.R.D. 482 at 547 ("an injunction prohibiting defendants from [falsely] labeling their products . . . would provide a single solution, applicable to each class member."). Defendants could easily restart their unlawful activities at any time. They still have everything they need to operate it again, including the same employees and officers who operated the website and advocated for it to continue to run as well as the banking relationships to facilitate transactions. *See* Ex. 40 ("Kubic Tr.") 95:11-16, 109:05-13, 114:12-15, 147:17-25; Ex. 41 at 2; Ex. 42 at 3-4; Ex. 43 at 3; Ex. 44 at 2; and Ex. 45. They simply need to press a button and scrape businesses' information again from Google Places API or another business database to relaunch. *See* Ex. 46 ("Baum Tr.") 16:15–23, 204:23–205:05; Kubic Tr. 222:23-223:16, 225:21-22, 226:06-10; and Ex. 47. They have more than enough money to fund it again— ██████████████████████████████████████████████████████ *See* Baum Tr. 233:07-234:05; Ex. 48; and Exs. 49–52. And without an injunction and the cost of legal fees related to this action, a reversal of course becomes a much more attractive business proposition for GiftRocket to restart a website their executives described as "free money." *See* Ex. 44 at 2.

Thus, "final injunctive relief … is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Such injunctive relief is proper under 23(b)(2) because it stops the core harms alleged, and "different class members can benefit differently from an injunction." *Barrows v. Becerra*, 24 F.4th 116, 132 (2d Cir. 2022); *see also DDMB, Inc. v. Visa, Inc.*, 2021 WL 6221326, at *45 (E.D.N.Y. Sept. 27, 2021) ("Differences in how each individual merchant is affected do not negate the fact that Defendants have acted on grounds generally applicable to the class and that each merchant in the class stands to benefit

from equitable relief."). To the extent any class member wants to be listed on GiftRocket.com, they can do so. Defendants would simply need to ask for businesses' permission first before listing them.

Seeking injunctive relief on behalf of the class is simple. After class certification, Plaintiffs will seek summary judgment on liability and a permanent injunction. *See, e.g.*, *Cartier, a Div. of Richemont N. Am., Inc. v. Symbolix, Inc.*, 454 F. Supp. 2d 175, 183 (S.D.N.Y. 2006) (granting partial motion for summary judgment on liability for showing of likelihood of confusion under the Lanham Act and entering permanent injunctive relief). Under the Trademark Modernization Act of 2020, a plaintiff seeking injunctive relief under the Lanham Act is entitled to "a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). Plaintiffs and the class will use common evidence that overwhelmingly demonstrates a likelihood of confusion (an objective test) and consumer deception, and as a result, when they seek injunctive relief, will be entitled to "a rebuttable presumption of irreparable harm." *Bravo Pizza Enterprises, Inc. v. Azizo*, 2023 WL 5548372, at *6 (E.D.N.Y. Aug. 29, 2023).

## III.  Plaintiffs Satisfy Rule 23(b)(3)

### A.  Legal and factual questions predominate over any individualized ones

Even if there are "individualized questions that relate equally to both liability and damages," certification is still proper where central questions predominate. *Cinar v. R&G Brenner Income Tax, LLC*, 2024 WL 4224046, at *7 (E.D.N.Y. Sept. 18, 2024) (Kovner, J.). Common proof answers the predominant legal and factual questions as to all claims because "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Nextel*, 780 F.3d, at 137–38 (cleaned up) *see* Giftly Tr. 16:17–17:1.

Defendants' website operated identically as to Plaintiffs and all the class members, so predominance is easily met. The false and misleading statements and likelihood of confusion are both the byproduct of Defendants' "uniformly" applied "policies and procedures." *Hines v. Equifax Info. Servs. LLC*, 2024 WL 4132333, at *2 (E.D.N.Y. Sept. 10, 2024) (Kovner, J.). Defendants

algorithmically created business-specific landing pages by "tak[ing] [the] hyphenated name of the business, get[ting] the associated information about that Yelp profile such as name, description, reviews, what have you, and then **the code for that page** would **generate** a page seen in a browser, but it would have blanks that's like 'Insert business name here,' 'Insert business description here,' 'Insert business reviews here.'" Pines Tr. 29:19-30:10 (emphasis added); *see also* GiftRocket, LLC Tr. 156:16-157:02 (discussing "the template web pages where **some of that information is static** and then there is **room for dynamic business information** and it's **from the Yelp API queries**") (emphasis added). Defendants' uniform and common conduct therefore proves injury and entitlement to monetary relief for the class members.

All that remains are simple calculations of the monetary amounts to which each class member is entitled using the same formulas and Defendants' own records. Thus, the "determination" of monetary relief "is not substantial enough to defeat predominance," and in fact supports it. *Hines*, 2024 WL 4132333 at *2; *see also Corker*, 2023 WL 1965907 at *3 (granting certification even though not "every element of plaintiffs' Lanham Act claim [can] be capable of classwide resolution").

### 1. Plaintiffs' § 43(a)(1)(A) unfair competition and false affiliation claims

"Courts should consider the balance of individualized and common proof that will be required to establish absent class members' standing when conducting the predominance analysis." *Hines*, 2024 WL 4132333 at *3. Common evidence answers the predominant questions and establishes standing.

As to Plaintiffs' § 43(a)(1) unfair competition claim, common evidence proves Defendants' "misappropriation of the skill, expenditures, and labor of another." *Murphy Door Bed Co. v. Interior Sleep Sys.*, 874 F.2d 95, 102 (2d Cir. 1989) (original alterations omitted) (quoting *American Footwear Corp. v. General Footwear Co.,* 609 F.2d 655, 662 (2d Cir. 1979)). This claim does not require proof of any sort of protectable "mark." *See id.* ("A claim of trademark infringement is but a part of the broader claim of unfair competition. . . . Thus, while the mark . . . may be generic and not entitled to trademark

protection, [a] claim of unfair competition is not foreclosed.") (citations omitted); *see Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997) ("The fact that Genesee's mark is generic . . . does not preclude a finding that Stroh has violated the Lanham Act by engaging in unfair competition"). Defendants have misappropriated information about Plaintiffs' and class members' businesses for their own profit, scraping business data from Yelp or Google to deceive customers into believing GiftRocket.com sold class members' gift cards. *See Murphy*, 874 F.2d at 102. In other words, GiftRocket "intentionally represented [its] product as plaintiff's [product]," *id.*, when in actuality, it was selling its own gifts that were not redeemable for use at these businesses. "That is unfair competition," *see id.*, based on Defendants' common practices for all class members.

Plaintiffs' false affiliation claim tracks the statute's plain language, and is supported by common evidence. Defendants are a "person" that "uses in commerce **any** word, term, name, symbol, or device, or **any** combination thereof or **any** . . . false or misleading description of fact, or false or misleading representation of fact"—that GiftRocket purportedly sells 'gift cards' to these businesses as evidence by its templated websites and common SEO strategy. 15 U.S.C. § 1125(a). And these deceptive tactics "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person [GiftRocket] with another person [Plaintiffs and the class members]." *See id.*; *Walker v. Thompson*, 404 F. Supp. 3d 819, 824 (S.D.N.Y. 2019) ("Section 43(a) of the Lanham Act prohibits misappropriation of a person's name or likeness that is 'likely to cause confusion' about that person's association with a product or service.").

Common evidence establishes the likelihood of confusion.[4] The Second Circuit applies the *Polaroid* test to determine the likelihood of confusion, which generally requires that "an appreciable

---

[4] The likelihood of confusion also proves the New York Class's GBL claim. *See New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 325 n.7 (S.D.N.Y. 2010) (sustaining GBL claim where "Defendant's . . . suggesting an affiliation with Plaintiff when no such affiliation exists, is misleading to New York consumers. It also harms Plaintiff.").

number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused." *Mitsubishi Motors N. Am. Inc. v. Grand Auto., Inc.*, 2018 WL 2012875, at \*10 (E.D.N.Y. Apr. 30, 2018). This is "an objective standard." *Adidas Am., Inc. v. Thom Browne, Inc.*, 742 F. Supp. 3d 352, 359 (S.D.N.Y. 2024). The *Polaroid* "factors are neither exhaustive nor applied mechanically." *Souza v. Exotic Island Enterprises, Inc.*, 68 F.4th 99, 110 (2d Cir. 2023) (citations omitted).

The *Polaroid* test is not applied mechanically "because the ultimate question under [*Polaroid*] is the likelihood of consumer confusion." *See id.* at 117 (court's alteration). Here, a mechanical application of the *Polaroid* test is particularly inapt because most of the *Polaroid* factors apply to trademark infringement claims, which is not at issue. This is not a case where Defendants created marks similar to Plaintiffs', and the question is whether that similarity caused confusion. *See, e.g., Fiber-Shield Indus. Inc. v. Fabricshield Holdings, LLC*, 2023 WL 2734731 (E.D.N.Y. Mar. 31, 2023) (Kovner, J.) (infringement of a registered trademark "Fiber-Shield" against a defendant using "Fabric-Shield"). Nor is it a case where defendants used a single identifying marker for a plaintiff, and the question is whether the mark on its own was likely to cause customer confusion based on the mark's standalone recognizability. *See Electra v. 59 Murray Enterprises, Inc.*, 987 F.3d 233, 258 (2d Cir. 2021) (whether use of a face similar to a plaintiff's might cause confusion). Here, Defendants used class members' *actual* names and addresses scraped from class members' *actual* Yelp accounts to peddle fake gift cards. In the words of Sunrise Banks' compliance division, "if consumers 'think' they are getting a gift card," which is true for thousands of consumers, "there is obviously confusion." *See* Ex. 53.

That Plaintiffs' claims do not require proof of a protectable mark has been repeatedly briefed throughout this litigation, including in Plaintiffs' response to Defendants' now-overruled objections to the denial of their motion to compel seeking discovery into trademarks and other types of "marks." *See* ECF No. 151 at 10-17; ECF No. 182. To briefly summarize, under the plain text of § 43(a), Plaintiffs do not need to establish a trademark to succeed. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505

U.S. 763, 774 (1992) (observing that "section [43(a)] does not mention trademarks" and forbidding courts from "[e]ngrafting on to § 43(a)" requirements that do not "appear in the text of § 43(a)"). Thus, "Section 43(a) 'goes beyond trademark protection'" and "includes causes of action grounded in allegations of 'false or misleading description of fact,'" or "'false or misleading representation of fact.'" *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 478 (2d Cir. 2005) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003)); *see POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014); *see also Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 706 (4th Cir. 2016) ("Significantly, the plain language of § 43(a) does not require that a plaintiff possess or have used a trademark in U.S. commerce as an element of the cause of action.").

Thus, applying the *Polaroid* test and excluding irrelevant factors that apply in cases that turn on marks, common proof answers the "ultimate" question—that Defendants' common practice for all class members is likely to cause confusion. Through search engine results and the GiftRocket.com website itself, GiftRocket simply and falsely presents itself as a source of class members' gift cards, capitalizing on class members' hard work and goodwill to enhance its own profits at their expense. Defendants *specifically* identify each class member based on their actual Yelp or Google Places page. Then, using template webpages and Google links, Defendants make the *same* false statements about each specifically identified class member. The likelihood of confusion is the same no matter which business name is inserted by the algorithm.

In addition, *Polaroid* factors such as actual confusion and Defendants' bad faith and willful misconduct also prove likelihood of confusion classwide. There is overwhelming evidence that customers are confused by Defendants' deception. *See* Exs. 5, 17-30; *see also* Ex. 54 at 1 ("GiftRocket [is] still receiving a notable number of complaints each month for confusion about the product – GiftRocket doubled these types of complaints in the past year."); Exs. 55-58.

And because common evidence answers the predominant question of likelihood of confusion,

common evidence also establishes classwide injury and Article III standing. As explained in Plaintiffs' briefing on the motions to dismiss, including in Plaintiffs' brief in response to Defendants' pending objections to Judge Scanlon's R&R on the motion to dismiss, *see* ECF No. 152, the likelihood of confusion constitutes concrete injury and satisfies *Transunion*. Courts have long recognized that a Lanham Act and unfair competition plaintiff adequately alleges injury by pleading likelihood of customer confusion, which constitutes "irreparable injury." *Juul Labs Inc. v. Gates Mini Mkt. Corp.*, 2022 WL 987430, at *8 (E.D.N.Y. Feb. 9, 2022). The likelihood of confusion "threatens [plaintiff] with a loss of goodwill and control over its reputation." *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 403 (E.D.N.Y. 2021). And a loss of control over reputation qualifies as a concrete harm for Article III purposes under the history and tradition of the common law of unfair competition. *See Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 63 (2d Cir. 2021); McCarthy on Trademarks and Unfair Competition § 24:2 (5th ed.). Moreover, there is concrete evidence of actual confusion as to the (b)(3) Disgorgement and Punitive Damages class, which is represented by a Plaintiff for which a fake "gift card" was actually purchased.

### 2.     Even if a "mark" were required, predominance is satisfied

Even if a "mark" were required, predominance is satisfied. The definition of a Lanham Act "trademark" is far broader than Defendants' suggestion that it must be *only* the name of a business—and no other information about that business used to identify it. On the contrary, a "trademark" includes "**any** word, name, symbol, or device, ***or any combination thereof***—(1) used by a person, . . . to identify and distinguish his or her goods . . . and to indicate the source of the goods." 15 U.S.C. § 1127 (emphasis added). It is therefore irrelevant whether the phrase "Gracie Baked," standing alone, is a protectable mark. The combination of "Gracie Baked" with other information is what matters.

Here, the "mark" is a combination of Plaintiffs' names and addresses; paired together they constitute a "mark" that is "inherently distinctive, *i.e.*, intrinsically capable of identifying its source.'"

*Fullsend, Inc. v. Cannafellas, Inc.*, 2023 WL 2970458, at *3 (E.D.N.Y. Jan. 31, 2023). When a customer sees a business's name and its address on GiftRocket.com or in a search engine result linking to GiftRocket.com, the customer knows which business is being identified. Thus, even addressing *Polaroid* factors related to "marks" leads to the invariable conclusion based on common evidence that Defendants' conduct is likely to cause confusion.

Because the "marks" are inherently distinctive, "[t]his obviates the need to analyze their strength under *Polaroid*." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 210 (S.D.N.Y. 2022). As to the *Polaroid* factor regarding the similarity of Plaintiffs' and Defendants' "marks," Defendants copied businesses' exact names and addresses to falsely sell gift cards to that specific business using explicit language that stated as such. *Cf. Electra*, 987 F.3d 233 at 258 (a defendant's use of additional "information identifying" a plaintiff is relevant to the likelihood of confusion analysis).

Common evidence also establishes ownership of the class members' "marks," which is established by "priority of right to the challenged marks over the defendants." *Lin v. Miracle Curtains, NY, Inc.*, 2022 WL 4386834, at *10 (E.D.N.Y. Sept. 22, 2022) (Scanlon, J); *see* ECF No. 106-9 at 26:2-6 (Scanlon, J.) ("So the fact that you have your business saying that you have something to do with the business at this certain address is enough. And that corporation owns its identification, it owns its name, and it owns the descriptive location, and that's it."). Common evidence shows prior use over Defendants for every single class member, because GiftRocket.com undisputedly did not use class members' names and information first, but only copied it from Yelp or Google.

### 3.  Plaintiffs' § 43(a)(1)(B) false advertising claims

Common evidence also proves Plaintiffs' Lanham Act false advertising claim. Defendants' intentionally false statements like "Buy a gift card [to business name]" or "[Business Name] gift card" are literally false on their face. *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 57 (2d Cir. 2022) ("We

have explained that 'a district court evaluating whether an advertisement is literally false must analyze the message conveyed in full context.'") (quoting *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016)). GiftRocket has repeatedly admitted the literal falsity of these statements. *See, e.g.*, Ex. 1 ("I apologize for any confusion, **GiftRocket does not sell gift cards to businesses**") (emphasis in original). And here, the court can find literal falsity "by necessary implication, without considering extrinsic evidence" because GiftRocket's "'words or images, considered in context, necessarily and unambiguously imply a false message.'" *Int'l Code Council,* 43 F.4th at 57; *see also Azurity Pharms., Inc. v. Edge Pharma, LLC*, 45 F.4th 479, 486–87 (1st Cir. 2022) (for unfair competition and false advertising claim under § 43(a) of Lanham Act, "[i]f the statement is alleged to be literally false, a violation [of the Lanham Act] may be *established without evidence of consumer deception*") (emphasis added).

Even if it was somehow ambiguous and not literally false for GiftRocket to represent that users could "buy a gift card to [business name]" when GiftRocket did not sell gift cards to that business, common evidence shows that these statements are impliedly false because their falsity is "'demonstrated through extrinsic evidence of consumer confusion.'" *Int'l Code Council*, 43 F.4th 46 at 57 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). Moreover, because of Defendants' "deliberate deception," all class members are entitled to a "rebuttable presumption of consumer confusion" for their false advertising claim, even without any reliance on extrinsic evidence of actual confusion. *See id.*

To show injury under a false advertising claim, common evidence shows that class representative Plaintiff Millercobb and the Disgorgement and Punitive Damages class members suffered "a diversion of sales" by an individual who purchased a gift card intended for use at their business but through GiftRocket.com. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014). In addition, common evidence shows "reputational injury," which also suffices for a false

advertising claim. *Souza*, 68 F.4th at 118. Reputational injuries include the loss of control of reputation—as discussed above—and by being associated with a website that is subject to negative online reviews, upset customers, and a police "SCAM ALERT." *See Lexmark*, 572 U.S. at 138 (reputational injury can occur when "the defendant damages the product's reputation by, for example, equating it with an inferior product"); *Travel Leaders Grp., LLC v. Corley*, 2019 WL 6647319, at *8 (S.D.N.Y. Dec. 5, 2019) ("[Plaintiff's] reputation is likely to be injured when those consumers receive potentially sub-par services from a company they associate with [it]."), *R&R adopted*, 2022 WL 950957 (S.D.N.Y. Mar. 30, 2022). Indeed, as illustrated by the concerns of one of GiftRocket's potential corporate partners, being associated with GiftRocket risks being connected with "scammers" because of GiftRocket's "terrible" reviews, which are "the first thing that pops up in" search results for GiftRocket. *See* Ex. 59. And of course, like with Plaintiff Millercobb, the 23(b)(3) class all have had GiftRocket gifts sold using their name without their consent, establishing the diversion of sales and the "likely" cause of economic injury.

### B. Monetary relief is simple and easily calculated

Monetary relief here is easily calculable using Defendants' own records. Thus, the "determination" of monetary relief "is not substantial enough to defeat predominance." *Hines*, 2024 WL 4132333 at *2. As this Court explained in *Hines*, there is no predominance issue where "individual factual determinations can be accomplished using computer records, clerical assistance, and objective criteria, thus rendering unnecessary an evidentiary hearing on each claim." *Id.* (quoting *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 293 F.R.D. 287, 306 (E.D.N.Y. 2013)). And as this Court explained in *Cinar*, predominance is satisfied where common questions answer key elements of liability and "individualized details" can be resolved by "simple calculation by reference to [defendants'] records." *Cinar*, 2024 WL 4224046 at *7; *see also Corker*, 2023 WL 1965907 at *6 ("[I]ndividual differences in calculating the amount of damages will not defeat class certification where common

issues otherwise predominate.").

Calculating profits and disgorging them is simple: "In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). And it can therefore be easily calculated classwide. *See Flo & Eddie*, 2015 WL 4776932 at \*16 (holding disgorgement damages "are well-suited to streamlined determination via application of a mechanical formula and will not require factual investigation beyond reviewing [defendant's] records").

For each business in the Disgorgement and Punitive Damages class, there are two categories of disgorgement, both easily calculated. First, each class member is entitled to a specific disgorgement amount based on sales of a "gift card" using the class members' names, which is comprised of three components (1) the service fee charged by Defendants per each sale; (2) breakage—unredeemed gift amounts that are fully pocketed by Defendants; and (3) the referral percentage Defendants kept when a "gift card" recipient chose to redeem the amount for a real gift card to a different third-party merchant gift card (*i.e.*, choosing a redemption method of a $100 Amazon gift card might have only required Defendants to transfer only $95 and keep the rest). Service fees and breakage data can be easily calculated using Defendants' summary and transaction level sales data. *See* J. Decl. ¶¶ 96, 98-99. The referral percentage, which Defendants refer to as the "gift card discount" on its P&Ls, can be calculated using those financial statements along with its transactional data and contracts with its partners. *See* Ex. 60; J. Decl. ¶ 96.

To illustrate, the Dead Rabbit in New York had six GiftRocket gifts sold in its name after July 8, 2016. Disgorgeable profits therefore include (a) $32 in service fees; (b) $110 in breakage of gifts that were never redeemed; and (c) whatever percentage Defendants retained from the two fake Dead Rabbit "gift cards" that were instead redeemed for real gift cards. *See* J. Decl. ¶¶ 96-97. So, in total, the Dead Rabbit receives at least $142, as those are profits directly attributable to sales of fake "gift

cards" in its name. With this formula, the 23(b)(3) class would be entitled to more than $12 million in disgorgement based solely on profits tied to sales using a specific class member's information.

Second, in addition to the specific disgorgement amount, class members are entitled to the remainder of the profits of GiftRocket.com for sales of GiftRocket products that did not use a specific business's name—*i.e.,* a generic GiftRocket product that can still not be used directly at any place of business, but must be first redeemed for cash or a real merchant-branded gift card that individuals may have purchased after being misdirected to GiftRocket.com's website by clicking on search results using the class members' names. Indeed, 75% of visitors reached GiftRocket.com through organic search traffic, much of which came from the millions of search results for business-specific landing pages that littered the internet. *See* Baum Tr. 252:15-22; Exs. 15-16.

The Second Circuit "permits a district court to award a defendant's full profits based solely on deterrence" and therefore plaintiff need not actually identify someone "who wished to buy the plaintiff's goods [that has] been actually misled into buying the defendant's." *4 Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 213–14 (2d Cir. 2019). That is because the remedy of disgorgement "is not compensatory in nature, but rather seeks to protect the public at large." *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992). In addition, the Court can equitably enhance the disgorgement award to deter Defendants' willful misconduct, which is particularly appropriate here where disgorgement of profits alone would "[not] reflect the intangible benefits that accrued" to a defendant. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 262–63 (2d Cir. 2014).

The GiftRocket Defendants used the class members' business names and information as the core driver of a valuable SEO strategy that drew people to the website, fueling the website's overall operation and enabling GiftRocket to self-fund the creation of the highly-profitable Tremendous business line, which benefitted from "referral juice" from landing pages on GiftRocket.com. *See* Kale Tr. 197:08-17; Baum Tr. 252:15-22; Exs. 15-16; Ex. 61; Ex. 62 at 6 ("GiftRocket corporate and

tremendous are the same thing. Tremendous rebranded from GR…"); Exs. 63-66. Thus, using common evidence, the Court could award disgorgement of all profits GiftRocket.com made—whether or not tied to a specific business sale—and then equitably enhance it based on the "intangible benefits" Defendants derived from listing millions of businesses on the internet to drive web traffic to their website which created the Tremendous business line. *See* Ex. 67 at 1 (Kale: "tremendous exists because businesses started using giftrocket for this use case"). Either way, it's a classwide award calculated using Defendants' own profits.

Finally, claims for punitive damages under the common and NY law of unfair competition can be calculated class wide with an appropriate phased trial, with the jury to award a punitive damages ratio after assessing liability and compensatory damages. *See, e.g., E.E.O.C. v. Mavis Disc. Tire, Inc.*, 129 F. Supp. 3d 90, 120 (S.D.N.Y. 2015); *Nextel.*, 780 F.3d at 149. And "precise statutory damages can be calculated on a classwide basis" for the New York Class's GBL claims of $550 for each New York business that was listed on the GiftRocket.com website, except those that provided Defendants with written consent, which is easily ascertainable using Defendants' records. *See Kurtz*, 321 F.R.D. at 550.

### C.     A class action is far superior to individual actions

With millions of affected businesses, neither Defendants nor courts should want to deal with individualized actions of this case. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 57 (E.D.N.Y. 2019) ("Individual trials for a putative class of millions of members under any circumstance . . . would be far less efficient, and far more costly and repetitious than continuing to proceed as a class action.") (citing Fed. R. Civ. P. 23 (b)(3)). Here, while the injuries suffered by individual class members are significant, their individual disgorgement amount is small relative to the expense of individual prosecution of such an action.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion and certify the classes.

Respectfully submitted,

By: */s/ Raphael Janove*
Raphael Janove
**JANOVE PLLC**
500 7th Avenue, 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law


Liana Vitale
**JANOVE PLLC**
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

Dated: March 28, 2025

Matthew Weinshall (Admitted *pro hac vice*)
Dayron Silverio (Admitted *pro hac vice*)
**PODHURST ORSECK, P.A.**
2525 Ponce de Leon Blvd., Ste. 500
Coral Gables, FL 33134
(305) 358-2800
mweinshall@podhurst.com
dsilverio@podhurtst.com


*Attorneys for Plaintiffs and the Proposed Classes*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c), I hereby certify that this brief contains 8,686 words, including footnotes but excluding text specified in Rule 7.1(c).

Dated: March 28, 2025

*/s/ Raphael Janove*

Raphael Janove