# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,

        Plaintiffs,

        v.

GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,

        Defendants.

Case No.: 1:22-cv-04019-RPK-VMS

## DEFENDANTS GIFTROCKET, INC., TREMENDOUS, INC., NICOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, AND TREMENDOUS PARENT, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.    GiftRocket Provided a Valued Service by Fulfilling a Demand for Secure and Personalized Gifting of Funds. .................................................................................. 3

    B.    GiftRocket Did Not "List" Entities to Suggest, but Rather Used the Yelp API to Display Entities Customers Searched for—Something Many Putative Class Members Consented to when They "Claimed" their Yelp Profile. .................................... 5

    C.    GiftRocket Changed in Material Ways Across the Class Period and Has Since Shut Down. ........................................................................................................... 7

    D.    Plaintiffs Sue Defendants with Little Connection to the Conduct at Issue. .................. 8

    E.    Two of the Three Plaintiffs Had No Interactions with GiftRocket. ............................... 9

LEGAL STANDARD ........................................................................................................ 10

ARGUMENT .................................................................................................................... 11

I.      PLAINTIFFS DO NOT SATISFY RULE 23(b)(3) REQUIREMENTS. ......................... 11

    A.    Individualized Issues Related to Plaintiffs' Claims and Defenses Predominate . ...... 11

        1.    As to Plaintiffs' false affiliation claim (15 U.S.C. § 1125(a)(1)(A)), individualized issues predominate over common issues. ................................... 12

            a.    Ownership of a mark cannot be shown with common evidence. ............. 13

            b.    Plaintiffs cannot show protectability with classwide evidence. ............... 14

            c.    Determining likelihood of confusion requires mini-trials. ....................... 16

        2.    Plaintiffs cannot avoid individualized issues by pursuing nonexistent Lanham Act claims. ..................................................................................... 17

        3.    As to Plaintiffs' false advertising claim (15 U.S.C. § 1125(a)(1)(B)), individual issues predominate. ...................................................................... 19

            a.    Plaintiffs cannot show injury without mini-trials. .................................... 19

            b.    Plaintiffs do not have classwide evidence of falsity. ................................ 22

        4.    As to Plaintiffs' New York G.B.L. and common law unfair competition claim, individualized issues predominate. ...................................................... 24

        5.    Defendants' defenses present individual issues that predominate here. ............ 26

            a.    No common evidence can determine laches classwide. ............................ 26

            b.    No common evidence can address acquiescence/consent. ....................... 28

| | B. | Plaintiffs' Back-of-the-Napkin Disgorgement Model Fails Under *Comcast*. | 29 |
| | C. | A Class Action Is Not Superior. | 30 |
| II. | | PLAINTIFFS DO NOT SATISFY RULE 23(a) REQUIREMENTS. | 31 |
| | A. | Plaintiffs Do Not Identify Common Answers Apt to Drive Resolution of this Litigation. | 32 |
| | B. | Plaintiffs' Claims Are Not Typical Nor Are They Adequate Representatives. | 32 |
| | | 1. Gracie Baked lacks standing and suffered no cognizable injury under the G.B.L., making it an inadequate representative with atypical claims. | 33 |
| | | 2. WeCare sold Café Ole in the Valley, mooting its injunctive relief claim and subjecting it to unique defenses. | 34 |
| | | 3. Millercobb's claims are atypical because Millercobb did not suffer the same injury as putative class members. | 34 |
| | | 4. Plaintiffs' claims are atypical because they will preclude putative class members with registered marks from bringing claims for infringement. | 35 |
| III. | | PLAINTIFFS DO NOT SATISFY RULE 23(b)(2) REQUIREMENTS. | 36 |
| | A. | The Proposed Injunctive Class is Not Ascertainable. | 36 |
| | B. | An Injunction Is Inappropriate Because GiftRocket Already Shut Down. | 37 |
| | C. | Defendants Have Not Acted on Grounds that Apply Generally to the Class; Injunctive Relief Is Thus Not Appropriate Respecting the Class as a Whole. | 38 |
| IV. | | CLASS CERTIFICATION SHOULD BE DENIED AS TO SUNRISE. | 40 |
| | | CONCLUSION | 40 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
    414 F.3d 400 (2d Cir. 2005)........................................................................13

*3M Co. v. CovCare, Inc.*,
    537 F. Supp. 3d 385 (E.D.N.Y. 2021) .......................................................12

*A&E Television Networks, LLC v. Big Fish Ent., LLC*,
    2023 WL 4053871 (S.D.N.Y. June 16, 2023) ............................................18

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
    748 F.3d 110 (2d Cir. 2014)........................................................................15

*Alaskaland.com, LLC v. Cross*,
    357 P.3d 805 (Alaska 2015)........................................................................25

*Alberghetti v. Corbis Corp.*,
    263 F.R.D. 571 (C.D. Cal. 2010) ...............................................................39

*Am. Addiction Ctrs., Inc. v. Nat'l Ass'n of Addiction Treatment Providers*,
    515 F. Supp. 3d 820 (M.D. Tenn. Jan. 25, 2021) .....................................27

*Am. Express Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013)....................................................................................10

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................11, 34

*Annie Oakley Enters. Inc. v. Rise-N-Shine LLC*,
    2021 WL 11963067 (S.D. Ind. Mar. 23, 2021).........................................27

*Ascentive, LLC v. Op. Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. 2011) .......................................................18

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)..........................................................................33

*Bais Yaakov of Spring Valley v. Educ. Testing Serv.*,
    2022 WL 16543814 (2d Cir. Oct. 31, 2022)..............................................28

*Basic Chems., Inc. v. Benson*,
    251 N.W.2d 220 (Iowa 1977) .....................................................................25

*Belmora LLC v. Bayer Consumer Care AG*,
    819 F.3d 697 (4th Cir. 2016) .......................................................................19

*Bentley v. Verizon Bus. Glob., LLC*,
    2010 WL 1223575 (S.D.N.Y. Mar. 31, 2010) ...........................................33

*Berni v. Barilla S.p.A.*,
    964 F.3d 141 (2d Cir. 2020)........................................................................36

*BFI Grp. Divino Corp. v. JSC Russian Aluminum*,
    481 F. Supp. 2d 274 (S.D.N.Y. 2007)........................................................26

*BJB Ltd. v. iStar Jewelry LLC*,
    533 F. Supp. 3d 83 (E.D.N.Y. 2021) ..................................................12, 28

*BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*,
    2018 WL 5619957 (S.D.N.Y. Aug. 7, 2018) ............................................28

*C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*,
    2022 WL 2704506 (E.D.N.Y. 2022)....................................................12, 18

*Camelot SI, LLC v. ThreeSixty Brands Grp.*,
    632 F. Supp. 3d 471 (S.D.N.Y. 2022)........................................................18

*Cap. Credit All., Inc. v. Lowpay, Inc.*,
    2008 WL 2513692 (D. Nev. Feb. 25, 2008) ..............................................25

*Castaneda v. Burger King Corp.*,
    264 F.R.D. 557 (N.D. Cal. 2009) ...............................................................39

*Chambers v. Time Warner*,
    2003 WL 749422 (S.D.N.Y. Mar. 5, 2003) ..........................................16, 17

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*,
    843 F.3d 48 (2d Cir. 2016)..........................................................................22

*CJ Prods. LLC v. Snuggly Plushez LLC*,
    809 F. Supp. 2d 127 (E.D.N.Y. 2011) .......................................................16

*Cohn v. Kind, LLC*,
    2015 WL 9703527 (S.D.N.Y. Jan. 14, 2015) ............................................40

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................10, 29

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996)..........................................................................27

*Cynergy Ergo., Inc. v. Ergo. Partners, Inc.*,
   2008 WL 2817106 (E.D. Mo. July 21, 2008) .......................................................27

*In re Dig. Music Antitrust Litig.*,
   321 F.R.D. 64 (S.D.N.Y. 2017) ...........................................................................39

*Doyle v. Midland Credit Mgmt., Inc.*,
   2012 WL 5210596 (E.D.N.Y. Oct. 23, 2012) ......................................................34

*Dual Groupe v. Gans-Mex LLC*,
   932 F. Supp. 2d 569 (S.D.N.Y. 2013)............................................................13, 15

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
   105 N.E.3d 301 (N.Y. 2018)................................................................................30

*Eisen v. Carlisle & Jacquelin*,
   391 F.2d 555 (2d Cir. 1968).................................................................................1

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*,
   228 F.3d 56 (2d Cir. 2000)...................................................................................18

*Empresa Cubana del Tabaco v. Culbro Corp.*,
   399 F.3d 462 (2d Cir. 2005).................................................................................19

*In re Ephedra Prods. Liab. Litig.*,
   329 B.R. 1 (S.D.N.Y. 2005)..................................................................................37

*Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*,
   897 F.3d 413 (2d Cir. 2018).................................................................................26

*Fero v. Excellus Health Plan*,
   502 F. Supp. 3d 724 (W.D.N.Y. 2020).................................................................26

*Fiber-Shield Indus. Inc. v. Fabrichshield Holdings.*,
   2023 WL 2734731 (E.D.N.Y. Mar. 31, 2023) ....................................................13

*Fink v. Time Warner Cable*,
   714 F.3d 739 (2d Cir. 2013).................................................................................23

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
   2015 WL 4776932 (C.D. Cal. May 27, 2015) .....................................................12

*Focus Prods. Grp. Int'l v. Kartri Sales Co.*,
   647 F. Supp. 3d 145 (S.D.N.Y. 2022)............................................................29, 30

*Football Ass'n Premier League Ltd. v. Youtube, Inc.*,
   297 F.R.D. 64 (S.D.N.Y. 2013) .............................................................................1

*Forget Me Not Bar CC, LLC v. Forget Me Not Kitchen & Cocktail Lounge*,
No. 4:23-cv-02720 (S.D. Tex. July 25, 2023) ........................................................14

*Forschner Grp. v. Arrow Trading Co.*,
30 F.3d 348 (2d Cir. 1994)..................................................................................16

*FPX, LLC v. Google, Inc.*,
276 F.R.D. 543 (E.D. Tex. 2011)..................................................................17, 32

*Fullsend, Inc. v. Cannafellas, Inc.*,
2023 WL 2970458 (E.D.N.Y. Jan. 31, 2023) ........................................................24

*Genesee Brewing Co. v. Stroh Brewing Co.*,
124 F.3d 137 (2d Cir. 1997)................................................................................18

*Gorss Motels Inc. v. Sprint Commc'ns Co., L.P.*,
2021 WL 1207440 (D. Conn. Mar. 31, 2021) ........................................................28

*In re Grand Theft Auto Video Game Consumer Litig.*,
251 F.R.D. 139 (S.D.N.Y. 2008) ..........................................................................25

*Haley v. Tchrs. Ins. & Annuity Ass'n. of Am.*,
344 F.R.D. 284 (S.D.N.Y. 2023) ..........................................................................26

*Hanks v. Lincoln Life & Annuity Co. of N.Y.*,
330 F.R.D. 374 (S.D.N.Y. 2019) ..........................................................................25

*Hudson Furniture, Inc. v. Mizrahi*,
2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023)........................................................18

*Hughes v. The Ester C Co.*,
317 F.R.D. 333 (E.D.N.Y. 2016) .....................................................................25, 37

*Hunter v. Time Warner Cable Inc.*,
2019 WL 3812063 (S.D.N.Y. Aug. 14, 2019) .................................................28, 29

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ..............................................................................31

*In re IMAX Secs. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) ..........................................................................33

*Ins. King Agency, Inc. v. Dig. Media Sols., LLC*,
2022 WL 2759072 (S.D. Cal. July 14, 2022) ........................................................23

*Int'l Healthcare Exchange, Inc. v. Glob. Healthcare Exchange, LLC*,
470 F. Supp. 2d 365 (S.D.N.Y. 2007)....................................................................13

*ITC Ltd. v. Punchgini, Inc.*,
    482 F.3d 135 (2d Cir. 2007)..........................................................................14

*ITC Ltd. v. Punchgini, Inc.*,
    9 N.Y.3d 467 (N.Y. 2007) ...........................................................................25

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)...................................................................11, 24

*Krohnengold v. N.Y. Life Ins. Co.*,
    2022 WL 3227812 (S.D.N.Y. Aug. 10, 2022) ..........................................40

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ...............................................................34

*Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*,
    572 U.S. 118 (2014)..........................................................................12, 19, 20

*In re LIBOR-Based Fin. Instrs. Antitrust Litig.*,
    299 F. Supp. 3d 430 (S.D.N.Y. 2018).........................................................31

*Lobo Enters., Inc. v. Tunnel, Inc.*,
    693 F. Supp. 71 (S.D.N.Y. 1988) ...............................................................16

*Lopez v. Gap, Inc.*,
    883 F. Supp. 2d 400 (S.D.N.Y. 2012).........................................................13

*Maddox v. Bank of N.Y. Mellon Tr. Co.*,
    19 F.4th 58 (2d Cir. 2021) ..........................................................................33

*Marshall v. Hyundai Motor Am.*,
    334 F.R.D. 36 (S.D.N.Y. 2019) ..................................................................21

*Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*,
    756 F. Supp. 280 (W.D. La. 1991)..............................................................25

*May Flower Int'l., Inc. v. Tristar Food Wholesale Co.*,
    2022 WL 4539577 (E.D.N.Y. Sept. 28, 2022) ..........................................35

*McKoy v. Trump Corp.*,
    2023 WL 6842310 (S.D.N.Y. Oct. 17, 2023) ............................................25

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008)........................................................................26

*Melnick v. TAMKO Bldg. Prods. LLC*,
    347 F.R.D. 79 (D. Kan. 2024)......................................................................34

*Michelo v. Nat'l Coll. Student Loan Tr.*
  *2007-2*, 419 F. Supp. 3d 668 (S.D.N.Y. 2019) .......................................24

*In re MTBE Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) .................................................38, 39

*Murphy Door Bed Co. v. Interior Sleep Sys.*,
  874 F.2d 95 (2d Cir. 1989)...........................................................19

*Muto v. CBS Corp.*,
  668 F.3d 53 (2d Cir. 2012)...........................................................27

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010).........................................................11

*Newman v. RCN Telecom Servs.*,
  238 F.R.D. 57 (S.D.N.Y. 2006) ....................................................24

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 ...............................................................................23

*Niederst v. Minuteman Cap., LLC*,
  2024 WL 3522413 (N.D. Ohio July 24, 2024) ..............................27

*Orca Commc'ns Unltd., LLC v. Noder*,
  236 Ariz. 180 (2014)...................................................................25

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
  32 F.3d 690 (2d Cir. 1994)...........................................................20

*Pado, Inc. v. SG Trademark Hldg. Co.*,
  527 F. Supp. 3d 332 (E.D.N.Y. 2021) ...........................................14

*Pado, Inc. v. SG Trademark Hldg. Co.*,
  537 F. Supp. 3d 414 (E.D.N.Y. 2021) ...........................................26

*Pegasystems, Inc. v. Appian Corp.*,
  463 F. Supp. 3d 152 (D. Mass. 2020) ...........................................27

*Perfect 10, Inc. v. Google, Inc.*,
  653 F.3d 976 (9th Cir. 2011) .........................................................6

*In re Petrobras Sec.*,
  862 F.3d 250 (2d Cir. 2017).............................................11, 24, 36

*PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*,
  629 F. Supp. 3d 116 (S.D.N.Y. 2022).......................................21, 24

*Pickett v. Iowa Beef Processors*,
    209 F.3d 1276 (11th Cir. 2000) ...................................................39

*Polaroid Corp. v. Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961)........................................................16

*ProFitness Phys. Therapy Ctr. v. Pro-Fit Ortho. & Sports Phys. Therapy P.C.*,
    314 F.3d 62 (2d Cir. 2002)..........................................................28

*In re Rezulin Prods. Liab. Litig.*,
    210 F.R.D. 61 (S.D.N.Y. 2002) ..................................................38

*Rios v. Marshall*,
    100 F.R.D. 395 (S.D.N.Y. 1983) ................................................35

*Rotor Blade, LLC v. Sig. Util. Servs., LLC*,
    545 F. Supp. 3d 1202 (N.D. Ala. 2021).......................................25

*Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*,
    2019 WL 652841 (S.D.N.Y. Feb. 15, 2019)................................28

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2017 WL 1331288 (S.D.N.Y. Apr. 4, 2017)................................37

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
    2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018)..............................12

*Royal Park Invs. SA/NV v. Wells Fargo Bank*,
    2018 WL 739580 (S.D.N.Y. Jan. 10, 2018) ...............................31

*Salon Fad v. L'Oreal USA, Inc.*,
    2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011)..........................20, 21

*Scott v. Grubhub*,
    2024 WL 3673718 (N.D. Ill. Aug. 6, 2024) ...............................19

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) ................................................37

*Secret of the Islands, Inc. v. Hymans Seafood Co.*,
    2019 WL 917209 (D.S.C. Feb. 25, 2019)....................................19

*Shady Grove Ortho. Assocs. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010).....................................................................39

*Smith v. Manhattan Club Timeshare Ass'n*,
    944 F. Supp. 2d 244 (S.D.N.Y. 2013).........................................36

*Societe Des Hotels Meridien v. LaSalle Hotel Op. P'ship*,
   380 F.3d 126 (2d Cir. 2004).......................................................................20

*Soward v. Deutsche Bank AG*,
   814 F. Supp. 2d 272 (S.D.N.Y. 2011)......................................................27

*Spagnola v. Chubb Corp.*,
   264 F.R.D. 76 (S.D.N.Y. 2010) .................................................................31

*Star Indus. v. Bacardi & Co.*,
   412 F.3d 373 (2d Cir. 2005).......................................................................14

*Stuart v. Am. Cyanamid Co.*,
   158 F.3d 622 (2d Cir. 1998).......................................................................27

*Tex. Tamale Co. v. CPUSA2, LLC*,
   2022 WL 20717359 (S.D. Tex. June 21, 2022) ......................................27

*Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*,
   241 F. Supp. 3d 708 (E.D. Va. 2017) .......................................................25

*Tiffany (NJ) Inc. v. eBay Inc.*,
   600 F.3d 93 (2d Cir. 2010)....................................................................22, 23

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
   497 F.3d 144 (2d Cir. 2007).......................................................................22

*Trader Joes Co. v. Joes Wine Inc.*,
   No. 24-cv-08835 (S.D.N.Y. Nov. 20, 2024).............................................31

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021).............................................................................33, 34

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992).............................................................................14, 18

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016).....................................................................................39

*Uviles v. City of New York*,
   673 F. Supp. 3d 225 ....................................................................................34

*VeriPath, Inc. v. Didomi*,
   2020 WL 1503687 (S.D.N.Y. Mar. 30, 2020) ...........................................5

*Vulcan Golf, LLC v. Google Inc.*,
   254 F.R.D. 521(N.D. Ill. 2008)............................................................12, 26

*W. States Wholesale Inc. v. Synthetic Indus., Inc.*,
206 F.R.D. 271 (C.D. Cal. 2002) ................................................................20, 28

*Waite v. UMG Recs., Inc.*,
2023 WL 1069690 (S.D.N.Y. Jan. 27, 2023) ...............................................39

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ..............................................................................11, 32, 38

*Water, Inc. v. Everpure, Inc.*,
2012 WL 12949368 (C.D. Cal. Aug. 2, 2012) .............................................25

*WeCare RG, Inc. v. Giftly, Inc*,
No. 2:22-cv-02672 (E.D. Pa.) ..................................................................10, 31

*Williams v. Warner Music Grp.*,
848 F. App'x 284 (9th Cir. 2021) ................................................................35

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*,
835 F.2d 990 (2d Cir. 1987)....................................................................15, 16

**Statutes**

15 U.S.C. § 1052.....................................................................................12, 15,16

15 U.S.C. § 1125....................................................................................12, 13, 19

28 U.S.C. § 2072..............................................................................................39

Colo. Rev. Stat. § 6-1-722 .............................................................................22

C.P.L.R. § 214.................................................................................................24

C.P.L.R. § 202.................................................................................................27

G.B.L. § 349..........................................................................................24, 33, 34

G.B.L. § 350..........................................................................................24, 33, 34

Ky. Rev. Stat. § 367.890 .................................................................................22

Ohio Rev. Code Ann. § 1349.61 ....................................................................22

**Other Authorities**

Fed. R. Civ. P. 23 ...................................................................................10, 31, 33, 40

Rest. (2d) Conflict of Laws § 145...................................................................26

Restatement of Torts § 559, cmt.a (1938)......................................................................................33

*Startup Directory*, https://www.ycombinator.com/companies (last visited May 12, 2025) ...............................................................................................................................3

*What Happens at YC*, https://www.ycombinator.com/about (last visited May 12, 2025) ...............................................................................................................................3

# INTRODUCTION

Faced with myriad individualized issues and a legal theory even Plaintiffs have called "novel," Plaintiffs spin a yarn to distract from the facts and legal precedent barring certification. They describe a shady company that scammed the public through uniform actions that brought no value to any of the millions of businesses in the putative class. But, as the factual record makes clear, Plaintiffs' story is pure fiction.

Here's what actually happened: In 2010, before Venmo and Zelle were in fashion, three "techie" entrepreneurs fresh out of Dartmouth and Harvard came together to launch a startup. The product they launched, GiftRocket, allowed users to securely gift money to friends and family via customized digital greeting cards. Purchasers could "suggest" recipients spend their funds at any one of millions of entities indexed on Yelp.com. Unlike traditional gift cards, which often go to waste, GiftRocket recipients could spend their funds wherever they chose. Unsurprisingly, the majority of GiftRocket's customers liked the product, as surveys show. Altogether, from 2016–2024, customers purchased over a million GiftRockets, and the experience was so quick and easy that nearly half did not even utilize the "suggested business" feature: They just sent money. Many recipients also chose to spend the money at the business their friend or family member suggested.

Plaintiffs here do not seek to represent the millions of satisfied customers. Rather, they seek to certify three classes, one of which purports to include millions of entities people ***could have*** suggested ***if*** they went to giftrocket.com. But Plaintiffs' "novel" case is a "Frankenstein monster posing as a class action." *Football Ass'n Premier League Ltd. v. Youtube, Inc.*, 297 F.R.D. 64, 65 (S.D.N.Y. 2013) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 572 (2d Cir. 1968) (Lumbard, J., dissenting from remand)). Plaintiffs tacitly concede as much by failing to address scores of important factual and legal issues critical to certification, such as:

- In contravention of Supreme Court and Second Circuit precedent, Plaintiffs "mix and match" elements of a Lanham Act false advertising claim (which requires harm) and false affiliation claim (which requires a protectable mark) to concoct a nonexistent claim requiring neither harm nor a mark, likely because these elements cannot be shown with classwide evidence.

- Plaintiffs claim all conduct was "uniform" even though giftrocket.com changed significantly over time, including by (a) requiring customers to **check a box stating they understood they were not buying a merchant-branded gift card** (2017–2021)**,** and (b) removing "gift card" from titles on GiftRocket's web (but not mobile) site (starting in 2019).

- Plaintiffs never address their Rule 23 burden for all **ten defendants** (four of whom are individuals). Plaintiffs nonetheless ask to certify three classes (seemingly against **all defendants**) based on 2016–2024 purchases, even though, for example, Defendant Sunrise Banks ("Sunrise") (whom Plaintiffs fail to address at all) ceased working with GiftRocket in 2022, Ben Kubic did not work for Tremendous until 2021, and two of the corporate defendants did not exist until 2023.

- Plaintiffs ignore scores of positive reviews by GiftRocket customers, as well as that many of the businesses in the putative class either (a) never heard of GiftRocket (e.g., Plaintiffs Gracie Baked and WeCare), (b) were not impacted negatively by it (*e.g.*, Plaintiff Millercobb); (c) were happy it existed (e.g., Seasons Salon in Utah and Bar Antidote in Vermont); and/or (d) **financially benefited** from it (e.g., Mama Lisa's in New York and Dorman Nails in South Carolina).

- Plaintiffs present a back-of-the-napkin damages analysis—without an expert—that cannot survive the rigorous analysis Rule 23 requires, as GiftRocket's expert report makes clear.

- Plaintiffs fail to conduct a choice-of-law analysis for their nationwide claims.

Plaintiffs cannot meet their burden by distorting the facts, inventing a nonexistent legal claim, and overlooking key legal issues. This Court should deny class certification with prejudice.

# BACKGROUND

## A. GiftRocket Provided a Valued Service by Fulfilling a Demand for Secure and Personalized Gifting of Funds.

It's 2010. You live in Boston but want to send your friend in New York a birthday gift. Mailing cash in a card is slow and unsecure; a bank transfer is impersonal; and a merchant-branded gift card is restrictive—what if she doesn't like the place and it sits in a drawer for years like so many other gift cards? Applications like Venmo and Zelle either do not yet exist or have not yet become popular. In short, there's no way to gift cash in a quick, secure, and personalized way.

Enter three friends and budding entrepreneurs (Nicolas Baum, Kapil Kale, and Jonathan Pines), who identified this gap in the market. To fill it, they created what became GiftRocket, an online platform for sending funds with customizable electronic greeting cards, through which purchasers could search entities indexed on Yelp.com and "suggest" recipients spend their funds at specific businesses. *See* Baum Decl. ("Baum") ¶¶ 5, 8–9, 17; Ex. D, 202:7–17. When getting started, the founders went door-to-door to several businesses to discuss their new product and how it would help businesses. *See* Ex. D, at 202:18–203:15; Kale Decl. ("Kale") ¶ 10. GiftRocket was also selected for the Y Combinator ("YC") program, a sought-after Silicon Valley startup accelerator, which the founders participated in.[1] Baum ¶ 11.

GiftRocket took significant steps to ensure its product complied with applicable laws. For example, GiftRocket consulted with the law firm Morrison & Foerster to obtain a legal opinion on its new business. The firm identified no Lanham Act risk at all. *See id.* ¶ 10. In 2016, GiftRocket consulted with Davis Wright Tremaine LLP, who recommended adding more disclosures to

---

[1] *See What Happens at YC*, https://www.ycombinator.com/about (last visited May 12, 2025). Many well-established, groundbreaking tech companies are alumni of YC, such as Airbnb, Coinbase, DoorDash, Dropbox, etc. *See Startup Directory*, https://www.ycombinator.com/companies (last visited May 12, 2025). GiftRocket's founders sought the guidance of YC mentors as they continued to develop their idea and bring it to market. Baum ¶ 11.

giftrocket.com. *See id.* ¶¶ 24–26. GiftRocket added such disclosures on key pages, expressly explaining GiftRocket did not sell merchant-branded gift cards. *See, e.g.*, Ex. L; Ex. 14, at GR_0050503. Then, in 2017, GiftRocket added a "clickwrap" checkbox requiring every purchaser to affirmatively acknowledge as much. *See* Baum ¶ 31; Ex. I; Ex. A, at 216:9–14.

Between July 2015 and December 2024, GiftRocket sold over one million GiftRockets for a total gifted value of over $86 million. *See* Expert Report of Dr. Keith Ugone ("Ugone"), ¶ 62a, tbl.3, ¶ 82; Ex. N. Over 600,000 (~62%) included a suggested entity for a total gifted value of over $48 million. Ugone ¶ 62a, tbl.3; Ex. N. Businesses with a single location (*e.g.*, spas, cafes) were suggested, but many customers instead opted for national brands. The top five GiftRocket suggestions by count were Chick-fil-A (2,847), McDonalds (2,580), Trader Joe's (2,229), DoorDash (1,913), and Wegmans (1,791). Ex. M. In total, customers suggested over 137,000 unique businesses. Ugone ¶ 82; Ex. N.

Consumers liked GiftRocket. *See* Exs. P, Q. For example, in surveys conducted in 2017–2024, GiftRocket purchasers and recipients rated their experiences on a scale from 0 to 10, with 10 being the highest. *See* Ugone ¶ 53. For the 12,130 responses related to GiftRockets with a suggested business, the average score was 7.41, with approximately 60 percent rating their experience a 9 or 10 (highly satisfied). *See id.* ¶ 53, tbl.2. As one customer summed up:

> I received this as a gift and it is such a creative way to give a thoughtful gift card that shows you know the gift receiver, but allows them the freedom to not be locked into that specific place if they don't want to. Made a future customer out of me!

Ex. P, at GR_0051248; *see also* Ex. Q, at 3 (Pak Decl. ¶ 2: "I could recommend a spa with the gift, but my niece would be able to spend the funds elsewhere if she chose to do so. I liked that idea even better."); Ugone ¶¶ 55–59; *id.* ¶ 63 n.114 ("From an economic perspective, the option to redeem a gift as a direct cash transfer generally is more beneficial to the recipient (i.e., gives them

a higher level of utility) than a traditional gift card from a single business or store[.]").

**B. GiftRocket Did Not "List" Entities to Suggest, but Rather Used the Yelp API to Display Entities Customers Searched for—Something Many Putative Class Members Consented to when They "Claimed" their Yelp Profile.**

**Yelp API**. To power its suggestion feature, GiftRocket used Yelp's application programming interface ("API").[2] Baum ¶ 17; Ex. A, at 156:10–157:2; Ex. E, at 21:16–22:6. The Yelp API provides access to data on millions of entities profiled on Yelp.com, such as gas stations, supermarkets, car dealerships, gyms, plumbers, parks, government buildings, hair salons, coffee shops, department stores, restaurants, doctors' offices, churches, dry cleaners, and law firms. *See* Ex. AB, at GR_0051364–408. Tens of thousands of developers have built Yelp data and search into their applications. *See id.* at GR_0051362–63.

While the parties have used the term "listed" during this case as a shorthand, GiftRocket in fact never "listed" specific entities on its website in the sense of maintaining its own finite catalogue of entities users could search and suggest. *See* Ex. A, at 52:22–54:17; Ex. B, at 209:24–210:25. Rather, GiftRocket provided users two ways to search for entities using the Yelp API.

**First**, GiftRocket maintained a generic order page ("Send a Gift Page"). *See* Baum ¶ 19; Ex. 14. This form allowed customers to send gifts by writing a personal message and typing in the name of an entity to suggest to the recipient. *See* Baum ¶ 19; Ex. 14. GiftRocket would then query the Yelp API (or data stored from the API) to identify that entity. *See* Baum ¶ 19.

**Second**, GiftRocket maintained a "Browse" table that enabled visitors to browse among categories of entities from Yelp (*e.g.*, "Restaurants" in "San Francisco"). *See* Baum ¶ 20. GiftRocket would query the Yelp API for entities meeting those criteria. *See id.* If a visitor clicked

---

[2] Yelp is a popular website that profiles millions of businesses, services, attractions, and other entities and allows users to review them. *See* https://www.yelp.com/. An API is "[a] set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service." *VeriPath, Inc. v. Didomi*, 2020 WL 1503687, at *1 n.1 (S.D.N.Y. Mar. 30, 2020) (quoting API, Oxford Living Dictionaries (2020)).

on an entity, GiftRocket would query Yelp's API (or data stored from the API) for basic information regarding that entity and then generate an order form pre-filled with that information ("Business Landing Page"). *See id.* ¶ 21; Ex. L. Unlike the generic Send a Gift Page, Business Landing Pages included additional information about the suggested entity, such as its address and Yelp rating. *See* Baum ¶ 22; Ex. A, at 49:20–25; Ex. L.

Business Landing Pages were generated either by (1) an individual searching for a business to suggest, or (2) a web crawler such as Google.[3] *See* Baum ¶ 23; Ex. A, at 157:3–22. For example, the Google web crawler could browse results of "Restaurants" in "San Francisco" on GiftRocket and "click" each entity. *See* Baum ¶ 23. This would prompt GiftRocket to query the Yelp API and generate Business Landing Pages. *See id.* **GiftRocket has no reliable or practicable means to tell whether a particular Business Landing Page was generated by a person or a web crawler.** *See* Ex. A, at 158:20–159:11, 161:25–163:4.

**Class Members Consent to Yelp Terms of Service**. Notably, all three named Plaintiffs— and many putative class members—"claimed" their Yelp profiles. *See* Ex. F, at 79:14–19; Ex. G, at 157:4–158:13; Ex. H, at 30:13–31:3, 36:10–12; Ex. AA. That is, Plaintiffs actively managed their Yelp profiles, and as a condition of doing so, agreed to Yelp's Terms of Service. *See* Ex. AB. Plaintiffs agreed to "irrevocably grant [Yelp] world-wide, perpetual, non-exclusive, royalty-free, assignable, sublicensable, transferable *rights to use Your Content for any purpose.*" *See, e.g., id.*, at GR_0051410, § 5B (emphasis added). GiftRocket, in turn, by signing up to access Yelp's API, received the right to "display [data transmitted through the API] on [its] Site." ECF 109-110, § 4.

**Switch to Google Places.** In 2023, Yelp terminated GiftRocket's API access because Yelp began charging for it, and GiftRocket did not sign up for the paid version. *See* Baum ¶ 34.

---

[3] Google's web crawler is "an automated software program" that "obtain[s] copies of publicly available webpages and images for use in [a] search index." *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 978 (9th Cir. 2011)

GiftRocket then moved to the Google Places API in mid-2023. *See id.* ¶ 35. Although it functioned similarly, there was not a one-to-one match for many entities profiled on Yelp versus Google Places (*i.e.*, a business may have been profiled on Yelp, but not Google Places). *See id.* ¶¶ 37–38.

### C. GiftRocket Changed in Material Ways Across the Class Period and Has Since Shut Down.

GiftRocket changed representations on its website over time in material ways.



The Ugone Report identifies numerous material changes in website language over time, including changes to product descriptions, page titles, and disclosure language. *See* Ugone ¶ 34, tbl.1.

On May 3, 2016, GiftRocket added a disclosure to each Send a Gift and Business Landing Page clarifying (1) GiftRockets are redeemable for money, and (2) recipients can then spend that money wherever they choose. *See, e.g.*, Baum ¶ 28; Ex. L, at GR_0050799, 0050811. In December 2016, GiftRocket added a similar disclosure to the right-hand side of the Browse page. Baum ¶ 30. GiftRocket periodically revised its disclosure language, so it varied across the class period. *See* Ugone ¶ 34, tbl.1. By way of example, in July 2024, Business Landing Pages stated:

> The GiftRocket Prepaid Gift is redeemed for money through the GiftRocket website. ***The GiftRocket Prepaid Gift is not accepted as payment by any third-party merchant.*** The GiftRocket Prepaid Gift (and the underlying value associated therewith) expires five (5) years from the date of purchase.

Baum ¶ 29; Ex. L, at GR_0050896 (emphasis added).

Between November 2017 and summer 2021, GiftRocket had a mandatory checkbox in its purchase flow. That is, before anyone could purchase a GiftRocket, they were required to check a

box affirming their understanding of how GiftRocket works:



Baum ¶¶ 31–32; Ex. I.

In April 2019, GiftRocket removed the term "gift card" from the titles of Send a Gift and Business Landing Pages for web browsers. *See* Baum ¶ 33. By mid-2023, after migrating from the Yelp API to Google Places API, GiftRocket did not display full addresses on Business Landing Pages. *See id.* ¶ 39; Ex. 10.

**GiftRocket Ceases Operations.** Giftrocket.com stopped taking new orders and displaying Business Landing Pages after December 31, 2024. *See* Baum ¶ 49; Ex. O. Several considerations drove this decision. First, after transitioning to the Google Places API, GiftRocket's sales declined by about 75%, rendering GiftRocket unprofitable. *See* Baum ¶ 48; Ugone ¶ 123 n.212 (concluding GiftRocket lost about $90,000 in 2024, not accounting for litigation costs); Ex. B, 196:2–11. Second, Baum and Kale wanted to focus their resources on Tremendous, a separate product, discussed below. *See* Baum ¶ 47; Ex. O. Baum and Kale have no intention of ever restarting GiftRocket or having giftrocket.com display Business Landing Pages, nor would it make economic sense to do so.[4] *See id.* ¶ 51; Kale ¶ 12.

**D.** **Plaintiffs Sue Defendants with Little Connection to the Conduct at Issue.**

In addition to GiftRocket LLC, Plaintiffs have sued nine other Defendants, most of whom are barely mentioned in the Motion. It is thus unclear if certification is sought against them.

---

[4] Mr. Pines had "very little" involvement with GiftRocket after 2013. *See* Ex. E, at 40:8–21. Nevertheless, Mr. Pines has no intent to restart GiftRocket. *See* Pines Decl. ("Pines") ¶ 4.

**Tremendous, LLC and Tremendous Parent, Inc.** In 2015, Mr. Baum noticed some corporations were buying GiftRockets in bulk—for example, for survey incentives or employee recognition. *See* Baum ¶ 57. These corporations almost never used the "suggested" business feature. *See id.* ¶ 58. In 2016, GiftRocket launched a "Corporate Rewards" feature, which lacked a "suggestion" option. *Id.* ¶¶ 60–61. In 2018, GiftRocket Corporate Rewards was rebranded as Tremendous. *Id.* ¶ 62. Tremendous is a digital payments provider with no "suggestion" feature at all. *Id.* In June 2023, Tremendous, Inc. spun off GiftRocket, LLC, which housed the GiftRocket product, and Tremendous, LLC, which houses the Tremendous product and assets. *See* Ex. AD; Ex. B, at 227:21–25. Tremendous, LLC and GiftRocket, LLC are organized under Tremendous Parent, Inc., a holding company with no operations. *See* Ex. AD. Plaintiffs do not establish how they could meet their Rule 23 burden as to these companies. This argument is therefore waived.

**Individual Defendants.** Plaintiffs do not state in their Notice of Motion whether they seek to certify a class against Defendants Baum, Kale, and Pines (the founders of GiftRocket) or Mr. Kubic, who was only hired to work on the Tremendous product in June 2021. *See* Ex. C, at 15:5–18, 47:1–15. Plaintiffs also do not establish how they could meet their Rule 23 burden as to these individuals. This argument is therefore waived.

**Sunrise Banks.** Plaintiffs do not state in their Notice of Motion whether they seek to certify a class against Sunrise, which was GiftRocket's banking provider until 2022. Plaintiffs also do not establish how they could meet their Rule 23 burden as to Sunrise. This argument is therefore waived, and no class can be certified as to Sunrise.

### E.    Two of the Three Plaintiffs Had No Interactions with GiftRocket.

**Gracie Baked.** Plaintiff Gracie Baked is a bakeshop and single-member LLC in New York City. *See* Ex. F, at 40:2–22, 42:24–43:11. It has no storefront. *See id.* at 46:18–47:17, 156:2–18. Nobody purchased a GiftRocket for suggested use at Gracie Baked. *See* Baum ¶ 53; Ugone ¶ 23a

n.13; Ex. N. As Plaintiffs implicitly concede, there is also no evidence any potential customer ever saw Gracie Baked on giftrocket.com. *See* Baum ¶ 52. In fact, Gracie Baked's owner **had never heard of GiftRocket** before being approached by Plaintiffs' counsel. *See* Ex. F, at 30:22–31:5.

**WeCare.** Until 2024, Plaintiff WeCare operated a coffee shop in Pennsylvania called Café Ole in the Valley. *See* Ex. G, at 22:8–23:5, 49:4–8. Like Gracie Baked, nobody purchased a GiftRocket for suggested use at Café Ole in the Valley. *See* Baum ¶ 53; Ugone ¶ 23b n.16; Ex. N. As Plaintiffs implicitly concede, there is no evidence any potential customer ever saw Café Ole in the Valley on giftrocket.com. *See* Baum ¶ 52; Ex. N. WeCare's corporate designee had **never heard of GiftRocket** before meeting Plaintiffs' counsel. *See* Ex. G, at 74:6–25. In May 2024, **WeCare sold Café Ole in the Valley** including "all" of its "tangible and intangible assets" such as its goodwill and name, to another business. Ex. X, at PLTFS000585; *see also* Ex. G, at 27:13–22.

**Millercobb.** Plaintiff Millercobb operates Dimensions Massage Therapy in Austin, Texas. *See* Ex. H, at 20:8–10, 21:17–22:21. Only one GiftRocket was ever purchased for suggested use at Dimensions, *see* Ex. Z, at GR_0005624,[5] which GiftRocket subsequently refunded in full, *see id.* at GR_0014048. **The customer then purchased a gift card through Dimensions' own gift card vendor.** *See id.* at PLTFS000377; Ex. H, at 132:3–133:18.

## LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). Accordingly, Rule 23 does not "establish an entitlement to class proceedings," but rather "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). Plaintiffs must prove by a

---

[5] A second GiftRocket was purchased by Mr. Miller-Cobb for one dollar as a "test." Ex. H, at 48:23–49:11.

preponderance of the evidence that each of their proposed classes satisfies Rule 23. *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). As a threshold requirement, Plaintiffs must show their proposed classes are "defined using objective criteria that establish a membership with definite boundaries," so that there is "a clear sense of who is suing about what." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). Then, Plaintiffs must show each of their proposed classes meets Rule 23(a)'s four requirements—numerosity, commonality, typicality, and adequacy—and that each of their proposed classes can be maintained under one of Rule 23(b)'s subsections. Finally, this Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met their burden, which often "entail[s] some overlap with the merits[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011).

## **ARGUMENT**

### I. **PLAINTIFFS DO NOT SATISFY RULE 23(b)(3) REQUIREMENTS.**

Under Rule 23(b)(3), Plaintiffs must show "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs here fail to do so for any of their five causes of action.

#### A. **Individualized Issues Related to Plaintiffs' Claims and Defenses Predominate .**

Rule 23(b)(3)'s "stringent" predominance requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609, 623 (1997). "[A] court examining predominance must assess (1) the elements of the claims and defenses to be litigated; and (2) whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). Here, the individualized issues are "too much for the class

vehicle to bear" and thus fail to meet Rule 23's predominance requirement. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 1750595, at *19 (S.D.N.Y. Apr. 11, 2018).[6]

### 1.   As to Plaintiffs' false affiliation claim (15 U.S.C. § 1125(a)(1)(A)), individualized issues predominate over common issues.

Section 43(a) of the Lanham Act recognizes "two distinct bases of liability: false association, [15 U.S.C. ]§ 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 122 (2014); *see also* 4 McCarthy on Trademarks & Unfair Competition ("McCarthy") § 27:9 (5th ed. Feb. 2025). Plaintiffs here bring claims for both: Count I for false affiliation and Count II for false advertising.

Courts and parties often refer to the first basis of liability interchangeably as "infringement," "false affiliation," "false association," or simply "unfair competition." *See 3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 396 n.5 (E.D.N.Y. 2021). But whatever the label, the theory of liability is the same: "use of another's trademark in a way that deceptively claims 'affiliation, connection, or association.'" *C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*, 2022 WL 2704506, at *9 (E.D.N.Y. 2022); *see also BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 101 (E.D.N.Y. 2021). That is precisely what Plaintiffs allege GiftRocket did with the names of putative class members' businesses. *See* SAC ¶ 301, ECF 137 (alleging GiftRocket "*falsely affiliates* Plaintiffs and class members with Defendant") (emphasis added); *id.* ¶ 20 (accusing GiftRocket of "*infringement* and appropriation of [other business's] *name[s]*") (emphasis added); *id.* ¶ 131 (accusing GiftRocket of "pirating *names*") (emphasis added); *id.* ¶ 234 (alleging GiftRocket "misappropriat[ed] the *names*"

---

[6] Plaintiffs' reliance on *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015 WL 4776932 (C.D. Cal. May 27, 2015) underscores why class certification is inappropriate. There, in opposition to certification, defendant argued that proving ownership of copyrights required individualized inquiries. *See id.* at *10–11. But the court disagreed, noting "only when ownership is coupled with a significant amount of other individualized issues" is certification inappropriate. *Id.* at *12 (cleaned up). That is the case here. In fact, *Flo & Eddie **identified a Lanham Act class action*** as an example of where "ownership, distinctiveness of the mark, and multiple viable affirmative defenses required individual determination" requiring denial of certification. *Id.* (citing *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 528–31(N.D. Ill. 2008)).

of businesses) (emphasis added).

To prevail on a false affiliation claim under § 1125(a)(1)(A), *each* class member will have to show "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (cleaned up); *see also Fiber-Shield Indus. Inc. v. Fabrichshield Holdings.*, 2023 WL 2734731, at *5 (E.D.N.Y. Mar. 31, 2023) (Kovner, J.) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical.") (citation omitted). "In addition, the plaintiff must show that defendant's use of that mark 'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services, or commercial activities by [plaintiff].'" *1-800 Contacts*, 414 F.3d at 407 (quoting 15 U.S.C. § 1125(a)(1)(A)). As set forth below and in Appendix A, the elements of a false affiliation claim demand highly individualized inquiries, so common issues do not predominate.

### a.    <u>Ownership of a mark cannot be shown with common evidence.</u>

To establish ownership of a mark, a user must "have made the first use of the mark to identify his [or her] goods or service." *Dual Groupe v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013). "This use must be deliberate and continuous, not sporadic, casual, or transitory," *Int'l Healthcare Exchange, Inc. v. Glob. Healthcare Exchange, LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) (cleaned up), and "sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark," *Dual Groupe*, 932 F. Supp. 2d at 573–74. Whether any given use establishes ownership requires a "*case by case*" inquiry "*considering the totality of the circumstances*[.]" *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 417 (S.D.N.Y. 2012) (cleaned up) (emphases added).

Plaintiffs nonetheless insist "[c]ommon evidence shows prior use over Defendants for every single class member, because GiftRocket.com undisputedly did not use class members' names and information first, but only copied it from Yelp or Google." Mot. 20. Plaintiffs are mistaken. What matters is not the timing of each class member's use of its name versus *Defendants*, but rather, the timing of each class member's use versus that of *anyone else*. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) ("To succeed on a section 43(a)(1)(A) claim . . . a plaintiff must demonstrate its *own* right to use the mark or dress in question.") (emphasis added). That a name appears on Yelp does not establish ownership. *See Pado, Inc. v. SG Trademark Hldg. Co.*, 527 F. Supp. 3d 332, 343 (E.D.N.Y. 2021) (Kovner, J.) ("[A] mark holder's maintenance of a website displaying the mark, standing alone, does not establish use of the mark in commerce.").[7] Accordingly, there can be no common evidence of ownership here.

**b.**  **Plaintiffs cannot show protectability with classwide evidence.**

To show their alleged marks are entitled to protection, each putative class member must demonstrate their name would "qualify for registration as a trademark." *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005); *see* Appendix A. This means the name "either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). A mark acquires "secondary meaning" when "in the minds of the public, [its] primary significance . . . is to identify the source of the product rather than the product itself." *Id.* at 766 n.4 (citation omitted). A "generic" name (*i.e.*, "refer[ring] to the genus of which the particular product is a species"), or "merely descriptive" name without secondary meaning, is not protectable. *Id.* at 768–69 (cleaned up).

---

[7] Moreover, putative class members *themselves* cannot agree on who owns what. *See, e.g.*, *Forget Me Not Bar CC, LLC v. Forget Me Not Kitchen & Cocktail Lounge*, No. 4:23-cv-02720 (S.D. Tex. July 25, 2023) (suit between restaurants asserting federal and common law trademark rights).

Plaintiffs proffer no common evidence by which the Court could determine whether each putative class member's name is protectable. Nor could they. Many of their names are merely descriptive. *See* Exs. N, N-1 (*e.g.*, "Bagel & Deli Shop," "#1 Hair & Nails," "Affordable Uniforms," "Advanced Nail Care"). And determining whether those descriptive ma have acquired secondary meaning (as is required to be protectable) is an "inherently factual inquiry" requiring consideration of multiple extrinsic factors, including (1) "advertising expenditures," (2) "consumer studies," (3) "sales success," (4) "unsolicited media coverage," (5) "attempts to plagiarize the mark," and (6) "length and exclusivity of the mark's use." *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987).[8]

In an attempt to overcome this fatal flaw, Plaintiffs posit the "marks" here are "combination[s]" of putative class members' "names and addresses[.]" Mot. 19. But this unsubstantiated theory, in addition to being unsupported by case law and barred by judicial estoppel,[9] only opens the floodgates to individualized inquiries.

***First***, a putative class member's address is not entitled to trademark protection unless its owner has used it deliberately and continuously "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark," *Dual Groupe*, 932 F. Supp. 2d at 573–74. No classwide evidence could show this. Consider Plaintiff Gracie Baked itself, for example, which does not identify its address anywhere on its own website. *See* Ex. W.

---

[8] Many putative class members' names are simply surnames. *See, e.g.*, Exs. N, N-1 ("Raffetto's, "Smith's," "Zuckerello's," and "Valentino's"). A mark that consists of "primarily merely a surname" is not protectable unless it has acquired secondary meaning. 15 U.S.C. § 1052(e)(4); *see also id.* § 1052(f).

[9] Plaintiffs previously argued marks were not relevant, *see, e.g.*, ECF 72-6, at 2 ("Plaintiffs' claims are viable regardless of the marks' protectability."), and refused to respond to discovery regarding marks, *see* ECF 72, 74. The Court then denied Defendants' discovery into Plaintiffs' marks. *See* 3/27/24 Order; 11/12/24 Order. Therefore, Plaintiffs are estopped from seeking certification of any claim that is based on the existence of protectable marks. *See Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014) (explaining judicial estoppel is appropriate where "a party's later position [is] clearly inconsistent with its earlier position," "the party has succeeded in persuading a court to accept that party's earlier position," and "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped" (cleaned up)).

**Second**, because an address is "primarily geographically descriptive," it is not entitled to protection unless it has acquired secondary meaning. 15 U.S.C. § 1052(e)(2); *see also id.* § 1052(f); *Forschner Grp. v. Arrow Trading Co.*, 30 F.3d 348, 355 (2d Cir. 1994). As discussed above, whether a mark has acquired secondary meaning is an "inherently factual," multi-factor inquiry that is not capable of resolution on a classwide basis. *Yarmuth-Dion*, 835 F.2d at 993.

**Third**, GiftRocket ***did not display the full addresses of suggested entities throughout the entire class period on every order page***. Specifically, GiftRocket never displayed the full address of a suggested entity on the Send a Gift Page. *See* Baum ¶ 22; Ex. A, at 49:15–25. And GiftRocket did not display the full address of a suggested entity on any Business Landing Page after the API transition from Yelp to Google Places in 2023. *See* Baum ¶ 39; Ex. 10. Thus, determining whether consumers even saw the name-and-address combination of any putative class member would require an individualized inquiry into the purchase flow of every GiftRocket sold.

### c.     Determining likelihood of confusion requires mini-trials.

Likelihood of confusion is also "highly fact-specific because [it] require[s] a comprehensive analysis of all the relevant facts and circumstances." *Lobo Enters., Inc. v. Tunnel, Inc.*, 693 F. Supp. 71, 72 (S.D.N.Y. 1988) (cleaned up). Accordingly, it "inevitably involves a predominant focus on individual issues[.]" *Chambers v. Time Warner*, 2003 WL 749422, at *8 (S.D.N.Y. Mar. 5, 2003) (denying certification). At least half of the *Polaroid* factors [10] for determining likelihood of confusion require a mini-trial for each putative class member, including:

- *Strength of the Mark.* This factor overlaps with protectability. *See CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 154 (E.D.N.Y. 2011). Thus, the same individualized

---

[10] *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961) (identifying "the strength of his mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers").

inquiries inherent in protectability also overwhelm likelihood-of-confusion. *See Chambers*, 2003 WL 749422, at *8 (denying certification because "Court would have to make an individualized determination of the strength of each class member's mark").

- *Actual Confusion.* Plaintiffs do not provide any statistically significant survey or analysis of actual confusion across putative class members. The customer complaints Plaintiffs attach to their Motion relate to GiftRockets suggested for use at a miniscule fraction of the putative classes, and Plaintiffs make no attempt to show classwide confusion.[11] Over the class period, over 137,000 different businesses were suggested for use with GiftRockets. Even if Plaintiffs could show consumers confused the affiliation of 1,000 of those, that would be less than 0.73% of the class. Moreover, had Plaintiffs tried to do so, they would have failed given they also ignore the numerous customer reviews evidencing a *lack of* confusion. *See* Exs. P, Q, R, & S; Ugone ¶¶ 54–61.

- *Proximity of products.* This factor varies based on each putative class member's offerings. If a business, for example, does not even sell gift cards, then the parties' products are not at all proximate or competitive. Plaintiffs again make no attempt to account for these key differences.

- *Likelihood of bridging the gap.* Whether putative class members are likely to expand their offerings to include gift cards (*i.e.*, "bridge the gap") varies by each putative class member.

In sum, "determin[ing] whether a likelihood of confusion exists with regard to each of the Plaintiffs' marks" requires a "highly complex and fact intensive inquiry." *FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 551 (E.D. Tex. 2011) (denying certification of Lanham Act class action).

### 2. Plaintiffs cannot avoid individualized issues by pursuing nonexistent Lanham Act claims.

Plaintiffs also argue ownership of a protectable mark is not required for a false affiliation

---

[11] Many of Plaintiffs' examples were not confusion about affiliation but simply **confusion about how to redeem** GiftRockets. *See, e.g.*, Ex. 5, at 12 (GR_0014622), 213 (GR_0022033), 218 (GR_0022276), 258 (GR_0035910).

or unfair competition claim. *See* Mot. 15. But the Second Circuit could not disagree more clearly: "A plaintiff claiming unfair competition under § 43(a) must show that it owns a valid trademark eligible for protection." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 62 (2d Cir. 2000).[12] Indeed, by arguing a protectable mark is not required for their false affiliation claim, Plaintiffs are doing precisely what one leading commentator has warned against:

> Some plaintiffs have attempted to either avoid or embellish a § 43(a)(1)(A) trademark infringement and unfair competition allegation by asserting the same facts as a claim of false advertising under § 43(a)(1)(B). ***This is attempted to avoid having to prove the validity of a trademark. But this cannot be done.*** The two claims are separate and distinct and have different elements needed to assert a prima facie case. . . . ***An unregistered trademark infringement (or "false association") claim cannot be re-packaged as a false advertising claim in order to avoid having to prove the validity of a trademark.***

McCarthy § 27:50 (emphases added). Plaintiffs' own cases are readily distinguishable and, if anything, support Defendants' arguments.

For example, Plaintiffs miscite *Two Pesos*, which did not hold a protectable mark was unnecessary, but rather that there was no textual basis for treating trade dress differently than conventional trademarks. 505 U.S. at 773–74. If protectability were not an element of a 43(a) claim, then the very question presented in *Two Pesos*—whether secondary meaning is required to show that inherently distinctive trade dress is *protectable*—would have been moot. *See id.* at 776.

Plaintiffs also miscite *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137 (2d Cir. 1997), which concluded that, to recover for unfair competition based on a generic mark, the plaintiff was required to show "secondary meaning." *Id.* at 150. In essence, therefore, *Genesee* held the plaintiff was required to show the mark was protectable. *See Two Pesos*, 505 U.S. at 769 (explaining mark is protectable if inherently distinctive or has secondary meaning).

---

[12] Myriad cases echo this principle. *See e.g.*, *Camelot SI, LLC v. ThreeSixty Brands Grp.*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022); *Ascentive, LLC v. Op. Corp.*, 842 F. Supp. 2d 450, 459–60 (E.D.N.Y. 2011); *Hudson Furniture, Inc. v. Mizrahi*, 2023 WL 6214908, at *3 (S.D.N.Y. Sept. 25, 2023); *A&E Television Networks, LLC v. Big Fish Ent., LLC*, 2023 WL 4053871, at *14 (S.D.N.Y. June 16, 2023); *C.M.B. Prods*, 2022 WL 2704506, at *9–10.

Nor did *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (4th Cir. 2016), an out-of-circuit case Plaintiffs cite, hold a protectable mark is not required. As another court explained, "*Belmora* does not support the kind of open-ended unfair competition claims [Plaintiffs] suggest[] are permissible under Section 43(a)." *Secret of the Islands, Inc. v. Hymans Seafood Co.*, 2019 WL 917209, at *12 (D.S.C. Feb. 25, 2019). Rather, *Belmora* "held that a litigant *need not have used a foreign mark in the U.S.* in order to pursue an action under Section 43(a)." *Id.* (emphasis added).[13]

Plaintiffs' other cases stand for the unremarkable proposition that section 43(a) embraces claims for "false or misleading description of fact" and "false or misleading representation of fact," including with respect to previously protectable marks genericized over time. *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 478 (2d Cir. 2005); *see also Murphy Door Bed Co. v. Interior Sleep Sys.*, 874 F.2d 95, 102 (2d Cir. 1989). Plainly, those courts were referring to *false advertising claims*—the second basis of liability under section 43(a) and Plaintiffs' second cause of action. Again, Plaintiffs cannot repackage their false affiliation as a false advertising claim, nor are they interchangeable; they are "two distinct bases of liability." *Lexmark*, 572 U.S. at 122.

### 3. As to Plaintiffs' false advertising claim (15 U.S.C. § 1125(a)(1)(B)), individual issues predominate.

Plaintiffs' Lanham Act false advertising claim fares no better. Each class member must show Defendants (1) made a materially false statement, (2) in commerce, that (3) causes consumers "to withhold trade from the [class member]." *Lexmark*, 572 U.S. at 133. Individualized issues as to these elements predominate over common ones. *See* McCarthy § 27:34 ("[A] Lanham act § 43(a) false advertising class action will face difficulty meeting the predominance requirement.").

### a. Plaintiffs cannot show injury without mini-trials.

---

[13] *Scott v. Grubhub*, 2024 WL 3673718 (N.D. Ill. Aug. 6, 2024), also distinguished *Belmora* on similar grounds. The *Scott* plaintiffs—restaurant owners—alleged defendant used their names and logos without authorization. *See id.* at *1. In opposition to defendant's motion to dismiss, plaintiffs argued they did not have to plead protectable marks for Lanham Act false affiliation claims. *See id.* at *3. The court rejected this argument. *See id.* at *4.

A cognizable injury for false advertising "flow[s] directly from the [alleged] deception" and results in consumers "withhold[ing] trade." *Lexmark*, 572 U.S. at 133. Thus, Plaintiffs "will have to prove, as will each class member, that customers bought [GiftRockets] in place of [their products]." *W. States Wholesale Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 278 (C.D. Cal. 2002) (denying certification). But "it is difficult to imagine how there could be class-wide proof of causation and injury" because whether a consumer withheld trade "is inherently an individualized question." *Salon Fad v. L'Oreal USA, Inc.*, 2011 WL 4089902, at *7 (S.D.N.Y. Sept. 14, 2011) (denying certification because "alleged injury to the salons' reputations" is not "susceptible of class-wide proof"). Indeed, "[t]he missing link" in Plaintiffs' Motion is classwide "evidence that [GiftRocket's] advertising [had] the effect on consumers that [Plaintiffs] say[] it [did]." *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 695 (2d Cir. 1994).

As an initial matter, this Court would first have to determine whether each putative class member is "obviously in competition with [GiftRocket's] products" to determine "the type and quantity of proof required" to establish injury. *Societe Des Hotels Meridien v. LaSalle Hotel Op. P'ship*, 380 F.3d 126, 130 (2d Cir. 2004). Plaintiffs ignore the individualized issues this threshold inquiry raises, *see* App. B, such as whether there was an online gift card program in effect and whether the business had it when a GiftRocket was suggested to the business, among others.

Whether class members were injured would then turn on other individualized factors unique to each putative class member. For example, consumers can only withhold trade from an entity if that entity is already engaged in trade. But many putative class members are government entities or simply locations, like Zion National Park, Acadia National Park, Eugene T. Mahoney State Park, Albany International Airport, Philadelphia International Airport, D.C. Union Station, MTA Headquarters, Metro-North Railroad, and New Jersey Transit. *See* Ex. N-1. Many other

putative class members do not offer their own online gift cards. *See* Ex. R; Ex. Q, at 10 (Snyder Decl. ¶ 3: "I looked for a gift card for his favorite restaurant, but they didn't offer gift cards. I found GiftRocket, which was a perfect option."); *cf.* Ugone ¶¶ 98–99. Plaintiffs fail to address how GiftRocket could have "diverted sales" if consumers sought to purchase something the putative class member did not sell in the first place. *Cf. PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*, 629 F. Supp. 3d 116, 130 (S.D.N.Y. 2022) ("NABP does not allege that it markets a particular product or service or that it is a participant in the market for pharmacy accreditation or verification such that PCC could have plausibly caused NABP to suffer any injury[.]"). Moreover, evidence indicates some GiftRocket recipients did as the sender suggested and spent their funds at putative class members, indicating a lack of harm (and in fact, a benefit). *See* Ex. S; Ex. Q, at 10 (Snyder Decl. ¶ 4: "I suggested my colleague's favorite restaurant when I sent him the GiftRocket. I understand he redeemed the GiftRocket through Venmo and did spend the money at the restaurant."): Ugone ¶ 101. Some putative class members also viewed GiftRocket as beneficial free advertising. *See* Ugone ¶ 100; Ex. T. GiftRocket likely *promoted* trade for those. *See Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 57, 59 (S.D.N.Y. 2019) (denying certification because of "individualized inquiries to determine whether class members suffered any injuries at all").

Lastly, Plaintiffs ignore inquiries necessary to determine whether GiftRocket harmed anyone's reputation resulting in withheld trade, such as: each class member's reputation before being seen on GiftRocket; whether customers had a negative experience with GiftRocket; whether customers thought less of the class member (as opposed to GiftRocket) because of that experience. *See* Ugone ¶ 69 ("[T]here is no indication that any dissatisfaction voiced by customers stemmed from the Alleged Misconduct or that customers associated their dissatisfaction with the putative Class members."); *Salon Fad*, 2011 WL 4089902, at *7 ("Even if a consumer were affected by the

discovery of false labeling and also came to conclude that the salon was implicated in the deception, whether and to what extent that leap of association would affect the consumer's loyalty to the salon would necessarily depend on a multitude of factors."). Plaintiffs proffer no such evidence.

**b.    Plaintiffs do not have classwide evidence of falsity.**

A false advertisement is one that is either "literally false" (*i.e.*, "false on its face") or "impliedly false" (*i.e.*, "while not literally false, is nevertheless likely to mislead or confuse consumers"). *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (citation omitted). "A message can only be literally false if it is unambiguous." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016). That is, if the language at issue is "susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). Plaintiffs argue common evidence proves their false advertising claim because GiftRocket's statements "Buy a gift card [to business name]" and "[Business Name] gift card" are literally false. Mot. 20. But Plaintiffs overlook that many customers would never have seen these statements. Plaintiffs also proffer no fixed definition of "gift card."[14]

The GiftRocket website changed materially over time with regards to the terms Plaintiffs allege were false. *See* Ugone ¶ 34, tbl.1. For example, in April 2019, GiftRocket removed the term "gift card" from the titles of Send a Gift and Business Landing Pages on the web version of their site. Baum ¶ 33. That is, after April 2019, those browsing giftrocket.com on the web would not have seen the page title Plaintiffs allege is false. Plaintiffs fail to address this fact and submit some

---

[14] As a threshold matter, "gift card" is at most ambiguous. As Mr. Baum explained, "gift card" is "the best terminology to explain how the product functions" and "succinctly [captures] the idea of I thought of you, I am gifting you funds and I thought you would like to spend it at a specific location." Ex. B, at 33:2–7; *see also id.* at 31:19–23 ("If you look in the marketplace, you have products like a Vanilla Visa Gift Card that functions no differently than a debit card, and it is a gift card because it expresses the sentiment of I thought of you and here is a transfer of money."). Some state laws even define "gift cards" to include any medium redeemable for "money." *E.g.*, Colo. Rev. Stat. § 6-1-722; Ky. Rev. Stat. § 367.890(1); Ohio Rev. Code Ann. § 1349.61.

evidence that does not accurately depict customer-facing giftrocket.com web pages. *See* Ex. K.

GiftRocket also implemented a "clickwrap" disclosure for much of the class period. Purchasers

were required to affirmatively acknowledge "THE GIFTROCKET GIFT CARD IS NOT

ACCEPTED BY ANY THIRD-PARTY MERCHANT." Ex. I; *see also* Ex. A, at 216:9–14.

"[C]ourts have found that where the details of advertised services are sufficiently disclosed to

consumers, they are not literally false[.]" *Ins. King Agency, Inc. v. Dig. Media Sols., LLC*, 2022

WL 2759072, at *4 (S.D. Cal. July 14, 2022); *see also Fink v. Time Warner Cable*, 714 F.3d 739,

742 (2d Cir. 2013) (explaining "disclaimer or similar clarifying language may defeat a claim of

deception"); *cf. Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 233 ("Clickwraps force users to

expressly and unambiguously manifest either assent or rejection prior to being given access to the

product.") (cleaned up).[15] Finally, while Plaintiffs rely heavily on the idea that *all* or nearly all

GiftRocket customers googled "gift card" and a business name, Dr. Ugone's data analysis defeats

that hypothesis. *See* Ugone ¶ 136 (finding over 24% of giftrocket.com visitors went to website

directly and thus would not have seen any Google search results); *id.* ¶ 135 (finding at least 31%

of unique organic Google searches leading to GiftRocket did not include (a) the terms "gift" and

"card," or (b) the words "vouchers" or "certificate").

Because there is no classwide evidence putative class members' customers would have

seen any literally false statement, mini-trials would be necessary. *See* App. B. This is fatal to

certification of Plaintiffs' false advertising claim because, to find *implied* falsity, the alternative

basis for a 43(a) False Advertising claim, "a district court *must* rely on extrinsic evidence"

demonstrating that "a statistically significant part of the commercial audience holds the false belief

allegedly communicated by the challenged advertisement." *Tiffany*, 600 F.3d at 112–13 (cleaned

---

[15] Plaintiffs' insistence that GiftRocket intentionally deceived consumers strains credulity in light of the express clickwrap disclaimer and other disclosures explaining to consumers precisely what they were purchasing.

up). Plaintiffs proffer none and thus have not met their Rule 23 burden.

### 4. As to Plaintiffs' New York G.B.L. and common law unfair competition claim, individualized issues predominate.

With respect to Plaintiffs' G.B.L. claims, Plaintiffs cannot seek certification for a six-year period for the New York Class given the G.B.L. has a three-year statute of limitations. *See* C.P.L.R. 214(2). In any event, the Court should not certify a New York 23(b)(3) class of any length.

"[T]he elements for alleging deceptive business practices and false advertising under the General Business Law are similar to Lanham Act claims." *Fullsend, Inc. v. Cannafellas, Inc.*, 2023 WL 2970458, at *4 (E.D.N.Y. Jan. 31, 2023) (cleaned up). To prevail on G.B.L. §§ 349 and 350 claims, each putative class member must show, among other things, it "suffered injury as a result of the allegedly deceptive act or practice." *PharmacyChecker*, 629 F. Supp. 3d at 132 (cleaned up). Specifically, a plaintiff must show "actual injury," which requires "something more than the injury-in-fact required to establish constitutional standing." *Michelo v. Nat'l Coll. Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (cleaned up). Accordingly, for the same reasons Plaintiffs cannot show actual injury on their Lanham Act claims on a classwide basis, they cannot do so under the G.B.L. *See Newman v. RCN Telecom Servs.*, 238 F.R.D. 57, 81 (S.D.N.Y. 2006) (denying class certification of GBL claims because "proof of injury and damages would require individual trials as to which class members" were harmed, and how).[16]

With respect to Plaintiffs' common law unfair competition claims, the Second Circuit has cautioned "[c]ourts must exercise care in conducting a choice-of-law analysis in a putative Rule 23(b)(3) class action . . . to determine whether any conflicts in governing law will overwhelm the ability of the trier of fact meaningfully to advance the litigation through classwide proof." *Johnson*,

---

[16] Additionally, Plaintiffs inadequately define the New York Rule 23(b)(3) class as "businesses or entities in New York." Mot. 5. What does that mean? Entities headquartered in New York? Incorporated in New York? With any presence in New York? This class is thus not ascertainable. *See Petrobras*, 862 F.3d at 269.

780 F.3d at 141. "[D]espite bearing the burden to demonstrate predominance," however, Plaintiffs conduct no choice-of-law analysis for their unfair competition claims. *Hanks v. Lincoln Life & Annuity Co. of N.Y.*, 330 F.R.D. 374, 386 (S.D.N.Y. 2019) (denying certification). This alone defeats certification. *See McKoy v. Trump Corp.*, 2023 WL 6842310, at *5 (S.D.N.Y. Oct. 17, 2023) (denying certification where Plaintiffs failed to "engage in any choice-of-law analysis").

The first step under New York's choice-of-law rules "is to determine whether there is an actual conflict between the laws of the jurisdictions involved." *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (citation omitted). Here, GiftRockets were sold nationwide. Among the 50 states, "[t]he most obvious variation—which, in itself, is enough to deny class certification—is that not every State recognizes the tort of [unfair competition], and some states only recognize it under certain circumstances."[17] *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 352 (E.D.N.Y. 2016).

Next, this Court must apply the "interest analysis" test to determine which jurisdiction has the greatest interest in applying its laws. *Grand Theft Auto*, 251 F.R.D. at 148–49. Thus, determining the applicable law requires individualized inquiries into every GiftRocket transaction, including where the alleged injury occurred, where the class member was located, and where

---

[17] Some states do not recognize common law unfair competition, or it is otherwise unclear. *See Rotor Blade, LLC v. Sig. Util. Servs., LLC*, 545 F. Supp. 3d 1202 (N.D. Ala. 2021) (dismissing unfair competition claim because "Alabama law does not recognize a common-law tort of unfair competition" (citation omitted)); *Matrix Essential, Inc. v. Emporium Drug Mart, Inc.*, 756 F. Supp. 280, 284 (W.D. La. 1991) ("There is no 'common law' cause of action for . . . unfair competition under Louisiana law."), *aff'd*, 988 F.2d 587 (5th Cir. 1993); *Alaskaland.com, LLC v. Cross*, 357 P.3d 805, 813, 816 (Alaska 2015) ("[W]e have neither recognized nor declined to recognize this tort, and we express no opinion on its place in Alaska law[.]"); *Orca Commc'ns Unltd., LLC v. Noder*, 236 Ariz. 180, 182 (2014) (declining to decide whether "Arizona common law recognizes a claim for unfair competition"); *Cap. Credit All., Inc. v. Lowpay, Inc.*, 2008 WL 2513692, at *2 (D. Nev. Feb. 25, 2008) ("[T]he case law does not clearly indicate whether Nevada has adopted the common law tort of misappropriation."). And while New York recognizes both "palming off" and "misappropriation" theories of liability for common law unfair competition claims, *see ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (N.Y. 2007), other states do not, *see, e.g.*, *Water, Inc. v. Everpure, Inc.*, 2012 WL 12949368, at *18 (C.D. Cal. Aug. 2, 2012) (noting a California "common law unfair competition claim is available only for conduct amounting to 'palming off' or 'passing off.'"); *Thousand Oaks Barrel Co., LLC v. Deep S. Barrels LLC*, 241 F. Supp. 3d 708, 725 (E.D. Va. 2017) (same under Virginia common law); *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 231 (Iowa 1977) ("The essence of unfair competition consists in palming off[.]").

Defendants were located. *See BFI Grp. Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 286 (S.D.N.Y. 2007) (quoting Rest. (2d) Conflict of Laws § 145). And even then, which of the Defendants' locations would apply? GiftRocket moved its incorporation from Arizona to Delaware and its principal place of business from California to New York during the class period. *See* Baum ¶ 12; Ex. AD. Sunrise is headquartered in Minnesota, *see* Ans. ¶ 49, ECF 174; Mr. Pines lived in California during the class period, *see* Pines ¶ 3; Mr. Baum in California and New York, *see* Baum ¶ 12; and Mr. Kubic in Virginia and Maryland, *see* Kubic Decl. ¶¶ 3–4.[18]

### 5. *Defendants' defenses present individual issues that predominate here.*

Where, like here, defenses will "fracture the class with individual issues," certification is improper. *Haley v. Tchrs. Ins. & Annuity Ass'n of Am.*, 344 F.R.D. 284, 292 (S.D.N.Y. 2023); *see Vulcan*, 254 F.R.D. at 530–31 (denying certification because "affirmative defenses related to the putative class members' marks . . . simply add another layer to an already fact-specific inquiry").

### a. <u>No common evidence can determine laches classwide.</u>

Under the equitable doctrine of laches, a class member's "unreasonable delay" in bringing suit bars its claims. *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). The laches "clock" begins to run when the plaintiff "knew, or should have known" of its claim. *Id.* (cleaned up). But Plaintiffs do not proffer "a 'reliable means of collectively determining how many class members' claims are time-barred[.]'" *Fero v. Excellus Health Plan*, 502 F. Supp. 3d 724, 735 (W.D.N.Y. 2020) (quoting *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 233–34 (2d Cir. 2008)). This "counsels against class certification." *Id.*

"Because the Lanham Act establishes no limitations period, . . . and because there is no

---

[18] Even if New York law applies nationwide, individualized issues would still predominate. "It is well established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Pado, Inc. v. SG Trademark Hldg. Co.*, 537 F. Supp. 3d 414, 428 (E.D.N.Y. 2021) (Kovner, J.). Accordingly, unfair competition claims under New York law cannot be certified for the same reasons the Lanham Act claims cannot be certified.

corresponding federal statute of limitations, . . . the most analogous *state* statute of limitations" determines the appropriate laches period. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) (cleaned up) (emphasis added). Plaintiffs assert in a cursory footnote that New York's six-year statute of limitations applies class-wide to the Lanham Act claims. Mot. 6 n.1. Not so. Although "New York courts generally apply New York's statute of limitations," that "general rule . . . is subject to a traditional statutory exception, New York's 'borrowing' statute," C.P.L.R. § 202. *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998); *accord Muto v. CBS Corp.*, 668 F.3d 53, 58 (2d Cir. 2012) ("[T]he presumption is strong that federal courts should apply state statutes of limitations, including their borrowing statutes, as integrated wholes[.]"). Under the borrowing statute, courts must apply the shorter limitations period of either New York or where the cause of action accrued. *See Stuart*, 158 F.3d at 627. "For the purposes of the borrowing statute, a cause of action accrues where the injury is sustained[.]" *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 278 (S.D.N.Y. 2011) (cleaned up).

Thus, for many class members, the applicable period for laches is shorter than six years.[19] For example, the claims of KC Global—a putative class member that complained about, and requested removal from, giftrocket.com in October 2016, *see* Ex. 27, at 3—would presumptively be barred under Missouri's five-year limitations period. *Cynergy Ergo., Inc. v. Ergo. Partners, Inc.*, 2008 WL 2817106, at *3 (E.D. Mo. July 21, 2008). Any evidence KC Global (and any other class member facing a similar argument) would offer to rebut laches would necessarily result in endless mini-trials. For this reason, courts applying borrowing statutes in multistate class actions

---

[19] *See, e.g.*, *Am. Addiction Ctrs., Inc. v. Nat'l Ass'n of Addiction Treatment Providers*, 515 F. Supp. 3d 820, 838 (M.D. Tenn. Jan. 25, 2021) (one year in Tennessee); *Annie Oakley Enters. Inc. v. Rise-N-Shine LLC*, 2021 WL 11963067, at *6 (S.D. Ind. Mar. 23, 2021) (two years in Indiana); *Niederst v. Minuteman Cap., LLC*, 2024 WL 3522413, at *16 (N.D. Ohio July 24, 2024) (two years in Ohio); *Pegasystems, Inc. v. Appian Corp.*, 463 F. Supp. 3d 152, 161 (D. Mass. 2020) (four years in Massachusetts); *Tex. Tamale Co. v. CPUSA2, LLC*, 2022 WL 20717359, at *3 (S.D. Tex. June 21, 2022) (four years in Texas).

consistently deny certification. *See, e.g.*, *BlackRock Balanced Cap. Portfolio (FI) v. Deutsche Bank Nat'l Tr. Co.*, 2018 WL 5619957, at *12–14 (S.D.N.Y. Aug. 7, 2018); *Royal Park Invs. SA/NV v. Bank of N.Y. Mellon*, 2019 WL 652841, at *7 (S.D.N.Y. Feb. 15, 2019); *cf. W. States Wholesale*, 206 F.R.D. at 278, 280 (denying certification because laches inquiry "will predominate over common issues of law and fact").

### b.    No common evidence can address acquiescence/consent.

"[W]hile laches implies a merely passive consent," "acquiescence implies active consent[.]" *BJB*, 533 F. Supp. 3d at 97 (cleaned up). Like laches, acquiescence is a "fact-laden minefield." *Id.* "[C]onsent . . . ordinarily requires an individualized determination." *Gorss Motels Inc. v. Sprint Commc'ns Co., L.P.*, 2021 WL 1207440, at *3 (D. Conn. Mar. 31, 2021). It may be express or implied. *ProFitness Phys. Therapy Ctr. v. Pro-Fit Ortho. & Sports Phys. Therapy P.C.*, 314 F.3d 62, 67–68 (2d Cir. 2002). Plaintiffs try to avoid these individualized inquiries by carving out from the class entities that "provided written consent," Mot. 6, but this is unavailing.

GiftRocket did not maintain a uniform method of obtaining written consent. Nonetheless, many putative class members communicated with GiftRocket in ways that implied consent. *See* Ex. U; Kale ¶ 10 (describing door-to-door visits to businesses). Other putative class members also claimed their Yelp profiles and thus agreed to Yelp's terms of service. *See* Exs. AA & AB. Thus, "[d]rawing the line between" putative class members who consented and those who did not "would require individualized factfinding." *Bais Yaakov of Spring Valley v. Educ. Testing Serv.*, 2022 WL 16543814, at *1 (2d Cir. Oct. 31, 2022) (affirming denial of certification); *see also Hunter v. Time Warner Cable Inc.*, 2019 WL 3812063, at *16 (S.D.N.Y. Aug. 14, 2019) (denying certification because "there is no generalized means of proof to resolve whether" class members consented).[20]

---

[20] Nor is it clear who would have authority to provide such consent. For example, Café Ole in the Valley's deponents could not even identify the owners of that business or who would receive any proceeds of this lawsuit. *See* Ex. Y.

## B. Plaintiffs' Back-of-the-Napkin Disgorgement Model Fails Under *Comcast*.

Rule 23(b)(3) requires Plaintiffs to demonstrate "that damages are capable of measurement on a classwide basis." *Comcast*, 569 U.S. at 34–35.[21] As discussed below and at length in the Ugone Report, Plaintiffs have failed to do so. In particular:

- There is no common economic nexus between the alleged misconduct and Plaintiffs' proposed "specific" or "generic" disgorgement, including because there is no classwide data as to how each GiftRocket recipient used their funds, *see* Ugone ¶¶ 62b, and because most GiftRocket users were satisfied, *see id.* ¶¶ 53–54, 118–119.

- Plaintiffs' methods for calculating disgorgement do not account for individualized variations in revenues from each transaction and across the class period. *See id.* ¶¶ 106–20.

- Plaintiffs offer no method for calculating "generic" disgorgement. See id. ¶¶ 121–25.

- Plaintiffs' methods for calculating disgorgement fail to account for factors unique to each putative class member—such as its existing reputation and whether it offers its own gift cards— necessary to measure the impact, if any, of GiftRocket on each member. *See id.* ¶¶ 148–54.

Moreover, because disgorgement is "an inherently equitable remedy," the Second Circuit has identified factors for determining whether disgorgement is appropriate. *Focus Prods. Grp. Int'l v. Kartri Sales Co.*, 647 F. Supp. 3d 145, 230 (S.D.N.Y. 2022) (citation omitted). These include "(1) the degree of certainty that the defendant benefited from the unlawful conduct; (2) the availability and adequacy of other remedies; (3) the role of a particular defendant in effectuating

---

[21] *Corker v. Costco Wholesale Corp.*, a putative class action by 700 coffee growers in Kona, Hawaii against defendants who allegedly sold non-Kona coffee as "Kona" coffee, is distinguishable. *See* 2023 WL 1965907 at *1, *3 (W.D. Wash. Feb. 13, 2023). Plaintiffs proffered a sophisticated damages model by an expert economist that "capture[d] . . . what the Kona market would have looked like 'but for' defendants[.]" *Id.* at *6–7. Accordingly, the court concluded that "all farmers of Kona coffee . . . would have been able to sell their authentic product for a higher price in the absence of [defendants'] counterfeiting." *Id.* at *7. Here, by contrast, Plaintiffs do not proffer any analysis demonstrating all putative class members were harmed. Nor does Plaintiffs' formula accurately capture a "but for" world without GiftRocket because it does not account for benefits some putative class members realized.

the infringement; (4) any delay by plaintiff; and (5) plaintiff's clean (or unclean) hands." *Id.* at 251 (citation omitted). Yet Plaintiffs' model does not account for these factors. Plaintiffs do not measure disgorgement against alternative remedies to demonstrate disgorgement would not provide a windfall to any given class member. *Id.* ("[A] plaintiff may not elect disgorgement over an award of actual damages—such as an award of lost profits or based on a reasonable royalty— merely because a disgorgement award is the greater of the two." (cleaned up)); Ugone ¶ 12a (explaining Plaintiffs' failure to account for factors specific to each class member "risks awarding a Class-wide monetary remedy that results in an economic windfall to putative Class members (i.e., without a nexus to any harm that may have been suffered)"). Nor do Plaintiffs account for delays in putative class members' bringing claims (*i.e.*, laches) or that GiftRocket *promoted* trade for some putative class members, either through increased visibility or as a result of GiftRocket recipients spending funds at suggested businesses. *See* Ugone ¶¶ 100–01; Exs. S & Q.[22]

Finally, Plaintiffs' disgorgement model is inapplicable as a matter of law to New York unfair competition claims. *See E.J. Brooks Co. v. Cambridge Sec. Seals*, 105 N.E.3d 301, 307 (N.Y. 2018) (explaining recovery for unfair competition "must correspond to the amount which the plaintiff would have made except for the defendant's wrong"—"*not* the profits or revenues actually received or earned by the defendant") (cleaned up) (emphasis added).

### C.     A Class Action Is Not Superior.

Rule 23(b)(3) also identifies factors for courts to consider in determining whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." At least two of these factors illustrate why a class should not be certified here.

*First*, managing this case as a class action would be prohibitively difficult. *See* Rule

---

[22] Plaintiffs emphasize deterrence as a rationale for disgorgement. *See* Mot. 24. But deterrence of what? GiftRocket is shut down, with no logical reason to restart. *See infra* § III.B.

23(b)(3)(D). "[T]he need for mini-trials on the resolution of each class member's claims and the applicability of affirmative defenses detracts from the superiority of the class action device[.]" *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 99 (S.D.N.Y. 2010); *see also In re LIBOR-Based Fin. Instrs. Antitrust Litig.*, 299 F. Supp. 3d 430, 546 (S.D.N.Y. 2018) ("A finding of non-predominance is easily paired with a finding that a class action is unmanageable and hence not a superior form of litigation.") (cleaned up). Appendices A and B contain flowcharts identifying some of the many mini-trials necessary to adjudicate false affiliation and false advertising claims, respectively, across the proposed classes, **which are fatal to certification.**[23]

**Second**, putative class members have interests in controlling their own prosecution of separate actions. *See* FRCP 23(b)(3)(A). The top businesses GiftRocket purchasers suggested are large and sophisticated companies with locations across the country, such as Chick-fil-A and Trader Joe's. Ex. M. These businesses presumably have robust intellectual property teams. *See, e.g.*, Compl., *Trader Joes Co. v. Joes Wine Inc.*, No. 24-cv-08835 (S.D.N.Y. Nov. 20, 2024), ECF 1. To the extent they believed they had claims against GiftRocket, they would have brought them by now. *See Royal Park Invs. SA/NV v. Wells Fargo Bank*, 2018 WL 739580, at *17 (S.D.N.Y. Jan. 10, 2018) (finding no superiority because "[g]enerally, purchasers of the RMBS at issue were highly sophisticated" and "[i]f such investors believed they had claims against Wells Fargo . . ., it is likely they would have elected to pursue litigation already").

## II. PLAINTIFFS DO NOT SATISFY RULE 23(a) REQUIREMENTS.

---

[23] Plaintiffs' heavy reliance on *WeCare RG, Inc. v. Giftly, Inc*, No. 2:22-cv-02672 (E.D. Pa.) is unavailing. *Giftly* was a settlement where the court approved an unopposed motion for class certification. *See* Order, *Giftly* (Oct. 30, 2023), ECF 52. "[W]hether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc). Indeed, the *Giftly* court explained its findings were "[s]olely for purposes of the Settlement Agreement." Order ¶ 3, *Giftly* (Apr. 28, 2023), ECF 43. It even expressed concern with choice-of-law analyses but concluded those concerns "dissipate when a Court is considering the certifications of a settlement class[.]" Tr. at 17:13–14, *Giftly* (Apr. 19, 2023), ECF 45. Not so here.

Under Rule 23(a), Plaintiffs must show, among other things, that questions of law or fact are common, and that Plaintiffs are typical and adequate representatives. Plaintiffs fail to do so.

## A. Plaintiffs Do Not Identify Common Answers Apt to Drive Resolution of this Litigation.

"Commonality" requires claims that "depend upon a common contention . . . of such a nature that it is capable of classwide resolution[.]" *Wal-Mart*, 564 U.S. at 350. In particular, "what matters . . . is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (cleaned up). As discussed above, contrary to Plaintiffs' insistence, whether GiftRocket made false statements or was likely to confuse consumers are not questions with common answers.

*FPX, LLC v. Google, Inc.* is instructive. *See* 276 F.R.D. at 547. There, businesses brought Lanham Act claims against Google for "improperly infring[ing] upon Plaintiffs' trademarks by selling their trademarks to unauthorized and unlicensed third-parties as keywords," so that when someone searched for a Plaintiff's mark on Google, "a competitor's advertisement hyperlink [would] appear . . . allow[ing] Plaintiffs' competitors to deceive and divert users searching for Plaintiffs' websites." *Id.* At class certification, plaintiffs argued a common question was whether Google confused consumers. *See id.* at 549. The court disagreed that question was "capable of classwide resolution," explaining that consumer confusion involves several factors, many of which are unique to each putative class member. *Id.* at 549–50. Thus, the court reasoned, even if "Google's policy results in initial interest confusion with regard to [one plaintiff's] trademark, that does not necessarily mean that Google's policy results in initial interest confusion with regard to the other putative class members' trademarks." *Id.* at 550. So too here. *See supra* § I.A.1.

## B. Plaintiffs' Claims Are Not Typical Nor Are They Adequate Representatives.

Rule 23(a) requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class." FRCP 23(a)(3). Thus, "class certification is inappropriate where," as here, "a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (citation omitted). Likewise, Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class."

### 1. *Gracie Baked lacks standing and suffered no cognizable injury under the G.B.L., making it an inadequate representative with atypical claims.*

"[A] plaintiff . . . seeking to act as class representative[] must have individual standing to assert the claims in the complaint against each defendant being sued by him." *In re IMAX Secs. Litig.*, 272 F.R.D. 138, 147 (S.D.N.Y. 2010) (citation omitted); *see also Bentley v. Verizon Bus. Glob., LLC*, 2010 WL 1223575, at *5–6 (S.D.N.Y. Mar. 31, 2010) (same). Gracie Baked lacks standing and thus cannot represent any class here.

To have standing, a plaintiff must have "suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). As will be set forth in detail in GiftRocket's forthcoming motion for summary judgment, Gracie Baked suffered no cognizable harm. There is no evidence anyone saw Gracie Baked on GiftRocket, let alone purchased a GiftRocket for suggested use at Gracie Baked. A plaintiff cannot have suffered reputational injury if nobody saw the allegedly misleading material. *See Maddox v. Bank of N.Y. Mellon Tr. Co.*, 19 F.4th 58, 65 (2d Cir. 2021) (finding plaintiff did not establish Article III standing for any reputational injury because "[t]he misleading record may have been public and available to all; but, *so far as is known, it was read by no one*") (emphasis added). GiftRocket never brought Gracie Baked's name "to the perception of another" such that the allegedly misleading or confusing information "was actually read and not merely processed[.]" *TransUnion*, 594 U.S. at 434 n.6 (quoting Restatement of Torts §559, cmt.a, p. 140 (1938)). Thus, Gracie

Baked's allegations of consumer confusion are "hypothetical or abstract," which "federal courts do not adjudicate[.]" *Id.* at 423.[24]

### 2. WeCare sold Café Ole in the Valley, mooting its injunctive relief claim and subjecting it to unique defenses.

"A claim becomes moot 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Doyle v. Midland Credit Mgmt., Inc.*, 2012 WL 5210596, *2 (E.D.N.Y. Oct. 23, 2012), *aff'd*, 722 F.3d 78 (2d Cir. 2013) (cleaned up). Here, WeCare sold Cafe Ole in the Valley in May 2024, before it moved for class certification. The purchase agreement contained an integration clause and did not carve out the WeCare's intellectual property or legal claims. *See* Ex. X, at PLTFS0000584–85. Plainly, WeCare lacks a legally cognizable interest in the future reputation of something it *no longer owns* and, thus, cannot serve as a representative of the Injunctive Class. *See, e.g.*, *Melnick v. TAMKO Bldg. Prods. LLC*, 347 F.R.D. 79, 94 (D. Kan. 2024) (finding dispute over ownership "could possibly foreclose [putative class representative's] claim and affect absent class members"). At a minimum, WeCare is subject to a unique defense that makes its claims atypical.[25]

### 3. Millercobb's claims are atypical because Millercobb did not suffer the same injury as putative class members.

A class representative must have "suffer[ed] the same injury as the class members." *Amchem*, 521 U.S. at 594–95. Millercobb, the owner of Dimensions, did not. The only GiftRocket sold for suggested use at Dimensions was refunded (including all service fees). *See* Baum ¶ 55;

---

[24] Also, Gracie Baked assumes that New York Class members would all be entitled to statutory damages. *See* Mot. 25. But the G.B.L. allows for actual damages or statutory damages, "*whichever is greater.*" G.B.L. §§ 349(h), 350-e (emphasis added). Because Gracie Baked does not proffer a method for measuring actual damages, it is unclear for any class member whether actual or statutory damages would be greater. *See* Ugone ¶ 158. Plaintiffs' reliance on *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017) is misplaced. *Kurtz* was a consumer class action over household "flushable" wipes, where actual damages (price premium) were likely "quite small compared to" statutory damages. *Id.* at 503. That assumption cannot hold here, where Plaintiffs have not proffered a model of actual damages.
[25] To be sure, courts have recognized exceptions to mootness in class actions. But none apply here. The event rendering WeCare's claims moot occurred *before* Plaintiffs moved for class certification, and WeCare's ownership interests in Café Ole in the Valley were not inherently transitory. *See Uviles v. City of New York*, 673 F. Supp. 3d 225, 231–34.

Ex. Z, at GR_0014048. Accordingly, unlike other putative class members, GiftRocket did not profit from the sale of a GiftRocket for suggested use at Dimensions. Further, after that GiftRocket was refunded, ***the purchaser proceeded to buy a gift card directly from Dimensions***. *See* Ex. Z, at PLTFS000377. Plainly, Plaintiffs' theory that GiftRocket diverted sales or inflicted reputational harm, causing consumers to withhold trade, *see* Mot. 21–22, does not hold true for Millercobb. Indeed, Plaintiffs themselves implicitly admit Millercobb did not suffer any injury. Because the GiftRocket sold for suggested use at Millercobb was refunded, ***Millercobb would not be entitled to anything under Plaintiffs' own specific disgorgement model***. *Cf. Williams v. Warner Music Grp.*, 848 F. App'x 284, 285 (9th Cir. 2021) (finding plaintiffs "were atypical class members because they apparently would not be entitled to damages").

### 4. Plaintiffs' claims are atypical because they will preclude putative class members with registered marks from bringing claims for infringement.

"[T]he claims asserted by the named plaintiffs are not necessarily typical since those claims require substantially different proof from that required for the claims of the unnamed plaintiffs." *Rios v. Marshall*, 100 F.R.D. 395, 406 (S.D.N.Y. 1983). Specifically, Plaintiffs lack registered trademarks and thus brought claims under Lanham Act Section 43(a). But many putative class members have *registered* trademarks and would, if filing an individual suit, bring claims under Section 32, which would entitle them to a presumption that their marks are protectable. *See, e.g.*, *May Flower Int'l., Inc. v. Tristar Food Wholesale Co.*, 2022 WL 4539577, at *2 (E.D.N.Y. Sept. 28, 2022) (Kovner, J.) ("[W]hen a plaintiff sues for infringement of its registered mark, the defendant bears the burden to rebut the presumption of the mark's protectability by a preponderance of the evidence.") (cleaned up). Plaintiffs' claims are thus not typical.

Plaintiffs' solution to this shortcoming is to argue that "[c]lass members with registered trademarks can still sue GiftRocket for registered trademark infringement under Lanham Act § 32."

Opp'n 12, ECF 109-19. But res judicata would bar such claims. *See Smith v. Manhattan Club Timeshare Ass'n*, 944 F. Supp. 2d 244, 254–556 (S.D.N.Y. 2013) (holding plaintiff's claims were barred by prior class action given res judicata precludes party from "relitigating issues that were or could have been raised" in prior action).

## III. PLAINTIFFS DO NOT SATISFY RULE 23(b)(2) REQUIREMENTS.

Plaintiffs' motion to certify a Rule 23(b)(2) injunctive class should be denied as well. First, the request is moot. Second, certification of a 23(b)(2) class is proper only when a "single injunction or declaratory judgment would provide relief to each member of the class." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 146 (2d Cir. 2020). Here, it would not.

### A. The Proposed Injunctive Class is Not Ascertainable.

Plaintiffs define the Injunctive Class as entities "*listed* on GiftRocket.com from July 8, 2016 through January 1, 2025." Mot. 5 (emphasis added). But this fails the threshold Rule 23 requirement to "establish a membership with definite boundaries." *Petrobras*, 862 F.3d at 269. GiftRocket never maintained a static list of businesses on its website. Rather, as discussed above, it allowed users to search for entities through the Yelp API.

If by "listed," Plaintiffs mean an entity a user *could have* searched for, then the proposed classes would comprise millions of entities searchable on Yelp (a list that would vary based on the time of the search). Yet Plaintiffs do not provide any method for identifying them. They simply assert class members "can be identified through reviewing Gift[Rocket]'s records" or "Yelp's files." Mot. 12 (citation omitted). But *what* records? GiftRocket has never maintained a database of every entity a user *could possibly* have searched for. And *what* Yelp files? Plaintiffs have never produced—and do not attach to or identify in their Motion—records from Yelp identifying every entity searchable on Yelp over the eight-year-plus class period. *See* Kramer Decl. ¶ 33.

"[I]n light of the extensive class and other discovery in which the parties have already

engaged, [Plaintiffs'] vague references to additional datasets" and "'possible' further analyses [are not] sufficient to carry [Plaintiffs] across the figurative 50-yard line." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2017 WL 1331288, at *8, *12 (S.D.N.Y. Apr. 4, 2017) (denying certification). At a minimum, Plaintiffs "*are required* to show by a preponderance of the evidence that class members will be, at some point, readily identifiable without resort to individualized hearings. And that [Plaintiffs] ha[ve] not done." *Id.* at *8.[26]

### B. An Injunction Is Inappropriate Because GiftRocket Already Shut Down.

Where Defendants have ceased the complained-of conduct, courts routinely refuse to certify an injunctive class because doing so would *not* be appropriate respecting the class as a whole. *See, e.g.*, *Hughes*, 317 F.R.D. at 357; *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 408 (S.D.N.Y. 2015) (denying certification of injunctive class where claim at issue already removed from package); *In re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 8 n.5 (S.D.N.Y. 2005). So too here.

For example, in *Ault v. J.M. Smucker Co.*, consumers brought a class action against a manufacturer for falsely labeling cooking oils as "All Natural." 310 F.R.D. 59, 62 (S.D.N.Y. 2015). But by the time plaintiff moved for certification, "Defendant ha[d] already removed the 'All Natural' label from three of the four challenged products" and was "in the process of removing the 'All Natural' label from the fourth." *Id.* at 68. Defendant also "submitted a sworn declaration that it 'ha[d] no plans to re-introduce the 'all natural' claim on the Crisco Oil labels at any point in the future.'" *Id.* Accordingly, the court denied certification of a Rule 23(b)(2) class.

Here, the reason for denial is even more compelling: GiftRocket is out of business. *See* Baum ¶ 49. The GiftRocket founders have all sworn under penalty of perjury they have no plans to restart GiftRocket, which was losing money and draining operational resources. *See id.* ¶ 51;

---

[26] This argument also applies to the New York Class, which Plaintiffs also define as entities "listed" on GiftRocket.

Kale ¶ 12; Pines ¶ 4; Ex. B, at 182:21–183:3, 196:25–198.6. Plaintiffs have presented no evidence to the contrary. There is therefore nothing to enjoin, and the Court need go no further.

## C. Defendants Have Not Acted on Grounds that Apply Generally to the Class; Injunctive Relief Is Thus Not Appropriate Respecting the Class as a Whole.

If, despite the above, the Court were to conclude (incorrectly) that GiftRocket will resume operations, it should still refuse to certify a Rule 23(b)(2) class.

A Rule 23(b)(2) class is typically certified when "class-wide injunctive or declaratory relief is necessary to redress group injuries, such as infringements on civil rights, and is commonly relied on by litigants seeking institutional reform through injunctive relief." Manual for Complex Litigation § 21.142 (4th ed. 2004). "Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through 'preexisting or continuing legal relationships' or by some significant common trait such as race or gender." *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 75 (S.D.N.Y. 2002) (cleaned up). While Rule 23(b)(2) does not expressly impose a "predominance" requirement, "predominance" and other "procedural protections attending the (b)(3) class . . . are missing from (b)(2) not because the Rule considers them unnecessary," but because they are "self-evident" in a *properly* certified (b)(2) class. *Wal-Mart*, 564 U.S. at 362–63. After all, where circumstances unique to each class member dictate whether each class member is entitled to injunctive relief (and from whom), no single, indivisible injunction is appropriate. Thus, "[t]he hallmark of the (b)(2) action is homogeneity." *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 343 (S.D.N.Y. 2002) (citation omitted). In contrast, the proposed (b)(2) class here is heterogeneous.

For that reason, Defendants have a plethora of defenses—*e.g.*, ownership of a protectable mark, consent, no likelihood of confusion, lack of injury, etc.—as to **each** Injunctive Class member. *See supra* § I.A. The Court must permit Defendants to raise these defenses as to **each** putative

class member, just as Defendants could in an individual action. *See* 28 U.S.C. §2072(b) (FRCP "shall not abridge, enlarge or modify any substantive right."); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 458 (2016) (explaining Rule 23 cannot "giv[e] plaintiffs and defendants different rights in a class proceeding than they could have asserted in an individual action"); *Shady Grove Ortho. Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010) (Rule 23 can do no more than "merely enable[] a federal court to adjudicate claims of multiple parties at once, instead of in separate suits."). Because liability as to any putative class member "turns on a highly individualized and bone-crunching analysis" of many factors, certification of the (b)(2) class, like the other classes proposed, should be denied. *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 569 (N.D. Cal. 2009) (denying certification); *Waite v. UMG Recs., Inc.*, 2023 WL 1069690, at *9 (S.D.N.Y. Jan. 27, 2023) ("For this reason and for the individual issues discussed above in the (b)(3) section, certification pursuant to Rule 23(b)(2) is inappropriate."); *MBTE*, 209 F.R.D. at 343 (denying certification of Rule 23(b)(2) class in part because of individualized issues).

Further, even if GiftRocket resumed operations (which it won't), some class members would not benefit from an injunction against GiftRocket, such as those who profited from their business being suggested. *See* Ugone ¶¶ 90–101; *In re Dig. Music Antitrust Litig.*, 321 F.R.D. 64, 91 (S.D.N.Y. 2017) (denying certification of Rule 23(b)(2) class because "[p]laintiffs fail[ed] to show that the proposed injunction would benefit every member of the class"); *Alberghetti v. Corbis Corp.*, 263 F.R.D. 571, 577 (C.D. Cal. 2010), *aff'd*, 476 F. App'x 154 (9th Cir. 2012) (denying certification where "some of the class members might be strongly opposed to injunctive relief, yet their interests would be completely unrepresented"); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("Thus, a class cannot be certified. . . when it consists of members who benefit from the same acts alleged to be harmful to other members of the class." (cleaned up)).

## IV.    CLASS CERTIFICATION SHOULD BE DENIED AS TO SUNRISE.

In addition to the above arguments, this Court should not certify Plaintiffs' claims against Sunrise for another, fundamental reason: Plaintiffs have not described Sunrise's conduct with any particularity and have stated no basis for class certification as to Sunrise. *See Krohnengold v. N.Y. Life Ins. Co.*, 2022 WL 3227812, at *4 (S.D.N.Y. Aug. 10, 2022) ("[A]t least one named plaintiff must have standing as to each defendant."). Plaintiffs' Motion makes no argument as to what action Sunrise took, what role Sunrise played, or what basis exists for its liability such that classwide relief—or any relief—is appropriate. Instead, Plaintiffs' motion only mentions Sunrise twice, neither time regarding its conduct against Plaintiffs. *See* Mot. 1, 17. In depositions, *every* Plaintiff admitted they had never heard of Sunrise prior to this litigation. *See* Ex. AF. And Plaintiffs do not cite a single shred of evidence demonstrating any harm caused by Sunrise. The time to raise that evidence was now, and Plaintiffs came up short.

At minimum, Plaintiffs have failed to meet their burden on class certification: they fail to describe what common questions of law and fact as to *Sunrise* apply in this litigation. *See* FRCP 23(a)(2). For liability, Plaintiffs needed to demonstrate "specific conduct" by Sunrise that would have imputed GiftRocket's statements to Sunrise. *Cohn v. Kind, LLC*, 2015 WL 9703527, at *3 (S.D.N.Y. Jan. 14, 2015). Because simply "authorizing [a] sale" is insufficient, *id.*, the "specific conduct" is necessarily an individualized question as to the actions Sunrise took as to each Plaintiff. And for damages, Plaintiffs must assess the damage caused by Sunrise's specific actions, which they have failed to articulate. Moreover, Sunrise ceased working with GiftRocket in 2022, in the middle of the class period. As a result, no class can exist as to Sunrise.

## <u>CONCLUSION</u>

This Court should deny Plaintiffs' Motion for Class Certification with prejudice.

Respectfully submitted,

Dated: May 16, 2025

*/s/ Megan O'Neill*

Megan O'Neill (admitted PHV)
Erik P. Mortensen (admitted PHV)
DTO LAW
702 Marshall Street, Suite 640
Redwood City, CA 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105
moneill@dtolaw.com
emortensen@dtolaw.com

Katherine Burghardt Kramer
Grace E. Schmidt
DTO LAW
307 5th Avenue, 12th Floor
New York, NY 10016
Telephone: (213) 335-6999
Facsimile: (213) 335-7802
kkramer@dtolaw.com
gschmidt@dtolaw.com

*Attorneys for Defendants GiftRocket, Inc.,*
*Tremendous, Inc., Nicolas Baum, Kapil Kale,*
*Jonathan Pines, Benjamin Kubic, GiftRocket LLC,*
*Tremendous LLC, and Tremendous Parent, Inc.*

Mark L. Johnson (admitted PHV)
Faris A. Rashid (admitted PHV)
Gina M. Tonn (admitted PHV)
GREENE ESPEL PLLP
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 373-0830
mjohnson@greeneespel.com
frashid@greeneespel.com
gtonn@greeneespel.com

Janene M. Marasciullo
OFFIT KURMAN
590 Madison Avenue, 6th Floor
New York, NY 10022
Telephone: (347) 589-8514
janene.marasciullo@offitkurman.com

*Attorneys for Defendant Sunrise Banks, N.A.*