| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,<br><br>Defendants. | Case No. 22-CV-4019 (RPK) (VMS) |

# PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR *DAUBERT* MOTION TO <u>EXCLUDE THE OPINIONS AND TESTIMONY OF DR. KEITH UGONE</u>

Raphael Janove
JANOVE PLLC
500 7th Avenue, 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law


Liana Vitale
JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

Matthew Weinshall (Admitted *pro hac vice*)
Dayron Silverio (Admitted *pro hac vice*)
PODHURST ORSECK, P.A.
2525 Ponce de Leon Blvd., Ste. 500
Coral Gables, FL 33134
(305) 358-2800
mweinshall@podhurst.com
dsilverio@podhurtst.com


*Attorneys for Plaintiffs and the Proposed Classes*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1
ARGUMENT ...................................................................................................................... 2
    I.    Dr. Ugone's improper and unreliable factual narrative should be excluded. ..................... 2
    II.   Dr. Ugone's opinion is not grounded in any "economic framework." ............................... 3
    III.  The Court should exclude Dr. Ugone's purported "analysis and synthesis" of records. ..... 5
    IV.  The Court should exclude Dr. Ugone's conclusions about class certification. .................. 8
    V.   The Court should exclude Dr. Ugone's statutory interpretation. ...................................... 10
CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Cinar v. R&G Brenner Income Tax, LLC*,
   2024 WL 4224046 (E.D.N.Y. Sept. 18, 2024) .................................................................. 8

*City of Almaty, Kazakhstan v. Ablyazov*,
   2021 WL 5154110 (S.D.N.Y. Nov. 5, 2021) .................................................................... 2

*Cmty. Care Companions, Inc. v. Interim Healthcare, Inc.*,
   2025 WL 929407 (E.D.N.Y. Mar. 27, 2025) ................................................................ 1, 2

*Equistar Chemicals, LP v. Westlake Chem. Corp.*,
   2016 WL 4394999 (E.D. Tex. Feb. 26, 2016) .................................................................. 8

*In re Aluminum Warehousing Antitrust Litig.*,
   336 F.R.D. 5 (S.D.N.Y. 2020) ..................................................................................... 1, 6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   2025 WL 354671 (S.D.N.Y. Jan. 30, 2025). ............................................................ 3, 7, 8

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   638 F. Supp. 3d 227 (E.D.N.Y. 2022) .............................................................................. 7

*Lippe v. Bairnco Corp.*,
   288 B.R. 678 (S.D.N.Y. 2003) ......................................................................................... 5

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
   2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015) ................................................................. 2

*Mirkin v. XOOM Energy, LLC*,
   2025 WL 16333 E.D.N.Y. Jan. 2, 2025) ........................................................................... 1

*S.E.C. v. Tourre*,
   950 F. Supp. 2d 666 (S.D.N.Y. 2013) .............................................................................. 1

*Schechner v. Whirlpool Corp.*,
   2018 WL 6843305 (E.D. Mich. Oct. 30, 2018), .............................................................. 8

*Scott v. Chipotle Mexican Grill, Inc.*,
   315 F.R.D. 33 (S.D.N.Y. 2016) ....................................................................................... 4

*Taylor v. Evans*,
   1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ...................................................................... 6

*Tech Pharmacy Servs., LLC v. Alixa Rx LLC,*
   2017 WL 3394139 (E.D. Tex. Aug. 7, 2017) ................................................................... 8

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.*,
   2014 WL 12498207 (W.D. Tex. July 22, 2014) ............................................................... 7

**Statutes**

15 U.S.C. § 1117 ....................................................................................................................... 9

**INTRODUCTION**

Defendants spend most of their opposition ("Opp.") arguing that the Court should apply a lower standard here because Dr. Ugone's report is offered as a rebuttal expert in connection with class certification. But "a rebuttal expert must still meet *Daubert*'s threshold standards 'regarding the qualifications of the expert, sufficiency of the data, reliability of the methodology, and relevance of the testimony.'" *Mirkin v. XOOM Energy, LLC*, 2025 WL 16333, at *6 (E.D.N.Y. Jan. 2, 2025). And "courts in the Second Circuit regularly subject expert testimony to *Daubert*'s rigorous standards insofar as that testimony is relevant to the Rule 23 class certification analysis." *In re Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 28–29 (S.D.N.Y. 2020) (cleaned up).

The Court should exclude Dr. Ugone's report because he offers no expert analysis, and his report is a "would-be legal brief masquerading as an expert opinion, which is squarely inappropriate for expert testimony." *Cmty. Care Companions, Inc. v. Interim Healthcare, Inc.*, 2025 WL 929407, at *14 (E.D.N.Y. Mar. 27, 2025) (cleaned up). Defendants' identification of a handful of economic-sounding terms in the report and labeling them an "economic framework" does not change this reality. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 677–79 (S.D.N.Y. 2013) (expert "testimony that his opinion as to 'economically material' information is based on 'economic logic' is simply a form of inadmissible ipse dixit" which "is not appropriate expert testimony because it is not based on reliable methodology, as *Daubert* requires").

Defendants have not shown that Dr. Ugone's opinions are within his areas of expertise, are based on reliable data and methodologies, or will provide expert assistance to the Court in ruling on the motion for class certification. The Court needs no help from Dr. Ugone to review ineffective website disclaimers, to misinterpret statements made in customer reviews and survey results, to read a statute, or to make flawed legal arguments about supposed individualized inquiries. Such

matters are not the province of an expert to begin with. The Court should reject Defendants' attempt to use Dr. Ugone as a mouthpiece for the same legal arguments they've argued unsuccessfully for years.

**ARGUMENT**

**I.     Dr. Ugone's improper and unreliable factual narrative should be excluded.**

Defendants attempt to characterize Dr. Ugone's lengthy presentation of Defendants' version of the facts as a simple description of the factual assumptions underlying his opinion. This argument fails because the factual narrative included in Dr. Ugone's report goes far beyond what is needed to describe the assumptions underlying his purportedly expert opinions.

As explained in Plaintiffs' opening memorandum ("Mem."), and as the Court will see from even a quick skim of Dr. Ugone's report, the vast majority of the report simply "regurgitate[s] the evidence already available in the record," *City of Almaty, Kazakhstan v. Ablyazov*, 2021 WL 5154110, at *16 (S.D.N.Y. Nov. 5, 2021). This is a transparent effort by Defendants to end-run the page limitations on class certification and add a veneer of expertise to legal arguments they have been making for years now. This portion of the report should be excluded.[1]

Further, since Dr. Ugone is not qualified to offer opinions on how consumers understood disclaimer language on GiftRocket's website, or any of the other mind-reading exercises attempted in his report, the factual narrative that allegedly supports those conclusions is also inadmissible. *See* Mem. at 3-4. Defendants concede Dr. Ugone is not an expert in web design, how customers interact with websites, or whether their attention is drawn to certain web design elements or not.

---

[1] *See Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) ("Acting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology.") (citations omitted); *Cmty. Care* 2025 WL 929407 (holding that "[w]hile an expert may lay a factual foundation for his or her opinion," an expert's background section cannot "contain[] his own conclusions interspersed with factual statements from the record").

*See* Tr. 61:13-62:8; 64:1-65:11. They also offer no response to Plaintiffs' argument that (a) he did not analyze actual evidence in the record showing that customers did not see or understand disclaimers, Tr. 341:23-342:3; 344:9-345:11; and (b) did not check any data showing whether users went to any of the pages on the websites that contained these product descriptions. Tr. 271:2-7; 271:16-19. Defendants dismiss these defects as going only to the weight and not the admissibility of his testimony. That is wrong: expert testimony, even in rebuttal, must be based on reliable data and methodologies. *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2025 WL 354671, at *44 (S.D.N.Y. Jan. 30, 2025).

II. **Dr. Ugone's opinion is not grounded in any "economic framework."**

In an attempt to identify some actual economic analysis in Dr. Ugone's report, Defendants point to a three-page Appendix in which Dr. Ugone summarizes what he describes as "the standard economic framework of budget-constrained utility maximization." Opp. at 9 (citing Rep. ¶ 63, ¶ 63 n.114 and App'x A). The fact that this discussion was relegated to an appendix tells the Court everything it needs to know about whether Dr. Ugone's report is "grounded" in this so-called "economic framework." Even assuming that an expert can rely on an appendix that is barely mentioned to salvage the lack of economic analysis and reliable methodology in an 80-page report, the various conclusions asserted in the report have nothing to do with this "framework."

Basically, in his appendix, Dr. Ugone explains the obvious principle that customers may prefer a giftcard that can be used at multiple locations over one that can be used at only one business. This is just another version of Defendants' irrelevant argument that some consumers may have ultimately liked GiftRocket. *See* Mem. at 6, 10. But that has nothing to do with whether Defendants' website and SEO template created an objective, reasonable likelihood of confusion. Defendants littered the internet with search results that intentionally and falsely stated "Buy a gift card to [business name]" and "Buy a [business name] gift card" and then diverted those customers

3

into purchasing GiftRockets in what Sunrise Banks aptly described as a "bait and switch" tactic: "I am going to tell you I am giving you a gift card, but really it is not." Mem. at 5; Class Cert. Br. at 1-2. Even if a customer ultimately liked the GiftRocket, it does not excuse Defendants' violations of the Lanham Act and unfair competition laws by using class members' information without consent to pass off the GiftRocket product as those businesses' giftcards; that's what matters.

Defendants also posit that "[a]bsent the benefit of Dr. Ugone's experience or specialized knowledge, it might not be apparent why removing or adding some words on a website is relevant to the Court's Rule 23 analysis." Opp at 10 (citing *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 45 (S.D.N.Y. 2016)). Removing or adding some words on the GiftRocket website is not, in fact, relevant to the Court's Rule 23 analysis, but the Court certainly would not need Dr. Ugone's "specialized knowledge" to explain the significance if it were. The very authority Defendants rely on shows why Dr. Ugone's opinions on GiftRocket's website disclaimers should be excluded. As the Court observed in *Scott*: "An expert also may offer commentary on documents in evidence *if the expert's testimony relates to the 'context in which [documents] were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge.'" Id*. at 45 (emphasis added). That is exactly what is missing here. Dr. Ugone has no expertise concerning the context in which the disclaimers were created. And there's nothing about those false statements that would not be apparent without specialized knowledge, which in any event, could not be reliably opined on by Dr. Ugone, who knows nothing of consumer surveys or website design, who performed no independent analysis, and who failed to consider Defendants' SEO strategy. Plus, Defendants cannot simultaneously claim that consumers understood their confusing and hidden disclaimer language while also

4

contending that the Court needs an economics expert to explain its relevance.

That Dr. Ugone is a rebuttal expert is irrelevant to whether he can speculate about how consumers understood website disclaimers. Plaintiffs' point is not that consumer surveys were required to establish how the language was understood, it is that Dr. Ugone did not conduct consumer surveys or any other expert analysis to support his assertions about consumer understanding. The fact that Plaintiffs can point to a constant stream of customer complaints and Defendant Sunrise Bank's *own* statements to show customer confusion class-wide does not mean that Dr. Ugone can present Defendants' counterarguments in the guise of expert testimony without any supporting analysis or reliable methodology. Whether Plaintiffs can carry their burden of proof with certain evidence has nothing to do with whether similar arguments would be admissible as expert testimony. *See Lippe v. Bairnco Corp.*, 288 B.R. 678, 687 (S.D.N.Y. 2003), *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ("An expert's role is to assist the trier of fact by providing information and explanations; the expert's role is not to be an advocate."). Defendants repeatedly conflate what is reliable as expert testimony and what is evidence that would support a finding in Plaintiffs' favor.

**III.     The Court should exclude Dr. Ugone's purported "analysis and synthesis" of records.**

The Court should also exclude Dr. Ugone's testimony about Google Analytics and other data sources outside his area of expertise. Defendants mistakenly rely on authority allowing expert testimony that analyzes or synthesizes information *about which the expert has some relevant expertise* to argue that Dr. Ugone can summarize and offer conclusions about data sources he knows nothing about. There's no dispute that Dr. Ugone has no expertise in Google Analytics. Defendants instead argue that he can nonetheless offer "expert opinions" on what Google Analytics data shows because he has expertise in "using large databases and complex computer models." Opp. at 12. No decision cited by Defendant recognizes a categorical expertise on "large

databases and complex computer models" as a sufficient expertise under Rule 702 to opine on Google Analytics, which, at its core, is a website tracking platform.

Consider *Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. at 34–35, where the Court found that the expert was qualified to opine on econometric analysis because, among other things, he had "*lectur[ed] on econometrics*," and published books and articles that "included econometric analysis," and courts had previously "accepted and relied upon [his] econometric analyses." *Id*. Here, by contrast, Dr. Ugone has demonstrated zero training and experience in Google Analytics, has given no known classes or lectures on this topic, has authored no book or articles including such analysis (much less one in the specific area at issue in this case), and has not identified *any* court that has accepted his analysis of Google Analytics data. It is not an "overly narrow" test of his qualifications to require that he have some expertise beyond the generic category of "large databases and complex computer models" if he wants to offer analysis of Google Analytics data.

Worse, Dr. Ugone lacks a reliable basis to interpret the Google Analytics data and what it meant about consumer searches. He attempts to interpret the data without even understanding what the actual search results looked like. He did not conduct any investigation and admitted he did not understand what search results or SEO strategy caused a consumer to go to a website. He was not even aware that a search for a business name—even without the phrase "gift card"—would cause a user to see "Buy a gift card to [business name]" with a link directing them to GiftRocket.com. *See* Mem. at 5.

Similarly, Defendants do not even try to justify Dr. Ugone's interpreting customer reviews as expert analysis or an appropriate subject for expert testimony. *Cf. Taylor v. Evans*, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997) ("Wayburn's musings as to defendants' motivations would not be admissible if given by any witness—lay or expert."). Instead, they offer various excuses for

its inclusion in the report as "corroborating evidence." Again, the authority Defendants rely on does not support their position. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 638 F. Supp. 3d 227, 287 (E.D.N.Y. 2022) involved an expert with actual expertise in the issues, unlike Dr. Ugone, who admits he has no particular training or expertise in interpreting customer reviews or interaction with websites and merely cherry-picks reviews from third parties.

Defendants' arguments that Dr. Ugone appropriately relied on Delighted survey data also fail. Here, Dr. Ugone did nothing more than take a spreadsheet of survey responses, tally up the responses, and then cherry-pick quotes from survey responses, which he contends support Defendants' position. This "provides no helpful guidance for a factfinder," just like when Dr. Ugone's opinions were excluded in *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 2014 WL 12498207, at *1 (W.D. Tex. July 22, 2014). There, the Court excluded Dr. Ugone's opinion for relying "entirely on a spreadsheet provided to him," observing that "Ugone did not conduct any independent analysis or investigation," but just "added" up the values in the spreadsheet "and offered the sum as his expert opinion." *See id.* at *1. That is exactly what Dr. Ugone does here.

Dr. Ugone's attempt to reinterpret survey results in a manner that favors Defendants is not based on any expertise and is not specialized testimony that is the product of reliable, scientific principles; it is advocacy masquerading as expert testimony. *See* Mem. at 8-10. He reads reviews and purports to interpret them in a manner that requires no expertise, and he lacks any expertise that would allow him to interpret reviews anyway. *See* Mem. at 6-8.

Defendants' citation to *In re Keurig*, only serves to emphasize why Dr. Ugone's testimony here should be excluded. The Court there held that "[t]he opinions that the TMJ Plaintiffs seek to exclude are best classified as critiques of the variables selected in a damages model, for which Dr. Ugone has the requisite qualifications and supporting data, rather than consumer perception, *for*

7

*which his opinions might rest on less sound footing.*" *Id.* at \*49 (emphasis added). Here, Dr. Ugone's assertions about why consumers purchased GiftRockets and how they understood language on its website are claims about "consumer perception" and not binary variables in a damages model. *Cf. id.* ("These statements speak to the methodological soundness of Dr. Macartney's damages model rather than consumers' perception of a message.").[2] Defendants openly admit this. Opp. at 15 n.9 (arguing that "the customer reviews Dr. Ugone points to, including the data from Delighted, plainly addressed the relevant issue of *whether customers understood how GiftRocket functioned*.") (emphasis added). For example, Dr. Ugone improperly opines that, based on his reading of the disclaimer language found on the website, GiftRocket "offered multiple opportunities for senders and recipients to read and understand the nature of the product and its functionality," and the disclaimers on GiftRocket.com. Rep. ¶¶ 138-42. Whether customers understood how GiftRocket functions is plainly an issue of customer perception, and Dr. Ugone's attempted testimony on this topic is unreliable and inadmissible.

**IV. The Court should exclude Dr. Ugone's conclusions about class certification.**

Defendants' opposition confirms that Dr. Ugone's report contains impermissible (and inaccurate) assertions about what Plaintiffs must prove, and then improperly opines that the record does not support injury or disgorgement. For instance, Defendants argue that Dr. Ugone determined that "calculating classwide disgorgement" is "impossible." Opp. at 16. That question is for the Court to determine, and to reject, as individualized calculations of damages do not preclude certification. *See Cinar v. R&G Brenner Income Tax, LLC*, 2024 WL 4224046, at \*7

---

[2] Like *Keurig*, Defendants' other examples of a Court admitting Dr. Ugone's testimony involved him criticizing the economic inputs and methodology used in an economist's model, *see Schechner v. Whirlpool Corp.*, 2018 WL 6843305, at \*11 (E.D. Mich. Oct. 30, 2018), or where he created his own damages model. *See Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 2017 WL 3394139, at \*2 (E.D. Tex. Aug. 7, 2017); *Equistar Chemicals, LP v. Westlake Chem. Corp.*, 2016 WL 4394999, at \*4 (E.D. Tex. Feb. 26, 2016). Defendants do not cite any authority where Dr. Ugone was admitted to provide expert testimony about what he thinks consumers believed or understood.

(E.D.N.Y. Sept. 18, 2024) (Kovner, J.). Plaintiffs' class-wide calculations of monetary relief require no expertise to follow: Defendants' own records show exactly when and how much money they made—including service fees and unredeemed gift amounts—selling a GiftRocket using each class member's name. A class-wide formula of basic math calculates relief for each class member. *See* Mem. at 23. Dr. Ugone improperly makes the (incorrect) legal argument that Plaintiffs must deduct refunds, even though that is Defendants' burden and is easily answered by Defendants' own documents. *See* 15 U.S.C. § 1117; Mem. at 23; Class Cert. Reply at 15.

Dr. Ugone also improperly challenges Plaintiffs' model to disgorge gift card discounts— the amount GiftRocket pocketed when a GiftRocket sold using a class member's name and information was redeemed by the recipient for a real gift card to a different business, such as an Amazon gift card. GiftRocket profited from these diverted sales because it obtained the replacement gift cards at a *discount* from the valued amount (that is, the giftor's purchase amount) and pocketed the difference. But Dr. Ugone claims there are "individualized inquiries" because different amounts must be plugged into the same formula to calculate how much Defendants profited from each diverted sale. *See* Opp. at 17. That different inputs may be plugged into the same formula does not defeat class certification, as Defendants concede. *See* Opp. at 18.

Similarly, Dr. Ugone's opinions about GiftRocket's profits rely on the false legal premise that Plaintiffs must identify Defendants' profits for every specific time period at issue. *See* Opp. at 20. The law requires Plaintiffs to prove Defendants' "sales only." 15. U.S.C. § 1117. And no authority supports Defendants' suggestion that the Court would need to evaluate Defendants' profits for each of the random time periods identified by Dr. Ugone, rather than considering Defendants' overall profits, in order to evaluate the equities here.

Dr. Ugone's opinions that businesses benefited when GiftRocket used their information

9

without their consent to sell fake gift cards, or consented to it doing so, are also just incorrect legal arguments. No authority supports the notion that a defendant can avoid liability or disgorgement under the Lanham Act by speculating that its unlawful actions benefited the plaintiff. And Dr. Ugone's assertions that customers spent money at suggested businesses is not supported by any data, nor reliable methodology or expertise. On the contrary, Defendants have never identified *even a single instance* in which one out of millions of GiftRocket recipients is *actually known* to have spent the gifted funds at the suggested business.

Finally, parroting the baseless argument that businesses that did not request removal somehow "impliedly" consented to being listed on GiftRocket is obviously not "grounded in [Dr. Ugone's] extensive microeconomics experience" as Defendants contend. Opp. at 21. Nor has Dr. Ugone himself ever made that claim. Dr. Ugone identifies only *six* examples of businesses that supposedly consented to being listed on GiftRocket.com, in contrast to the thousands of businesses who demanded removal once they were aware GiftRocket was using them. *See* Mem. at 18-19. Dr. Ugone has no expertise and reviewed no data to support his speculation that unknown class members were aware they were listed on GiftRocket and did not complain about it.

## V.     The Court should exclude Dr. Ugone's statutory interpretation.

Experts cannot, as Defendants insist, opine on statutory text to support Defendants' contention that class members must first prove actual damages to trigger entitlement to statutory damages. It is also legally incorrect because courts routinely award GBL statutory damages without a showing of actual damages. *See* Class Cert. Br. at 25. No showing of actual damages is required here because the NY GBL injury is based on non-pecuniary, incalculable, and irreparable harm—the likelihood of confusion and loss of control of reputation. *See* Class Cert. Reply at 12.

## CONCLUSION

For the foregoing reasons, the Court should exclude Dr. Ugone's report and testimony.

Respectfully submitted,

By: */s/ Raphael Janove*
Raphael Janove
JANOVE PLLC
500 7th Avenue, 8th Fl.
New York, NY 10018
(646) 347-3940
raphael@janove.law

Liana Vitale
JANOVE PLLC
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
(805) 505-9550
liana@janove.law

Dated: September 30, 2025

Matthew Weinshall (Admitted *pro hac vice*)
Dayron Silverio (Admitted *pro hac vice*)
PODHURST ORSECK, P.A.
2525 Ponce de Leon Blvd., Ste. 500
Coral Gables, FL 33134
(305) 358-2800
mweinshall@podhurst.com
dsilverio@podhurtst.com

*Attorneys for Plaintiffs and the Proposed Classes*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I hereby certify that this brief contains 3,393 words, including footnotes but excluding text specified in Rule 7.1(c).

Dated: September 30, 2025

                                               _/s/ Raphael Janove_

                                               Raphael Janove