Raphael Janove
Shareholder

raphael@janove.law

www.janove.law
T 646-347-3940

500 7th Ave., 8th Fl.
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

October 9, 2025

**VIA ECF**

The Honorable Rachel P. Kovner
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Gracie Baked LLC, et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019-RPK-VMS

Dear Judge Kovner:

We write on behalf of Plaintiffs in opposition to the unexpected request of Defendant Sunrise Banks for a pre-motion conference on a duplicative and meritless motion for summary judgment. The parties discussed the schedule for summary judgment motions with you almost a year ago at the November 12, 2024 hearing, then submitted a proposed schedule. At the hearing, the GiftRocket Defendants discussed the possibility of filing multiple motions for summary judgment, although the schedule they ultimately proposed (and which the Court so-ordered) included only briefing on a summary judgment motion by Defendant Kubic and a summary judgment deadline triggered off the Court's decision on class certification. Sunrise Bank never mentioned any intention to file a separate motion for summary judgment at the hearing or at any other time before filing its letter.

Sunrise now claims, incorrectly, that its motion will moot Plaintiffs' motion for class certification. This is obviously wrong, as none of the Sunrise-specific arguments will resolve the claims against the GiftRocket Defendants. Further, like the GiftRocket Defendants, Sunrise offers no explanation for the timing of this motion—after completing briefing but before decision on class certification. Nor does it explain why Defendants made no attempt to include this motion in the case schedule the parties proposed and the Court so-ordered. As explained in Plaintiffs' response to the GiftRocket Defendants' letter, there is no reason for the Court to entertain yet another round of briefing on the same issues now. Rather, it would be more efficient to await the Court's rulings on pending matters, after which, to the extent Defendants have any viable remaining arguments, they can make them in a streamlined submission.[1]

In any event, all of Sunrise's anticipated summary judgment arguments fail for the same reasons Plaintiffs have already explained in multiple previous rounds on briefing on these same issues.

---

[1] The cases cited by Sunrise Banks do not hold otherwise. There is no indication that the motion for summary judgment argued the exact same points that were already made in the pending class certification motion or ignored a negotiated and Court-ordered schedule about when summary judgment motions would be filed. Further, in *Gorss Motels, Inc. v. Lands' End, Inc.*, 997 F.3d 470, 481 (2d Cir. 2021) the issue of substituting plaintiffs was not even addressed because there was no argument concerning substituted Plaintiffs and the Plaintiff did not challenge the district court's finding that the motion for class certification was moot in light of its decision granting summary judgment in defendant's favor.

1

JANOVE PLLC

Raphael Janove
Shareholder
raphael@janove.law

www.janove.law
T 646-347-3940

500 7th Ave., 8th Fl.
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

S*ee, e.g.,* ECF No. 135 (Judge Scanlon granting Plaintiffs' motion to amend to add Sunrise Banks as a defendant).

*First*, Sunrise Banks seeks to join in the same arguments already raised by the GiftRocket Defendants, and its arguments will fail for the reasons already explained in Plaintiffs' response to the GiftRocket Defendants' letter. ECF No. 273 at 1–3.

*Second*, the argument that Plaintiffs lack standing "because Sunrise Banks stopped working with GiftRocket on new sales years ago, before Plaintiffs filed this lawsuit" simply repackages the GiftRocket Defendants misguided standing arguments about what Plaintiffs must show to establish an injury and does not raise any arguments unique to Sunrise Banks. Sunrise Banks was the entity that actually owned and issued the GiftRocket pre-paid gifts, and the entity that held the funds Defendants obtained through unauthorized use of other businesses names and business information. It was critical to the operation of GiftRocket.com and had extensive control over its operations, including the website. The fact that Sunrise wound down its operations, holding funds and balances from GiftRocket sales until March 2023, Pltfs' 56.1 Counterstatement ¶ 49 (contrary to Sunrise's statement that it stopped supporting the GiftRocket business in June 2022) does not mean that Plaintiffs lack standing to assert claims against it for its role in GiftRocket's Lanham Act violations and other unlawful conduct.

And although Sunrise Banks claims to have terminated its relationship with GiftRocket for reasons unrelated to the claims here, "[a] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 224 (2d Cir. 2018).

*Third*, Sunrise's remaining summary judgment arguments are equally meritless. As noted above, Sunrise owned and issued the GiftRocket pre-paid gifts and held the funds Defendants obtained through unauthorized use of other businesses' names and information. They are directly liable for these unlawful sales. Further, as Sunrise admits, a "defendant may be liable for contributory infringement if the defendant "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." ECF No. 285 at 3. Sunrise then claims that "[e]ven if GiftRocket had engaged in some kind of infringement or unfair competition, … it is undisputed that Sunrise Banks never intentionally induced or encouraged any unlawful conduct. Nor did Sunrise Banks have knowledge about any alleged infringement *as to the named Plaintiffs*." *Id*. (emphasis added). Reading between the lines, Sunrise admits that the evidence shows that it had knowledge of the alleged infringement, but it seeks to avoid liability by claiming it was unaware of infringement as to the specific named Plaintiffs in this action, as distinct from its knowledge that GiftRocket was infringing on the rights of all the millions of businesses listed on GiftRocket.com without their consent. No authority supports the argument that Sunrise can avoid liability by remaining willfully blind to the identity of the victims of Defendants' scheme or because there were too many of them. As detailed below, Sunrise knew for years that the GiftRocket Defendants unlawfully used millions of "business images or names they do not have express consent to use," but continued to do business with them anyway. *See* Pltfs' 56.1 Counterstatement ¶ 46.



Raphael Janove
Shareholder

raphael@janove.law

www.janove.law
T 646-347-3940

500 7th Ave., 8th Fl.
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

Sunrise's argument that "the only inference a reasonable juror could draw from the record is that Sunrise Banks worked to prevent confusion by requesting clarifying language on giftrocket.com," is belied by the fact that although Sunrise repeatedly observed customer confusion and requested clarifications on the website, it still allowed GiftRocket to make misleading use of other businesses names to market the product. For example, in January 2017, a member of the Sunrise Banks team noted that the GiftRocket program marketing their product as a gift card "is a UDAAP risk as well as a reputational risk" and that "bottom line, [GiftRocket] should not advertise it as a card *and not include business images or names they do not have express consent to use*." *See* Pltfs' 56.1 Counterstatement ¶ 46 (emphasis added). The same month, a member of the Sunrise Banks compliance team noted that the disclaimer on the GiftRocket.com website was "not working as well as intended" and that repeated customer and merchant complaints "demonstrate[d] how misleading the website appears to be for our customers." *See id.* ¶ 45. Six month later, in June 2017, in response to another customer complaint about the GiftRocket.com website, an employee at Sunrise asked "Did GiftRocket finally remove the links to Yelp for restaurant's?" and another noted that GiftRocket "continue[s] to have confusion." *See id.* ¶ 46.

In fact, the compliance department at Sunrise Banks believed that "eventual removal of businesses" from the GiftRocket.com website "will be phase 2," *see id.*, but in reality this change was never made. Yet Sunrise continued to support the GiftRocket product. After years of consumer confusion, in January 2021, a member of the compliance team even stated: "As long as I have been in compliance, there been an issue with consumers not understanding how the GiftRocket. . . products work." *See id.* ¶ 45. In May 2021, a member of the compliance team wrote: "I still think we have a problem with this program advertising the product as a gift card when it is a money transmission service very light on the gift card piece…" *Id.*

In sum, the only inference a reasonable juror could draw from the record is that Sunrise Banks was aware of customer confusion and how to fix the issue given its compliance department's repeated warnings and requests for years. But instead of listening to its compliance personnel's concerns, Sunrise Banks decided not to require GiftRocket to implement "phase 2" and remove businesses from the website. Therefore, Sunrise "continue[d] to supply its product to one whom it kn[ew] or ha[d] reason to know [wa]s engaging in" unlawful infringement and false advertising. Presumably, this is because that is how GiftRocket (and correspondingly Sunrise) made money. *See id.* ¶ 45 (Defendant Benjamin Kubic asking a longstanding GiftRocket employee "do we have any sort of page on GR letting business owners know where they can ask to have their business removed," and the employee responded, "we do not…i think this is essentially because that's how GR makes money."); *id.* ¶ 45 (Defendant Baum directing a GiftRocket employee to change language on Sunrise complaint logs describing consumer complaints of people who wanted "actual gift cards" to specific businesses but were tricked into buying a GiftRocket because "we're positioning our product as a gift card and don't want to detract from that".

<div style="text-align: right;">

Respectfully submitted,

*/s/ Raphael Janove*

Raphael Janove

</div>


Raphael Janove
Shareholder
raphael@janove.law

www.janove.law
T 646-347-3940

500 7th Ave., 8th Fl.
New York, NY 10018

1617 John F. Kennedy Blvd., 20th Fl.
Philadelphia, PA 19103

979 Osos St., Ste. A5
San Luis Obispo, CA 93401

Enclosures
CC: All Counsel of Record via ECF

4