UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,

                      Plaintiffs,

            v.

GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAUS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,

                      Defendants.

-------------------------------------------------------x

**MEMORANDUM AND ORDER**
22-CV-04019 (GRB) (VMS)

FILED
CLERK
12/22/2025 1:07 pm
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**GARY R. BROWN,** United States District Judge:

      Plaintiffs Gracie Baked LLC, WeCare RG, Inc., and Millercobb LLC, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief, alleging, in sum and substance, that defendants engaged in a scheme to sell consumers money transfers packaged as gift cards bearing the imprimatur of certain businesses when, in fact, the cards were simply money transfers unaffiliated with those businesses. Plaintiffs bring their suit against several defendants: GiftRocket, Inc.; Tremendous, Inc.; Nicholas Baum, Kapil Kale, and Jonathan Pines (GiftRocket's founders); Benjamin Kubic (a corporate officer); Sunrise Bank, N.A.; and GiftRocket, LLC, Tremendous, LLC, and Tremendous Parent, Inc., asserting claims under the Lanham Act, the New York General Business Law, and the common law of unfair competition. Defendant Kubic moved for summary judgment on all claims asserted against him,

1

while plaintiffs similarly seek summary judgment on those claims. Both parties also request attorneys' fees under the Lanham Act. For the reasons that follow, these motions are denied.

## BACKGROUND

About fifteen years ago, defendants Nicholas Baum, Kapil Kale, and Jonathan Pines founded GiftRocket. *See* Pls.' Resp. to Def.'s Rule 56 Stmt. ¶ 1 ("Rule 56.1 Stmt.") (Dkt. #252-1). The company's website, GiftRocket.com, allowed purchasers to send money to a recipient and "suggest" that the recipient use the money at a particular business. *See* Baum Decl. ¶ 4 (Dkt. #251-5). These "suggestions" are not binding and the money transfers do not function as gift cards. Defendants' product can be characterized as the digital equivalent of a handwritten card saying "I suggest you spend this at Chick-fil-A" along with a $20 bill. *See* Sec. Am. Compl. ¶¶ 76–77 (Dkt. #137). Just as that $20 can be spent at McDonald's, the zoo, or anywhere else, money received through GiftRocket can also be spent somewhere wholly separate from the purchaser's preferred destination.

Plaintiffs allege that, despite the nonbinding "suggestions," GiftRocket "misleadingly markets itself as selling gift cards," implying that the gift cards can be redeemed only at certain businesses, and that GiftRocket is affiliated with the suggested business. *Id.* ¶¶ 6, 74. Plaintiffs allege that GiftRocket tricked people into thinking that they were buying gift cards for specific businesses when, in fact, "all that was purchased was just a very expensive way to transfer money." *Id.* ¶¶ 78, 82.[1] Plaintiffs maintain that GiftRocket's advertising strategy "explicitly uses the term 'gift card,'" and that this tactic amounts to a simple "bait and switch . . . misdirect[ing] consumers who are searching for real gift cards to a particular business to the GiftRocket website." *Id.* ¶ 64.

---

[1] According to the Amended Complaint, GiftRocket charged a flat $2 fee per transfer plus an additional fee of 5% of the amount of the gift. Thus, it is alleged that a $100 gift cost the consumer $7, while services such as Paypal or Venmo charge "little or nothing" for personal transfers. Am. Compl. ¶¶ 79-80.

Ten years after the company's founding, defendant Benjamin Kubic joined the business as the Vice President of Business Operations. *See* Rule 56.1 Stmt. ¶ 3; Kubic Tr. 15:9–12 (Dkt. #251-7). Kubic spent the lion's share of his time working on a separate but related product—called "Tremendous"—which also allowed purchasers to send money to designated recipients.[2] *See* Rule 56.1 Stmt. ¶ 3–4; Baum Decl. ¶ 6. He oversaw several departments at Tremendous. *See* Kubic Tr. 15:17–25. But Kubic was not firewalled from GiftRocket's operations. He had some involvement in operating the support team for GiftRocket.com, *see* Kale Tr. 12:19–13:3 (Dkt. #252-9); Rule 56.1 Stmt. ¶ 15, worked with a banking partner for the business, *see* Kale Tr. at 51:15–20; Baum Tr. 18:5–19, 19:15–18 (Dkt. #252-20); Rule 56.1 Stmt. ¶ 15, and found an alternate provider for business data crucial to GiftRocket's product, *see* Kubic Tr. 220:5–21; Rule 56.1 Stmt. ¶ 15. Kubic always had a direct supervisor at GiftRocket. Rule 56.1 Stmt. ¶ 7.

Kubic played no role in the initial development of the GiftRocket product or creating the allegedly misleading "suggestion" feature. *See id.* ¶ 9. His arrival at the company substantially post-dated GiftRocket's use of the phrase "gift card" in connection with its money transfer product. *Id.* ¶ 11. Kubic owned shares of some of the defendant entities, though the parties offer different interpretations as to the importance of that ownership. *See id.* ¶ 16.

Nevertheless, several facts serve to demonstrate his knowledge of the scheme and his key role in its perpetuation. First, on February 7, 2022, Kubic asked an employee "do we have any sort of page on GR letting business owners know where they can ask to have their businesses removed?" *See* Ex. 30 (Dkt. #252-32). That employee responded "we do not . . . I think this is essentially that's how [GiftRocket] makes money." *Id.* Later, in 2023, GiftRocket faced an existential crisis when Yelp – the entity that provided GiftRocket with the data about businesses

---

[2] The Tremendous product did not include the allegedly misleading "suggested use" feature. Baum Decl. ¶ 6.

3

used to generate gift card "suggestions" – withdrew its support based on complaints. Rule 56.1 Stmt. ¶¶ 62-64. While the parties offer competing characterizations of the Kubic's role, it is undisputed that he unsuccessfully negotiated with Yelp to provide continued support and, when that effort failed, identified and secured the support of Google Places to provide continued access to data about businesses, allowing the GiftRocket gift card activity to continue. *See* Pls.' Resp. 18; Ex. 43 (Dkt. #252-45); Ex. 46 (Dkt. #252-48); Kubic Tr. 220:5–223:16 (Dkt. #252-6); Rule 56.1 Stmt. ¶¶ 65-77. While facilitating this transition from Yelp to Google, Kubic wrote:

> As far as I can tell, Google Places . . . doesn't explicitly prohibit the [GiftRocket] use case, but there are some general terms around misuse of IP that I'm sure they could rely on to shut us down if they wanted to.

Ex. 46. GiftRocket used the Google Places data to populate its list of suggested businesses on its website. Kubic Tr. 224:9–11. At another crucial juncture, Sunrise Bank, GiftRocket's banking partner, whose services were deemed "critical" to the operation, refused to renew its contract. Rule 56.1 Stmt. ¶ 79. Kubic unsuccessfully tried to convince Sunrise Bank to remain, led the search for a new banking partner, located SouthState Bank, and retained responsibility for maintaining that relationship. *Id.* ¶¶ 80-82.

In July 2022, Gracie Baked LLC and WeCare RG, Inc. brought a class action lawsuit against GiftRocket, seeking "redress for Defendant's systematic violations of federal and state unfair competition laws." Compl. ¶ 1 (Dkt. #1). About a month later, plaintiffs filed an amended complaint adding Millercobb LLC as a plaintiff and several new defendants, including Kubic. *See* First Am. Compl. ¶ 46 (Dkt. #29). The amended complaint also named GiftRocket's three

founders as defendants. *See id.* ¶¶ 40–44. And it added Tremendous, Inc. as a defendant because GiftRocket "began submitting corporate filings" under this name in October 2022.[3] *Id.* ¶ 38–39.

In March 2025, Kubic filed a motion for summary judgment. *See* Kubic Mot. (Dkt. #251). As part of that motion, he requested attorney fees under the Lanham Act. *Id.* at 21–22. Plaintiffs responded by cross-moving for summary judgment and attorneys' fees. *See* Pls.' Resp. 27–29 (Dkt. #252).

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). The movant bears the burden of showing "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). These determinations are further guided by the parties' submissions of statements of undisputed fact pursuant to Rule 56.1, which can help narrow the issues. *Davis v. Town of Hempstead*, No. 14-CV-903 (JMA)(GRB), 2019 WL 235644, at *2 (E.D.N.Y. Jan. 16, 2019) (discussing procedures surrounding Rule 56.1 statements))

---

[3] In June 2023, defendant Tremendous, Inc. restructured into three entities: defendants GiftRocket LLC, Tremendous LLC, and Tremendous Parent, Inc. Rule 56.1 Stmt. ¶ 17. GiftRocket LLC and Tremendous LLC are each wholly owned by Tremendous Parent, Inc. *Id.* ¶ 18.

## DISCUSSION

### I.     Lanham Act Claims

Plaintiffs bring two claims under the Lanham Act: one for unfair competition and false affiliation and another for false advertising.  Sec. Am. Compl. ¶¶ 301, 312 (claims one and two).

Section 43 of the Lanham Act has become "the foremost federal vehicle for the assertion of two major and distinct types of unfair competition: (1) infringement of even unregistered marks, names and trade dress, and (2) 'false advertising.'"  4 McCarthy on Trademarks and Unfair Competition § 27:9 (5th ed.) (internal quotation marks omitted) ("McCarthy on Trademarks"). Section 43 provides:

> "(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> "(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> "(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> "shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

15 U.S.C. § 1125(a). This provision "creates two distinct bases of liability: false association and false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014).

6

Plaintiffs allege that Kubic is liable under both theories. Starting with false association: plaintiffs allege that defendants here, including Kubic, "have engaged in conduct with regards to the promotion of its GiftRocket Business Directory that falsely affiliates plaintiffs and class members with GiftRocket, causing potential customers to purchase GiftRocket Prepaid Gifts which cannot be used with plaintiffs and class members." Sec. Am. Compl. ¶ 301. And as for false advertising, plaintiffs claim that defendants "have engaged in a course of conduct with respect to the advertising of its GiftRocket Business Directory that contains false and/or misleading statements of fact, or omissions of essential facts, including those about Plaintiffs and class members, which did not consent to partner with GiftRocket." *Id.* ¶ 312. Kubic counters that he cannot be held personally liable on either count because of what he characterizes as a minimal role in GiftRocket's allegedly unlawful conduct.

A trademark holder whose rights have been violated by a corporation may sue not only that corporation, but also an officer of that corporation. "A corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978). Several district courts have limited such liability to situations in which that officer "is a moving, active, conscious force behind the defendant corporation's infringement." *Pado, Inc. v. SG Trademark Holding Co. LLC*, 537 F. Supp. 3d 414, 427 (E.D.N.Y. 2021) (citation omitted); *see Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1317 n.8 (11th Cir. 2019) (individual defendants may be held liable if they "were the 'moving, active, conscious forces'" behind infringement) (alteration adopted). Other courts have taken a somewhat broader view of individual liability. *See, e.g.*, *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 501 (S.D.N.Y. 2015) ("A corporate officer is liable for trademark infringement if he 'directs,

7

controls, ratifies, participates in, or is the moving force behind the infringing activity'"), quoting *ABC Rug & Carpet Cleaning Serv., Inc. v. ABC Rug Cleaners, Inc.*, 2010 WL 10091076, at *13 (S.D.N.Y Feb. 10, 2010). The Second Circuit has, in an unpublished, non-precedential order, seemingly adopted the "moving force" language as one acceptable formulation. *Victorinox AG v. B&F Sys., Inc.,* 709 F. App'x 44, 50 n.6 (2d Cir. 2017), as amended (Oct. 4, 2017) ("[W]e agree with the district court that Meyer was an 'active conscious force' behind Defendants' infringement.").

What the Circuit has not done, however, is provide factors or a test to define this formulation. In the absence of such a test, defendant attempts to cobble one together by examining district court cases which courts found individual liability for infringing activities under these sections. Hence, Kubic urges the Court to consider whether he was (1) "the sole shareholder and employee, and therefore must have approved of the infringing act," *Mayes v. Summit Ent. Corp.*, 287 F. Supp. 3d 200, 212 (E.D.N.Y. 2018); (2) a "direct participant in the infringing activity," *id.;* (3) "primarily responsible for designing, marketing and developing an infringing product," *Louis Vuitton*, 97 F. Supp. 3d at 501; and (4) an individual who "authorized and approved the acts of unfair competition which are the basis of the corporation's liability." *Cartier v. Aaron Faber, Inc.*, 512 F. Supp. 2d 165, 170 (S.D.N.Y. 2007). Contending that none of these factors apply to him, defendant seeks entry of summary judgment.

This argument fails for several reasons. First, the identified factors do not fully weigh in Kubic's favor. While he was not the sole shareholder, he had some ownership interest in several corporate defendants. More importantly, a jury could find that, given his role in resourcing the business data feed involving unconsenting businesses while recognizing that terms related to "misuse of IP" that could "shut us down," that Kubic was a "direct participant in the infringing

8

activity." Ex. 46. The same could be said of Kubic's efforts to resuscitate the banking relationships which powered the gift card scheme, aware that these activities were "essentially … how GR makes money." Pls.' Resp. 11.

The fact that Kubic arrived well after implementation of the scheme, making it impossible for him to have been responsible for its creation, is not dispositive. The gift card scheme, as alleged, involved ongoing and evolving infringement against various businesses. Thus, by procuring access to the Google Places database, Kubic provided GiftRocket with the ability to commit new infringing acts against additional, previously unaffected trademark holders. In this way, he could be compared with corporate officers who arranged for the purchase of infringing products. *Compare Cartier*, 512 F. Supp. 2d at 170 (individual defendant liable when he "personally arranged for" infringing watches "to be purchased, modified, and offered for sale"); *Chloe v. Queen Bee of Beverly Hills, LLC*, No. 06-CV-3140 (RJH), 2011 WL 3678802, at *6 (S.D.N.Y. Aug. 19, 2011) (individual defendant liable when he "made the purchase decisions" and "specifically purchased" certain counterfeit bags).

Kubic's counsel emphasizes that "the GiftRocket product was designed and built more than ten years before Mr. Kubic was hired." Kubic Mot. at 13-14. Yet the nature of the claims and GiftRocket's evolving trademark infringement substantially undermine this argument. *Louis Vuitton* provides a telling comparison: there, a single plaintiff brought an action against defendants selling sunglasses with confusingly similar designs and marked with "LOUIS•V and LOUIS VALENTIN." *Louis Vuitton*, 97 F. Supp. 3d at 491. Thus, the plan to victimize the plaintiff began at a discreet point in time. Here, by contrast, the GiftRocket model, which continually allowed consumers to choose from hundreds of different vendors, there were, undoubtedly, additional acts of alleged false association and false advertising as against previously unaffected businesses well

9

after Kubic's arrival.  Thus, Kubic was present and allegedly involved at the inception of much of the infringing activity.

Second, these four factors do not represent a comprehensive test, nor would such a list of considerations likely be deemed exhaustive.  For example, the court in *Louis Vuitton* discussed extending liability to a corporate officer who "ratifies [or] participates in" infringing activities. 97 F. Supp. 3d at 501.  Here, a jury might view some combination of these factors, along with other considerations that may be introduced at trial, as a basis to find liability.  Given the facts here, a rational trier of fact may well render an affirmative verdict on the question of whether Kubic was a "moving, active, conscious force" behind the infringement.  Thus, Kubic is not entitled to summary judgment.

Even more easily resolved is plaintiffs' cross-motion for summary judgment against Kubic. Substantively, plaintiffs argue the contrapositive of Kubic's flawed position.  Claiming that Kubic was a corporate officer who "authorized and approved the acts of unfair competition" and was a "direct participant" therein, plaintiffs contend the undisputed facts render him a "moving, active conscious force" behind GiftRocket's alleged infringement.  Pls.' Resp. at 21.  However, just as defendants incorrectly limit the "factors" underlying individual liability, a jury may, or may not, draw the same inferences and conclusions urged by plaintiffs from the factual record here. Therefore, plaintiffs are not entitled to summary judgment against Kubic.[4]

---

[4]   For the first time in their opposition to Kubic's motion for summary judgment, Plaintiffs argue that Kubic is also vicariously, jointly, and contributorily liable.  Plaintiffs did not plead any of these theories of liability in their complaint activity.  But it is "well-settled"—both inside this Circuit and out—that "a party may not raise new claims or theories of liability for the first time in opposition to summary judgment." *Nagel v. Cnty. of Orange*, No. 09-cv-9960 (CS), 2013 WL 1285465, at *5 (S.D.N.Y. Mar. 28, 2013); *see, e.g., Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 319 (N.D.N.Y. 2013) ("[A] party may not raise new claims or theories of liability for the first time in opposition to summary judgment." (citation omitted)); *Casseus v. Verizon N.Y., Inc.,* No. 08-cv-4119, 2010 WL 2736935, at *14 (E.D.N.Y. July 9, 2010) ("[C]ourts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment."); *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 641–42 (3d Cir. 1993) (plaintiff who set forth one theory of liability

Procedurally, plaintiffs' motion proves bizarre, as the motion appears conditioned upon prevailing on an as-yet-filed motion for summary judgment against other defendants. *See, e.g. id.* at 6 (referring to "Plaintiff's eventual affirmative summary judgment motions on liability" and noting "Plaintiffs are not currently asking the Court to determine whether Plaintiffs have proven their substantive claims."). Given the constitutional bar against advisory opinions, it remains unclear what plaintiffs are seeking. Whatever it is, it is denied.

As summary judgment is denied, imposition of attorneys' fees under the Lanham Act is plainly unwarranted.

## II.  New York General Business Law Claims

In *Scholder v. Sioux Honey Ass'n Coop.*, No. 16-CV-5369 (GRB), 2022 WL 125742, at *2–3 (E.D.N.Y. Jan. 13, 2022), this Court summarized the applicable legal standards for claims arising under GBL § 349 and GBL § 350:

> Section 349 of the New York General Business Law ("GBL") prohibits "deceptive acts and practices in the conduct of any business, trade or commerce or in furnishing of any service." N.Y. Gen. Bus. Law § 349. A deceptive act or practice is one that is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350. False advertising means "advertising, including labeling ... if such advertising is misleading in a material respect." *Id.* § 350-a(1). Both provisions permit "any person who has been injured by reason of any violation" thereof to bring an action to recover damages or to enjoin the deceptive act or practice, or both. *Id.* §§ 349(h), 350-e(3).

---

in his pleadings could not advance separate theory after discovery closed); *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292 (9th Cir. 2000) (same). *Cf. Gilmour v. Gates, McDonald & Co.,* 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). Plaintiffs have accordingly forfeited their ability to argue that Kubic is vicariously, jointly, and contributorily liable.

11

> "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to § 349." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1 (2002); *see also Gristede's Foods Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 451 (E.D.N.Y. 2007) (the standards under Sections 349 and 350 are "substantively identical"). To state a claim under either section, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (quoting *Koch v. Acker, Merrall & Condit* Co., 18 N.Y.3d 940, 941 (2009)).

*Sioux Honey,* 2022 WL 125742, at *2–3. Plaintiffs allege that defendants' acts violated both sections. Sec. Am. Compl. ¶¶ 325, 333.

"Under New York law, 'a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable.'" *Bano v. Union Carbide Corp.*, 273 F.3d 120, 133 (2d Cir. 2001) (quoting *LoPresti v. Terwilliger*, 126 F.3d 34, 42 (2d Cir. 1997)); *see Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 701 (S.D.N.Y. 2015) (same); *Steven Madden Ltd. v. Jasmin Larian, LLC*, 2019 WL 294767, at *6 (S.D.N.Y. Jan. 22, 2019) (same). A corporate officer may be held liable if he "personal[ly] participat[ed]" in the unlawful activity. *Pado*, 537 F. Supp. 3d at 430 (citation omitted); *accord Reynolds*, 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015) (requiring "personal participation, rather than mere awareness or control"); *Steven Madden*, 2019 WL 294767, at *6 (same).

For the reasons set forth concerning the Lanham Act claims, whether Kubic personally participated presents questions that cannot be resolved on summary judgment. *See Davidcraft Corp. v. Danu Int'l, Inc.,* No. 90-CV-6578, 1992 WL 162997, at *6 (S.D.N.Y. June 24, 1992) (individual defendants liable when one committed "acts of tortious interference and unfair

12

competition" and the other stole the plaintiff's "office equipment and trade secrets"). Thus, summary judgment is denied to defendant Kubic and plaintiffs.

### III. Common Law Unfair Competition Claim

Plaintiffs maintain that the defendants "have engaged in a course of conduct with respect to the advertising of GiftRocket that unfairly and falsely affiliates Plaintiffs and class members with Defendant, diverting potential customers into purchasing GiftRocket Prepaid Gifts instead of directly purchasing services from Plaintiffs and the class members." Sec. Am. Compl. ¶ 340. To plaintiffs, this conduct "constitutes unfair competition under common law." *Id.* ¶ 342.

Because this claim rests on state law, the Court must "apply the choice-of-law rules of the state in which the federal district court sits." *See Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015) (citing *Klaxon v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). Here, of course, that is New York. The possible jurisdictions involved here are New York (the forum state, and where plaintiff Gracie Baked is located), Texas (where plaintiff Millercobb is located), and Pennsylvania (where plaintiff WeCare is located). Sec. Am. Compl. ¶¶ 28, 30, 31. There is no actual conflict because, in each state, the legal standard for evaluating the common law tort of unfair competition is "essentially the same as under the Lanham Act." *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14-CV-5213 (NRB), 2017 WL 3669625, at *16 (S.D.N.Y. Aug. 8, 2017), *aff'd sub nom. Universal Church, Inc. v. Toellner*, 752 F. App'x 67 (2d Cir. 2018); *see Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Imp. Corp.*, 53 S.W.3d 799, 806 n.3 (Tex. App. 2001) ("A trademark infringement and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions." (citation omitted)); *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc.*, 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999) ("The test for common law trademark infringement and unfair

competition is essentially the same as the test for infringement and unfair competition under the Lanham Act."). So, New York law applies.

"It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005); *Pado*, 537 F. Supp. 3d at 428 (same). Once again, then, neither Kubic nor plaintiffs have demonstrated entitlement to summary judgment.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment and attorneys' fees are DENIED.

SO ORDERED.

                                            */s/ Gary R. Brown*
                                            GARY R. BROWN
                                            United States District Judge

Dated: December 22, 2025
       Central Islip, New York