**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,<br><br>Defendants. | Case No.: 1:22-cv-04019-GRB-VMS |

### GIFTROCKET DEFENDANTS'
### MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................3

    A.    GiftRocket Provided a Mechanism to Gift Funds in a Personalized Way.....................................................................................................................3

    B.    Plaintiffs Bring this Suit Notwithstanding the Absence of Any Discernable Harm.................................................................................6

    C.    GiftRocket Ceased Operations One Year Ago.........................................8

LEGAL STANDARD...............................................................................................8

ARGUMENT ...........................................................................................................9

I.    GRACIE BAKED AND WECARE LACK ARTICLE III STANDING............................9

    A.    Gracie Baked and WeCare Did Not Suffer Any Concrete, Actual Injuries...................................................................................................9

    B.    Gracie Baked and WeCare Did Not Face Imminent Harm....................12

II.    WECARE'S CLAIMS ARE MOOT BECAUSE WECARE SOLD THEM AND THE BUSINESS ON WHICH THEY WERE BASED............................................13

III.    PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.....................................14

    A.    Plaintiffs' False Affiliation Claims Fail.................................................14

        1.    Plaintiffs' false affiliation claims require protectable marks.....................15

        2.    Because Plaintiffs disavowed that their claims were based on protectable marks, they cannot maintain their false affiliation claims...............................................................................17

        3.    There is no evidence an appreciable number of purchasers were likely to be confused about an affiliation between Plaintiffs and GiftRocket....................................................................................18

    B.    Plaintiffs' False Advertising Claims Fail Because There Is No Evidence Any False Statement Caused Any Customer to Withhold Trade from Plaintiffs.............................................................................20

    C.    Plaintiffs' State-Law Claims Fail..........................................................22

IV.    GIFTROCKET.COM HAS BEEN SHUT DOWN FOR NEARLY A YEAR; THEREFORE, PLAINTIFFS ARE NOT AT RISK OF IRREPARABLE INJURY.................................................................................................................23

CONCLUSION.......................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
119 F.4th 234 (2d Cir. 2024) ...............................................19

*1-800 Contacts, Inc. v. WhenU.Com, Inc.*,
414 F.3d 400 (2d Cir. 2005)...............................................15

*3M Co. v. CovCare, Inc.*,
537 F. Supp. 3d 385 (E.D.N.Y. 2021) ...............................14

*Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,
748 F.3d 110 (2d Cir. 2014)...............................................18

*Amazing Spaces, Inc. v. Metro Mini Storage*,
608 F.3d 225 (5th Cir. 2010) .............................................22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................9

*Aruz v. Accucom Corp.*,
2025 WL 2807653 (N.D. Ill. Oct. 2, 2025)........................10

*C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*,
2022 WL 2704506 (E.D.N.Y. 2022)...................................14

*City of L.A. v. Lyons*,
461 U.S. 95 (1983).............................................................13

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)...........................................................12

*Cohen v. Facebook, Inc.*,
252 F. Supp. 3d 140 (E.D.N.Y. 2017) ...............................13

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
508 F.3d 641 (11th Cir. 2007) .......................................11, 19

*Del. & Hudson Canal Co. v. Clark*,
80 U.S. 311 (1871).............................................................12

*Demosthene v. City of New York*,
2018 WL 10072931 (E.D.N.Y. July 20, 2018) ....................9

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
    394 F. Supp. 3d 368 (S.D.N.Y. 2019) ................................................................22

*Doyle v. Midland Credit Mgmt., Inc.*,
    2012 WL 5210596 (E.D.N.Y. Oct. 23, 2012) ....................................................13

*Faculty v. N.Y. Univ.*,
    11 F.4th 68 (2d Cir. 2021) ................................................................................13

*Fantasia Distribution, Inc. v. Myle Vape, Inc.*,
    766 F. Supp. 3d 373 (E.D.N.Y. 2024) ...............................................................22

*Fischer v. Forrest*,
    286 F. Supp. 3d 590 (S.D.N.Y. 2018) ...............................................................19

*Flushing Bank v. Green Dot Corp.*,
    138 F. Supp. 3d 561 (S.D.N.Y. 2015) ...............................................................19

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ..........................................................................................23

*Giannone v. Giannone*,
    429 F. Supp. 3d 34 (E.D. Pa. 2019) ..................................................................22

*Goenaga v. March of Dimes Birth Defects Found.*,
    51 F.3d 14 (2d Cir. 1995) ....................................................................................8

*Goldwyn Pictures Corp. v. Goldwyn*,
    296 F. 391 (2d Cir. 1924) ..................................................................................11

*In re Gordos Rest. Corp.*,
    643 B.R. 1 (S.D.N.Y. Bankr. 2022) ..................................................................24

*Greenwich Taxi, Inc. v. Uber Techs., Inc.*,
    123 F. Supp. 3d 327 (D. Conn. 2015) ...............................................................15

*Hershey Foods Corp. v. Ralph Chapek, Inc.*,
    828 F.2d 989 (3d Cir. 1987) ..............................................................................14

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
    73 F.3d 497 (2d Cir. 1996) ................................................................................18

*Hudson Furniture, Inc. v. Mizrahi*,
    2023 WL 6214908 (S.D.N.Y. Sept. 25, 2023) ..................................................15

*Intellevision v. Microsoft Corp.*,
    484 F. App'x 616 (2d Cir. 2012) .......................................................................18

*ITC Ltd. v. Punchgini, Inc.*,
  482 F.3d 135 (2d Cir. 2007)................................................................15

*Lehrman v. Lovo, Inc.*,
  790 F. Supp. 3d 348 (S.D.N.Y. 2025)...................................14, 15, 16

*Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*,
  572 U.S. 118 (2014)...............................................................14, 20

*Maddox v. Bank of New York Mellon Trust Co.*,
  19 F.4th 58 (2d Cir. 2021) ........................................................10

*Michelo v. Nat'l Coll. Student Loan Tr. 2007-2*,
  419 F. Supp. 3d 668 (S.D.N.Y. 2019)........................................23

*Neuro. Surgery Prac. of Long Island, PLLC v. U.S. D.H.H.S.*,
  145 F.4th 212 (2d Cir. 2025) .....................................................24

*Nike, Inc. v. Top Brand Co.*,
  2005 WL 1654859 (S.D.N.Y. July 13, 2005) .............................23

*NRDC v. Bodine*,
  471 F. Supp. 3d 524 (S.D.N.Y. 2020)..........................................9

*O'Keefe v. Ogilvy & Mather Worldwide, Inc.*,
  590 F. Supp. 2d 500 (S.D.N.Y. 2008)........................................19

*Ocusoft, Inc. v. Walgreen Co.*,
  2017 WL 1838106 (S.D. Tex. May 8, 2017) ...............................23

*OffWhite Prods., LLC v. Off-White LLC*,
  480 F. Supp. 3d 558 (S.D.N.Y. 2020)........................................11

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
  32 F.3d 690 (2d Cir. 1994).................................................20, 22

*Pegasystems Inc. v. Appian Corp.*,
  633 F. Supp. 3d 456 (D. Mass. 2022) ........................................24

*PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*,
  629 F. Supp. 3d 116 (S.D.N.Y 2022)..........................................20

*Polaroid Corp. v. Polarad Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961)..................................................19, 20

*Scott v. Bryn Mawr Arms, Inc.*,
  312 A.2d 592 (Pa. 1973) ...........................................................14

*Segovia v. Vitamin Shoppe, Inc.*,
2017 WL 6398747 (S.D.N.Y. Dec. 12, 2017) .......................................................23

*Souza v. Exotic Island Enterprises*,
68 F.4th 99 (2d Cir. 2023) ...........................................................................21, 22

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
588 F.3d 97 (2d Cir. 2009)...........................................................................19, 20

*The Sports Auth., Inc. v. Prime Hosp. Corp.*,
89 F.3d 955 (2d Cir. 1996)...............................................................................19

*TrafficSchool.com, Inc. v. Edriver Inc.*,
653 F.3d 820 (9th Cir. 2011) .............................................................................12

*TransUnion v. Ramirez*,
594 U.S. 413 (2021).................................................................................9, 10, 12

*Twentieth Cent. Fox Film Corp. v. Marvel Enters., Inc.*,
277 F.3d 253 (2d Cir. 2002)...............................................................................17

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 (1992).........................................................................................16

*Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*,
2024 WL 98420 (D. Conn. Jan. 8, 2024).............................................................17

*VeriPath, Inc. v. Didomi*,
2020 WL 1503687 (S.D.N.Y. Mar. 30, 2020) ........................................................3

*Warth v. Seldin*,
422 U.S. 490 (1975).........................................................................................12

*Weinberger v. Romero-Barcelo*,
456 U.S. 305 (1982).........................................................................................23

*Weinstock v. Columbia Univ.*,
224 F.3d 33 (2d Cir. 2000)...................................................................................9

*ZapIp LLC v. FlyDive Inc.*,
2017 WL 8292394 (C.D. Cal. Oct. 19, 2017)........................................................23

**Statutes**

15 U.S.C § 1125(a) ...............................................................................14, 15, 16, 17

G.B.L. § 349...........................................................................................................7, 22

G.B.L. § 350...........................................................................................................7, 22

**Other Authorities**

4 McCarthy, Trademarks and Unfair
 Competition (5th ed. 2025) ..............................................................14, 16

Fed. R. Civ. P. 56(a) ........................................................................8

Mark P. McKenna, *Testing Modern Trademark Law's Theory of Harm*,
 95 Iowa L. Rev. 63, 72 (2009) ..........................................................12

Restatement of Torts § 559 ..............................................................10

Restatement (Second) of Torts § 537 ................................................11

U.S. Const., Art. III ...............................................................1, 2, 9, 11

## INTRODUCTION

Plaintiffs sued the GiftRocket Defendants[1] over three years ago and conducted extensive discovery. Despite leaving no stone unturned, the record contains no evidence these Plaintiffs suffered any cognizable harm. Moreover, during the litigation, Plaintiffs expressly disavowed key elements of their Lanham Act claims. Allowing the case to proceed to trial (or even to class certification) would violate Article III and distort the Lanham Act beyond recognition.

To recap: three computer scientists and friends founded GiftRocket in 2010—before peer-to-peer money-transfer applications like Venmo were popular. GiftRocket's website, giftrocket.com, allowed users to securely gift money to friends and family via customized digital greeting cards. Purchasers could "suggest" recipients spend their funds by searching for and selecting any one of millions of places listed on Yelp.com, ranging from restaurants to day spas to clothing stores (and beyond). As one of the founders described it, the product was designed to provide both the flexibility of cash and the personal touch of "I think you'd love this place." Between July 2015 and December 2024, GiftRocket users gifted funds to friends and family that suggested use at over 135,000 unique entities.

The three plaintiffs own or owned businesses listed on Yelp: Gracie Baked (a bakery), Café Ole in the Valley, and Dimensions Massage Therapy ("Dimension"). Plaintiffs filed suit because, at one time, it **would have** been possible for a GiftRocket user to send a friend money and suggest it be used at their business. It is undisputed, however, that for Gracie Baked and Café Ole in the Valley, no one did. In fact, Gracie Baked and WeCare first heard of GiftRocket from Plaintiffs' counsel. As to Dimensions, only one customer purchased a GiftRocket for suggested use there, after which she obtained a full refund and purchased a gift card directly from Dimensions.

---

[1] Defendants GiftRocket, Inc., Tremendous, Inc., Nicolas Baum, Kapil Kale, Jonathan Pines, Benjamin Kubic, GiftRocket, LLC, Tremendous LLC, and Tremendous Parent, Inc.

1

Notwithstanding the absence of any discernable harm—and without first requesting they no longer be searchable or suggestable on giftrocket.com—Plaintiffs sued the GiftRocket Defendants and Sunrise Banks (GiftRocket's former banking provider) for false affiliation and false advertising under the Lanham Act, and for several related state law claims. Though Plaintiffs *allege* GiftRocket harmed their reputations and diverted their potential customers, they have conceded they are unaware of that actually happening. Because there is no evidence of reputational harm or diversion of customers, no triable issues of fact exist here, meriting summary judgment.

*First*, under Supreme Court precedent, Gracie Baked and WeCare lack Article III standing because (1) there is no evidence anyone searched for or saw either business on giftrocket.com, let alone purchased a GiftRocket for suggested use there; and (2) a plaintiff cannot suffer reputational harm absent evidence someone saw the false or infringing content.

*Second*, any claims WeCare might have had are moot. In 2024, WeCare sold all tangible and intangible interests in Café Ole in the Valley, including its claims in this action. WeCare has no cognizable interest in claims it sold, or in the reputation or sales of something it no longer owns.

*Third*, Plaintiffs' Lanham Act false affiliation claims fail because they disavowed any claims predicated on a protectable mark, which is a required element. Indeed, they refused to answer discovery requests seeking information about the nature and distinctiveness of their marks, which Judge Kovner relied on in denying a motion to compel that information. Separately, there is no evidence from which a jury could determine that an appreciable number of purchasers were likely to be confused as to affiliation between Plaintiffs' businesses and GiftRocket.

*Fourth*, Plaintiffs' false advertising claims fail because they have no evidence GiftRocket (1) made a materially false statement that (2) diverted or diminished Plaintiffs' sales. Plaintiffs allege Google search results and giftrocket.com pages stating "[Business Name] Gift Card" or

"Gift Card to [Business Name]" were false. But those phrases were not present on all GiftRocket pages, and Plaintiffs failed to come forth with **any** evidence as to what **the only customer** who purchased a GiftRocket for suggested use at Dimensions saw or relied on.

**Finally**, Plaintiffs cannot obtain injunctive relief because there is no likelihood of future irreparable harm. Giftrocket.com shut down nearly a year ago, and its founders have moved on to other ventures and have sworn under penalty of perjury they will not restart GiftRocket.

This Court should therefore grant summary judgment for Defendants.

## FACTUAL BACKGROUND

A.      **GiftRocket Provided a Mechanism to Gift Funds in a Personalized Way.**

In or around 2010, three friends and budding entrepreneurs, Nicolas Baum, Jonathan Pines, and Kapil Kale, co-founded GiftRocket, an online platform for sending funds with customizable electronic greeting cards. Baum ¶¶ 4–8. Through giftrocket.com, users could send funds to a recipient and suggest (if they so chose) that the recipient use the gifted funds at a specific business. SUF ¶ 36. To power its suggestion feature, GiftRocket used Yelp's "application programming interface," or "API."[2] *Id.* ¶¶ 10–12. Yelp operates a popular website that profiles millions of businesses, services, attractions, and other entities and allows users to review them. *See* https://www.yelp.com/. Yelp also has an API that provides businesses access to data on millions of entities profiled on Yelp.com, such as gas stations, supermarkets, car dealerships, gyms, plumbers, parks, government buildings, hair salons, coffee shops, department stores, restaurants, doctors' offices, churches, dry cleaners, and law firms. Ex. G at GR_0051370–408.[3] Tens of

---

[2] An API is "[a] set of functions and procedures allowing the creation of applications that access the features or data of an operating system, application, or other service." *VeriPath, Inc. v. Didomi*, 2020 WL 1503687, at *1 n.1 (S.D.N.Y. Mar. 30, 2020) (quoting API, Oxford Living Dictionaries (2020)).

[3] All citations to exhibits refer to exhibits attached to the concurrently filed Declaration of Katherine Burghardt Kramer.

thousands of developers have, as GiftRocket once did, embedded the Yelp API into their applications. *Id.* at GR_0051362–63.

GiftRocket provided users two ways to search and suggest entities. **First**, giftrocket.com contained a generic order form ("Send a Gift Page"). SUF ¶ 40. This form allowed users to send a monetary gift by entering a personal message along with the place the user suggested their gift recipient spend the money. *See id.*



Ex. H at GR_0050500. The code running giftrocket.com would then query the Yelp API (or data stored from the API) to identify that entity. SUF ¶ 40.

**Second**, giftrocket.com contained a "Browse" table that enabled visitors to browse among categories of entities from Yelp (e.g., "Restaurants" in "San Francisco"). *Id.* ¶ 41. The code running giftrocket.com would query the Yelp API for entities meeting the selected criteria, and if a visitor clicked on an entity, giftrocket.com's code would query Yelp's API (or data stored from the API) and generate an order form pre-filled with information about that entity ("Business

Landing Page"). *Id.* From the start of the class period until April 2019, Business Landing Pages included "Gift Card" in their titles. *Id.* ¶ 42. After April 2019, Business Landing Pages on desktop browsers were simply titled "Buy a [Business Name] **Gift**." *Id.* (emphasis added).[4]



Ex. I at GR_0050836.

Business Landing Pages were not only generated by (human) users of giftrocket.com; in fact, human visitors to giftrocket.com paled in comparison to those of web crawlers ("bots") like Google. Ex. E, at 161:25–162:24. For example, a Google bot could browse results of "Restaurants" in "San Francisco" on GiftRocket and "click" each entity. SUF ¶ 43. This would prompt giftrocket.com's code to query the Yelp API and generate Business Landing Pages. *See id.* It is undisputed that it is not possible to determine whether any given Business Landing Page was generated by a person or a bot. *See id.* ¶ 44.

From 2016, GiftRocket disclosed on Business Landing Pages that a GiftRocket "is redeemed for money through the GiftRocket website" and is not accepted by third party merchants. *Id.* ¶ 45. In addition, from 2017 to 2021, GiftRocket **required purchasers to check a box** stating they understood they were not buying merchant-branded gift cards. *Id.* ¶ 46; *see also* Ex. J:

---

[4] Mobile versions of Business Landing Pages were still titled "Buy a [Business Name] Gift Card." *See* SUF ¶ 31.



**B.** **Plaintiffs Bring this Suit Notwithstanding the Absence of Any Discernable Harm.**

Plaintiff ***Gracie Baked*** is a New York City bakeshop and sole proprietorship founded in 2018. SUF ¶ 1. Gracie Baked has never advertised or offered gift cards for sale. *Id.* ¶ 5. There is no evidence anyone saw Gracie Baked on giftrocket.com. *Id.* ¶¶ 3, 7. Further, there is no evidence anyone launched a session on giftrocket.com after searching Google for the term "Gracie Baked," or that anyone ever visited a Business Landing Page for Gracie Baked directly from a Google search. *Id.* ¶¶ 8–9. No one purchased a GiftRocket for suggested use at Gracie Baked. *Id.* ¶¶ 6, 10. In fact, Gracie Baked's owner had never heard of GiftRocket before meeting Plaintiffs' counsel, *id.* ¶ 2. Gracie Baked never requested to be removed from giftrocket.com, *id.* ¶ 12.

Plaintiff ***WeCare*** operated a coffee shop in Pennsylvania called Café Ole in the Valley starting in 2019. *Id.* ¶ 13. Like Gracie Baked, WeCare had never heard of GiftRocket before meeting Plaintiffs' counsel, *id.* ¶ 14, and never requested that Café Ole in the Valley be removed from giftrocket.com, *see id.* ¶ 25. Further, there is no evidence anyone launched a session on giftrocket.com after searching Google for "Café Ole in the Valley," or that anyone visited a Business Landing Page for Café Ole in the Valley directly from a Google search. *Id.* ¶¶ 17–18. Nobody purchased a GiftRocket for suggested use at Café Ole in the Valley. *Id.* ¶ 16. In May 2024, WeCare sold Café Ole in the Valley pursuant to a purchase agreement for "all" of "tangible and intangible assets" to another business, without reservation. *Id.* ¶¶ 20–23. The purchase agreement contained an integration clause and required all modifications to be made in writing. *Id.* ¶ 22.

Plaintiff ***Millercobb*** is a limited liability company whose sole member is Trevor Miller-Cobb. Ex. C, at 16:17–18, 20:8–10, 21:17–22:21. Millercobb has operated Dimensions, a massage therapy business, in Austin, Texas, since the Spring of 2019. SUF ¶ 26. Only one customer purchased a GiftRocket for suggested use at Dimensions: Cassie Riley, for $100 in October 2022.[5] *Id.* ¶ 28. That GiftRocket was subsequently refunded in full, including all service fees. *Id*. Ms. Riley also purchased a gift card directly from Dimensions for $90 in November 2022. *Id.* ¶ 29.

Notably, there is no evidence as to ***how*** Ms. Riley encountered Dimensions on giftrocket.com or ***what she saw, understood, or relied upon*** in purchasing a GiftRocket for suggested use at Dimensions. In particular, there is no evidence as to whether Ms. Riley even saw a Business Landing Page for Dimensions, or whether she saw the desktop version (titled "Buy a Dimensions Gift") or the mobile version (titled "Buy a Dimensions Gift Card") of that page.

Notwithstanding the absence of evidence that anyone saw Gracie Baked or Café Ole in the Valley on giftrocket.com and the lack of evidence Plaintiffs suffered any harm because of giftrocket.com, and without simply requesting that GiftRocket remove them from their search-and-suggest feature, Plaintiffs filed this suit. Plaintiffs allege GiftRocket violated the Lanham Act, state unfair competition laws, and New York General Business Law ("GBL") §§ 349 and 350 by allowing users to "suggest" Plaintiffs on giftrocket.com, and by describing GiftRockets as a type of "gift card." *See* ECF No. 137. Although Plaintiffs' first cause of action is for false affiliation under the Lanham Act, it has never been clear what mark or other protectable intellectual property Plaintiffs believe GiftRocket improperly used. This is because Plaintiffs have repeatedly maintained—both to the Court and in response to discovery requests—that "[t]here is no reason for Plaintiffs to identify their 'trademark[s] and/or Tradenames." ECF No. 151, at 2–5.

---

[5] A second GiftRocket was purchased by Trevor Miller-Cobb in the amount of one dollar as a "test." SUF ¶ 30.

## C.     GiftRocket Ceased Operations One Year Ago.

Because GiftRocket's sales declined by about 75% since mid-2023, such that it was not financially worthwhile to continue operations, giftrocket.com stopped taking new orders and displaying information about any entities on December 31, 2024. *See* SUF ¶¶ 47–48. Nick Baum and Kapil Kale, GiftRocket co-founders[6] and current CEO and COO, respectively, wanted to focus their time and efforts on Tremendous, a separate product.[7] SUF ¶ 49; Baum ¶ 46; Kale ¶ 9. The founders will not restart giftrocket.com or a similar business that involves money transfers and suggesting gifted funds be used at specific businesses. *See* SUF ¶ 49. Lastly, Benjamin Kubic, a Tremendous employee who has been sued here individually even though he never had any control over or ownership of GiftRocket *see* ECF No. 251, likewise has no interest in seeking to restart GiftRocket or a similar business and will not (and cannot) do so.[8] *See* Kubic ¶¶ 7–8.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Evidence should be "significantly probative," not

---

[6] Jonathan Pines, the third co-founder of GiftRocket, has not been actively involved with the company since 2013, and has been employed by an investment firm since 2014. *See* Pines ¶¶ 3–4.

[7] Specifically, Tremendous is a digital payments provider with no "suggestion" feature and enables entities to give rewards in bulk (for example, for survey incentives or employee recognition). *See* Baum ¶ 43. Unlike GiftRocket, Tremendous is a large scale, high-growth business with a 125-person team and more than 20,000 corporate customers. *Id.* ¶ 33.

[8] Mr. Kubic was hired in 2021 as the Vice President of Operations, focusing on the Tremendous product. *See* Ex. F, at 15:5–18, 22:13–17, 47:1–15. Mr. Kubic has moved for summary judgment given there is no evidence upon which a jury could find him individually liable here. *See* ECF No. 251.

"merely colorable," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986), and "plaintiffs must do more than restate unsupported allegations," *Demosthene v. City of New York*, 2018 WL 10072931, at *9 (E.D.N.Y. July 20, 2018). "The time has come . . . to put up or shut up." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (cleaned up).

## ARGUMENT

### I.     GRACIE BAKED AND WECARE LACK ARTICLE III STANDING.

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *TransUnion v. Ramirez*, 594 U.S. 413, 423 (2021). Rather, they resolve "real controvers[ies] with real impact[s] on real persons." *Id.* at 424 (citation omitted). Thus, a plaintiff must show it "suffered an injury in fact that is concrete, particularized, and actual or imminent[.]" *Id.* at 423. And they must do so "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 431 (citation omitted). Thus, "[t]o defeat a defendant's motion for summary judgment, a plaintiff must establish that there is a genuine question of material fact as to the standing elements." *NRDC v. Bodine*, 471 F. Supp. 3d 524, 534 (S.D.N.Y. 2020) (cleaned up). Gracie Baked and WeCare cannot make that showing.

### A.     Gracie Baked and WeCare Did Not Suffer Any Concrete, Actual Injuries.

Gracie Baked and WeCare allege GiftRocket diverted their sales and harmed their reputations. *See, e.g.*, SAC ¶¶ 313(h)–(j), ECF No. 137. But they cannot point to any evidence establishing as much. If anything, the record affirmatively demonstrates the opposite.

GiftRocket did not divert sales of Gracie Baked or WeCare because no one purchased a GiftRocket for suggested use at Gracie Baked or Café Ole in the Valley. *See* SUF ¶¶ 6, 16. In fact, Gracie Baked and WeCare had not even heard of GiftRocket before meeting Plaintiffs' counsel. *Id.* ¶¶ 2, 14. Moreover, there is no evidence anyone ever: (1) searched for, saw, or suggested Gracie Baked or Café Ole in the Valley on giftrocket.com, *see id.* ¶¶ 3, 7–9, 15, 17–18; (2) launched a

session on giftrocket.com after searching Google for "Gracie Baked" or "Café Ole in the Valley," *id.* ¶¶ 8, 17; or (3) visited a Business Landing Page for Gracie Baked or Café Ole in the Valley directly from a Google search. *Id.* ¶¶ 9, 18.

Absent evidence anyone saw Gracie Baked or Café Ole in the Valley on giftrocket.com, neither Gracie Baked nor WeCare can raise a triable fact as to reputational harm. As both a historical and practical matter, reputational harm requires "that the defendant actually 'brought an idea to the perception of another'" such that the information "was actually read and not merely processed[.]" *TransUnion*, 594 U.S. at 434 n.6 (quoting Restatement of Torts § 559, cmt. a, p. 140 (1938)); *see also id.* at 434 ("[T]here is no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury.") (cleaned up). Here, there is no evidence GiftRocket brought Gracie Baked or Café Ole in the Valley to the perception of another, such that anyone actually saw Gracie Baked or Café Ole in the Valley on giftrocket.com. *See, e.g.*, *Aruz v. Accucom Corp.*, 2025 WL 2807653, at *6 (N.D. Ill. Oct. 2, 2025) (dismissing complaint where there was no evidence plaintiff's information appeared on defendant's website aside from when her attorneys searched for her in preparation for litigation).

The Second Circuit made this even more clear in *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58 (2d Cir. 2021). There, the defendant failed to file a satisfaction of mortgage after the plaintiffs paid off their mortgage. *See id.* at 60. But because there was no evidence anyone saw the incomplete or false mortgage record, the court held plaintiffs suffered no concrete reputational harm. *Id.* at 64. Indeed, "***[t]he misleading record may have been public and available to all . . . [but] so far as is known, it was read by no one.***" *Id.* at 65 (emphasis added). And even though "the [plaintiffs] may have suffered a nebulous risk of future harm . . . <u>i.e.</u>, a risk that someone . . . **might** access the record . . . *that risk, which was not alleged to have materialized,***

***cannot form the basis of Article III standing***." *Id.* (bold emphasis added). So too here. It may have been theoretically possible for someone to search for Gracie Baked and Café Ole in the Valley on giftrocket.com, but so far as is known, nobody ever did.

In opposition, Plaintiffs may argue several points, none of which is availing.

***First***, Plaintiffs may argue courts do not require plaintiffs in Lanham Act cases to prove specific, identifiable instances of actual consumer confusion. But Gracie Baked and WeCare's shortcoming under Article III is not their failure to identify instances of actual confusion (although they cannot), but rather their failure to marshal evidence that anyone ever saw Gracie Baked or Café Ole in the Valley on giftrocket.com in the first place. "Trademark law is not concerned with mere theoretical possibilities of confusion." *OffWhite Prods., LLC v. Off-White LLC*, 480 F. Supp. 3d 558, 564–65 (S.D.N.Y. 2020) (cleaned up). Thus, Plaintiffs must confront the "antecedent question of whether purchasers [we]re likely to see the [allegedly infringing content] at all." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007). "***Like the proverbial tree falling in a forest, the unauthorized use of a trademark that is never perceived by anyone cannot be said to create a likelihood of consumer confusion.***" *Id.* (emphasis added).

***Second***, Plaintiffs may argue "unfair competition" provides a historical analog for standing in this case. But the history of unfair competition only further forecloses Plaintiffs' claims. The tort of unfair competition was historically predicated on fraud. *See Goldwyn Pictures Corp. v. Goldwyn*, 296 F. 391, 401 (2d Cir. 1924) ("Fraud is the basis of [the] complaint in such cases."). Fraud requires reliance—i.e., that others perceived the purportedly false or misleading statement and relied on it to their detriment. *See* Restatement (Second) of Torts § 537. Plainly, a defendant cannot have defrauded someone who never saw, much less relied on, the allegedly misleading statement. Moreover, historically, "courts understood trade diversion"—not pure reputational

harm—"to be the relevant harm" of unfair competition. Mark P. McKenna, *Testing Modern Trademark Law's Theory of Harm*, 95 Iowa L. Rev. 63, 72 (2009); *see also Del. & Hudson Canal Co. v. Clark*, 80 U.S. 311, 322–23 (1871) ("[T]he essence of the wrong consists in the **sale of the goods** of one manufacturer or vendor as those of another[.] . . . This is the doctrine of all the authorities.") (emphasis added). Here, again, GiftRocket did not sell any GiftRockets for suggested use at Gracie Baked or Café Ole in the Valley.

**Third**, Plaintiffs may argue they nevertheless have standing to seek disgorgement as a means of deterrence. Not so. While deterrence may be a valid equitable justification to disgorge profits in appropriate cases, that consideration is entirely separate from the "threshold" **constitutional** question "in every federal case" of whether Plaintiffs have standing. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 831 (9th Cir. 2011) (affirming denial of award of profits because "[p]laintiffs didn't produce *any* proof of past injury or causation").

### B.    Gracie Baked and WeCare Did Not Face Imminent Harm.

"[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion*, 594 U.S. at 431. To establish standing to seek injunctive relief, Plaintiffs must raise a triable fact they faced an "imminent" concrete and particularized injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "Imminent" means "certainly impending." *Id.* at 401. "[A]llegations of possible future injury are not sufficient." *Id.* at 409 (internal quotation marks omitted).

Gracie Baked and WeCare cannot point to evidence of certainly impending harm. There is no evidence any person intended to search for—let alone to send funds through GiftRocket for suggested use at—Gracie Baked or Café Ole in the Valley out of the **millions** of entities searchable through giftrocket.com. That is, there is no evidence "that could form a basis to conclude [Gracie

Baked and WeCare] *in particular* [we]re at any 'substantial' or 'certainly impending' risk of future harm." *Cohen v. Facebook, Inc.*, 252 F. Supp. 3d 140, 150 (E.D.N.Y. 2017) (citation omitted). After all, users could have suggested Gracie Baked or WeCare for years, yet nobody ever did. *See City of L.A. v. Lyons*, 461 U.S. 95, 108 (1983) ("We note that five months elapsed between [the incident] and the filing of the complaint, yet there was no allegation of further unfortunate encounters[.]"). Because "there [were] uncertain future action[s] that would [have] need[ed] to occur before the plaintiffs could arguably [have] suffer[ed] the harm alleged," Plaintiffs lack standing to seek injunctive relief. *Faculty v. N.Y. Univ.*, 11 F.4th 68, 77 (2d Cir. 2021).

## II. WECARE'S CLAIMS ARE MOOT BECAUSE WECARE SOLD THEM AND THE BUSINESS ON WHICH THEY WERE BASED.

Even if WeCare had standing at the outset of this case (it did not, *see supra* § I), its claims are now moot. A "claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Doyle v. Midland Credit Mgmt., Inc.*, 2012 WL 5210596, at *2 (E.D.N.Y. Oct. 23, 2012), *aff'd*, 722 F.3d 78 (2d Cir. 2013) (cleaned up). WeCare has no such interest because, in 2024, it sold Café Ole in the Valley—the business and brand underlying all of its claims. *See* SUF ¶¶ 20–24. The purchase agreement covered "all" of Café Ole in the Valley's "tangible and intangible assets," including its "goodwill"; there was no carveout for or reservation of claims or intellectual property. *See id.* ¶¶ 22–23.

Representatives for WeCare and the buyer purportedly discussed WeCare's reservation of some rights related to this lawsuit. *See* Ex. B, at 121:21–122:16; *id.*, Ex. D, at 11:14–12:14, 27:13–28:3, 57:20–58:22. But those conversations are immaterial because the purchase agreement contained an integration clause:

> This Agreement, together with all exhibits and schedules hereto, constitute the ***entire agreement among the parties*** pertaining to the subject matter hereof and ***supersede all prior agreements, understandings, negotiations and discussions, whether oral or written***, of the parties.

SUF ¶ 22. It is black-letter law that "preliminary negotiations, conversations and verbal agreements" cannot amend or alter a fully integrated written agreement. *Scott v. Bryn Mawr Arms, Inc.*, 312 A.2d 592, 594 (Pa. 1973); *see also Hershey Foods Corp. v. Ralph Chapek, Inc.*, 828 F.2d 989, 995 (3d Cir. 1987) ("Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.") (cleaned up). Moreover, the agreement here requires amendments to be in writing. *See* SUF ¶ 22. There were no such amendments. *Id.* ¶ 24. WeCare's claims are thus moot.

## III. PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL REASONS.

Even putting aside standing and mootness, this Court should grant summary judgment because none of the Plaintiffs (including Dimensions) can raise triable facts as to every element of their claims.

### A. Plaintiffs' False Affiliation Claims Fail.

Section 43(a) of the Lanham Act recognizes "two distinct bases of liability: ***false association***, § 1125(a)(1)(A), ***and false advertising***, § 1125(a)(1)(B)."[9] *Lexmark Int'l, Inc. v. Static Ctrl. Components, Inc.*, 572 U.S. 118, 122 (2014) (emphases added); *accord* 4 McCarthy on Trademarks & Unfair Competition ("McCarthy") § 27:9 (5th ed. Feb. 2025). Plaintiffs' first cause of action, "so-labeled 'unfair competition and false affiliation[,]' . . . fall[s] into the first bucket—false association." *Lehrman v. Lovo, Inc.*, 790 F. Supp. 3d 348, 362–63 (S.D.N.Y. 2025).[10]

To prevail on their false affiliation claims, each Plaintiff must show "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant[s] used the mark,

---

[9] Lanham Act §§ 43(a)(1)(A) and (a)(1)(B) are codified at 15 U.S.C. §§ 1125(a)(1)(A) and (a)(1)(B), respectively.

[10] Courts and parties often refer to this cause of action interchangeably as "infringement," "false affiliation," "false association," or "unfair competition." *See, e.g.*, *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 396 n.5 (E.D.N.Y. 2021). Each refers to use of another's mark "in a way that deceptively claims affiliation, connection, or association." *C.M.B. Prods., Inc. v. SRB Brooklyn, LLC*, 2022 WL 2704506, at *9 (E.D.N.Y. July 12, 2022) (cleaned up).

(3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without [its] consent." *1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005) (cleaned up); *see also Hudson Furniture, Inc. v. Mizrahi*, 2023 WL 6214908, at *3 (S.D.N.Y. Sept. 25, 2023) ("The legal standard to establish liability for trademark infringement and false association are the same.") (citation omitted). Plaintiffs must also demonstrate "defendant[s'] use of that mark 'is likely to cause confusion . . . as to the affiliation, connection, or association of [defendant] with [plaintiff.]'" *1-800 Contacts*, 414 F.3d at 407 (quoting 15 U.S.C. § 1125(a)(1)(A)).

Plaintiffs' false affiliation claims cannot survive summary judgment because Plaintiffs disavowed any claim predicated on a protectable mark. Separately, there is no evidence to raise a triable fact as to likelihood of confusion.

### 1. *Plaintiffs' false affiliation claims require protectable marks.*

Plaintiffs have maintained they need not demonstrate any protectable mark to prevail on their false affiliation claims, but they are wrong. To prevail on their false affiliation claims, Plaintiffs must show they own protectable marks. *1-800 Contacts*, 414 F.3d at 406–07; *see also Greenwich Taxi, Inc. v. Uber Techs., Inc.*, 123 F. Supp. 3d 327, 339 (D. Conn. 2015) (explaining that "[f]or false association," a plaintiff must establish "it has a valid mark that is entitled to protection under the Lanham Act"); *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) ("To succeed on a section 43(a)(1)(A) claim, a plaintiff must prove . . . that the mark or dress is distinctive as to the source of the good or service at issue[.]").

*Lehrman v. Lovo* demonstrates why Plaintiffs' argument fails. 790 F. Supp. 3d at 365–66. There, plaintiffs brought a false affiliation claim against defendant for selling unauthorized clones of their voices. *See id.* at 355–58. The court observed that plaintiffs' claims were not predicated on "ordinary trademark[s]," *id.* at 363, but it nevertheless characterized the "pertinent" inquiry as

15

"whether what each Plaintiff seeks to protect from imitation—his or her voice—functions as a trademark or trade name entitling it to protection," *id.* at 365–66 (cleaned up). Thus, the court still held *some* kind of protectable "mark" was required. It did *not* do what Plaintiffs want here: dispense with protectability altogether. Indeed, one Lanham Act treatise warns against precisely what Plaintiffs attempt to do here:

> Some plaintiffs have attempted to either avoid or embellish a § 43(a)(1)(A) trademark infringement and unfair competition allegation by asserting the same facts as a claim of false advertising under § 43(a)(1)(B). This is *attempted to avoid having to prove the validity of a trademark*. But *this cannot be done*[.] The two claims are separate and distinct and have different elements needed to assert a prima facie case. . . . *An unregistered trademark infringement (or "false association") claim cannot be re-packaged as a false advertising claim in order to avoid having to prove the validity of a trademark*.

McCarthy § 27:50 (emphases added).

In opposition, Plaintiffs will likely make several unavailing arguments. For example, Plaintiffs will likely quote *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992), for the propositions (*taken out of context*) that § 43(a) "does not mention trademarks" and courts are forbidden from "[e]ngrafting onto § 43(a) a requirement" without a "textual basis" to do so, *see id.* at 774. Nowhere, however, did *Two Pesos* dispense with the protectable mark requirement for false affiliation claims. To the contrary, the Court began its analysis by explaining "it is common ground that § 43(a) protects *qualifying* unregistered *trademarks*." *Id.* at 768 (emphasis added). Indeed, the very question presented in *Two Pesos*—what is required to prove certain trade dress is protectable—presupposes that *protectability* is an element of § 43(a) claims. *See id.* at 764–65. Were protectability not an element, then the question presented in *Two Pesos* would have been moot. The Court simply concluded in that case there is no textual basis for treating trade *dress* and trade*marks* differently. *See id.* at 774. If anything, therefore, *Two Pesos* only reinforces that Plaintiffs' false affiliation claims require protectable marks.

Plaintiffs may also cite authorities emphasizing that § 43(a) goes beyond trademark protection. This is neither controversial nor material. There is no dispute § 43(a) **separately** prohibits false advertising (Plaintiffs' second cause of action), for which the GiftRocket Defendants do not argue a protectable mark is required. What the GiftRocket Defendants do dispute, however, is the propriety of "combining" (as Plaintiffs have attempted to do here) false affiliation and false advertising claims—cherry picking elements of each—"into a generalized unfair competition claim," because the elements of false affiliation and false advertising "are distinct and require separate consideration." *Twentieth Cent. Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 259 (2d Cir. 2002) (cleaned up).

### 2. *Because Plaintiffs disavowed that their claims were based on protectable marks, they cannot maintain their false affiliation claims.*

Plaintiffs have repeatedly represented in this case that their claims are not predicated on **any** marks, let alone protectable marks. *See, e.g.*, ECF No. 275 at 4 ("No inquiry into 'marks' is required to demonstrate that Defendants' uniform false and misleading representations violated the Lanham Act."); *id.* ("These claims do not require any individualized inquiries into class members' 'trademarks' or similar concepts regarding a mark."); ECF No. 151 at 2–5 ("There is no reason for Plaintiffs to identify their 'trademark[s] and/or Tradenames.'"); ECF No. 109-19 at 19 ("Plaintiffs do not allege the infringement of a mark such as a standalone phrase 'Gracie Baked.'"). Plaintiffs also refused to respond to discovery requests regarding the nature and distinctiveness of the marks they purportedly seek to protect. *See* Ex. O. Having done so, Plaintiffs plainly cannot maintain their false affiliation claims, which require protectable marks. *See Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*, 2024 WL 98420, at *8 (D. Conn. Jan. 8, 2024) (denying motion to supplement summary judgment record to add evidence on issue party had "disclaimed").

More specifically, Plaintiffs are judicially estopped from maintaining their false affiliation

claims. Judicial estoppel generally applies when (1) "a party's later position [is] clearly inconsistent with its earlier position," (2) it "has succeeded in persuading a court to accept [its] earlier position," and (3) it "would derive an unfair advantage" absent estoppel. *Adelphia Recovery Tr. v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014). All three circumstances are present here. ***First***, as discussed above, if Plaintiffs were to argue they were basing their claims on GiftRocket's use of protectable marks, they would be plainly contradicting their earlier positions.

***Second***, Judge Kovner relied on Plaintiffs' representations about the nature of their allegations in denying Defendants' motion to compel discovery regarding the protectability of Plaintiffs' marks:

> [P]laintiff is saying our claim is not based on the theory that you are infringing on any trademark or service mark, so if your argument is they need to have a trademark or service mark, I would take it they need to be alleging it in the Complaint. They're not alleging it. That's not their theory.

Ex. P, Nov. 12, 2024 Hr'g Tr. 22:22–23:2, ECF No. 243; *see also* Mar. 27, 2024 Order (Scanlon, J.) (denying motion to compel, ECF No. 72); Nov. 12, 2024 Order (Kovner, J.) (overruling objection). ***Third***, Plaintiffs would be "unfairly advantaged" by their "opportunistic last-minute about-face" in pursuing claims with elements they disavowed and for which they refused to produce information. *Intellevision v. Microsoft Corp.*, 484 F. App'x 616, 621 (2d Cir. 2012).

### 3. There is no evidence an appreciable number of purchasers were likely to be confused about an affiliation between Plaintiffs and GiftRocket.

To show likelihood of consumer confusion for a false affiliation claim, "[t]he central inquiry is whether there is a . . . likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question, or that there may be confusion as to plaintiff's sponsorship or endorsement of the junior mark." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 502 (2d Cir. 1996) (cleaned up). With respect to Gracie Baked or Café Ole in the Valley, as discussed above, there is no evidence anyone saw any statement about them on giftrocket.com. *See supra* § I. "***[U]se of a***

***trademark that is never perceived by anyone cannot be said to create a likelihood of consumer confusion.*** *Custom Mfg. & Eng'g*, 508 F.3d at 652 (emphasis added).

Even with respect to Dimensions, there is no likelihood of confusion under the *Polaroid* factors. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (outlining the eight-factor balancing test established in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)). As to the first two factors, ***strength and similarity of the marks***, Plaintiffs refused to produce discovery regarding the identity, strength, and protectability of their marks. *See supra* § III.A.2. Indeed, these factors are incompatible with Plaintiffs' position that "[n]o inquiry into 'marks' is required[.]" ECF No. 275 at 10.

As to ***proximity of the products and bridging the gap***, Plaintiffs and GiftRocket do not sell similar products. *See* SUF ¶¶ 11, 19, 33. Indeed, Dimensions' representative did not identify GiftRocket as a competitor. Ex. C, at 179:2–17. And there is no evidence Dimensions and GiftRocket intend to compete in the future (particularly now that GiftRocket is shut down, *see* SUF ¶ 47).

As to ***actual confusion***, "Lanham Act claimants typically present evidence of actual confusion through consumer surveys." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 252 (2d Cir. 2024). But despite having years to do so, Plaintiffs did not commission any surveys. This is "evidence that actual confusion cannot be shown," *id.* at 253 (quoting *The Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 964 (2d Cir. 1996)), and "it is certainly proper for the trial judge to infer from the absence of actual confusion that there was also no likelihood of confusion," *Fischer v. Forrest*, 286 F. Supp. 3d 590, 613 (S.D.N.Y. 2018) (cleaned up).[11]

---

[11] Moreover, even if Ms. Riley—the sole customer who purchased a GiftRocket for suggested use at Dimensions—was an ordinarily prudent purchaser and was confused, one instance of confusion "does not establish actual or likely confusion of an appreciable number of consumers." *Flushing Bank v. Green Dot Corp.*, 138 F. Supp. 3d 561, 580 (S.D.N.Y. 2015); *see also, e.g., O'Keefe v. Ogilvy & Mather Worldwide, Inc.*, 590 F. Supp. 2d 500, 524 (S.D.N.Y.

As to *intent*, "the only relevant intent is intent to confuse." *Starbucks*, 588 F.3d at 117 (cleaned up). But far from intending to confuse customers, GiftRocket undertook significant efforts to *prevent* consumer confusion, including by adding express disclosures and a checkbox to giftrocket.com. *See* SUF ¶¶ 45–46; Baum ¶¶ 22–25. Finally, there is no evidence regarding the *relative quality of products and sophistication of consumers*. Thus, this Court should "decline to give th[ese] factor[s] much, if any, weight[.]" *Starbucks*, 588 F.3d at 119 (cleaned up).

Because none of the *Polaroid* factors favors likelihood of confusion, this Court should grant summary judgment in favor of the GiftRocket Defendants on false affiliation claims.

**B.      Plaintiffs' False Advertising Claims Fail Because There Is No Evidence Any False Statement Caused Any Customer to Withhold Trade from Plaintiffs.**

To maintain a Lanham Act false advertising claim, a plaintiff must show, among other things, "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 572 U.S. at 140. "Th[is] occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. "[A]n allegation of 'reputational harm' on its own is not sufficient to state a claim for injury under the Lanham Act; rather, a plaintiff must allege an injury to a *commercial interest* in reputation or sales." *PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*, 629 F. Supp. 3d 116, 131 (S.D.N.Y 2022) (cleaned up). Furthermore, where, as here, the parties do not directly compete, there is no presumption of injury; rather, Plaintiffs must make a "more substantial showing" of injury due to the allegedly false statements. *Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694–95 (2d Cir. 1994). Plaintiffs have not, and cannot, meet this burden.

While Plaintiffs allege Google search results and giftrocket.com pages stating "[Business

---

2008) (holding evidence that one person was confused "is de minimis and does not go far toward demonstrating that an appreciable number of ordinarily prudent purchasers are likely to be confused") (cleaned up).

Name] Gift Card" or "Gift Card to [Business Name]" were false, SAC ¶¶ 15, 17, 32, ECF No. 137, they failed to develop *any* evidence that those statements caused consumers to withhold trade. Again, there is no evidence anyone saw anything referencing Gracie Baked or Café Ole in the Valley on Google or giftrocket.com, so there is likewise no evidence anyone withheld trade from Gracie Baked or WeCare as a result. As to Dimensions, Plaintiffs put forth no evidence as to what Cassie Riley—the only consumer who purchased a GiftRocket for suggested use at Dimensions— saw or relied on. It was incumbent upon Plaintiffs to do so because, by the time Ms. Riley purchased the GiftRocket in 2022, *GiftRocket had already removed the term "Gift Card"* from the titles of desktop versions of Business Landing Pages. SUF ¶ 31. Plaintiffs also have no evidence as to how Ms. Riley navigated to giftrocket.com (e.g., direct, Google, link, etc.).

The Second Circuit's opinion in *Souza v. Exotic Island Enterprises*, 68 F.4th 99 (2d Cir. 2023), is instructive. There, plaintiffs sued defendant under the Lanham Act for posting their images in ads for defendant's "gentlemen's club," allegedly harming plaintiffs' reputations. *Id.* at 105. The district court granted summary judgment for the defendant because there was no evidence of any such injury. *See id.* The Second Circuit affirmed, emphasizing that when plaintiffs and defendants do not directly compete, both "injury and proximate cause . . . must be affirmatively shown." *Id.* at 119. And although plaintiffs testified "their association with a strip club was *potentially* devastating to their careers . . . there [wa]s no evidence that anything of the sort actually happened." *Id.* at 119–20. As far as plaintiffs were aware, nobody had ever "refus[ed] to do business" with them because of defendant's use of their images, and "there [wa]s nothing in the record to suggest that anyone who might have been expected to hire Plaintiffs ever saw the posts in question, or was likely to see the posts, or ever mentioned the posts." *Id.* at 120. Nor was there "expert opinion testimony, let alone expert empirical analysis" demonstrating a negative

relationship between defendant and plaintiffs' careers. *Id.*

Likewise, here, "[t]he missing link in [Plaintiffs'] proof is evidence that [GiftRocket's] advertising [had] the effect on consumers that [Plaintiffs] say[] it [did]." *Ortho Pharm.*, 32 F. 3d at 695. There is no evidence anyone "refus[ed] to do business" with Plaintiffs because of GiftRocket; "nothing in the record to suggest that anyone who might have been expected to [patronize Plaintiffs] ever saw the [allegedly false statements] in question, or was likely to see the [allegedly false statements], or ever mentioned the [allegedly false statements]"; and no "expert opinion testimony, let alone expert empirical analysis" demonstrating a negative relationship between association with GiftRocket and Plaintiffs' businesses. *Souza*, 68 F.4th at 120. In sum, nothing "could permit a reasonable juror to find that [GiftRocket] proximately caused actual or likely economic or reputational injury here." *Id.* (cleaned up).

Finally, Plaintiffs may argue they can disgorge GiftRocket's profits as a form of deterrence even absent injury. But even with willful conduct (which did not happen here), "a false-advertising plaintiff who does not come forward with evidence of an injury proximately caused by defendant's advertisements does not have a statutory interest in deterring willful violations of the Lanham Act." *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 394 F. Supp. 3d 368, 375 (S.D.N.Y. 2019).

### C.      Plaintiffs' State-Law Claims Fail.

Because Plaintiffs' Lanham Act claims fail, their unfair competition claims under New York, Pennsylvania, and Texas common law also fail. *See, e.g.*, *Fantasia Distribution, Inc. v. Myle Vape, Inc.*, 766 F. Supp. 3d 373, 394 (E.D.N.Y. 2024) ("[A] party that fails to prevail on its Lanham Act claims thus cannot prevail on New York common law claims for . . . unfair competition.") (citation omitted); *Giannone v. Giannone*, 429 F. Supp. 3d 34, 39 (E.D. Pa. 2019) (similar as to Pennsylvania law); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n.7 (5th Cir. 2010) (similar as to Texas law). Additionally, Gracie Baked's claims under GBL §§ 349 and 350

fail because, as discussed above, Gracie Baked suffered no injury. *See supra* § I. Specifically, the GBL requires a plaintiff to show "actual injury," which requires "something more tha[n] the injury-in-fact required to establish constitutional standing." *Michelo v. Nat'l Coll. Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 706 (S.D.N.Y. 2019) (citation omitted); *see also, e.g.*, *Segovia v. Vitamin Shoppe, Inc.*, 2017 WL 6398747, at *5 (S.D.N.Y. Dec. 12, 2017) ("Given Plaintiff's failure to provide evidentiary support for his alleged injury . . . there is no factual basis on which a reasonable jury could return a verdict for Plaintiff.").

## IV. GIFTROCKET.COM HAS BEEN SHUT DOWN FOR NEARLY A YEAR; THEREFORE, PLAINTIFFS ARE NOT AT RISK OF IRREPARABLE INJURY.

"[T]he basis for injunctive relief in the federal courts has always been irreparable injury[.]" *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). Accordingly, "[i]njunctive relief may not be appropriate where a party has voluntarily ceased its illegal conduct and there is no reasonable expectation that the wrong will be repeated." *Nike, Inc. v. Top Brand Co.*, 2005 WL 1654859, at *9 n.8 (S.D.N.Y. July 13, 2005) (citation omitted). For that reason, courts in Lanham Act cases routinely deny injunctive relief to plaintiffs if (as here) the conduct at issue has since stopped—even if there is otherwise a rebuttable presumption of irreparable injury. *See, e.g.*, *ZapIp LLC v. FlyDive Inc.*, 2017 WL 8292394, at *5 (C.D. Cal. Oct. 19, 2017); *Ocusoft, Inc. v. Walgreen Co.*, 2017 WL 1838106, at *4 (S.D. Tex. May 8, 2017).

GiftRocket's website stopped taking new orders at the end of 2024—existing GiftRockets can still be redeemed, but the site is otherwise shut down. SUF ¶ 47. Thus, nobody can search for businesses to suggest or purchase new GiftRockets. *Id.* The GiftRocket founders also have moved on to other ventures. They all testified under penalty of perjury that they will not restart GiftRocket or a similar business. *Id.* ¶ 49. Because "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," the case is moot. *Friends of the Earth, Inc. v. Laidlaw*

*Env't Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

A court reached a similar result in *Pegasystems Inc. v. Appian Corp.*, 633 F. Supp. 3d 456 (D. Mass. 2022), in which the plaintiff sued defendant for false advertising under the Lanham Act for posting on its website a report containing false statements. *See id.* at 464. After plaintiffs filed suit, however, defendant "removed the . . . Report from its website and ceased distributing it[.]" *Id.* at 472. Also, an executive swore the company "w[ould] not at any time in the future resume use of the . . . Report." *Id.* The issue of injunctive relief was thus moot. *Id.* The same is true here.

In fact, the circumstances here are even more compelling. GiftRocket did not simply remove content from its website; it shut the website down. *See* SUF ¶ 47. And it did so not "to evade judicial review," but rather for reasons "wholly unrelated to this litigation." *Neuro. Surgery Prac. of Long Island, PLLC v. U.S. D.H.H.S.*, 145 F.4th 212, 224 (2d Cir. 2025) (affirming denial of injunctive relief where defendant did not cease conduct to duck claims at issue); *see also* SUF ¶¶ 48–49. Moreover, the GiftRocket Defendants here have proffered sworn declarations not just from one person, but from all three founders, including the CEO of GiftRocket's parent company. All declared under oath they will not restart GiftRocket or any similar business. *See* SUF ¶ 49.

Finally, the absence of future irreparable harm is "especially apt" as to WeCare, because WeCare sold the business underlying its claims. *In re Gordos Rest. Corp.*, 643 B.R. 1, 38 (S.D.N.Y. Bankr. 2022) (denying injunctive relief because plaintiff was "no longer . . . in business and thus [wa]s not subject to reputational damage, the fundamentally 'irreparable' type of harm that [the Lanham Act's injunction provision] seeks to protect against" (citation omitted)).[12]

## CONCLUSION

This Court should grant Defendants' Motion for Summary Judgment on all counts.

---

[12] To be sure, WeCare's claims, including its request for injunctive relief, should fail in the first instance because WeCare sold its claims as part of the purchase agreement for Café Ole in the Valley. *See supra* § II.

Respectfully submitted,

Dated: November 21, 2025

/s/ Megan O'Neill
Megan O'Neill (admitted PHV)
Erik P. Mortensen (admitted PHV)
DTO LAW
702 Marshall Street, Suite 640
Redwood City, CA 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105
moneill@dtolaw.com
emortensen@dtolaw.com

Katherine Burghardt Kramer
Grace E. Schmidt
DTO LAW
307 5th Avenue, 12th Floor
New York, NY 10016
Telephone: (213) 335-6999
Facsimile: (213) 335-7802
kkramer@dtolaw.com
gschmidt@dtolaw.com

*Attorneys for Defendants GiftRocket, Inc.,*
*Tremendous, Inc., Nicolas Baum, Kapil Kale,*
*Jonathan Pines, Benjamin Kubic, GiftRocket LLC,*
*Tremendous LLC, and Tremendous Parent, Inc.*

25

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(c), I hereby certify that this brief contains 8,052 words, including footnotes but excluding text specified in Rule 7.1(c). The brief comports with the page limit set forth in the Court's November 18, 2025 Order granting Defendants' Motion for Leave to File Excess Pages.

Dated: November 21, 2025                     */s/ Megan O'Neill*
                                              Megan O'Neill