# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC., <br><br> Defendants. | Case No. 22-CV-4019 (GRB) (VMS) |

**SUNRISE BANKS, N.A.'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.      From December 2015 to June 2022, Sunrise Banks served as GiftRocket's banking partner for the sale of GiftRocket prepaid gifts. ................................................................................................................ 2

    II.     Sunrise Banks never interacted with Plaintiffs, nor was it aware of any interactions between Plaintiffs and GiftRocket. ..................................... 3

LEGAL STANDARD ......................................................................................................... 4

ARGUMENT ....................................................................................................................... 5

    I.      Plaintiffs lack standing to pursue claims against Sunrise Banks. ................. 5

          A.     Gracie Baked and WeCare suffered no injury-in-fact ........................ 5

          B.     Any injury-in-fact suffered by Dimensions Massage is not fairly traceable to Sunrise Banks ........................................................ 6

    II.     Even if Plaintiffs had Article III standing, they cannot prove a cognizable injury as required for their false advertising claim. ................... 8

          A.     Plaintiffs have no evidence of injury proximately caused by Sunrise Banks. .................................................................................... 9

          B.     Plaintiffs cannot rely on a presumption of reputational harm because Plaintiffs and Sunrise Banks are not competitors. ............... 11

    III.    Plaintiffs cannot maintain their Lanham Act claims based on unsubstantiated allegations of a "loss of control" of their reputations. ........ 12

    IV.    Sunrise Banks joins the GiftRocket Defendants' motion in other respects. ........................................................................................................ 13

CONCLUSION ................................................................................................................. 15

# INTRODUCTION

Defendant Sunrise Banks, N.A. ("Sunrise Banks") is entitled to summary judgment because none of the Plaintiffs can offer any evidence that Sunrise Banks caused them any legally cognizable injury—financial or otherwise. Two Plaintiffs, Gracie Baked LLC ("Gracie Baked") and WeCare RG, Inc. d/b/a Café Ole in the Valley ("WeCare"), have no evidence that *anyone* ever saw their names on the giftrocket.com website, let alone that anyone engaged in any transaction that caused them any actual, concrete, or imminent injury. As for the third Plaintiff, Millercobb LLC d/b/a Dimensions Massage Therapy ("Dimensions Massage"), the *only* evidence that anyone ever saw its name on giftrocket.com lies in the fact that a single customer once bought a gift with a recommended use at Dimensions Massage. But when that customer expressed concern, she purchased a gift card directly from Dimensions Massage and then sought and received a refund from GiftRocket, Inc., ("GiftRocket"). Not only did Dimensions Massage suffer no harm, but all of this occurred months *after* Sunrise Banks ceased having any role in the sale and purchase of new GiftRocket prepaid gifts.

As such, no Plaintiff has offered any evidence that it was harmed by anything Sunrise Banks did or failed to do. Given this, no Plaintiff can meet the Article III standing prerequisites to pursue claims against Sunrise Banks. And even if Plaintiffs could somehow clear these constitutional standing hurdles, Plaintiffs' false advertising claim, false affiliation, and state law claims under the Lanham Act fail on the merits for this same lack of injury.

Sunrise Banks should not be burdened by defending a case that cannot succeed as a matter of law. It therefore respectfully requests that the Court dismiss this putative class action.

## BACKGROUND

**I.     From December 2015 to June 2022, Sunrise Banks served as GiftRocket's banking partner for the sale of GiftRocket prepaid gifts.**

Sunrise Banks is a community bank with branches in Minneapolis and Saint Paul, Minnesota, and Sioux Falls, South Dakota. *See* Sunrise Banks Rule 56.1 Statement of Undisputed Facts ("SUF") ¶ 21. In addition to providing traditional banking services, Sunrise Banks partners with financial technology ("fintech") companies to provide banking solutions for their businesses. *Id.*

On December 1, 2015, Sunrise Banks entered a Gift Transfer Program and Processing Agreement with GiftRocket, a fintech company that launched in 2010. *Id.* ¶ 22. Under this agreement, Sunrise Banks facilitated banking associated with the purchase and redemption of GiftRocket prepaid gifts—receiving deposits from GiftRocket customers and transferring funds to intended gift recipients. *Id.* ¶ 23.

Sunrise Banks conducted periodic reviews of the GiftRocket program and giftrocket.com. *Id.* ¶ 24. Based on annual reviews of the website, complaints received by GiftRocket, and banking compliance considerations, Sunrise Banks frequently requested that GiftRocket revise its website. *Id.* Among other things, it requested that GiftRocket add a check-box acknowledgement at checkout for the purchaser to confirm they understood they were not purchasing a merchant-branded gift card, that GiftRocket move

a banking regulation disclosure higher up on the webpage, and that GiftRocket remove the word "card" from the website. *Id.*

On September 1, 2021, Sunrise Banks notified GiftRocket that it was terminating the Prepaid Program Agreement. *Id.* ¶ 27. Sunrise and GiftRocket then entered a wind-down agreement on November 23, 2021, pursuant to which Sunrise Banks would continue to support the sale of new GiftRocket prepaid gifts until June 1, 2022. *Id.* ¶ 28.

Sunrise Banks stopped supporting the sale of new GiftRocket prepaid gifts on June 1, 2022. *Id.* ¶ 29. Thereafter, GiftRocket continued to sell GiftRocket prepaid gifts—with a new banking partner—until it shut down its website as of January 1, 2025. *See* GiftRocket Defendants' Rule 56.1 Statement of Undisputed Facts ("GiftRocket SUF") ¶ 47.

## II. Sunrise Banks never interacted with Plaintiffs, nor was it aware of any interactions between Plaintiffs and GiftRocket.

There is no allegation or evidence that Sunrise Banks became aware of Plaintiffs Gracie Baked, WeCare, or Dimensions Massage, or any concerns they had about GiftRocket, during Sunrise Banks' business relationship with GiftRocket.

In turn, Plaintiffs had no knowledge of or connection to Sunrise Banks. Gracie Baked, WeCare, and Dimensions Massage had never heard of Sunrise Banks before becoming plaintiffs in this matter. SUF ¶¶ 2–6, 8–10, 15–19. They never communicated with anyone at Sunrise Banks, and they never interacted with or conducted business with Sunrise Banks. *See id.*

3

Critically, there is no evidence that any consumer ever purchased a GiftRocket prepaid gift tied to any Plaintiff while Sunrise Banks supported the marketing, sale, or purchase of GiftRocket prepaid gifts. On the record before the Court, no one *ever* purchased a GiftRocket prepaid gift with a suggested use at Gracie Baked or WeCare—or even saw their names on the GiftRocket website. Only one customer ever purchased a GiftRocket prepaid gift with a suggested use at Dimensions Massage. GiftRocket SUF ¶¶ 27–30. But that gift was later refunded. *Id.* ¶ 28. And every aspect of that transaction occurred in or after October 2022—months after Sunrise Banks ceased providing services for the sale of new GiftRocket prepaid gifts in June 2022. *See id.* ¶¶ 27–30; *see also* SUF ¶¶ 28–29.

## LEGAL STANDARD

"Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013); *see also* Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quotation omitted). "The nonmoving party cannot defeat summary judgment by 'simply show[ing] that there is some metaphysical doubt as to the material facts,' or by a factual argument based on 'conjecture or surmise.'" *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (alteration in original) (first quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and then quoting *Bryant v. Maffuci*, 923

4

F.2d 9769, 982 (2d Cir. 1991)). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." *Chandok v. Klessig,* 632 F.3d 803, 812 (2d Cir. 2011).

## ARGUMENT

**I.    Plaintiffs lack standing to pursue claims against Sunrise Banks.**

There is no evidence that any of the three named Plaintiffs suffered an injury-in-fact that is fairly traceable to Sunrise Banks. This alone is fatal to their lawsuit at the summary judgment stage. *See Nat. Res. Def. Council v. Bodine*, 471 F. Supp. 3d 524, 534 (S.D.N.Y. 2020) (*"*To defeat a defendant's motion for summary judgment, a plaintiff must establish that there is a genuine question of material fact as to the standing elements." (quotation omitted)). The Court should therefore grant Sunrise Banks' motion, and it need not reach the merits of the claims. *See Warth v. Seldin*, 422 U.S. 490, 499–500 (1975) (standing "is the threshold question in every federal case," and the court's jurisdiction "can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action" (quotation omitted)).

**A.    Gracie Baked and WeCare suffered no injury-in-fact.**

Sunrise Banks joins the portions of GiftRocket's brief explaining why neither Gracie Baked nor WeCare can constitutionally pursue their claims against any Defendant. *See* GiftRocket Defendants' Memorandum of Law in Support of Summary Judgment ("GiftRocket Br.") §§ I.A-B. In brief, there is no evidence that *anyone* ever searched for or saw Gracie Baked or WeCare on giftrocket.com—much less purchased a GiftRocket

5

prepaid gift for suggested use at either location while Sunrise Banks partnered with the company to support sales of GiftRocket prepaid gifts. *See generally* GiftRocket SUF ¶¶ 2–21. If no one ever saw the names Gracie Baked or WeCare on giftrocket.com, those entities simply cannot have been injured by the presence of their names on the now-shuttered giftrocket.com website. As such, neither Gracie Baked nor WeCare suffered any injury-in-fact, and neither faces imminent harm.[1] These Plaintiffs lack standing to sue any of the Defendants.

> **B.     Any injury-in-fact suffered by Dimensions Massage is not fairly traceable to Sunrise Banks.**

Article III requires not only that a plaintiff suffer an actual injury but also that "the plaintiff's injury be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To satisfy this element, plaintiffs must establish a "line of causation" that is not "too speculative or too attenuated." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (citations omitted). "[I]ndirectness of injury, while not necessarily fatal to standing, 'may make it substantially more difficult to . . . establish that, in fact, the asserted injury was the consequence of the defendants' actions[.]'" *Simon v. E. Ky. Welfare Rights Org.*, 426

---

[1] WeCare lacks standing for the additional reason that it sold the business relevant to this claim, Café Ole in the Valley, without retaining the right to pursue that business's claims relating to the use of its name on giftrocket.com. *See* GiftRocket Br. § II.

6

U.S. 26, 44–45 (1976) (quoting *Warth*, 422 U.S. at 505). Where the defendant's action is "so far removed from its distant (even if predictable) ripple effects," a plaintiff lacks Article III standing. *All. for Hippocratic Med.*, 602 U.S. at 383.

The *only* GiftRocket Prepaid Gift purchased by a customer for suggested use at a named Plaintiff's business was for Dimensions Massage. *See* GiftRocket SUF ¶¶ 27–30. Sunrise Banks does not concede Dimensions Massage suffered any cognizable injury in connection with this single transaction. Indeed, that customer wound up purchasing a gift card directly from Dimensions Massage, and the GiftRocket prepaid gift was quickly refunded. It is hard to imagine any harm flowed from this.

Regardless, whatever injury Dimensions Massage might claim to have suffered is not fairly traceable to Sunrise Banks. This is because that GiftRocket prepaid gift was purchased in October 2022—months after Sunrise Banks ceased having any role in the sale of new GiftRocket prepaid gifts in June 2022. SUF ¶ 29; GiftRocket SUF ¶ 28. By the time of that transaction, Sunrise Banks no longer had any role monitoring or reviewing the GiftRocket website or customer complaints. And another bank—not Sunrise Banks—supported the sale and distribution of new GiftRocket prepaid gifts.

Plaintiffs have offered no evidence to support an inference that this October 2022 GiftRocket transaction was somehow caused or enabled by Sunrise Banks. And Sunrise Banks is not responsible for the independent actions of GiftRocket and its subsequent banking partner—whom Plaintiffs have not bothered to sue—months or years after Sunrise Banks and GiftRocket parted ways. *See Lujan*, 504 U.S. at 560–61; *State v. U.S. Dep't of Com.*, 315 F. Supp. 3d 766, 785 (S.D.N.Y. 2018) (holding the burden of

7

traceability is "harder to carry" where it "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict" (quotation omitted)).

Plaintiffs cannot show that Sunrise Banks had a "determinative or coercive" effect on GiftRocket's ability to operate in October 2022; indeed, GiftRocket's operations commenced before Sunrise Banks was involved and continued thereafter. *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Because Sunrise Banks had no connection to the *only* transaction related to Dimensions Massage, Dimensions Massage lacks standing to sue Sunrise Banks.

## II. Even if Plaintiffs had Article III standing, they cannot prove a cognizable injury as required for their false advertising claim.

Even if Plaintiffs had Article III standing, they lack the evidence of an "injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations" that is necessary to a false advertising claim. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014). This is an independent basis for summary judgment.

"[A] viable false advertising claim requires the plaintiff to have been *injured* as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 119–20 (2d Cir. 2023) (emphasis added) (quotation omitted). Plaintiffs cannot rely on their own assertions of reputational injury alone to establish that they are entitled to receive any remedy, including disgorgement of Defendants' profits. *Id.* Rather, they

8

"must demonstrate injury either by proof of injury or a presumption of injury in order to proceed with a disgorgement claim." *Dependable Sales & Serv., Inc. v. TrueCare, Inc.*, 394 F. Supp. 3d 368, 373 (S.D.N.Y. 2019); *see also Souza*, 68 F.4th at 119 ("[A]lthough such injury may be presumed from a direct competitor's false comparative advertising claim, in all other cases, a plaintiff must present some affirmative indication of actual injury and causation." (quotations omitted)). Because Plaintiffs lack evidence of actual injury, and because this is not a comparative advertising case in which injury might be presumed, Plaintiffs' false advertising claim fails.

### A. Plaintiffs have no evidence of injury proximately caused by Sunrise Banks.

Plaintiffs can offer no affirmative proof of injury by way of lost sales or damage to business reputation proximately caused by Sunrise Banks. First, as discussed above, Plaintiffs Gracie Baked and WeCare have no affirmative evidence of injury *at all*. Neither has presented any evidence that a customer ever searched for or saw their businesses on giftrocket.com, and no GiftRocket prepaid gifts were ever purchased with a suggested use at Gracie Baked or WeCare. There is no testimony or evidence from consumers that their perception of Gracie Baked or WeCare worsened because of GiftRocket or evidence that consumers decided not to purchase goods or services from Gracie Baked or WeCare because of GiftRocket. The *only* evidence in this regard is self-serving deposition testimony from Plaintiffs themselves.

Facing a similarly thin record, the Second Circuit has found that there was "nothing that could permit a reasonable juror to find that [web content about plaintiffs]

9

proximately caused actual or likely economic or reputational injury." *See Souza*, 68 F.4th at 119–20. In *Souza*, the plaintiffs alleged their association with defendant caused them to lose work. *Id.* at 120. But there was "nothing in the record to suggest that anyone who might have been expected to hire Plaintiffs ever saw the posts in question, or was likely to see the posts, or ever mentioned the posts." *Id.* at 120. Moreover, there was "no temporal evidence correlating downturns in Plaintiffs' careers with the appearance of the posts." *Id.* There was "no expert opinion testimony, let alone expert empirical analysis," showing that the appearance of the plaintiffs' names on a website had any adverse effect on plaintiffs. *Id.* So too here: with no temporal, expert, or empirical evidence of lost sales, there is no evidence that Plaintiffs suffered any reputational or business injury, or any other injury falling within the zone of interests protected by the Lanham Act.

For Plaintiff Dimensions Massage, the story is much the same. Just one customer ever apparently saw or purchased a GiftRocket prepaid gift with a suggested use at Dimensions Massage. Far from proof that this hurt Dimensions Massage, that customer also purchased a gift card directly from Dimensions Massage and obtained a refund for the GiftRocket prepaid gift in question. *See* GiftRocket SUF ¶¶ 27–30. On the record before the Court, Dimensions Massage did not so much as lose a sale. Even if it had, as discussed above, there is no evidence that Sunrise Banks played any role in the purchase or refund of that Dimensions Massage gift—because it all happened months after Sunrise Banks ceased playing any role in the sale or marketing of new GiftRocket Prepaid Gifts.

"[L]iability under the Lanham Act is ordinarily limited to those who can 'show economic or reputational injury flowing *directly* from the deception wrought by the

10

defendant's advertising.'" *See Souza*, 68 F.4th at at 118 (quoting *Lexmark,* 572 U.S. at 133). Even assuming (contrary to the evidence) that something about this Dimensions Massage transaction negatively affected that Plaintiff, Sunrise Banks had nothing to do with it. As such, Dimensions Massage cannot carry its burden as to Sunrise Banks.

**B.     Plaintiffs cannot rely on a presumption of reputational harm because Plaintiffs and Sunrise Banks are not competitors.**

Plaintiffs incorrectly assume that no evidence of actual injury is required because they can rely on a presumption of injury to seek disgorgement of Defendants' profits. But a presumption of injury arises only "when an advertisement makes false claims *about a direct competitor*[.]" *Dependable Sales & Serv. Inc.*, 394 F. Supp. 3d at 375 (emphasis added). Only "if Plaintiffs are in direct competition with Defendants, and if Defendants' false advertising implicated Plaintiffs in some way, then injury and proximate cause are presumed. If not, both must be affirmatively shown" with record evidence. *Souza*, 68 F.4th at 119. *See also PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*, 629 F. Supp. 3d 116, 129 (S.D.N.Y. 2022) (injury is presumed if "the advertisement makes a materially false comparison to a specific, competing product" (quotation omitted)).

Plaintiffs are not entitled to a presumption of injury as to Sunrise Banks because they are not in competition with Sunrise Banks. Sunrise Banks is a community bank providing traditional banking services and fintech support. Plaintiffs are a bakeshop, a café, and a massage therapy business. No Plaintiff has presented evidence they are in competition with Sunrise Banks. Moreover, Plaintiff Gracie Baked testified that it did *not* view Sunrise Banks as a competitor. SUF ¶ 7. And even if Sunrise Banks were somehow

11

a "competitor," there is no evidence or claim that Sunrise Banks ever made inaccurate comparative advertisements against Plaintiffs. There is not, for example, evidence that Sunrise Banks ever touted the superiority of a gift from giftrocket.com over a gift card purchased from WeCare's Café Ole in the Valley.

Since Sunrise Banks is not a competitor of any Plaintiff, and because it never issued any purportedly misleading comparative advertisements against any Plaintiff, Plaintiffs are not entitled to any presumption of injury. They must therefore adduce evidence of actual injury. They have not done so, and this is fatal to their false advertising claim against Sunrise Banks.

### III. Plaintiffs cannot maintain their Lanham Act claims based on unsubstantiated allegations of a "loss of control" of their reputations.

Plaintiffs have argued that their claims are based on a loss of control of their reputations. But Plaintiffs cannot sue for false advertising on this theory. "Loss of control" of reputation is a cognizable injury only for a *trademark* infringement claim. *See, e.g.*, *Dependable Sales*, 394 F. Supp. 3d at 373 (in cases of trademark infringement, "[a] plaintiff is harmed where it 'will lose control over the reputation *of its trademark*'" (emphasis added) (quoting *Power Test Petroleum Distrib. Inc. v. Calcu Gas, Inc.*, 754 F.2d 91, 95 (2d Cir. 1985))). "By contrast, a plaintiff in a false advertising case must *demonstrate injury* by way of lost sales or damage to business reputation." *Id.* at 374 (emphasis added). As discussed above, they have no evidence of such injury. Since Plaintiffs sue for false advertising, not trademark infringement, their supposed loss of reputation is not grounds for relief.

Nor can Plaintiffs maintain their separate false affiliation claim (which is itself a species of trademark infringement, *see* GiftRocket Br. § III.A), based on assertions of reputational injury. Plaintiffs Gracie Baked's and WeCare's failure to present evidence that any consumer saw their information on giftrocket.com forecloses their false affiliation claims just as it does their false advertising claims. Although "loss of control of reputation" could be a cognizable injury in a different case, trademark infringement claims still require a *probability* of confusion. *See, e.g.*, *N.Y. Stock Exch., Inc. v. New York, New York Hotel LLC*, 293 F.3d 550, 554 (2d Cir. 2002) ("To support a finding of infringement, a plaintiff must show a probability, not just a possibility, of confusion."). To be confused about an affiliation between Plaintiffs and GiftRocket, a consumer needs to have seen Gracie Baked and WeCare's information on giftrocket.com or in a Google search result listing GiftRocket. There is no evidence that any of that ever actually or probably happened. As for Dimensions Massage, although one customer purchased a GiftRocket prepaid gift with suggested use at Dimensions Massage, there is no admissible evidence in the record about that customer's, or any other customer's, confusion over a potential affiliation between Dimensions Massage and GiftRocket.

**IV.    Sunrise Banks joins the GiftRocket Defendants' motion in other respects.**

In addition, Sunrise Banks joins the following sections of the GiftRocket Defendants' Motion for Summary Judgment. Plaintiffs cannot prove any of their claims on the merits against Sunrise Banks for the same reasons they cannot prove them against the GiftRocket Defendants.

13

**Section III – Plaintiffs' claims fail for additional reasons.** Sunrise Banks joins Section III of GiftRocket's Motion for Summary Judgment because none of the Plaintiffs can establish the elements of their Lanham Act or state law claims, including because they have disclaimed reliance on a protectible mark despite that being an essential element of a false affiliation claim. *See* GiftRocket Br. § III.A. The arguments presented in the GiftRocket Defendants' memorandum of law explaining why Plaintiffs cannot prove all required elements apply equally to Sunrise Banks.

**Section IV – No basis for injunctive relief because GiftRocket.com has been shuttered for nearly a year.** Sunrise Banks joins the arguments in Section IV of the GiftRocket Defendants' Motion. Beyond these arguments, Plaintiffs have no basis for injunctive relief against Sunrise Banks for the additional reason that Sunrise Banks stopped providing services for the sale of GiftRocket prepaid gifts in June 2022—long before giftrocket.com shut down. SUF ¶¶ 27–29; *see also* GiftRocket SUF ¶ 47. There is no evidence that Sunrise Banks had any intention of restarting its business relationship with GiftRocket after the wind-down period. And now that GiftRocket has terminated operations, there is no evidence that could ever happen. Absent any evidence that Sunrise Banks will engage in conduct that would harm Plaintiffs, there can be no injunctive relief against Sunrise Banks. *E.g.*, *Pedinol Pharmacal, Inc. v. Rising Pharms., Inc.*, 570 F. Supp. 2d 498, 507 (E.D.N.Y. 2008) ("[A]n injunction is unnecessary if there is no reasonable likelihood that the conduct at issue will be repeated.").

14

## CONCLUSION

For all of these reasons, Sunrise Banks requests that the Court grant summary judgment in its favor on Plaintiffs' claims in full.

Dated:  December 1, 2025  **GREENE ESPEL PLLP**

 *s/Gina Tonn*
Mark L. Johnson, Reg. No. 0345520
  (*pro hac vice*)
Faris A. Rashid, Reg. No. 0391508
  (*pro hac vice*)
Gina Tonn, Reg. No. 0504172
  (*pro hac vice*)
Kshithij Shrinath
222 S. Ninth Street, Suite 2200
Minneapolis, MN  55402
mjohnson@greeneespel.com
frashid@greeneespel.com
gtonn@greeneespel.com
kshrinath@greeneespel.com
(612) 373-0830

Attorneys for Sunrise Banks, N.A.

15