IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| GRACIE BAKED LLC, WECARE RG, INC., and MILLERCOBB LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GIFTROCKET, INC., TREMENDOUS, INC., NICHOLAS BAUM, KAPIL KALE, JONATHAN PINES, BENJAMIN KUBIC, SUNRISE BANKS, N.A., GIFTROCKET, LLC, TREMENDOUS LLC, and TREMENDOUS PARENT, INC.,<br><br>Defendants. | Case No.: 1:22-cv-04019-GRB-VMS |

**GIFTROCKET DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT........................................................................................................1

    A. This Court Should Disregard Plaintiffs' Immaterial or Unsupported Rule 56.1 Responses and Additional Facts ......................................................1

    B. Plaintiffs Proffer Less Than a Scintilla of Evidence that Gracie Baked and WeCare Suffered any Cognizable Harm ............................................2

    C. The Plain Language of WeCare's Bill of Sale Forecloses WeCare's Claims ...............................................................................................................5

    D. Plaintiffs Cannot Pursue False Affiliation Claims Without Proffering Evidence of Protectable Marks or Likelihood of Confusion ...................5

    E. Plaintiffs Cannot Salvage Their False Advertising Claims Through Speculation About Evidence They Failed to Develop .............................8

    F. Plaintiffs Mostly Ignore Defendants' Evidence, Authorities, and Arguments for Denying Injunctive Relief ................................................................10

III. CONCLUSION...................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800 Contacts, Inc. v. JAND, Inc.*,
   119 F.4th 234 (2d Cir. 2024) ...................................................................................7

*3M Co. v. CovCare, Inc.*,
   537 F. Supp. 3d 385 (E.D.N.Y. 2021) ......................................................................4

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   899 F.3d 87 (2d Cir. 2018) ........................................................................................3

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ...............................................................................................2, 3

*Ascentive, LLC v. Opinion Corp.*,
   842 F. Supp. 2d 450 (E.D.N.Y. 2011) ......................................................................8

*Avalos v. IAC/Interactivecorp.*,
   2014 WL 5493242 (S.D.N.Y. Oct. 30, 2014) ...........................................................9

*Bohnak v. Marsh & McLennan Cos.*,
   79 F.4th 276 (2d Cir. 2023) .......................................................................................4

*Brockmeyer v. Hearst Corp.*,
   248 F. Supp. 2d 281 (S.D.N.Y. 2003) ......................................................................7

*Bryant v. Maffucci*,
   923 F.2d 979 (2d Cir. 1991) .................................................................................2, 10

*Car-Freshner Corp. v. Am. Covers, LLC*,
   980 F.3d 314 (2d Cir. 2020) ......................................................................................8

*Controls Southeast, Inc. v. QMax Industries*,
   2024 WL 2163477 (W.D.N.C. May 14, 2024) .........................................................4

*Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*,
   508 F.3d 641 (11th Cir. 2007) ...................................................................................4

*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*,
   394 F. Supp. 3d 368 (S.D.N.Y. 2019) ......................................................................8

*Electra v. 59 Murray Enters.*,
   987 F.3d 233 (2d Cir. 2021) ......................................................................................6

*Forschner Grp. v. Arrow Trading Co.*,
 30 F.3d 348 (2d Cir. 1994) ............................................................................................. 5, 6

*FPX, LLC v. Google, Inc.*,
 276 F.R.D. 543 (E.D. Tex. 2011) ......................................................................................... 7

*Genesee Brewing Co. v. Stroh Brewing Co.*,
 124 F.3d 137 (2d Cir. 1997) ................................................................................................ 5

*Ghost L.L.C. v. Ghost Fitness NYC, LLC*,
 2025 WL 2487826 (E.D.N.Y. Aug. 29, 2025) .................................................................. 10

*Hudson Furniture, Inc. v. Mizrahi*,
 2024 WL 565095 (S.D.N.Y. Feb. 7, 2024) ....................................................................... 10

*Johnson & Johnson\*Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*,
 960 F.2d 294 (2d Cir. 1992) ................................................................................................ 8

*Lopez v. Gap, Inc.*,
 883 F. Supp. 2d 400 (S.D.N.Y. 2012) ................................................................................. 6

*Maddox v. Bank of N.Y. Mellon Trust Co.*,
 19 F.4th 58 (2d Cir. 2021) ................................................................................................... 2

*Montgomery v. Noga*,
 168 F.3d 1282 (11th Cir. 1999) ........................................................................................... 4

*Nora Beverages, Inc. v. Perrier Grp. of Am.*,
 269 F.3d 114 (2d Cir. 2001) ................................................................................................ 8

*Ortho Pharm. Corp. v. Cosprophar, Inc.*,
 32 F.3d 690 (2d Cir. 1994) .................................................................................................. 8

*PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*,
 629 F. Supp. 3d 116 (S.D.N.Y 2022) ................................................................................ 10

*Pinkhasov v. Vernikov*,
 2024 WL 2188356 (E.D.N.Y. May 15, 2024) ................................................................... 10

*Sanfeliz v. Williams*,
 2026 WL 84517 (S.D.N.Y. Jan. 12, 2026) ..................................................................... 1, 2

*SourceOne Dental, Inc. v. Patterson Cos.*,
 2018 WL 3863440 (E.D.N.Y. Aug. 14, 2018) .................................................................... 9

*Star Indus. v. Bacardi & Co.*,
 412 F.3d 373 (2d Cir. 2005) ................................................................................................ 6

*Thompson Med. Co. v. Pfizer Inc.*,
    753 F.2d 208 (2d Cir. 1985)..................................................................................................5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..............................................................................................................4

*Twentieth Cent. Fox Film Corp. v. Marvel Enters.*,
    277 F.3d 253 (2d Cir. 2002)..................................................................................................6

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992)..............................................................................................................6

*U.S. v. Google LLC*,
    803 F. Supp. 3d 18 (D.D.C. 2025).........................................................................................3

*Ultra Recs. LLC v. Ultra Int'l Music Publ'g*,
    2025 WL 602943 (S.D.N.Y. Feb. 25, 2025).......................................................................10

**Statutes**

15 U.S.C. § 1052..........................................................................................................................6

15 U.S.C. § 1127..........................................................................................................................6

I.  **INTRODUCTION**

Plaintiffs resort to rote speculation to attempt to avoid summary judgment. For example, although it is undisputed nobody purchased GiftRockets for suggested use at Gracie Baked or Cafe Ole in the Valley, Plaintiffs surmise—without any further evidence or expert analysis—that Google searches involving "gracie's" (but not "Gracie Baked") and "cafe ole" (but not "Cafe Ole in the Valley") would have yielded results for Plaintiffs on giftrocket.com. Meanwhile, many businesses are called "Gracie's" or "Cafe Ole," yet Plaintiffs proffer nothing more than conjecture that searches would have yielded results for Plaintiffs, versus other similarly named businesses.

Plaintiffs' guesswork does not stop there. Because they did not subpoena the one person who purchased a GiftRocket for suggested use at Dimensions, Plaintiffs simply assume she saw and relied on allegedly false statements. What's more, Plaintiffs mistake a party's argument for a court's holding and distort binding precedent on false affiliation claims, among other things.

This Court should grant summary judgment to the GiftRocket Defendants.

II.  **ARGUMENT**

   A.  **This Court Should Disregard Plaintiffs' Immaterial or Unsupported Rule 56.1 Responses and Additional Facts.**

Nearly all of Plaintiffs' *194 additional facts* in their Rule 56.1 Statement are immaterial. They are "facts that Plaintiff[s] find[] helpful but do[] not contend are in dispute, in violation of LR 56.1, which permits only a counterstatement of additional material facts as to which it is contended that there exists a genuine issue to be tried." *Sanfeliz v. Williams*, 2026 WL 84517, at *1 n.1 (S.D.N.Y. Jan. 12, 2026) (quotation omitted). Even more problematic, Plaintiffs often omit evidentiary citations. *E.g.* GRSUF ¶¶ 4, 11–12, 19, 28, 49; PSF ¶¶ 28–29, 31–32, 77, 106.[1] And

---

[1]  "GRSUF" refers to the GiftRocket Defendants' facts in their Rule 56.1 Statement (including responses and replies). "PSF" refers to Plaintiffs' additional facts (including responses and evidentiary objections).

when Plaintiffs do cite to their **219 exhibits**, the evidence rarely supports Plaintiffs' assertions and/or is inadmissible.[2] *E.g.*, PSF ¶¶ 22, 40–43, 49, 81, 112, 130, 162, 166, 177. This Court should disregard Plaintiffs' immaterial and/or unsupported facts and—where Plaintiffs did not sufficiently respond—"deem Defendants' facts admitted where the record evidence supports Defendants' contentions." *Sanfeliz*, 2026 WL 84517, at *1 n.1.

    **B.    Plaintiffs Proffer Less Than a Scintilla of Evidence that Gracie Baked and WeCare Suffered any Cognizable Harm.**

As a threshold matter, contrary to Plaintiffs' mischaracterization, Defendants never argued Plaintiffs must prove standing through "definitive[]" evidence of "actual confusion." Opp'n 4–5. Rather, Gracie Baked and WeCare lack standing because no one was in a position to be confused about them in the first place. MSJ 9–10. There is no evidence anyone saw Gracie Baked or Cafe Ole in the Valley out of the *millions* of businesses suggestable on giftrocket.com. As in *Maddox v. Bank of N.Y. Mellon Trust Co.*, the alleged "misleading record[s] may have been public and available to all; but, so far as is known, [were] read by no one." 19 F.4th 58, 65 (2d Cir. 2021).[3]

It is undisputed nobody purchased GiftRockets suggesting use at Gracie Baked or Cafe Ole in the Valley. GRSUF ¶¶ 6, 16. Plaintiffs nevertheless attempt to create a genuine dispute of material fact by suggesting Google searches for phrases involving "gracie's" and "cafe ole" mean someone "***may*** have seen" Business Landing Pages or Google results for Gracie Baked or Cafe Ole in the Valley on giftrocket.com. *Id.* ¶¶ 3, 18 (emphasis added); *see id.* ¶¶ 7–9. But Plaintiffs cannot avoid summary judgment through "merely colorable" evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted), or "conjecture or surmise." *Bryant v. Maffucci*,

---

[2]  Plaintiffs' facts read like a legal brief, filled with bombastic argument seemingly designed to hinder this Court's ability to discern what facts are material and genuinely disputed (there are none).

[3]  Plaintiffs do not meaningfully distinguish *Maddox*. They argue it involved different facts (mortgage records), Opp'n 7, but ignore *Maddox*'s commonsense conclusion, applicable with equal force here, that something nobody saw cannot cause reputational harm, *see* 19 F.4th at 65.

923 F.2d 979, 982 (2d Cir. 1991).

As to Business Landing Pages, *Google analytics show nobody visited a Business Landing Page for Gracie Baked or Cafe Ole in the Valley from a Google search*. GRSUF ¶¶ 8–9, 17–18.

As to search results, while Plaintiffs emphasize Google searches for "<business name> + gift card" often yielded results for giftrocket.com, Opp'n 7, nobody searched for "Gracie *Baked* gift card" or "Cafe Ole *in the Valley* gift card."[4] Meanwhile, scores of businesses across the country are named "Gracie's" or "Cafe Ole." RJN (collecting examples). And customers purchased GiftRockets suggesting use at those other businesses, unlike Gracie Baked or Cafe Ole in the Valley.[5] GRSUF ¶¶ 8, 17.

A one-in-many chance that Google searches yielded results for Plaintiffs (versus other similarly named businesses) is not enough to survive summary judgment. *Anderson*, 477 U.S. at 252 (explaining "a scintilla of evidence" is "insufficient; there must be evidence on which the jury could reasonably find for the plaintiff . . . *by a preponderance of the evidence*" (emphasis added)). "[T]he inferential gap" between Google searches for similarly named businesses and someone seeing Gracie Baked or Cafe Ole in the Valley on giftrocket.com "is simply too great." *Anderson News, L.L.C. v. Am. Media, Inc.*, 899 F.3d 87, 113 (2d Cir. 2018).

Perhaps recognizing the absence of evidence anyone saw Gracie Baked or Cafe Ole in the Valley on giftrocket.com, Plaintiffs repeatedly invoke "unfair competition" law as a basis for standing. *E.g.*, Opp'n 5–6. But Plaintiffs do not (and cannot) demonstrate unfair competition law "traditionally recognized" *something nobody saw* "as providing a basis for a lawsuit in American

---

[4] The evidence only shows searches for "gracies gift card," "gracie's gift certificate," "where can i buy cafe ole gift certificate in Philadelphia," and "café ole gift card." PSF ¶ 25. And there is no evidence as to where searchers were located, which would have impacted search results. *See U.S. v. Google LLC*, 803 F. Supp. 3d 18, 86 (D.D.C. 2025) (explaining context, such as user's physical location, impacts search results).

[5] For example, someone purchased a GiftRocket for suggested use at Cafe Olé in Philadelphia, which is unrelated to Cafe Ole in the Valley. GRSUF ¶ 17.

courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). Just as "there is no historical or common-law analog where the mere existence of inaccurate information, absent dissemination, amounts to concrete injury," *id.* at 434 (quotation omitted), there is no historical or common-law analog where the mere existence of allegedly infringing content, absent being perceived by anyone, amounts to concrete reputational injury. "Like the proverbial tree falling in a forest, the unauthorized use of a trademark that is never perceived by anyone cannot be said to create a likelihood of consumer confusion." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 652 (11th Cir. 2007). So too here.

If anything, Plaintiffs' cases reinforce that Gracie Baked and WeCare lack standing. Plaintiffs miscite *Montgomery v. Noga*, 168 F.3d 1282 (11th Cir. 1999), by pointing to a *party's argument* as the court's holding, *see* Opp'n 7 n.4. *Montgomery* did **not** sustain a Lanham Act claim even though users "never would even know that [the infringing mark] was . . . there." 168 F.3d at 1302. Instead, the court credited evidence certain users "would **need** to visit" a menu in the defendant's product featuring the infringing mark. *Id.* (emphasis added). No such evidence exists here.

In *Controls Southeast, Inc. v. QMax Industries*, the defendant actually sold products it allegedly falsely advertised. *See* 2024 WL 2163477, at *2 (W.D.N.C. May 14, 2024). Because the parties were potentially "direct competitors in a two-supplier market," the court presumed the defendant diverted sales for summary judgment. *Id.* at *4, *7. The circumstances here differ: Defendants did not sell GiftRockets for suggested use at Gracie Baked or Cafe Ole in the Valley, and the parties do not directly compete. GRSUF ¶¶ 6, 11, 16, 19, 33.[6]

---

[6] In Plaintiffs' other cases, unlike here, third parties saw the information or products at issue. *See Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 286 (2d Cir. 2023) (alleging malicious actor "accessed" plaintiff's information "through a targeted data breach" and plaintiff incurred out-of-pocket expenses to avoid harm); *3M Co. v. CovCare,*

C.  **The Plain Language of WeCare's Bill of Sale Forecloses WeCare's Claims.**

As set forth in Defendant Sunrise Banks's Reply, WeCare sold its claims here.

D.  **Plaintiffs Cannot Pursue False Affiliation Claims Without Proffering Evidence of Protectable Marks or Likelihood of Confusion.**

Plaintiffs argue protectable marks are not required but, even if they are, they have them. *See* Opp'n 10–12. They are judicially estopped from arguing the latter. In 2023, Defendants served interrogatories asking Plaintiffs to (1) identify marks underlying their false affiliation claims and (2) state why those marks are protectable. *See, e.g.*, Ex. O, at 42–48; ECF No. 72. Plaintiffs refused to respond and successfully opposed a motion to compel by arguing their claims do not turn on marks. *See* Ex. O, at 42–48; Ex. P, at 22:22–23:2. They cannot change course now. MSJ 17–18.

The cases Plaintiffs cite sustaining Lanham Act claims involving "generic" marks, Opp'n 12, only further reinforce why Plaintiffs' refusal to answer discovery defeats their false affiliation claims. Those cases stand for the narrow proposition that a generic mark may sustain a Lanham Act claim ***only if it has acquired secondary meaning***. *See Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 150 (2d Cir. 1997) (explaining plaintiff "must show . . . secondary meaning" for generic mark); *Forschner Grp. v. Arrow Trading Co.*, 30 F.3d 348, 358–59 (2d Cir. 1994) (similar). "Secondary meaning" means consumers associate a mark "with a particular manufacturer or source," and "[p]roof of secondary meaning entails vigorous evidentiary requirements." *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985) (quotations omitted). Defendants served discovery about "whether the public associates" Plaintiffs with whatever marks underlie their claims, *e.g.*, Ex. O, at 43, but Plaintiffs refused to respond. *Id.* at 44–45. Plaintiffs are judicially estopped from arguing now they have marks that acquired

---

*Inc.*, 537 F. Supp. 3d 385, 391 (E.D.N.Y. 2021) (explaining plaintiff "receive[d] reports via its Fraud Hotline from purchasers of [defendant's] masks").

secondary meaning. MSJ 17–18.

Even if Plaintiffs were not estopped from asserting they have "inherently distinctive" name-and-address marks, Opp'n 11, their argument would fail on the merits. No mark is protectable unless it has been used deliberately and continuously "to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 415 (S.D.N.Y. 2012). There is no "name and address" exception to this showing. In fact, because a "name and address" is "primarily geographically descriptive," ***it is not protectable unless it has acquired secondary meaning***. 15 U.S.C. § 1052(e)(2); *see Forschner*, 30 F.3d at 353.[7] Plaintiffs proffer no evidence of secondary meaning or the strength of their ostensible "name and address" marks (one of the *Polaroid* factors).[8]

Plaintiffs' alternative position that no mark is required fares no better. A false affiliation claim requires a *protectable* "word, name, symbol, or device" (i.e., "trademark"). 15 U.S.C. § 1127; *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("[Section] 43(a) protects *qualifying* unregistered trademarks." (emphasis added)). Plaintiffs' hyperfocus on the statutory text to argue otherwise ignores binding precedent establishing protectability is an element of false affiliation and prohibiting litigants from co-opting the Lanham Act to bring a "generalized unfair competition claim." *Twentieth Cent. Fox Film Corp. v. Marvel Enters.*, 277 F.3d 253, 259 (2d Cir. 2002); *see also* MSJ 15–17.[9]

Even beyond mark-specific *Polaroid* factors, Plaintiffs fail to raise a genuine dispute as to

---

[7] To show an alleged mark is protectable, Plaintiffs must demonstrate it would "qualify for registration as a trademark." *Star Indus. v. Bacardi & Co.*, 412 F.3d 373, 381 (2d Cir. 2005).

[8] Contrary to Plaintiffs' assertion, *Electra v. 59 Murray Enterprises*, 987 F.3d 233 (2d Cir. 2021), did not hold a mark's strength is "irrelevant" if used alongside other identifying information. Opp'n 17. Rather, *Electra* acknowledged "public prominence" of the individuals at issue impacted the likelihood of confusion. 987 F.3d at 258. It thus stands to reason that strength of the mark is relevant to likelihood of confusion.

[9] To be sure, the absence of a protectable mark would not necessarily foreclose a Lanham Act claim for false advertising. MSJ 17.

likelihood of confusion.[10] As to ***actual confusion***, Plaintiffs mostly point to confusion about absent class members. Opp'n 18. But they offer no authority or analysis (expert or otherwise) showing this Court can infer confusion regarding Dimensions based on confusion regarding unrelated marks.[11] Indeed, Plaintiffs failed to conduct a survey, which is "evidence that actual confusion cannot be shown." *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 253 (2d Cir. 2024) (quotation omitted).

Plaintiffs point to *one* anecdote of confusion involving Dimensions. But they rely on hearsay. PSF ¶ 184. And even then, there were 35 visits to the Business Landing Page for Dimensions. Ex. S.28 (GR_0038308), at row 688. One-in-thirty-five implies a confusion rate of 2.86%—below what other courts have rejected as indicative of consumer confusion at summary judgment. *See, e.g.*, *Brockmeyer v. Hearst Corp.*, 248 F. Supp. 2d 281, 298 (S.D.N.Y. 2003) (finding "no evidence of any consumer confusion" below 3%).

Finally, as to ***intent***, Plaintiffs fail to create a triable issue of fact for three reasons. First, many of Plaintiffs' assertions lack admissible evidentiary support. *E.g.*, GRSUF ¶¶ 11, 34, 36; PSF ¶¶ 31–32, 59, 77, 129.

Second, Plaintiffs' arguments do not demonstrate Defendants intended to confuse. For example, Plaintiffs point to GiftRocket's search engine optimization ("SEO") strategy. Opp'n 16, 22. But whether a defendant used "sharp-elbowed" "SEO tactics meant to make its webpages appear more relevant to search engines" "has no bearing on the inquiry here—whether [defendant]

---

[10] As to ***relative quality***, ***sophistication of consumers***, ***proximity of the products***, and ***bridging the gap***, Plaintiffs ignore or write them off as irrelevant. *See* Opp'n 17–18. But why? If, for example, giftrocket.com offered or planned to sell massage services, wouldn't that increase the likelihood of confusion with respect to Dimensions?

[11] And it cannot. *See FPX, LLC v. Google, Inc.*, 276 F.R.D. 543, 550 (E.D. Tex. 2011) ("[E]ven if . . . Google's policy results in initial interest confusion with regard to, for example, FPX's or Rodney Hamilton's trademark, that does not necessarily mean that Google's policy results in initial interest confusion with regard to the other putative class members' trademarks.").

has attempted to sow confusion." *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 462 (E.D.N.Y. 2011). Plaintiffs also cite customer complaints as evidence of intent to confuse. Opp'n 16, 18. But complaints are common with every business. How many of the *millions* of visitors to giftrocket.com complained? And does that comparison suggest a confusion rate such that Defendants' refusal to radically alter their business in response raises an inference of intent to confuse? Plaintiffs made no effort to develop this evidence or analysis.[12]

*Third*, Plaintiffs do not genuinely dispute giftrocket.com had express explanations (including a checkbox users were required to click for years), GRSUF ¶ 46, which are inconsistent with an intent to confuse, *see Nora Beverages, Inc. v. Perrier Grp. of Am.*, 269 F.3d 114, 124 (2d Cir. 2001) (affirming summary judgment: "by placing its labels prominently upon its bottles, [defendant] negated an inference of intent to deceive consumers").[13]

### E. Plaintiffs Cannot Salvage Their False Advertising Claims Through Speculation About Evidence They Failed to Develop.

"[W]here, as here, a[n allegedly] misleading advertisement does not make comparative claims about a direct competitor, a plaintiff must demonstrate actual injury and causation." *Dependable Sales & Serv., Inc. v. TrueCar, Inc.*, 394 F. Supp. 3d 368, 374 (S.D.N.Y. 2019); *see also Ortho Pharm. Corp. v. Cosprophar, Inc.*, 32 F.3d 690, 694 (2d Cir. 1994) ("[W]e have tended to require a more substantial showing where the . . . products are not obviously in competition[.]"). Plaintiffs dispute (without support) that they are not GiftRocket's direct competitors, GRSUF ¶¶ 11, 19, 33, but nevertheless identify no "comparative claims" by GiftRocket.

---

[12] Plaintiffs' insistence on considering the denominator to measure confusion, Opp'n 15–16, is precisely Defendants' point. Plaintiffs identify several hundred purported instances of confusion, PSF ¶ 109, but giftrocket.com had *millions* of visitors, *id.* ¶ 23.

[13] Plaintiffs are wrong that intent to confuse forestalls applying the *Polaroid* factors. *See* Opp'n 26 (citing *Johnson & Johnson\*Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 298–99 (2d Cir. 1992)). Intent "do[es] not alone determine likelihood of confusion nor provide an occasion for imposing punishment." *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 333 (2d Cir. 2020).

Rather than demonstrate how GiftRocket diverted Plaintiffs' sales, Plaintiffs point to evidence with no specific tie to them. It is not "self-evident" how GiftRocket's revenues (none of which was attributable to Plaintiffs),[14] a cherry-picked selection of negative reviews (none of which refer to Plaintiffs), or a website post of a small-town Vermont police department (that does not mention Plaintiffs) demonstrate GiftRocket diverted Plaintiffs' sales. Opp'n 18–20.

As to Gracie Baked and Cafe Ole in the Valley, there is no evidence anyone saw them on giftrocket.com, let alone withheld trade from them. GRSUF ¶¶ 6, 16. As to Dimensions, Plaintiffs ***inexplicably did not subpoena Cassie Riley, the one person who purchased a GiftRocket for suggested use at Dimensions***. Thus, while Plaintiffs contend "gift card" references in Google search results and on certain giftrocket.com pages were false, they have no evidence Riley even saw those references or withheld trade because of them. In particular, there is no evidence: (1) how Riley arrived at giftrocket.com (whether direct, through Google, or some other means, like a link from a friend); (2) whether Riley purchased her GiftRocket through the Send a Gift or Business Landing Page;[15] (3) what Riley saw or relied on when purchasing her GiftRocket; and (4) whether GiftRocket altered Riley's perception of Dimensions.[16] Absent answers to these questions, there is no evidence Defendants caused cognizable harm to Millercobb. *See, e.g., SourceOne Dental, Inc. v. Patterson Cos.*, 2018 WL 3863440, at *4 (E.D.N.Y. Aug. 14, 2018) (rejecting "arguments of counsel, which are not evidence").

Finally, contrary to Plaintiffs' suggestion, Opp'n 20, "'reputational harm' on its own is not

---

[14] The GiftRocket purchased for suggested use at Dimensions was refunded. GRSUF ¶ 28.

[15] Plaintiffs point to small navigation text on Business Landing Pages containing the term "gift card." Opp'n 19. But Riley could have also purchased a GiftRocket through the "Send a Gift Page," GRSUF ¶ 40, and that page did not contain any such navigation text, *see* PSF ¶ 75; Ex. H.

[16] The email between Riley and GiftRocket shows, at most, dissatisfaction with *GiftRocket*, not Dimensions. *See Avalos v. IAC/Interactivecorp.*, 2014 WL 5493242, at *5 (S.D.N.Y. Oct. 30, 2014) (dismissing false advertising claim where consumers directed ire at defendant, not plaintiff).

sufficient to state a claim for injury under the Lanham Act." *PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharm.*, 629 F. Supp. 3d 116, 131 (S.D.N.Y 2022).

    **F.    Plaintiffs Mostly Ignore Defendants' Evidence, Authorities, and Arguments for Denying Injunctive Relief.**

Plaintiffs proffer no evidence to genuinely dispute that GiftRocket will never restart. GRSUF ¶ 49. Plaintiffs likewise do not even attempt to distinguish the numerous decisions denying injunctions in similar circumstances, *including in the face of a rebuttable presumption of irreparable injury*. MSJ 23–24.[17]

Instead, Plaintiffs argue party declarations cannot moot injunctive relief. *See* Opp'n 23–24. But unlike Plaintiffs' authorities, Defendants here have not proffered "sparse declaration[s]" "containing only contingent promises." *Pinkhasov v. Vernikov*, 2024 WL 2188356, at *5 (E.D.N.Y. May 15, 2024) (quotation omitted). Rather, Defendants unambiguously swore under oath they *will not* restart giftrocket.com and have no intention or incentive to (both because it is not financially worthwhile and they have moved onto other ventures). GRSUF ¶¶ 48–49. Plaintiffs' "metaphysical doubt" as to whether giftrocket.com could restart is not enough to escape summary judgment. *Bryant*, 923 F.2d at 982 (quotation omitted).

**III.    CONCLUSION**

This Court should grant Defendants' Motion for Summary Judgment.

---

[17] Plaintiffs' cases are distinguishable. In *Ghost L.L.C. v. Ghost Fitness NYC, LLC*, unlike here, defendants did not submit declarations (1) attesting they have no intent to, and will not, restart the business, and (2) explaining why it would not be economically feasible to restart the business. 2025 WL 2487826, at *14 (E.D.N.Y. Aug. 29, 2025). And Plaintiffs' other cases involved undisputed evidence of future harm. *See Ultra Recs. LLC v. Ultra Int'l Music Publ'g*, 2025 WL 602943, at *3 (S.D.N.Y. Feb. 25, 2025) (defendant *still using* infringing mark); *Hudson Furniture, Inc. v. Mizrahi*, 2024 WL 565095, at *16 (S.D.N.Y. Feb. 7, 2024) (risk of harm because of defendant's noncompliance with preliminary injunction and non-cooperation in discovery).

|  | Respectfully submitted, |
|---|---|
| Dated: February 19, 2026 | */s/ Megan O'Neill* |

Megan O'Neill (admitted *pro hac vice*)
Erik P. Mortensen (admitted *pro hac vice*)
DTO LAW
702 Marshall Street, Suite 640
Redwood City, CA 94063
Telephone: (415) 630-4100
Facsimile: (415) 630-4105
Email: moneill@dtolaw.com
Email: emortensen@dtolaw.com

Katherine Burghardt Kramer
Grace E. Schmidt
DTO LAW
307 5th Avenue, 12th Floor
New York, NY 10016
Telephone: (213) 335-6999
Facsimile: (213) 335-7802
Email: kkramer@dtolaw.com
Email: gschmidt@dtolaw.com

*Attorneys for the GiftRocket Defendants*

## CERTIFICATE OF COMPLIANCE

I hereby certify this brief contains 3,500 words, excluding text specified in Local Rule 7.1(c). This brief comports with the page limit set forth in this Court's Individual Practice Rules.

Dated: February 19, 2026                     */s/ Megan O'Neill*
                                              Megan O'Neill