UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X
GRACIE BAKED LLC and WECARE    : 22-CV-4019 (RPK)
RG, INC., on Behalf of         :
Themselves and All Others      :
Similarly Situated,            :
                               :
PLAINTIFFS,                    : United States Courthouse
                               : Brooklyn, New York
V.                             :
                               :
GIFTROCKET, INC., ET AL.,      :
                               : Wednesday, October 15, 2025
DEFENDANTS.                    : 10:00 A.M.
- - - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR MOTION CONFERENCE
BEFORE THE HONORABLE RACHEL P. KOVNER
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiffs        JANOVE, PLLC
Gracie Baked, LLC,        500 7th Avenue
et al.,                   8th Floor
                          New York, New York 10018.
                          BY:  RAPHAEL JANOVE, ESQ.

                      -- and --

                          PODHURST ORSEC, P.A.
                          2525 Ponce de Leon
                          Suite 500
                          Coral Gables, Florida 33134
                          BY:  MATTHEW WEINSHALL, ESQ.

A P P E A R A N C E S (CONTINUED):


For the Defendants,          DELGADO, TARRANGO, O'NEILL, LAW
GiftRocket, Inc.,            702 Marshall Street
et al.                       Suite 640
                             Redwood City, California 94063
                             BY:  MEGAN O'NEILL, ESQ.

                                  -- and --

                             307 5th Avenue
                             12th Floor
                             New York, New York 10016
                             KATHERINE BURGHARDT KRAMER, ESQ.
                             GRACE E. SCHMIDT, ESQ.


For the Defendant            GREENE ESPEL PLLP
Sunrise Bank, N.A.           222 South Ninth Street
                             Suite 2200
                             Minneapolis, Minnesota 55402
                             BY:  GINA TONN, ESQ.



          Court Reporter:     DAVID R. ROY, RPR
                225 Cadman Plaza East
                Brooklyn, New York 11201
                drroyofcr@gmail.com

Proceedings recorded by Stenographic machine shorthand,
transcript produced by Computer-Assisted Transcription.

P  R  O  C  E  E  D  I  N  G  S

--ooOoo--

(Open court.)

THE COURTROOM DEPUTY:  All rise.

THE COURT:  Good morning, everyone.

All right.  Everybody keep your seat.

THE COURTROOM DEPUTY:  Gracie Baked, LLC, et al. versus GiftRocket, Incorporated.

Counsel, please state your name for the record.

MR. JANOVE:  Good morning, Your Honor. Raphael Janove with Janove, PLLC for plaintiffs.  With me is Sasha Jones, a paralegal at my firm.

MR. WEINSHALL:  Good morning, Your Honor.  Matthew Weinshall of Podhurst Orseck on behalf of the plaintiffs.

THE COURT:  Great.

Go ahead.

MS. O'NEILL:  Good morning, Your Honor.

Megan O'Neill on behalf of the GiftRocket defendants, which are all the defendants, other than Sunrise Bank.

With me are my colleagues, Katherine Burghardt Kramer and Grace Schmidt, and we have a junior associate, Fiona Hathaway, observing.

THE COURT:  Great.

Okay.  So good morning everybody.

All right --

MS. TONN:  Your Honor, I have --

MS. O'NEILL:  Oh, I'm so sorry.

MS. TONN:  Gina Tonn, here on behalf of Sunrise Bank, Your Honor.

THE COURT:  Great.

MS. TONN:  Good morning.

THE COURT:  Okay.  So a lot of motions and potential motions in this case.  And it seemed like it would be helpful, at least for me, and maybe for you all, too, to talk through sequencing.  If you could, I'll just file them, and I could look at them and figure out at that point what makes sense in terms of order, but also if we were to figure that out now, it might also save you all time.

So we've got pending a -- kind of a long-pending objections to an R & R that relates to standing.  We have a motion for a summary judgment from defendant Kubic.  We have plaintiff's motion for class certification.  And then there's an anticipated motion for summary judgment by Sunrise Bank.

Is that right?

MS. O'NEILL:  Well --

THE COURT:  What else?

MS. O'NEILL:  Partially -- nearly entirely correct, Your Honor.

There is also the intended motion for summary judgment from the GiftRocket defendants.

THE COURT:  Okay.

MR. JANOVE:  I'm sorry.  One more correction to that.  There's also plaintiff's *Daubert* motion submitted in connection with class certification.

THE COURT:  Okay.

So one issue that the parties' letters raised is kind of what goes first, the class certification or the summary judgment motions, right?

I would think that summary judgment would resolve -- would go first -- or that if a summary judgment motion were granted, the case would be over.

What am I missing?

MR. JANOVE:  So, Your Honor, we were here last year.  I would -- we decided to talk about contemplated motions for summary judgment and how that would intersect with class certification.  The only motion that actually was filed before class certification, was defendant Benjamin Kubic's.

And I would pause it, that to the extent we are going to brief additional summary judgment motions right now, it should be limited to the, sort of unique arguments to the named plaintiffs; otherwise, we're rebriefing the same issues that are in class certifications that are in the

motions to dismiss and otherwise.

You know, the same issues such as, Do you need a trademark or a mark entitled to protection? The same issues as to whether the fact that the defendants misappropriated plaintiffs' good name, reputation on the website alone, whether that is injury under *TransUnion,* that's going to be common for all the New York class members.

So I would say that the only unique argument potentially here on summary judgment would be the argument they had as to one named plaintiff, which is Cafe Ole, based on a misinterpretation of the contracts. WeCare RG sold the cafe to a different company, sort of changed interest in this lawsuit and still representing as a named plaintiff. So to the extent anything's going to be resolved before class certification is unique to plaintiffs. It's one specific argument to one named plaintiff.

THE COURT: But I guess just coming back to the -- how I was thinking about it in the question. I mean, if a motion for summary judgment were granted, I guess there are different defendants and they have different arguments, so it could knock out one defendant and not other defendants.

But let's say that GiftRocket's motion, which is probably pretty comprehensive were granted, class certification's moot, right?

MR. JANOVE: I mean, depending on Your Honor's

ruling, we would -- so I mean, try to move for good cause to replace the class representative.

I would say to the extent we are going to entertain that, we should do that efficiently.  I mean, for example, we've argued over *TransUnion* and probably six or seven motions that's pending on the RNO.

THE COURT:  Yeah.

MR. JANOVE:  Last year about 11 months ago, we argued about it, which was -- you know, they -- they're taking the common law tort of defamation and saying we have to allege defamation type, you know, injuries, versus what *TransUnion* says that, Let's look at the common law analog, history, and tradition.  And we submit that is the common law of unfair competition.  We stated injury under that standard.

THE COURT:  Right.

MR. JANOVE:  I mean, I don't particularly know if it's beneficial or good use of its resources, especially when there's a pending RNO in the motion to dismiss to brief that same issue, particularly when that issue's already been briefed again in the class certification that's pending before you.

Then, for example, we could also -- they have the argument about whether you need a mark entailed to protection?  We've briefed that probably six or seven --

seven times. And I'm not sure if it would be efficient, given that issue again pending right now for class certification, for us to write another round of briefs where, for example, we cite *1-(800) Contacts* in the letter, and I can say again for the eighth or ninth time, *1-(800) Contacts* is a trademark case. It's listing the elements for alleging trademark infringement. We're not alleging trademark infringement.

So while I understand conceptionally summary judgments we sometimes can knock things out. I think given how much is already briefed, we should -- we should proceed efficiently. I think at bare minimum, it would be helpful for Your Honor to decide the pending RNO, so at least we can talk about the standings on --

THE COURT: Yes. You know, I am getting the sense that I am -- to you point -- to your point there.

One thing I had wondered is whether as the cases move forward and you all have a record, where we would be on that standing point.

Are we sort of still in the same place we are at the motion to dismiss stage? My sense of the dispute is that you don't have somebody who's a plaintiff who had, like, evidence of an interaction? Like somebody came to my store and tried to redeem a GiftRocket card, right?

MR. JANOVE: Well --

THE COURT: And that the argument is, you know, look at the common law analogues, that's no required.

Is that where we are today in this case or not?

MR. JANOVE: No. We have plaintiff Millercobb that -- Dimensions Massage Therapy. They're an actual GiftRocket gift card using it. Dimensions Massage's name was used. The customer called, tried to redeem the GiftRocket. It didn't work. GiftRocket ultimately redeemed the amount to Dimensions Massage.

So regardless of the arguments about *TransUnion*, which we think are misplaced, we still are going to have a named plaintiff. We've also proposed to be our 23(b)(3) class rep, because as a direct tie, we can tie exactly when the GiftRocket was sold using that business's name.

THE COURT: Okay.

What about that guy?

MS. O'NEILL: Yes, Your Honor. So Dimensions Massage, the third plaintiff. I did want to say, though, if you don't mind me going out of order, what you just talked about.

Fundamentally, obviously, a pleading-stage motion is very different than one based on all the evidence, and so the motion for summary judgment would take -- regardless of what the outcome is of the motion to dismiss, would -- all the record evidence supports no standing in the case.

But also the fact is that the mark issue, that he talked about a few times, has never been briefed in a dispositive motion. And, in fact, Your Honor said at the last conference, that it seemed that it was appropriate for a dispositive motion as opposed to a discovery motion. So we would be briefing it in a motion for summary judgment.

THE COURT: The "mark issue" meaning what?

MS. O'NEILL: Whether a protectable IP is required for a false affiliation claim.

THE COURT: Okay.

So I guess staying on this standing issue. Yeah, one thing I had wondered was whether you would be making that argument, that regardless of how the case was pled, now that we are at summary judgment it's clear that nobody has standing. It sounds like you are making that argument?

MS. O'NEILL: Correct. But only as to two plaintiffs.

THE COURT: Okay.

MS. O'NEILL: So we did not bring the motion to dismiss as to Dimensions Massage.

THE COURT: Okay.

MS. O'NEILL: Because they did include allegations to establish at the pleading stage --

THE COURT: Yeah.

MS. O'NEILL: -- standing to proceed.

We have other arguments that we are attacking and addressing their claims as to why they did not succeed as a matter of law.

THE COURT:  Got it.

MS. O'NEILL:  But on the first two plaintiffs, the record evidence supports the argument that there is no standing, the same arguments we have made.  But different because now we can say -- the plaintiffs can't say, Well, there's an allegation of this.  We examined the record. There is no evidence to support that allegation.

But the reason that the motion to dismiss is still important is because what is sufficient under the *Lanham Act* to plead -- to establish Article III standing is important. And the R&R, we believe -- you know, respectfully to Judge Scanlon, is erroneous.

The *Maddox* case in the Second Circuit expounded on *TransUnion*, stated that, you know, a publicly available erroneous record, if read by no one, does not establish Article III standing.

And while we did not take the position that they needed to have someone come into the store, or something along those lines, there needed to be evidence that somebody saw it.  And if there's no evidence and they did not plead that anybody actually saw these people listed on GiftRocket, then there's no standing.  So that's the motion to dismiss.

But the motion for summary judgment is, of course, different because we have years of discovery to put in front of it. And then, again, Dimensions, we have separate arguments, not standings, but other arguments for the motion, we believe.

(Pause in proceedings.)

THE COURT: Okay. So as to standing, do we all agree that Dimensions has some standing?

MS. TONN: Gina Tonn for Sunrise Bank, Your Honor.

So Sunrise Bank, for summary judgment on standing as to all three plaintiffs, Sunrise Bank is differently positioned when it comes to Dimensions Massage because the record shows that the Dimension Massage GiftRocket that was purchased was purchased in, I believe, October of 2022. And Sunrise Bank stopped supporting the sale of GiftRockets in June 2022, before that GiftRocket was purchased. And so Sunrise Bank does anticipate using at summary judgment on standing as to all three named plaintiffs.

THE COURT: Okay. Got it.

Except as to Sunrise Bank. So I get -- so Sunrise Bank has some kind of specific stuff going on. Except as to Sunrise Bank, there's no dispute about the Dimensions plaintiff; the dispute is about everybody else; is that right?

MS. TONN: That's correct.

THE COURT:  Okay.

MS. TONN:  We've never disputed standings --

THE COURT:  Okay.

All right.  And as to the other plaintiffs, are the disputes about standing the same as the ones -- and the summary judgment, does the evidentiary record add anything to those standing arguments or we're just kind of where we are?

MS. O'NEILL:  It does.  Because the plaintiffs were deposed and asked questions about, "Are you aware of any trade that had been diverted?"  The answers were no.

It's sort of -- it could have happened and maybe I didn't know about it, something to that effect.

So the -- and then there's the factual record that was from the defendants as to -- from GiftRocket as to how the website worked and what did it mean when the plaintiff said in their complaint that they -- that businesses were listed on their website?  It wasn't a static list.  So it's coming through a portal to Yelp -- to Yelp's website.  So it's a dynamic listing based on the search that's run.

So for that reason, all of that record establishes that any time that something could have been generated, it was by Google bots, which would -- so there's no evidence of an actual human being seeing those two businesses associated with GiftRocket.

So the factual record actually does amplify the arguments and make them stronger.

THE COURT:  Okay.

All right.  But it sounds like resolving the pending objections will not resolve this case because we'll have -- conceivably, as to Sunrise Bank, with Sunrise Bank's additional motion, there is a standing argument.  But resolving the pending objections wouldn't resolve this case because we'll still have one plaintiff.  And so then, we'll be at the other summary judgment arguments and a class certification argument as to at least Dimensions; is that right?

MS. O'NEILL:  That's right.

THE COURT:  Okay.

All right.  So I guess I get the argument that issues that are briefed in the class certification motion overlap with issues.  I'm just not sure how -- I -- I'm guessing that I -- I have no intuition about class certification in this case.  I'm not expressing any view about it.  But sometimes, class certification motions are denied for reasons that wouldn't overlap with the summary judgment arguments.

So why doesn't it make sense to have the summary judgment briefing before?

MR. JANOVE:  Well, so I think I know where

Your Honor's leading.  I mean, I think our understanding last year was there would be perfectly unique summary judgment issues that would be teed up, and then there would be class certification, followed by a conference where we would decide, depending on the rulings, what summary judgment motions would follow.

Like, for example, we would anticipate moving for affirmative summary judgment on all of our claims and making the same arguments we would make in opposition to, for example, Ben Kubic's motion for summary judgment or Sunrise, that the record shows that they were, if not at least a direct participant, they certainly are jointly and severally liable under the broad standards for contributory, you know, liability under the *Lanham Act*.

So that's what we envision.  I understand where Your -- where Your Honor's going.  I think --

THE COURT:  Counsel, you have a -- assuming, I guess it sounds like we definitely have one viable plaintiff.  Let's say that that's the only viable plaintiff we have.  Sunrise is saying, at that point, we were out of the business.  We were not connected to it.  You think you'd have a claim against Sunrise?

MR. JANOVE:  So certainly, they were the -- the reason that GiftRocket exists today, is it grew to what it made, because it made millions of dollars.  The reason that

in October 2022, GiftRocket was still selling GiftRocket cards -- albeit, with a new partner -- was because of Sunrise partnership, right?

And Sunrise partnership, throughout the years, with the compliance team saying, Everyone's confused.  Stop using gift cards.  Stop using businesses on the website.  And then Sunrise ignoring its own compliance team and allowing GiftRocket to continue to mislead consumers, especially in the face of upset businesses.

So our view is, just because Sunrise stopped taking new orders in June 2022 -- and by the way, if you still had balances in March 2023, does not negate their liability for GiftRocket's continued operation.

And we also think, on the record, we'd have an affirmative summary judgment motion on behalf of the class that Sunrise Bank is directly liable, but certainly, if they're not directly liable, contributory or joint and severally liable.

So that's an argument that's really just going to -- it's not unique.  It goes to pretty much most of the class members.  And I guess if Your Honor decided that after June 2022 or let's say, March 2023, Sunrise is no longer liable, then maybe they wouldn't be liable for the sale of GiftRockets after a certain time period.

THE COURT:  Okay.  Is what you all want to do, to

file your motions now?  Is that the gist or I guess we have some -- at least one motion that's pending now.

But is it what you want to do, to file your summary judgment motions now?

MS. O'NEILL:  Yes, Your Honor, in short order.

THE COURT:  Okay.  And you would like to hold off on filing of additional summary judgment motions on the theory that there are some legal issues in the class certification motions that overlap so that resolving the class certification motion could, but also could not, resolve the issues?

MR. JANOVE:  Well, two things.  And I think our position is, first:  To the extent summary judgment briefing is going to go forward, at least the resolution of the pending motion to dismiss would be helpful.  A lot of legal issues are pure legal issues.  What does injury mean in the *Lanham Act*?  What does injury, for example, mean under false advertising under the Supreme Court's *Lexmark* standard?

So there are some pure issues of law that are teed up for you that will be repeated -- we will argue the same things again in summary judgment.  That will be at least half of it.  But depending on your ruling, that could move or at least narrow the briefing.

So that would be -- oddly, our first step is, let's see what Your Honor says.  And then I think our point

in -- in general, is that if -- if we have a class certified against defendants and then we move for affirmative summary judgment, we have gotten summary judgment -- a judgment in favor of the entire class.

Or if we move for a permanent injunction on the *Lanham Act*, which gives us a presumption of irreparable harm, we'll have an permanent injunction -- injunction for the entire class. So as a matter of efficiency of process, moving and getting judgment on behalf of the plaintiff, you know, we want to see if we can get that for everyone.

THE COURT: Yeah. So let me be candid with you about my scheduling situation, and then you can tell me how you want to proceed in light of that. I -- this is one of my longer pending motions, so I apologize to you all that it's been pending so long. I find the issue kind of interesting and a little bit tricky.

I would love to resolve this immediately, but truth of the matter is, I'm expecting to be out of the office for a couple months, starting in a couple weeks. You may be able to guess as to why.

MR. JANOVE: Congratulations.

THE COURT: Thanks.

So I am not confident I will get to this in the next weeks. There are just -- I have criminal and other matters that I absolutely need to resolve before I head out.

So I guess I would like to handle scheduling in a way that's efficient for you all.

I take the point that you maybe don't want to re-brief the standing issues that are sounding not very different at the summary judgment stage. I take your point about how they're -- there's some additional evidence.

It's sounding like, basically, there is a fundamental disagreement about whether what they plead is sufficient; and your view is the evidence shows that there's not really more than what they pled. And maybe it gives a little nuance about how the exist- -- how the listings come into existence, that it's bot generated rather than a human search.

MS. O'NEILL: Your Honor, if I may?

THE COURT: Go ahead.

MS. O'NEILL: So I wouldn't say that's our position.

So what the plaintiffs allege, I -- I believe they are alleging pertaining to some class members, but not two of the three.

THE COURT: Yeah.

MS. O'NEILL: So, for example, when they say things in the complaint like, "Plaintiffs and class members suffered reputational harm," and when the plaintiffs are asked, "What reputational harm?"

"I'm not aware of any.  I'm not aware anybody saw it, but it could have happened if they did."

So that, certainly, if there was reputational harm -- we're not taking the position that if there had been reputational harm, it wouldn't be sufficient.

THE COURT:  Right.

MS. O'NEILL:  So that's why it's a very different argument.  Is this -- but -- but the pleading stage argument is very much, "What must you say in a complaint to bypass, to establish Article III standing?"

The argument and the motion for summary judgment is based on all the record evidence.  No matter what the determination is on the motion to dismiss, it will not change it unless Your Honor says something to the effect of, No one ever has to see anything.  As long as it could have happened, which Your Honor would not say, based on *TransUnion*, is our -- is our feeling.  But that would be in conflict.

But the MSJ would be a different -- a different argument.  It's just that we -- one is a pleading-stage argument based on the sufficiency of allegations to establish harm.  And the other is based on everything that happened.  And the plaintiffs have no evidence to establish any sort of injury.

But, again, I think that in terms of the timing

situation, waiting until the outcome of the motion to dismiss really doesn't make sense because there are so many other arguments that we are raising --

THE COURT:  Yeah.

MS. O'NEILL:  -- that are ripe for adjudication. And from an efficiency standpoint, it makes sense to attack those.

THE COURT:  Yeah.

MS. O'NEILL:  And one brief example I'll give you is that Gracie Baked, which is one of the two plaintiffs that are part of the standing arguments, is the only representative for the New York GBL class.  The other two are not from New York.

For the -- if the Court were to look at class certification, there are a host of arguments that relate to the B2 class.  There is no -- I'm sorry, not the B2 class -- the GBL class.  But there is no GBL class without a New York representative.

So deciding these issues first makes sense, and then if there is --

THE COURT:  Which are "these issues"?

MS. O'NEILL:  I'm sorry.  The MSJ issues.

THE COURT:  Okay.

MS. O'NEILL:  Yeah.  Thank you.

THE COURT:  Okay.  Is there any -- is there any

piece of the summary judgment motion that you agree with plaintiff about that we should hold off? Because either it's already effectively briefed in the existing briefing or the existing motion is still likely to resolve or shed light on those issues. And we could divide this up.

I'm really just thinking about saving you all resources. If I got all the motions and then figure out where to slide them in, that would be fine with me, but...

MS. O'NEILL: I appreciate that, but no.

Because the *Rule 23* analysis is so fundamentally different, the burden is so different. But the -- the issues that, for example, the predominance issue, some of what we're talking about is the fact that there would be most of what the -- the class certification opposition addresses, are the many individualized issues.

And we have a couple of flowcharts in our opposition, which show sort of, if you go here or you go here, based on the answer to this element of this claim. And then you go here. And sometimes, you would come up with liability and sometimes you would come up with no liability.

So those are real -- that's a very fundamentally different analysis than these three plaintiffs, on these facts, have no liability.

So waiting for class certification or limiting us does not make sense because from an efficiency standpoint,

it makes sense for us to bring forward all the defenses that we have and then it's neat and clean, and in that there's summary judgment against all three.

Obviously, that's our perspective.

THE COURT:  Okay.

All right.  I don't -- I think -- I've tried to figure out if there's a way to streamline this.  It doesn't seem like there is.  Somehow, there's not a way that everybody agrees on.  And from my perspective, it's going to be most helpful to just get the briefing in and handling it at that point, so...

I guess what we don't have yet is GiftRocket's motion, right?  Is that what we -- what hasn't been filed yet, or is there one additional summary judgment motion beyond that that hasn't been filed yet?

MS. TONN:  Your Honor, Sunrise Bank --

THE COURT:  Okay.

MS TONN:  -- hasn't filed summary judgment motion yet.

THE COURT:  All right.

Okay.  So should we talk about a schedule for those?

MS. O'NEILL:  Yes, Your Honor.

THE COURT:  What were you all thinking?

MS. O'NEILL:  So our proposal would be filing the

motion on November 13th, so a little less than 30 days, with an opposition in the end of the December, or to that -- counsel's choice.  We thought December 23rd, would be flexible.

And then we are hoping to get about three weeks after the holidays, so around January 23rd.

THE COURT:  All right.

How does that schedule work for you?

MR. JANOVE:  If possible, just because I'd like speak with some other attorneys at my firm and in scheduling.

THE COURT:  Yeah.  Do you want --

MR. JANOVE:  If you want to --

THE COURT:  -- to talk about it --

MR. JANOVE:  -- we can submit a joint letter about a briefing schedule.

THE COURT:  Yeah, that's fine.

(Pause in proceedings.)

MS. O'NEILL:  Your Honor, one question --

THE COURT:  Yes.

MS. O'NEILL:  -- if I might ask?

THE COURT:  Yes, uh-huh.

MS. O'NEILL:  It would guide the discussions on the briefing schedule is, when do you anticipate returning? Because I imagine there's no rush to get it done prior to

that point.

THE COURT:  Yeah.  January -- well, sort of January, but I wouldn't expect to look at this right away.

MS. O'NEILL:  Certainly.

THE COURT:  So I would say, don't rush to brief this.

MS. O'NEILL:  We understand.

THE COURT:  So you should take the time that you feel would be helpful.

MS. O'NEILL:  Thank you.

THE COURT:  Let me just look at my notes.

(Pause in proceedings.)

MR. JANOVE:  And, Your Honor, may I clarify? We're still going to hold off on affirmative summary judgment motions until after class certifications are decided.

THE COURT:  That's fine, yeah.

(Pause in proceedings.)

THE COURT:  And just so I understand the relationship between the various summary judgment motions. So there is Sunrise, which sort of is unique, right?  In that it's about your stopping your agreement with GiftRocket and not having a plaintiff who was around when that relationship was in existence.

Is that right?

MS. TONN: Your Honor, the Sunrise Bank summary judgment motion has a few parts to it. So we will be joining the GiftRocket summary judgment motion, to the extent that the issues presented there overlap or apply to Sunrise Bank's.

THE COURT: Yeah.

MS. TONN: So some of the standing argument as to Gracie Baked and WeCare will be the same.

THE COURT: Yeah.

MS. TONN: So we'll join those portions.

And then we'll have the same argument as to Dimensions Massage, and about whether, as a matter of law, their is standing based on the injury that occurred after Sunrise Bank had stopped supporting the sale and the new banking partner had come in to support GiftRocket.

And then we also do have some more unique arguments that are legal arguments related to whether plaintiffs can show, as a matter of law, their contributory infringement theory, as well as their false advertising claims against Sunrise Bank.

So we do anticipate some of those more unique issues that apply to Sunrise Bank's position being brought in this summary judgment motion that apply.

THE COURT: Okay. Got it.

And it sounds like this was already your plan.

But to the extent that you are making arguments that are the same, please, I would be delighted if you just join rather than --

MS. TONN: Yes, Your Honor.

THE COURT: -- coming up with a slightly different case or whatever.

MS. TONN: (No verbal response.)

THE COURT: It's -- it just -- sometimes when that happens, it's hard to know exactly what's going on, so...

MS. TONN: Yes, Your Honor.

THE COURT: Great.

MS. TONN: Our plan is to join, by reference, to the arguments that apply to the Sunrise issues.

THE COURT: Okay.

And then as the Kubic, I mean, so you guys already have your motion pending --

MS. O'NEILL: Yes. So that one -- so I would say this: If this particular motion for summary judgment that we are about to file is granted in full, then there's no need, obviously, to rule on that.

But if any part of it remains, then yes, that would still need to be ruled upon, because that would just knock out one individual defendant.

And the reason for that is, you know, we filed that in lieu of the motion to dismiss, is that this was a

W-2 employee who joined the case -- I'm sorry -- joined the company late in the game.  And there's not -- the other three individual defendants are founders of the start-up business.  This is somebody who joined eight years, ten years into the existence of the company and is just a VP of sales.

So anyway, that's the situation and that is that.

THE COURT:  Okay.  Got it.

All right.  Well, this has been helpful for me.  I think I have a better understanding of the motions and how they're related.

I'm not sure it's been as helpful as I would like for you, because I don't think I've saved you all any work, but at least we have a calendar.

So thank you all for coming in.

MS. O'NEILL:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  All rise.

(Matter concluded.)

--oo0oo--

*I (we) certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*/s/ David R. Roy*                    *October 23, 2025*
*DAVID R. ROY*                              *Date*

David R. Roy, RPR, CSR, CCR
Official Court Reporter